HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARMONY GOLD U.S.A., INC.,

                  Plaintiff,

      v.

HAREBRAINED SCHEMES LLC,
HAREBRAINED HOLDINGS, INC., JORDAN
WEISMAN, PIRANHA GAMESGAMES INC.
and DOES 1–10,

                  Defendants.

CASE NO. 2:17-CV-00327-TSZ

**PIRANHA'S MOTION FOR
SUMMARY JUDGMENT AS TO
PLAINTIFF'S LACK OF STANDING
TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM**

**NOTE ON MOTION CALENDAR:
DECEMBER 15, 2017**

**ORAL ARGUMENT REQUESTED**

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
Fax: (206) 903-8820

## TABLE OF CONTENTS

I.      INTRODUCTION AND RELIEF REQUESTED ...............................................................1

II.     BACKGROUND ......................................................................................................2

        A.      Creation of the Big West Characters and the Alleged License to Tatsunoko..........3

        B.      Tatsunoko's License to Harmony Gold ...............................................................4

        C.      Big West's U.S. Copyright Registration Following the Japanese Litigation .........4

        D.      Harmony Gold Expressly Acknowledged that It Has No Right to Create
                Derivative Works of the Big West Characters.......................................................5

        E.      U.S. Litigation Between Harmony Gold and Tatsunoko .......................................6

        F.      Harmony Gold Has Repeatedly Claimed that the Accused Images Are
                Derivative Works ...............................................................................................7

III.    ARGUMENT .........................................................................................................9

        A.      The Legal Standard for a Motion for Summary Judgment .....................................9

        B.      Harmony Gold Lacks Standing Because It Is Not the Owner or Exclusive
                Licensee of the Asserted Copyright......................................................................10

                1.      Only the Legal or Beneficial Owner of an Exclusive Right Under a
                        Copyright Can Sue for Infringement ...................................................10

                2.      Harmony Gold Does Not Own the Copyrights to the Big West
                        Characters It Claims Have Been Infringed ...........................................11

                3.      Harmony Gold's License Excludes the Right to Create Derivative
                        Works of the Big West Characters........................................................12

                4.      Harmony Gold's Copyright Registration Does Not Give It Any
                        Rights in the Big West Characters .........................................................13

        C.      Collateral Estoppel Precludes Harmony Gold from Re-Litigating the Issue
                of Whether the 2003 Amendment Is Valid .............................................................14

                1.      The Elements of Collateral Estoppel .....................................................15

                2.      Harmony Gold Is Collaterally Estopped from Re-Litigating the
                        Validity of the 2003 Amendment ..........................................................17

IV.     CONCLUSION......................................................................................................19

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allen v. McCurry,*
5
    449 U.S. 90 (1980)................................................................15

6

*Ashe v. Swenson,*
    397 U.S. 436 (1970)..............................................................16
7

8

*C.D. Anderson & Co., Inc. v. Lemos,*
    832 F.2d 1097 (9th Cir. 1987) ..............................................15

9

*Celotex Corp. v. Catrett,*
10
    477 U.S. 317 (1986).................................................................9

11

*CJ Prods. LLC v. Snuggly Plushez LLC,*
    809 F. Supp. 2d 127 (E.D.N.Y. 2011) ..................................11
12

13

*Clark v. Bear Stearns & Co.,*
    966 F.2d 1318 (9th Cir. 1992) ..............................................16

14

*Emich Motors Corp. v. General Motors Corp.,*
15
    340 U.S. 558 (1950)..............................................................16

16

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.,*
    122 F.3d 1211 (9th Cir. 1997) ..............................................12
17

18

*Harmony Gold, USA, Inc. v. Tatsunoko Production Co., Ltd.,*
    Case No. 2:17-cv-06034-PA-MRW (C.D. Cal. Aug. 23, 2017).................7

19

*Marya v. Warner/Chappell Music, Inc.,*
20
    131 F. Supp. 3d 975 (C.D. Cal. 2015) ..................................11

21

*Michael Grecco Photography, Inc. v. Everett Collection, Inc.,*
    589 F. Supp. 2d 375 (S.D.N.Y. 2008)...................................11
22

23

*North Coast Indus. v. Maxwell,*
    972 F.2d 1031 (9th Cir. 1992) ..............................................11

24

*Righthaven LLC v. Hoehn,*
25
    716 F.3d 1166 (9th Cir. 2013) ........................................10, 11

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - ii

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Russell v. Price,*
    612 F.2d 1123 (9th Cir. 1979) ...................................................................14

*S. Cal. Darts Ass'n v. Zaffina,*
    762 F.3d 921 (9th Cir. 2014) ......................................................................9

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) ..............................................................10, 11

*Town of N. Bonneville v. Callaway,*
    10 F.3d 1505 (9th Cir. 1993) .........................................................15, 18, 19

*Trevino v. Gates,*
    99 F.3d 911 (9th Cir. 1996) ......................................................................15

*Tri-Tron Intern. v. Velto,*
    525 F.2d 432 (9th Cir. 1975) ....................................................................17

**Statutes**

9 U.S.C. § 13(c) ...........................................................................................14, 16

17 U.S.C. § 101 ...................................................................................................1

17 U.S.C. § 103(b) .............................................................................................13

17 U.S.C. § 106 .................................................................................................10

17 U.S.C. § 201(d) .............................................................................................10

17 U.S.C. § 410(c) .......................................................................................11, 12

17 U.S.C. § 501(b) .............................................................................................10

**Other Authorities**

Fed. R. Civ. P. 52(a) ...........................................................................................16

Fed. R. Civ. P. 56 .............................................................................................1, 9

9C Wright & Miller, Federal Practice & Procedure, § 2579 (3d ed. 2008) ................16

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - iii

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

# I.    INTRODUCTION AND RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 56, defendant Piranha Games Inc. ("Piranha") moves the Court for summary judgment dismissing for lack of standing the copyright infringement claim (Count I) asserted by plaintiff Harmony Gold U.S.A., Inc. ("Harmony Gold") (Dkt. 31 at ¶¶ 35-41). Harmony Gold alleges that certain robot warrior characters in a video game created by Piranha infringe copyrights that are allegedly owned by, or exclusively licensed to, Harmony Gold. Piranha's position is simple: Harmony Gold is not the owner or exclusive licensee of the copyrights that it seeks to enforce. Therefore, Harmony Gold lacks standing to bring its copyright infringement claim. More specifically, the Complaint (Dkt. 1) and Amended Complaint (Dkt. 31) both allege that Harmony Gold is the owner of "derivative works"[1] rights in certain characters, but Harmony Gold acknowledged in a January 20, 2003 amendment to its license agreement that it has no "derivative works" rights in those same characters. This was confirmed in a 2017 federal court judgment which, in turn, confirmed the results of an arbitration between Harmony Gold and its licensor.

Harmony Gold lacks standing to bring an infringement claim for three reasons. **First**, Harmony Gold is not the owner of the copyrights in question. Those copyrights are owned by a company called Big West, as shown by Big West's copyright registration in the U.S. Copyright Office. **Second**, the copyrights Harmony Gold seeks to enforce were not licensed to Harmony Gold. Harmony Gold's license agreement expressly excludes the rights that Harmony Gold seeks to enforce here. **Third**, the issue of what copyrights were assigned or licensed to Harmony Gold

---

[1] The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" 17 U.S.C. § 101.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 1

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1   was recently litigated in an arbitration and is the subject of a U.S. District Court Judgment entered

2   on August 23, 2017.  The arbitration and Judgment show that Harmony Gold does not have a

3   license to the copyrights it seeks to enforce.

4          There is no genuine dispute of material fact as to Harmony Gold's lack of standing.

5   Accordingly, Piranha requests that the Court grant summary judgment dismissing Harmony Gold's

6   copyright infringement claim (Count I) with prejudice and dismiss Piranha from this case.

7          This motion is supported by the concurrently filed Declaration of Ryan B. Meyer ("Meyer

8   Decl.") and Exhibits 1-9 attached thereto.  A proposed Order is filed concurrently herewith.

9                              **II.     BACKGROUND**

10         Both the Complaint (Dkt. 1) and the Amended Complaint (Dkt. 31) allege that Harmony

11  Gold owns the copyrights to various warrior robot characters (the "Big West Characters") that

12  were created in the early 1980s by two Japanese companies: Big West Co., Ltd. and Studio Nue

13  Co., Ltd. (collectively "Big West").  The Big West Characters were ultimately incorporated into a

14  36-episode animated series named "*Macross*" (the "*Macross* Motion Picture").[2] *See* Meyer Decl.

15  at ¶ 2, Ex. 1 at 6-7.  The Amended Complaint alleges that certain warrior robots ("the Accused

16  Images") of Piranha are "derivative" of several of the Big West Characters. Dkt. 31 at ¶¶ 23, 28

17  and 37.[3]

18  _____

19  [2] The *Macross* Motion Picture is the only copyrighted work registered to Harmony Gold that is at

20  issue in this litigation. Though the Amended Complaint lists eight copyright registrations (Dkt. 31
    at ¶ 14) and Exhibit A to the original Complaint (Dkt. 1) contains copies of those eight

21  registrations, five of the registrations do not contain any of the Big West Characters, and the other
    two are duplicative of the *Macross* Motion Picture – *i.e.*, *Macross: Booby Trap* is one of the

22  episodes of the *Macross* Motion Picture and *Robotech* contains the *Macross* Motion Picture.
    Moreover, each of the registrations is directed to a "MOTION PICTURE," not the Big West

23  Characters. Harmony Gold may have certain rights to the *Macross* Motion Picture in the U.S., but
    it does not have copyrights in the Big West Characters.

24
    [3] Harmony Gold may have certain rights to the *Macross* Motion Picture in the U.S., but it does not

25  have copyrights in the Big West Characters.  In its Amended Complaint, Harmony Gold refers to
    the Big West Characters as "Robotech" warrior robots.  This is because Harmony Gold combined

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 2

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    The following subsections explain the relevant chronology with respect to this motion.

2  Specifically, they explain (1) how certain rights in the *Macross* Motion Picture were created and

3  granted by Big West to Tatsunoko Production Co., Ltd. ("Tatsunoko"); (2) how Tatsunoko

4  subsequently assigned certain of those rights to Harmony Gold; (3) how Big West registered its

5  copyrights in the Big West Characters with the U.S. Copyright Office; (4) how Harmony Gold's

6  license agreement with Tatsunoko was amended to <u>exclude</u> creation of derivative works of the Big

7  West Characters; and (5) how Harmony Gold's limited rights were confirmed in 2017 by an

8  arbitration and by a U.S. District Court.

9    **A.    Creation of the Big West Characters and the Alleged License to Tatsunoko**

10    In 1981, a Japanese company called Studio Nue, in partnership with another Japanese

11  company called Big West, began development of the *Macross* Motion Picture. Meyer Decl. at ¶ 2,

12  Ex. 1 at 2, 6.  Employees of Studio Nue were responsible for creating and designing the characters

13  that would appear in the series. *Id.*, Ex. 1 at 6-8.  The characters created by Studio Nue include the

14  Big West Characters at issue in this litigation. *See* Dkt. 31 at ¶¶ 23, 28.

15    After the Big West Characters were created, Big West and Studio Nue made arrangements

16  with Tatsunoko to assist in completing the *Macross* Motion Picture.  As compensation for its work,

17  Tatsunoko received, *inter alia*, overseas commercialization rights for the completed *Macross*

18  Motion Picture. Meyer Decl., Ex. 1 at 8-9.  Harmony Gold may have certain rights to distribute

19  the *Macross* Motion Picture in the U.S., but those rights are not at issue here.[4]

20

21  the *Macross* Motion Picture with two unrelated animations and re-named the compilation
22  "Robotech."  Essentially, Harmony Gold "repackaged'" *Macross* to appeal to a U.S. audience, for
23  example, by substituting an English language soundtrack for the Japanese soundtrack.  However,
    the characters in Robotech are the original Big West Characters.  The characters from the other
24  two series are not at issue in this lawsuit.

25  [4] Unlike Big West, which registered its copyrights in the 41 Big West Characters, Harmony Gold
    filed a Certificate of Copyright Registration for 36 episodes of the "Motion Picture" called
    "Macross." *See* Meyer Decl. at ¶ 9, Ex. 8.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 3

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

**B.      Tatsunoko's License to Harmony Gold**

2

In 1984, Tatsunoko purported to grant Harmony Gold an exclusive and irrevocable license

3

to the *Macross* Motion Picture in the U.S. Dkt. 31 at ¶¶ 12-13.  In 1991, Tatsunoko granted a new

4

license to Harmony Gold which purported to grant Harmony Gold "the exclusive and irrevocable

5

right to exploit three Japanese animated television series" in the U.S. Meyer Decl. at ¶ 4, Ex. 3 at

6

2 (Arbitration Award).[5] The license agreement was amended several times thereafter. *Id.*, Ex. 3.

7

**C.      Big West's U.S. Copyright Registration Following the Japanese Litigation**

8

Nearly 20 years after the *Macross* Motion Picture first aired, Big West and Tatsunoko filed

9

suit against each other in Japanese courts to determine which of them owned the copyrights to the

10

Big West Characters.  Meyer Decl. at ¶¶ 2-3, Exs. 1-2. The Japanese courts ruled that Tatsunoko

11

owned certain copyrights in the *Macross* Motion Picture (*Id.*, Ex. 3 at 6), but it did <u>not</u> own the

12

copyrights in the Big West Characters. *Id.*, Ex. 1 at 10-11; Ex. 2 at 4.  The Japanese courts held

13

that the copyrights to the Big West Characters belonged to Big West. *Id.*  An exhibit showing the

14

Big West Characters was attached to the 2002 Japanese district court decision (*id.*, Ex. 1) and

15

referenced in the subsequent appellate decision. *Id.*, Ex. 2 at 1.[6]

16

On May 17, 2002, after the Japanese district court decision, Big West registered its

17

copyrights in the Big West Characters with the U.S. Copyright Office. *See id.* at ¶ 5, Ex. 4

18

(Copyright Reg. No. Vau000534107).  Along with the registration, Big West deposited with the

19

Copyright Office a set of drawings of the Big West Characters.  *Id.* at ¶ 6, Ex. 5.  The drawings

20

deposited with the U.S. Copyright Office are the same drawings attached to the Japanese court

21

_____

22

[5] Unless otherwise stated, page citations to Exhibit 3 of the Meyer Declaration, which is an
Amended Judgment Confirming Arbitration Award, refer to the page numbers of the Arbitration

23

Award attached to the Amended Judgment as "EXHIBIT A."

24

[6] A copy of the Japanese court exhibit, which contains color pictures of the Big West Characters,
can be found after the Japanese-language version of the decision at the end of Exhibit 1 to the
Meyer Declaration. In addition, a translation of the text contained in the Japanese court exhibit

25

follows the certified English-language translation of the decision.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 4

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1   decision holding that Big West owns the copyrights to the Big West Characters. *Id.*, Ex. 1. Some

2   of the allegedly infringed images depicted in the Amended Complaint are identical to some of the

3   drawings in Big West's copyright registration. Some are slightly different versions of the same

4   Big West Character.[7]  These "deposit copies" supporting the Big West copyright registration

5   further demonstrate that Harmony Gold does not own the copyrights to the Big West Characters.

6   **D.    Harmony Gold Expressly Acknowledged that It Has No Right to Create
       Derivative Works of the Big West Characters**

7

8       As a result of the Japanese court rulings, Tatsunoko and Harmony Gold amended their

9   license agreement.  The amendment, *in toto*, states:

10          This amendment is entered into as of January 20, 2003 by and between
        Tatsunoko Production Co. Ltd. ("Licensor") and Harmony Gold USA, Inc.
11      ("Licensee") in reference to that certain agreement between Licensor and Licensee
        dated March 15, 1991.
12

13          For good and valuable consideration, the receipt and adequacy of which is
        hereby acknowledged, Licensor hereby grants to Licensee whatever rights Licensor
14      has (if any) in the copyright of the original 36 episode series Macross (the "Series").

15          **Licensee expressly acknowledges that Licensor is not granting Licensee
        any rights to create derivative works using the original 41 characters as
16      contained in the Series**.

17  Meyer Decl. at ¶ 8, Ex. 7 (emphasis added).

18      Accordingly, Harmony Gold, the plaintiff here, has no right to create derivative works of

19

20  _____

    [7] It appears that Harmony Gold copied all of the *Macross* drawings in the Amended Complaint
21  from a book published in Japan entitled *Macross: Perfect Memory*.  *Macross: Perfect Memory* has
    a 1983 copyright notice stating ownership by Big West, the broadcasting company, and the book's
22  publisher, not to Harmony Gold or Tatsunoko. Meyer Decl. at ¶ 7, Ex. 6. One example of Harmony
    Gold's apparent copying is the "Officer's Pod/Glaug" pictured at ¶ 23 of the Amended Complaint.
23  Note that there is a column of Japanese characters pictured between that warrior robot's knees,
    which is identical to the "Glaug" and column of characters pictured at page 170 of *Macross:
24  Perfect Memory*.  In other words, the images in the Complaint and Amended Complaint in the
    instant action, which are alleged to be owned by Harmony Gold, were copied by Harmony Gold
25  from a book bearing a copyright notice of Big West.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 5

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    the original 41 characters, an identical subset of which are set out in the Complaint and Amended

2    Complaint as the subject of this action. [8]

3    **E.    U.S. Litigation Between Harmony Gold and Tatsunoko**

4    Any rights Harmony Gold has in the *Macross* Motion Picture flow from its license

5    agreement with Tatsunoko.  Dkt. 31 at ¶¶ 12-13.  The U.S. copyright registration that Harmony

6    Gold filed for the *Macross* Motion Picture acknowledges that Harmony Gold's claimed copyrights

7    were obtained by "Agreement" (*i.e.*, <u>not</u> as a result of Harmony Gold creating or authoring the

8    *Macross* Motion Picture). Meyer Decl., Ex. 8.  In a 2017 arbitration, Harmony Gold and Tatsunoko

9    litigated various disputes concerning their licensing agreement. *Id.*, Ex. 3.  One of the disputes

10   concerned Tatsunoko's allegation that the 2003 amendment to the license agreement was not

11   enforceable. *Id.*, Ex. 3 at 9-10.

12   In his June 27, 2017 Arbitration Award, the arbitrator recognized the finding of the

13   Japanese courts "that Big West owned exclusively the original visual depictions of 41 characters

14   as used in the *Macross* program." *Id.*, Ex. 3 at 6.  The arbitrator found that the rights granted to

15   Harmony Gold by the 2003 amendment to the license agreement "naturally exclud[ed] any right

16   to create derivative works using the 41 original character[s] from [the] *Macross* program that now

17   belonged to Big West." *Id.*, Ex. 3 at 10.  The arbitrator concluded that the 2003 amendment is valid

18   and binding, and that the rights granted to Harmony Gold <u>exclude</u> "the visual depiction of the

19   original 41 animated graphic characters from the underlying Program" (*id.*, Ex. 3 at 18), a subset

20   of which is asserted by Harmony Gold in the pleadings (Dkt. 1 and 31) as being owned by

21

22   [8] Harmony Gold's clear disavowal of derivative rights in the 2003 amendment directly contradicts
     Harmony Gold's allegation in the Amended Complaint that it "has the exclusive right to…make
23   <u>*derivative works*</u> of the Robotech warrior robots in the United States." Dkt. 31 at ¶ 16. Similarly,
     its statement in Count I that "Harmony Gold owns the copyrights to numerous Robotech warrior
24   robots, including those identified above" (*id.* at ¶ 36) is inconsistent with Big West's copyright
     registration, Big West's judgment in Japan, and Harmony Gold's express acknowledgement in the
25   2003 amendment to its license agreement.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 6

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Harmony Gold.  On August 23, 2017, in response to a Petition to Confirm Arbitration Award *filed by Harmony Gold* (*see id.*, Ex. 3 at 2 of the District Court's Amended Judgment), the U.S. District Court for the Central District of California entered its Amended Judgment confirming that the Arbitration Award is now a Judgment of that District Court. *Harmony Gold, USA, Inc. v. Tatsunoko Production Co., Ltd.*, Case No. 2:17-cv-06034-PA-MRW, at 2 (C.D. Cal. Aug. 23, 2017).

F.    **Harmony Gold Has Repeatedly Claimed that the Accused Images Are Derivative Works**

There is no doubt that the **only** rights that Harmony Gold claims in this litigation are rights to create "derivative works," the very rights it expressly acknowledged it was **not** granted by Tatsunoko. As shown above, Tatsunoko and Harmony Gold amended their license agreement in 2003 to make it clear that Tatsunoko was "not granting [Harmony Gold] any rights to create **derivative works** using the original 41 characters as contained in the Series." *Id*., Ex. 7 (emphasis added).  Despite this clear language, the Amended Complaint contains side-by-side comparisons of various Big West Characters and the Accused Images.  *See, e.g.*, Dkt. 31 at ¶¶ 23 and 28.  The Amended Complaint repeatedly alleges that the Accused Images are **"derivative"** of the Big West Characters.  *See id.* at ¶¶ 19-21, 37 and 43-44.

The Amended Complaint claims that Harmony Gold learned of the alleged infringement when it determined that one of Piranha's designs was "**derivative** of its copyrighted Destroid Tomahawk warrior robot" and another design was "**derivative** of Harmony Gold's copyrighted Zentradei OBP warrior robot …." *Id.* at ¶¶ 19-21 (emphasis added).  The Amended Complaint alleges in Count I that:

> Defendants have infringed Harmony Gold's copyrights to these warrior robots through their unauthorized copying, distribution and display of warrior robots that are substantially similar to those owned by Harmony Gold, and that are **derivative** of the copyrighted Robotech warrior robots owned by Harmony Gold.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 7

**DORSEY & WHITNEY** LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1   *Id.* at ¶ 37 (emphasis added).

2        Harmony Gold's assertion of "derivative works" rights is consistent with its pre-litigation

3   correspondence. Before filing this lawsuit, Harmony Gold also claimed that the Accused Images

4   are "derivative" works.  On or about October 3, 2016, Harmony Gold's counsel sent a cease-and-

5   desist letter to Piranha. Meyer Decl. at ¶ 10, Ex. 9.  Attached as "Exhibit A" to that letter were

6   copies of earlier emails which accused Piranha Games of creating robots that were "derivative" of

7   the *Macross* characters. *Id.*  Further, in his July 20, 2016 email to Piranha's President and CEO,

8   Harmony Gold's counsel quoted from a 2013 letter in which he stated:

9
10       The people at HG find the "new design" is very **derivative** of the
         MACROSS/ROBOTECH designs.  Please bear in mind that under U.S. copyright
11       laws the owner of a copyright has the exclusive right to produce **derivative** works
         …. [T]he new work is **derivative**, and its publication would be an infringement of
12       the copyright Harmony Gold owns in the design.

13  *Id.*, Ex. 9 (emphasis added).  Harmony Gold's counsel made no mention in either its Complaint,

14  its Amended Complaint, or its pre-litigation correspondence of the 2003 amendment where

15  Harmony Gold "expressly acknowledge[d] that Licensor is not granting Licensee any rights to

16  create derivative works using the original 41 characters as contained in the Series."  *Id.*, Ex. 7.

17       Referring to one of the presently Accused Images, Harmony Gold's counsel stated that

18  Piranha's Warhammer design is "**derived** from the Destroid Tomahawk in Robotech/Macross."

19  *Id.*, Ex. 9 (emphasis added).  He also asserted:

20  • "Your 'MechWarrior Archer' is clearly **derived** from Robotech's Destroid Spartan";

21  • "Your 'MechWarrior Rifleman' is clearly **derived** from Robotech's Destroid Defender";

22  • "Your 'MechWarrior Marauder' is **derived** from Robotech's Glaug Battlepod"; and

23  • "Your 'MechWarrior Phoenix Hawk' is **derived** from a Veritech from Robotech"

24  *Id.*, Ex. 9 (emphasis added).

25

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 8

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### III.    ARGUMENT

As explained above, the undisputed evidence establishes that Harmony Gold lacks standing to assert its copyright infringement claim on several different grounds.  First, Harmony Gold simply does not own the U.S. copyrights to the Big West Characters and does not have an exclusive license to create derivative works using those characters. Its copyright registration[9] is for a "MOTION PICTURE" (Meyer Decl., Ex. 8), not for the Big West Characters which are registered to Big West.  Second, the license agreement between Tatsunoko and Harmony Gold, which is the source of whatever copyrights Harmony Gold has in the *Macross* Motion Picture, specifically excluded the right to create derivative works of the Big West Characters. Thus, while Harmony Gold may have certain rights to the animated films identified in the Amended Complaint, Harmony Gold does not have "any rights to create derivative works using the original 41 characters" (Meyer Decl.*,* Ex. 7), and it cannot prevent others from doing so. Third, the recent federal court Judgment confirmed that the 2003 amendment to the license agreement is valid and binding. *Id.,* Ex. 3.  The scope and validity of Harmony Gold's license has already been fully litigated between Harmony Gold and Tatsunoko, with Harmony Gold even petitioning for the District Court to confirm the Arbitration Award as its Judgment.  There is no reason to re-litigate that issue in this case.

### A.    The Legal Standard for a Motion for Summary Judgment

"Summary judgment is appropriate if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014) (affirming grant of summary judgment), *quoting* Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (reversing court

---

[9] See footnote 2, *supra*.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 9

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    of appeals reversal of district court's grant of summary judgment).

2    **B.    Harmony Gold Lacks Standing Because It Is Not the Owner or Exclusive**
3    **Licensee of the Asserted Copyright**

4    **1.    Only the Legal or Beneficial Owner of an Exclusive Right Under a**
     **Copyright Can Sue for Infringement**

5    "Copyright is wholly a 'creature of statute, and the only rights that exist under copyright
6    law are those granted by statute.'" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143-
7    44 (9th Cir. 2008) (affirming dismissal for lack of standing), *quoting Silvers v. Sony Pictures*
8    *Entm't*, 402 F.3d 881, 883-84 (9th Cir. 2005) (reversing denial of motion to dismiss for lack of
9    standing); *see also Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) (affirming
10   dismissal of two copyright infringement suits for lack of standing), *citing* 17 U.S.C. § 106.  The
11   Copyright Act recognizes the exclusive rights that can provide standing to sue for infringement.
12   One of those rights is the right "to prepare derivative works based upon the copyrighted work." 17
13   U.S.C. § 106(2).  This is the right that Harmony Gold claims, but lacks, as shown by the 2003
14   amendment to Harmony Gold's license agreement.

15   Each of the various exclusive rights to a copyrighted work can be parceled out to different
16   entities.  The Copyright Act states:

17   (1) The ownership of a copyright may be transferred in whole or in part by any
18   means of conveyance or by operation of law….

19   (2) Any of the exclusive rights comprised in a copyright, including any subdivision
20   of any of the rights specified by [17 U.S.C.] section 106 may be transferred as
     provided by clause (1) and owned separately.  The owner of any particular
21   exclusive right is entitled, to the extent of that right, to all of the protection and
     remedies accorded to the copyright owner by this title.

22   17 U.S.C. § 201(d).

23   Only the "legal or beneficial owner of an **exclusive** right under a copyright is entitled …
24   to institute an action for any infringement of that particular right committed while he or she is the
25   owner of it." 17 U.S.C. § 501(b) (emphasis added).  An exclusive licensee can sue to protect a

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 10

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    particular right that it has been granted, but it cannot sue for infringement of rights outside of its

2    exclusive license. *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 1002 (C.D.

3    Cal. 2015) (exclusive licensee of piano arrangement for the song Happy Birthday was not

4    exclusive licensee of lyrics so could not sue for infringement of Happy Birthday lyrics).  One who

5    is not the owner or exclusive licensee of a particular right has no standing to sue others for

6    infringement of that right. *See Sybersound*, 517 F.3d at 1146; *Righthaven*, 716 F.3d at 1169 ("only

7    the legal or beneficial owner of an exclusive right under a copyright has standing to sue for

8    infringement of **that right**") (citations and internal quotation marks omitted) (emphasis added).

                    **2.    Harmony Gold Does Not Own the Copyrights to the Big West
9                            Characters It Claims Have Been Infringed**

10

11           To prove copyright infringement, Harmony Gold has the burden of proving both ownership

12   of a valid copyright and infringement of that copyright by the alleged infringer. *See North Coast*

13   *Indus. v. Maxwell*, 972 F.2d 1031, 1033 (9th Cir. 1992). However, Harmony Gold cannot prove

14   that it owns the copyrights to the asserted Big West Characters because those characters are owned,

15   and registered with the U.S. Copyright Office, by Big West. Meyer Decl., Exs. 4-5. While the

16   Court has discretion to determine what evidentiary weight should be given to a copyright

17   registration that was filed five years after the date of publication, a copyright registration may

18   "constitute prima facie evidence of the validity of the copyright and of the facts stated in the

19   certificate" (*e.g.*, ownership) in light of the circumstances and other evidence. 17 U.S.C. § 410(c);

20   *see also CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143-44 (E.D.N.Y. 2011)

21   (concluding that two certificates filed more than five years after publication were considered *prima*

22   *facie* evidence of a valid copyright); *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*,

23   589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008) (certificates of registration issued more than five years

24   after publication were *prima facie* evidence of valid copyrights because no evidence suggesting

25   invalidity was offered) (*vacated on other grounds*). To refute *prima facie* evidence of copyright

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 11

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

validity, Harmony Gold must provide "some evidence or proof to dispute or deny the" validity of the copyright. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217-18 (9th Cir. 1997).

Piranha is unaware of any evidence that would prove that someone other than Big West owns the copyrights to the Big West Characters. In fact, the opposite is true. Big West's registration is consistent with the findings and conclusions in the Japanese lawsuits (Meyer Decl., Exs. 1-2), the federal court Judgment (*id.*, Ex. 3), the *Macross: Perfect Memory Book* (*id.*, Ex. 6; *see also* footnote 7, *supra*), and the 2003 amendment to the license agreement between Tatsunoko and Harmony Gold (*id.,* Ex. 7). Big West's registration should be considered *prima facie* evidence that Big West's copyright registration and the facts stated therein are valid (*see* 17 U.S.C. § 410(c)), which places the burden on Harmony Gold to rebut Big West's claim of ownership.

The subject matter of Big West's copyright registration and other works registered to Big West clearly corresponds to the images and characters that Harmony Gold claims are infringed. Compare Dkt. 31 at ¶¶ 23-28 to Meyer Decl.*,* Exs. 5-6. Multiple pieces of evidence confirm that Big West is the copyright owner of the Big West Characters. Meyer Decl., Exs. 1-6. Since Harmony Gold does not own the copyrights to the Big West Characters, it has no standing to assert that any of those characters have been infringed.

   **3.    Harmony Gold's License Excludes the Right to Create Derivative Works of the Big West Characters**

The Amended Complaint alleges that Piranha has infringed by "unauthorized copying, distribution and display of warrior robots that are substantially similar to those owned by Harmony Gold, **and that are derivative** of the copyrighted Robotech warrior robots owned by Harmony Gold." Dkt. 31 at ¶ 37 (emphasis added). This allegation is consistent with the pre-filing claims made by Harmony Gold's counsel that Piranha's robot warriors are "derivative" works. *See* Meyer Decl., Ex. 9. Accordingly, the only theory of copyright infringement in the case is that Harmony

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 12

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1  Gold alleges that Piranha has created infringing derivative works of the Big West Characters

2  shown at ¶¶ 23 and 28 of the Amended Complaint.

3       Harmony Gold admits that Tatsunoko is the only source of whatever copyrights it has in

4  the *Macross* Motion Picture. Dkt. 31 at ¶¶ 12-13. Since Tatsunoko and Harmony Gold have

5  explicitly acknowledged that Tatsunoko did not give Harmony Gold the right to create derivative

6  works of the Big West Characters (*see* Meyer Decl., Ex. 7), Harmony Gold cannot be an exclusive

7  licensee of those rights. Therefore, Harmony Gold lacks standing to sue Piranha for its alleged

8  creation of derivative works of the Big West Characters.

9       **4.**      **Harmony Gold's Copyright Registration Does Not Give It Any Rights**

10                   **in the Big West Characters**

11       Harmony Gold filed a U.S. Copyright Registration for the 36-Episode "Motion Picture"

12  entitled *Macross*. *Id.*, Ex. 8. That registration does not give Harmony Gold any rights in any

13  "preexisting material," such as the Big West Characters. The "copyright in a compilation or

14  derivative work extends only to the material contributed by the author of such work, as

15  distinguished from the preexisting material employed in the work, **and does not imply any**

16  **exclusive right in the preexisting material**." 17 U.S.C. § 103(b) (emphasis added). In fact, "[t]he

17  copyright in such work is independent of, and does not affect or enlarge the scope, duration,

18  ownership, or subsistence of, any copyright protection in the **preexisting material**." *Id.* (emphasis

19  added). Accordingly, owning the copyright to a compilation or derivative work (like a motion

20  picture) does not confer any rights to preexisting elements (*e.g.*, preexisting songs, characters,

21  books, etc.).[10]

22       Harmony Gold's copyright registration is to an animated film series. Meyer Decl., Ex. 8.

23  It is identified as a "MOTION PICTURE" and a "COMPILATION OR DERIVATIVE WORK."

24  ────────────────

25  [10] Harmony Gold has asserted eight copyright registrations, but only one is relevant. See footnote 2, *supra*.

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 13

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Id.* Whatever rights Harmony Gold may have in this motion picture, it is not the exclusive owner of the copyrights in the preexisting Big West Characters. Those rights are owned by Big West (*id.*, Exs. 4-6), and were expressly excluded from Harmony Gold's license. *Id.*, Ex. 7. Harmony Gold's copyright registration for the *Macross* Motion Picture does not permit it to assert rights in preexisting material that were never licensed to Harmony Gold. *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) ("Thus, we reaffirm, without finding it necessary to repeat the rationale, the well-established doctrine that a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work"). Harmony Gold may own certain rights in the *Macross* Motion Picture, but it does not have the exclusive right to create derivative works of the Big West Characters. Therefore, it has no standing to sue Piranha for allegedly creating derivative works of those characters.

### C.    Collateral Estoppel Precludes Harmony Gold from Re-Litigating the Issue of Whether the 2003 Amendment Is Valid

The scope and validity of the copyrights assigned to Harmony Gold were litigated not only in Japan, but also in the 2017 arbitration between Harmony Gold and Tatsunoko. Meyer Decl., Ex. 3. On August 23, 2017, the U.S. District Court for the Central District of California confirmed the Arbitration Award. *Id.* By statute, the Arbitration Award is now a Judgment of the District Court in all respects. 9 U.S.C. § 13(c) ("The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.").

The arbitrator, as affirmed by the federal District Court, concluded that the 2003 amendment to the license agreement expressly excluded rights to create derivative works of the Big West Characters. Meyer Decl., Ex. 3 at 10, 18. The arbitrator recognized that Tatsunoko itself did not have, and could not grant, the rights that Harmony Gold is trying to enforce in the present

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 14

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    action when it noted that Tatsunoko's license to Harmony Gold purporting to grant those rights

2    was defective. *Id.*, Ex. 3 at 6-7 (the Japanese court decisions "left [Tatsunoko] in breach of its

3    representations and warranties to Claimant [Harmony Gold] in the Operative Agreements (as to

4    the visual depictions of the 41 characters) wherein it had represented that the rights granted would

5    not infringe in any way upon the rights of third parties."). The arbitrator ruled that the 2003

6    amendment is binding on the parties. *Id.*, Ex. 3 at 18. Harmony Gold petitioned the District Court

7    to confirm the Arbitration Award, and the District Court did so. *Id.*, Ex. 3 at 2 of the District

8    Court's Amended Judgment.  Having litigated this issue and having received a favorable outcome

9    (Harmony Gold petitioned for confirmation because it was the "predominantly prevailing party"

10    and received substantial damages, including legal fees, from Tatsunoko) (*id.*, Ex. 3 at 20-21), it

11    should not now be allowed to re-litigate that federal court Judgment.

### 1.    The Elements of Collateral Estoppel

13    "Federal law governs the collateral estoppel effect of a case decided by a federal court."

14    *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996).  "Under collateral estoppel, once a court has

15    decided an issue of fact or law necessary to its judgment, that decision may preclude litigation of

16    the issue in a suit on a different cause of action involving a party to the first case." *Allen v.*

17    *McCurry*, 449 U.S. 90, 94 (1980).  There are three requirements for collateral estoppel to apply:

18    
19    
20    
> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

21    *Town of N. Bonneville v. Callaway,* 10 F.3d 1505, 1508 (9th Cir. 1993).  When these requirements

22    are met as to a particular issue, that issue cannot be re-litigated. The requirements are met here.

23    An arbitration award that has been confirmed by a federal court can have a preclusive effect

24    in subsequent litigation. *See, e.g., C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th

25    Cir. 1987) (affirming application of collateral estoppel).  To determine whether to apply collateral

---

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 15

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    estoppel based on an arbitration award, the Court must examine the record, including the findings

2    of the arbitrator. *See, e.g.*, *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1950)

3    (holding that collateral estoppel applied). The Court must also determine whether a rational

4    factfinder could have based its conclusion upon an issue other than the issue to be precluded. *Ashe*

5    *v. Swenson*, 397 U.S. 436, 444 (1970) (holding that collateral estoppel applied). If the Court finds

6    that the previous factfinder's conclusion was based on the issue to be precluded, that issue is

7    foreclosed from further litigation. *Id.*

8        A party may prove that collateral estoppel applies to a particular issue by pointing to an

9    arbitrator's specific findings of fact and conclusions of law. *Clark v. Bear Stearns & Co.*, 966 F.2d

10   1318, 1322 n.4 (9th Cir. 1992). In *Clark*, the record failed to "show with clarity and certainty what

11   issues were determined in the arbitration ...." *Id.*, 966 F.2d at 1322. Importantly, the Ninth Circuit

12   held that "[s]uch a result could have been avoided if the arbitration panel had made specific

13   findings of fact and conclusions of law similar to those required of the district court under Fed. R.

14   Civ. P. 52(a)." *Id.* at 1322 n.4. In the present case, the arbitrator (and therefore the federal District

15   Court under 9 U.S.C. § 13(c)) clearly stated what issues were being decided, and made detailed

16   findings of fact and conclusions of law.

17       Under Fed. R. Civ. P. 52(a), a court "should state separately its findings of fact and

18   conclusions of law without commingling them, **but any error in this respect is unimportant if**

19   **the ruling of the [factfinder] is clearly understandable**." 9C Wright & Miller, Federal Practice

20   & Procedure, § 2579 (3d ed. 2008) (emphasis added). Findings of fact and conclusions of law

21   need not be labeled as such to provide sufficient clarity and certainty:

22       The fact that the district court intermingled some of its findings of fact with its
         conclusions of law is of no significance. We look at a finding or a conclusion in its
23       true light, regardless of the label that the district court may have placed on it. 9
         Wright & Miller, Federal Practice & Procedure, § 2579; *Gulf King Shrimp Co. v.*
24       *Wirtz*, 407 F.2d 508, 515 (C.A.5 1969); *Featherstone v. Barash*, 345 F.2d 246, 251
         (C.A.10 1965); *Benrose Fabrics Corp. v. Rosenstein*, 183 F.2d 355 (C.A.7
25       1950). In other words, the findings are sufficient if they permit a clear

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 16

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

understanding of the basis for the decision of the trial court, irrespective of their mere form or arrangement.

*Tri-Tron Intern. v. Velto*, 525 F.2d 432, 435-36 (9th Cir. 1975).

### 2. Harmony Gold Is Collaterally Estopped from Re-Litigating the Validity of the 2003 Amendment

The threshold issue for standing and subject matter jurisdiction in this case is whether the 2003 amendment is a binding agreement that limits the scope of Harmony Gold's alleged copyrights in the Big West Characters. This exact issue was decided in the arbitration between Harmony Gold and Tatsunoko which resulted in the federal court Judgment. Meyer Decl., Ex. 3.

The parties to the arbitration litigated issues relating to the validity and scope of the license agreement and its amendments. The 2003 amendment was a critical component of that litigation, because it allegedly restored certain rights that Harmony Gold had previously given up. Tatsunoko attempted to prove that the 2003 amendment was not valid, which would have greatly limited the rights licensed to Harmony Gold in the *Macross* Motion Picture. *Id.*, Ex. 3 at 9-10. The arbitrator found that the 2003 amendment is "valid and binding" and gave Harmony Gold the right to make derivative works from the *Macross* Motion Picture "except for the visual depiction of the original 41 animated characters [Big West Characters] ...." *Id.*, Ex. 3 at 18.

The arbitrator did not label his rulings as findings of fact or conclusions of law, but he did make them in his detailed, 21-page Arbitration Award. *Id.* Those findings and conclusions permit a clear understanding of the basis for the federal court Judgment. After describing the 2003 amendment, the Judgment states: "the validity of this agreement is contested by Respondent [Tatsunoko]." *Id.*, Ex. 3 at 2. The arbitrator analyzed the evidence, and found that Koki Narushima had "authority" to sign the amendment on behalf of Tatsunoko, and that his signature was "not forged." *Id.*, Ex. 3 at 9-10. Accordingly, the arbitrator found that Tatsunoko had failed to prove that the 2003 amendment was the result of "fraud." *Id.*, Ex. 3 at 10. The arbitrator concluded that

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 17

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    the 2003 amendment is "valid and binding." *Id.*, Ex. 3 at 18.  Because the validity of the 2003

2    amendment was contested and resolved during the arbitration, the arbitrator's determination of

3    that issue was a "critical and necessary part of the judgment in the earlier action." *Town of N.*

4    *Bonneville*, 10 F.3d at 1508.

5          Determining the scope of the rights granted by the 2003 amendment was also critical and

6    necessary to the Judgment, because Tatsunoko claimed that Harmony Gold did not have the right

7    to create "live action" derivatives of the licensed works.  Meyer Decl., Ex. 3 at 7, 18.  The arbitrator

8    made the following findings and conclusions regarding the scope of the rights granted by the

9    amendment:

10         Thus, pursuant to the [2003 amendment] Respondent [Tatsunoko] granted to
           Claimant [Harmony Gold] all its remaining rights in *Macross*, including derivative
11         and sequel rights **but naturally excluding any right to create derivative works
           using the 41 original character[s] [Big West Characters] from [the] *Macross***
12         ***program which now belonged to Big West.***  The seeming inexactitude [of the]
           language regarding the original 41 characters may have been in artfully [sic] drawn,
13         but was intended to track the decision in the Big West litigation so that Licensor
           was giving up everything it owned.
14

15    *See, e.g.*, *id.*, Ex. 3 at 10 (emphasis added).

16         Finally, in his Arbitration Award of declaratory and other relief, the arbitrator ruled that

17    the 2003 amendment is "valid and binding" and that Harmony Gold "has been granted therein all

18    of Respondent [Tatsunoko's] copyright rights in *Macross,* except for the visual depiction of the

19    original 41 animated graphic characters [Big West Characters] …." *Id.*, Ex. 3 at 18.  Thus, based

20    on the claims and defenses asserted by the parties, and the arbitrator's review of the evidence, the

21    arbitrator necessarily decided that Harmony Gold does **not** have the right to create derivative works

22    of the Big West Characters.

23         All of the required elements for collateral estoppel are present here.  First, the issue at stake

24    in the instant case (the validity and scope of the 2003 amendment) is identical to the one decided

25    in the prior litigation as described above.  Second, that issue was actually litigated by the party

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 18

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1    (Harmony Gold) against whom preclusion is asserted.  And third, the determination of the issue in

2    the prior litigation was a critical and necessary part of the judgment in the earlier action because

3    the 2003 amendment determined the copyrights that had been restored to Harmony Gold as well

4    as the limits on those rights.  *See Town of N. Bonneville*, 10 F.3d at 1508. Therefore, Harmony

5    Gold is precluded from re-litigating this issue. Because it has no derivative works rights in the Big

6    West Characters, it has no standing to assert its copyright infringement claim.

## IV.    CONCLUSION

8        There is no dispute of material fact concerning Harmony Gold's lack of standing. The

9    evidence shows that Harmony Gold is not the owner of the copyrights in question. Those

10   copyrights are owned by Big West. Harmony Gold's license agreement expressly excludes the

11   rights that Harmony Gold seeks to enforce in this case.  The issue of what copyrights were assigned

12   to Harmony Gold was recently litigated. The federal court Judgment shows that Harmony Gold

13   does not have a license to the copyrights it seeks to enforce.  For the foregoing reasons, Piranha

14   respectfully requests that this Court dismiss Harmony Gold's copyright infringement claim (Count

15   I) on summary judgment, because Harmony Gold lacks standing to assert that claim, and enter

16   judgment in favor of Piranha in this case.

17       Respectfully submitted this 13th day of November, 2017

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 19

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

2          DORSEY & WHITNEY LLP

3          */s/ Ryan B. Meyer*
           Paul T. Meiklejohn, WSBA No. 17477
4          J. Michael Keyes, WSBA No. 29215
           Todd S. Fairchild, WSBA No. 17654
5          Ryan B. Meyer, WSBA No. 37832
           701 Fifth Avenue, Suite 6100
6          Seattle, WA 98104
           Phone: (206) 903-8800
7          Fax: (206) 903-8820

8
           *Attorneys for Defendant Piranha Games Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

## CERTIFICATE OF SERVICE

2

   I hereby certify that true and correct copies of (1) PIRANHA'S MOTION FOR

3

SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT

4

COPYRIGHT INFRINGEMENT CLAIM; (2) DECLARATION OF RYAN B. MEYER IN

5

SUPPORT OF PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S

6

LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM; and (3)

7

8

[PROPOSED] ORDER GRANTING PIRANHA'S MOTION FOR SUMMARY JUDGMENT

9

AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT

10

CLAIM were served on the following parties, by the method(s) indicated below, on November

11

13, 2017.

12

13

14

15

Damon C. Elder, WSBA #46754
damone@calfoeakes.com
Andrew R.W. Hughes, WSBA #49515
andrewh@calfoeakes.com
CALFO EAKES & OSTROVSKY PLLC
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808

☒ Via ECF
☐ Via Hand Delivery
☐ Via Overnight Courier
☐ Via Facsimile
☐ Via Electronic Mail

16

17

18

Jessica Stebbins Bina (admitted *pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., 3rd Floor
Los Angeles, CA 90067

19

20

*Attorneys for Plaintiff Harmony Gold U.S.A., Inc.*

21

22

23

24

25

Warren J. Rheaume, WSBA No. 13627
warrenrheaume@dwt.com
James H. Corning, WSBA No. 45177
jamescorning@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 757-8265
Fax: (206) 757-7265

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 21

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Attorneys for Defendants Harebrained
Schemes LLC, Harebrained Holdings, Inc.,
and Jordan Weisman*

*/s/ Ryan B. Meyer*
Ryan B. Meyer

PIRANHA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK
OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 22

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820