THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARMONY GOLD U.S.A., INC., <br><br> Plaintiff, <br><br> v. <br><br> HAREBRAINED SCHEMES LLC, HAREBRAINED HOLDINGS, INC., JORDAN WEISMAN, PIRANHA GAMES INC., INMEDIARES PRODUCTIONS, LLC, and DOES 1–10, <br><br> Defendants. | CASE NO.  2:17-cv-00327-TSZ <br><br> **PLAINTIFF HARMONY GOLD U.S.A., INC. OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> **REDACTED** <br><br> **NOTE ON MOTION CALENDAR: DECEMBER 15, 2017** <br><br> **ORAL ARGUMENT REQUESTED** |

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - i

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION. ...................................................................................................1

II.     SUMMARY JUDGMENT STANDARD. ...........................................................3

III.    RELEVANT FACTS. ...........................................................................................4

        A.      Harmony Gold's Original License Agreement. .......................................4

        B.      The Big West/Tatsunoko Dispute. ..........................................................6

        C.      The 2003 Amendment. .............................................................................8

        D.      Skirmishes With Big West, Followed By Peace. ....................................9

        E.      The Tatsunoko/Harmony Gold Arbitration. ..........................................11

IV.     ARGUMENT. .....................................................................................................13

        A.      Harmony Gold's Copyright And License Agreement Establish Its Standing. ......14

        B.      Defendants Have Not Established That The 2002 Japanese Court Decision Or The 2003 Amendment Terminated Harmony Gold's Rights To The Characters. ........17

        C.      Defendants' Derivative Works Argument Is Contrary To Law And Fact. ...........19

        D.      The Arbitration Award Is Inapposite And Has No Preclusive Effect. ..................21

        E.      In the Alternative, The Court Should Deny The Motion Pursuant to Rule 56(d). 23

V.      CONCLUSION ..................................................................................................24

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - ii

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Allen v. McCurry*,
    449 U.S. 90 (1980)...........................................................................................................22

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................................3

*Ashe v. Swenson*,
    397 U.S. 436 (1970)...........................................................................................................22

*Atigeo LLC v. Offshore Ltd. D*,
    No. C13-1694, 2014 U.S. Dist. LEXIS 53206 (W.D. Wash. Apr. 16, 2014)...........................24

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*,
    323 F.3d 767 (9th Cir. 2003) ...........................................................................................24

*C.D. Anderson & Co., Inc. v. Lemos*,
    832 F.2d 1097 (9th Cir. 1987) ...........................................................................................22

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................................4

*CJ Prods. LLC v. Snuggly Plushez LLC*,
    809 F. Supp. 2d 127 (E.D.N.Y. 2011)...............................................................................18

*Clark v. Bear Stearns & Co.*,
    966 F.2d 1318 (9th Cir. 1992) ...........................................................................................22

*Commer. Cleaning Servs. v. Colin Serv. Sys.*,
    271 F.3d 374 (2d Cir. 2001) ...........................................................................................24

*DC Comics v. Towle*,
    989 F. Supp. 2d 948 (C.D. Cal. 2013), *aff'm* 802 F.3d 1012 (9th Cir. 2015) ...........................20

*Emich Motors Corp. v. General Motors Corp.*,
    340 U.S. 558 (1951)...........................................................................................................22

*Halicki Films, LLC v. Sanderson Sales and Mktg.*,
    547 F.3d 1213 (9th Cir. 2008) ...........................................................................................20

*Harmony Gold U.S.A., Inc. v. FASA Corp. et al.*,
    No. 95-cv-2972, 1996 WL 332689 (N.D. Ill. June 13, 1996) ...............................................5, 16

*In re JPMorgan Chase Derivative Litig.*,
    No. 2:13-cv-02414, 2017 WL 2833402 (E.D. Cal. June 30, 2017).........................................21

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................................14

*Marya v. Warner/Chappell Music, Inc.*,
    131 F. Supp. 3d 975 (C.D. Cal. 2015)........................................................................20

*May Dep't Store v. Graphic Process Co.*,
    637 F.2d 1211, 1214 (9th Cir. 1980)...........................................................................3

*Metro-Goldwyn-Mayer, Inc. v Am. Honda Motor Corp.*,
    900 F. Supp. 1287 (C.D. Cal. 1995)...........................................................................17

*Michael Grecco Photography, Inc. v. Everett Collection, Inc.*,
    589 F. Supp. 2d 375 (S.D.N.Y. 2008).........................................................................19

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
    795 F.3d 997 (9th Cir. 2015) ...............................................................................13, 20

*Murphy v. Best Buy Stores, L.P.*,
    690 F. App'x 553 (9th Cir. 2017) ...............................................................................14

*New Line Cinema Corp. v. Bertlesman Music Grp.*,
    693 F. Supp. 1517 (S.D.N.Y. 1988)............................................................................17

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*,
    929 F. Supp. 2d 296 (S.D.N.Y. 2013).................................................................15, 16

*Righthaven LLC v. Hoehn*,
    716 F.3d 1166, 1169 (9th Cir. 2013)..........................................................................20

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ...................................................................................13

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ...................................................................................20

*Taco Bell Corp. v. TBWA Chiat/Day Inc.*,
    552 F.3d 1137 (9th Cir. 2009) .............................................................................21, 22

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..............................................................................................21, 22

*Town of North Bonneville v. Callaway*,
    10 F.3d 1505 (9th Cir. 1993) .....................................................................................22

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) .......................................................................................22

*United Fabrics Intern., Inc. v. C&J Wear, Inc.*,
    630 F.3d 1255 (9th Cir. 2011) ...................................................................................14

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962)......................................................................................................3

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - iv

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

*Vandenberg v. Superior Court*,
   21 Cal. 4th 815 (Cal. 1999) ...........................................................................................22

*Walt Disney Prods. v. Air Pirates*,
   581 F.2d 751 (9th Cir. 1978) .........................................................................................17

**Statutes**

17 U.S.C. § 103.................................................................................................................17

17 U.S.C. § 103(b) ...........................................................................................................17

17 U.S.C. § 106.................................................................................................................20

17 U.S.C. § 201(d)(2)........................................................................................................17

17 U.S.C. § 410(c) ................................................................................................. 13, 16, 18

**Rules**

Fed. R. Civ. P. 56(a)...........................................................................................................4

Fed. R. Civ. P. 56(d) ..................................................................................................23, 24

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

## I.   INTRODUCTION.

Defendants' challenge to Harmony Gold's standing in this case is extraordinary.  Not only has Harmony Gold held the U.S. copyright in and to "Macross" and its characters since 1985, it has an express, exclusive license to the same.  Defendants have no license to the characters from anyone, including the persons they claim actually own the characters.  Instead, defendants seek to avoid Harmony Gold's lawful claim for copyright infringement by collaterally attacking Harmony Gold's license to the work and accordingly its standing to bring this action.  Defendants' attack is backed neither by the facts nor by the law, and defendants wholly fail to meet their burden to establish that there are no triable issues of fact as to Harmony Gold's standing.  Defendants' motion should be rejected.

At issue in this case are certain animated warrior robot character images (the "Characters")[1] initially published in connection with the Japanese animated television series, "The Super Dimension Fortress Macross" ("Macross"), and first published in the United States by Harmony Gold in its 1985 animated television program, "Robotech."  Since 1984, Harmony Gold has held an exclusive license to exploit, reproduce, distribute, display, and merchandize the Characters in the United States.  Harmony Gold's license agreement is with the Japanese copyright holder of the "Macross" series, Tatsunoko Production Co. Ltd. ("Tatsunoko").

Defendants do not dispute that Harmony Gold has a facially valid exclusive license to the Characters from Tatsunoko.  Indeed, they could not.  Harmony Gold's express license not only grants it extensive rights to exploit the "Macross" series, but also, *inter alia*, grants express rights to the series' "characters," "animation," "artwork," and "all other components," Duran Decl. Ex.

---

[1] Defendants label these "Big West Characters."  As explained below, this is inaccurate.  Rather, in Japan, Big West owns the images of the characters, while Tatsunoko owns their names and storylines.  Dkts. 48-1, 48-3; Bina Decl. Ex. B.  Internationally, however, Tatsunoko exclusively owns the right to license the Characters (images, names, and storylines) to third parties, and has exclusively licensed the rights to reproduce, display, distribute, and merchandize those Characters, and to make derivative works based on their names and storylines (though not their images), to Harmony Gold.  Duran Decl. Ex. A; Bina Decl. Exs. A, B; Dkt. 48-3.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 1

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

B ¶ 5, Ex. D ¶ 5, as well as "merchandising rights." *Id.* Ex. B ¶ 6, Ex. D ¶ 5. Nor do defendants dispute that Harmony Gold has held, since 1985, a copyright registration in the "Entire Work" of "Macross," including the animation, story, and soundtrack, in all 36 episodes of the series (PAu 740,323). Duran Decl., Ex. C. And defendants do not dispute that Harmony Gold has exploited the Characters in toys, games, books, video games, and all other kinds of merchandise, as well as in movies and television, for the past 30 years, Duran Decl. ¶¶ 15-16 & Ex. K, or that Harmony Gold has vigorously enforced these rights against infringement, *Id.* ¶¶ 12, 17-20 & Exs. I, L–P.

Instead, defendants attempt to collaterally attack Harmony Gold's license and copyright in two ways. First, defendants claim that a 2002 Japanese court decision conclusively eliminated Tatsunoko's entire interest in the Characters, and thus voided Harmony Gold's license from Tatsunoko to the same. This is simply wrong. The 2002 Japanese court decision, part of an eight-year series of Japanese court cases between Tatsunoko and Big West and Studio Nue, addressed the rights of the parties in *Japan only*. It did not eliminate Tatsunoko's exclusive right to exploit and license the Characters internationally, which was based on a separate contract among Tatsunoko, Big West, and Studio Nue, and thus did not eliminate Harmony Gold's license from Tatsunoko to do the same.

Second, defendants claim Harmony Gold acknowledged the supposed elimination of its rights to the Characters through an amendment to its own license agreement dated as of January 20, 2003 (the "2003 Amendment"), and that this restriction was further established by Harmony Gold's recent confidential arbitration against Tatsunoko, the result of which was confirmed by the Central District of California sitting in diversity (the "Arbitration Award"). Again, defendants are wrong. As a threshold matter, the Arbitration Award, decided under California law, has no issue preclusive effect, and thus cannot be used in the way defendants attempt to use it here. Furthermore, in the 2003 Amendment, Harmony Gold gave up only the right to make derivative motion pictures based on the Characters' images—the sole change that Tatsunoko

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 2

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

represented was necessitated by the multiple Japanese court decisions. Harmony Gold retained all other exclusive rights in and to the Characters, including the exclusive rights of reproduction, distribution, display, and merchandising—rights it has continued to exploit ever since.[2] Defendants have not come close to showing that Harmony Gold's license to the Characters is invalid—let alone that there are no disputed issues of material fact.

Furthermore, while defendants attempt to pigeonhole Harmony Gold and claim that it seeks *only* to prevent derivative works, Harmony Gold in fact seeks by this action to enforce its existing rights of reproduction, distribution, display, and merchandising. Harmony Gold's operative complaint alleges that defendants' works infringe these rights, Dkt. 31 ¶¶ 16, 23, 28, 37-38, and Harmony Gold has further filed a motion to amend to further clarify the rights it seeks to enforce, Dkt. 51 ¶¶ 10-14, 17-20. Defendants have wholly failed to show that Harmony Gold lacks standing to pursue its claims against defendants, and their motion must be denied.

## II.   SUMMARY JUDGMENT STANDARD.

Summary judgment "should not be granted unless the movant has established its right to judgment with such clarity as to leave no room for controversy." *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980). This Court must view the facts, and all reasonable inferences that may be drawn from them, in the light most favorable to Harmony Gold. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."). The Court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Defendants' motion must be denied unless defendants show "that there is no genuine dispute as to any material fact and the movant is

---

[2] Harmony Gold also retained the right, not at issue in this case, to make derivative works based on the names and storylines associated with the Characters. Dkt. 48-3 at 10, 18.

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 3

entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).  As the parties moving for summary judgment, defendants bear the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  They have not done so, and cannot do so, here.

## III.    RELEVANT FACTS.

Defendants' argument is based solely on their claim that Harmony Gold lacks standing to bring this suit.  Accordingly, defendants are entitled to summary judgment only if defendants conclusively demonstrate that Harmony Gold has no exclusive rights to the Characters that are or could be infringed by defendants' works, which are based on and closely resemble the Characters. *See* Dkt. 31 ¶¶ 15, 21, 23, 28, 33-34; Dkt. 51 ¶¶ 15, 25, 27, 32, 37-38.  Defendants fall far short of meeting this heavy burden.

### A.    Harmony Gold's Original License Agreement.

The Characters' images were originally created in or around 1982 through the work of three Japanese companies, Big West, Inc. ("Big West"), Studio Nue Co., Ltd. ("Studio Nue"), and Tatsunoko, and incorporated into the animated series, "Macross," that ran on Japanese television in the early 1980s.  Under a 1982 agreement (the "1982 Big West Agreement") by and among Tatsunoko, Big West, and Studio Nue, Tatsunoko holds the permanent, exclusive right to exploit, and to license others to exploit, the "Macross" series *and* the Characters outside Japan. *Id*.  Duran Decl. ¶ 3 & Ex. A ¶ 5, Art. 1 ¶ 1; Bina Decl. ¶¶ 2-3 & Exs. A, B.

In 1984, Tatsunoko exercised its rights as the exclusive international licensor of "Macross" and the Characters by entering into a license agreement with Harmony Gold.  In that Agreement (the "1984 Agreement"), Tatsunoko granted Harmony Gold both a joint copyright interest and an exclusive international license in and to three animated works, one of which was "Macross."  Duran Decl. Ex. B preamble, ¶ 5.  The 1984 Agreement was executed with the intent that Harmony Gold would create and exploit a new English-language television program,

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 4

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

"Robotech," utilizing the animation and other elements from all three programs. Agrama Decl. ¶ 3. In the 1984 Agreement, Tatsunoko warranted that the rights granted thereunder to Harmony Gold "do not and will not infringe upon the rights of any third party." Duran Decl. Ex. B ¶ 5.

As noted above, and contrary to defendants' claims, the 1984 Agreement between Tatsunoko and Harmony Gold not only granted Harmony Gold the right to exploit the "Macross" television series, but also granted, *inter alia*, express rights to "reproduce," "distribute," "display," "exercise merchandising rights," and "prepare derivative works based on" the series' "characters," "animation," "artwork," and "all other components." *Id.* Ex. B ¶¶ 5, 6.[3] The 1984 Agreement both authorized and obligated Harmony Gold to register appropriate copyrights to the granted works, and to "take necessary legal measures to protect [its] copyrights from infringement or copying by any third party[.]" *Id.* ¶ 5. Accordingly, Harmony Gold obtained, in 1985, a copyright registration in the "Entire Work" of "Macross," expressly including the animation, story, and soundtrack. Duran Decl., Ex. C. This included copyright in the animated Characters, which are part of the series' animation.[4]

Harmony Gold has held this copyright since that date, has registered numerous related copyrights, *see* Dkt. 31 ¶ 14 & Dkt. 1-1, and has exploited the Characters in a wide variety of forms. These include incorporation of the "Macross" animation, including the Characters, into a television series, "Robotech," which aired in 1985. Duran Decl. ¶ 16. They also include, pursuant to Harmony Gold's exclusive merchandizing rights, incorporating the Characters into toys, books, films, comic books, video games, and apparel. *Id.* ¶¶ 15-16 & Ex. K.

In 1991, Harmony Gold and Tatsunoko renewed their license agreement (the "1991

---

[3] Consistent with the exclusive grant of these rights, the agreement bars Tatsunoko from "any merchandising exploitation related to the underlying series in any of the territories licensed to [Harmony Gold] … at any time during the license period." Duran Decl. Ex. B ¶ 6.

[4] In 1996, a federal district court, in a case related to this one, expressly concluded that Harmony Gold's copyright includes the Characters. *See* Duran Decl. Ex. L, *Harmony Gold U.SA., Inc. v. FASA Corp.*, No. 95-cv-2972, 1996 WL 332689, at *2 ("Harmony Gold and Tatsunoko are joint owners of the copyrights to the Macross designs in the United States."). *See* Dkt. 51 ¶¶ 16-17 for a description of the prior litigation.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 5

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

Agreement"), using identical language regarding the broad grant of rights and regarding Tatsunoko's representations and warranties as to authority to grant those rights. *Id.* Ex. D ¶¶ 5, 6. As detailed further below, the 1991 Agreement, as amended and extended, remains in force between Tatsunoko and Harmony Gold through the present.

### B. The Big West/Tatsunoko Dispute.

Beginning in the early 1990s, Tatsunoko and Big West/Studio Nue began disputing their respective rights to "Macross" in Japan. These disputes involved, at a general level, whether Tatsunoko or Big West had the right to make animated sequels to "Macross" based on the original Characters, whether Tatsunoko or Big West owned the copyright in the "Macross" television series, and the compensation paid between and among Tatsunoko and Big West pursuant to their various agreements. Agrama Decl. ¶ 5; Dkt. 48-1; Bina Decl. Ex. B. The litigation between Tatsunoko and Big West lasted until approximately 2008, and involved multiple separate cases. *Harmony Gold was not a party to these disputes*, nor, to Harmony Gold's knowledge, did the disputes ever challenge Tatsunoko's license of the international "Macross" rights to Harmony Gold. Agrama Decl. ¶ 5; Duran Decl. ¶ 7.

Defendants in this case place great weight on a single decision from the earlier portion of the litigation, dated February 25, 2002 (the "2002 Japanese Decision"). In that decision, the Tokyo District Court held that the Japanese copyright in the initial graphic design for the Characters belonged to Big West and Studio Nue. Dkt. 48-1. Defendants claim the 2002 Japanese Decision means that Tatsunoko could not possibly have had the right to license those Characters to Harmony Gold, and that Harmony Gold's facially valid license is thus void.[5]

Contrary to defendants' claims, however, the 2002 Japanese Decision did *not* hold that Tatsunoko had no rights in and to the Characters at all. Rather, the decision addressed only the

---

[5] Defendants are not the first to make this argument. It was made—and rejected—in connection with a motion to dismiss filed by Sunwards Ltd., in connection with a 2002 infringement action filed by Harmony Gold. *See* Duran Decl. Exs. M–O.

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 6

ownership of the Characters' images under Japanese copyright law; it did not address, and it certainly did not truncate, Tatsunoko's exclusive license from Big West and Studio Nue to exploit and merchandize the Characters *outside Japan.* Duran Decl. Ex. A. Indeed, the decision made no attempt to address or analyze the scope of Tatsunoko's *international* rights to the Characters, which were governed by the 1982 Big West agreement. *Id.* To the contrary, in its findings of fact, the Japanese court expressly acknowledged that Tatsunoko had been given the right to license and retain all profits from both "overseas distribution rights and general merchandising rights." Dkt. 48-1 at 11; Bina Decl. Ex. A.[6]

The 2002 Japanese Decision was also not the last word on the subject of Tatsunoko's rights to "Macross" or its Characters. On January 20, 2003, in a different case, a Japanese court ruled that as between Tatsunoko on the one hand, and Big West and Studio Nue on the other, *Tatsunoko* held the entirety of the copyright, excluding moral rights, in the television series "Macross," even though it included the Characters. Bina Decl. Ex. B (the "2003 Japanese Decision"). As with the 2002 Japanese Decision, the 2003 Japanese Decision addressed only the parties' *domestic* rights. However, once again the court expressly noted that all international rights belonged to Tatsunoko pursuant to contract. Bina Decl. Ex. B at 9. The court explained specifically that the parties' agreement stated that Big West would "exercise rights concerning character merchandising rights and broadcasting syndication for *domestic* rebroadcasting [and] the Plaintiff [Tatsunoko] would do the same for ... *overseas* broadcasting syndication rights and general merchandising rights." *Id.* at 9 (emphasis added).

Collectively, the 2002 and 2003 Japanese Decisions left Tatsunoko with full rights to exploit the Characters internationally, including through the exclusive international rights of reproduction, display, distribution, and merchandizing—but not the right to create new derivative

---

[6] As explained in Ms. Bina's declaration, defendants' translation of key language on this point is ambiguous; thus, Harmony Gold has obtained an additional certified translation of the relevant excerpt. Bina Decl. ¶ 2 & Ex. A.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 7

animated films including the Characters' images.  Big West, on the other hand, held the *Japanese* right to create new animated derivative films containing the Characters, but could not exploit those new works outside Japan because of Tatsunoko's exclusive license of the international rights to Harmony Gold.

### C.  The 2003 Amendment.

The 1991 Agreement between Tatsunoko and Harmony Gold remained in force and effect through the entire Big West/Tatsunoko dispute.  In an amendment dated as of August 6, 1998 (the "1998 Amendment"), Tatsunoko extended Harmony Gold's rights for a further ten years—through and to March 2011, and extended their scope.  Duran Decl. Ex. E ¶¶ 2, 4.  As a result of the then-nascent dispute with Big West, however, Tatsunoko also requested a restriction.  While both the original 1984 Agreement and the 1991 Agreement had granted Harmony Gold the unfettered right to make derivative works based on the programs, *see Id.* Ex. B ¶ 5, Ex. D ¶ 5, in the 1998 Amendment, Harmony Gold agreed not to make a "sequel" to any of the three underlying programs, including "Macross."  *Id.* Ex. E ¶ 2.  Harmony Gold expressly retained all other rights in "Macross," including all other rights in and to the Characters.  *Id.* Ex. D ¶ 5, Ex. E ¶ 2.

In 2002, Tatsunoko returned sequel rights to the other two programs and extended the agreement another ten years, through and to March 2021.  *Id.* Ex. F.  In fall 2005, Harmony Gold and Tatsunoko began discussing a further amendment to restore Harmony Gold's right to make sequels to "Macross," in the hopes of Harmony Gold ultimately making a live-action "Robotech" film based on all three programs.  Agrama Decl. ¶ 8.  As the ultimate scope of Tatsunoko's "Macross" rights was still unclear, Tatsunoko and Harmony Gold structured the amendment in the form of a quitclaim:  Tatsunoko granted Harmony Gold all rights it held in "Macross."  Duran Decl. ¶ 10 & Ex. G.  However, to address the one right the courts had held Tatsunoko definitively did *not* have—the right to make new derivative films including the animated

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 8

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Characters' images—the amendment included a limited carve-out: "Licensor is not granting Licensee any rights to create derivative works using the original 41 characters as contained in the Series." *Id.* Though executed in 2006, the amendment was dated as of January 20, 2003, to coincide with the date of the 2003 Japanese Decision awarding copyright in the "Macross" series to Tatsunoko. *Id.*

Importantly, nothing in the 2003 Amendment eliminated Harmony Gold's *other* express rights in and to the Characters, including the exclusive rights of reproduction, display, distribution, and merchandizing, all of which remained in force under the 1991 Agreement, and all of which were within Tatsunoko's authority to grant pursuant to the 1982 Big West Agreement. *Id.* Ex. D ¶ 5. Further, the 2003 Amendment returned Harmony Gold's right to make sequels to "Macross," so long as Harmony Gold did not use the original animated images of the Characters. *Id.* Ex. G; Dkt. 48-3 at 9-10.

### D. Skirmishes With Big West, Followed By Peace.

During the period that rights were disputed between Tatsunoko and Big West—*i.e.*, between 1998 and 2008—Big West made various sporadic challenges to Harmony Gold's exercise of its exclusive rights in the United States. For example, in the late 1990s, Big West purported to license international video game rights to Bandai, a toy company. Duran Decl. ¶ 12. Relying on its own copyrights and trademarks and its valid license with Tatsunoko, Harmony Gold was repeatedly able to shut down such efforts, both before and after the 2002 Japanese Decision, either through cease-and-desist letters or through the courts. *Id.* ¶¶ 12, 17-20 & Exs. I, L–P. Harmony Gold was consistent in explaining that its rights to exploit the Characters arose from the 1982 Big West Agreement, and were not affected by the 2002 Japanese Decision. For example, on June 11, 2002, Harmony Gold sent a letter to another infringer, Sunwards Ltd., explaining:

> We wish to advise you that Harmony Gold controls distribution rights to Macross in the Harmony Gold Territory and that the [2002] Tokyo District Court ruling does not in any

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 9

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

way affect Harmony Gold's rights. ***Harmony Gold's rights flow from an agreement executed by Big West, Studio Nue, and Tatsunoko***. Pursuant to this agreement, it was concluded that exploitation rights to Macross outside of Japan would be controlled by Tatsunoko in perpetuity. ***Tatsunoko, in turn, granted such exploitation rights to Harmony Gold, which has been exercising and enforcing such rights outside of Japan since 1984***.

Duran Decl. Ex. M at 1 (emphasis added).

Apparently, according to defendants' moving papers, Big West's efforts in this period at some point included registering drawings of the Characters with the U.S. Copyright office, under the name "Kabushiki Kaisha Studio Nue & Kabushiki Kaisha Big West." Dkts. 48-5, 50-1. Harmony Gold was not aware of this registration, which conflicts with Harmony Gold's registration of copyright in the "Macross" animation, and which post-dates creation of the Characters by more than 20 years, until defendants brought it to Harmony Gold's attention. Duran Decl. ¶ 13. To the best of Harmony Gold's knowledge, neither Big West nor Studio Nue has ever attempted to exploit this copyright or take any action based upon it. *Id.*

To the contrary, Harmony Gold's understanding is that Tatsunoko and Big West ███████ ████████████████████████████████████████████████████████████ ████████████.[7] Furthermore, in March 2008, Tatsunoko again affirmed, in a written amendment to the 1991 Agreement, that the 1991 Agreement and the rights granted therein "remain in full force and effect." Duran Decl. Ex. H. Thus, since 2008, Harmony Gold has continued to exploit the Characters, including by licensing them in merchandise such as books, video games, and toys, with no interference from Big West. *Id.* ¶ 15 & Ex. K. To Harmony Gold's knowledge, since 2008, Big West has made no further attempts to license any "Macross" rights in the United States. Duran Decl. ¶ 13.

Indeed, Tatsunoko has regularly confirmed to Harmony Gold that both Big West and Tatsunoko treat Harmony Gold as the exclusive international licensee of the Characters. Duran

---

[7] ████████████████████████████████████████████████████████████████ ██████████████████████████████████. Bina Decl. ¶ 7.

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 10

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Decl. ¶ 14.  Thus, for example, in 2014, Tatsunoko asked Harmony Gold to take action against an infringing work that included the Characters to protect both Tatsunoko *and* Big West.  In an email dated January 17, 2014, from Tatsunoko's then-counsel, Brian Murphy, to Harmony Gold, Mr. Murphy wrote:

> The CEO of Big West has once again contacted Tatsunoko senior management to insist that Tatsunoko demand that Harmony Gold take immediate action with respect to the [infringing work] . . . What is now clear from the producer's own Facebook page posts is that they have now produced and made available . . . under the 'Robotech Valkyrie Project' moniker, two live-action 'episodes' . . . [including] an actual, fully operational mock-up version of [one of the Characters].

*Id.* & Ex. J.  Mr. Murphy further explained that:

> Harmony Gold filed a lawsuit against Hasbro over Hasbro's purported infringement of the very same VF-1 Valkyrie character design [one of the Characters] [and] ***Big West is demanding that Harmony Gold take the very same aggressive rights infringement enforcement approach against this Argentinean live-action series***.

*Id.* (emphasis added); *see also* Duran Decl. Ex. P.

As the foregoing letter makes clear, whatever the situation in 2002, both Tatsunoko and Big West ultimately acknowledged that Harmony Gold, pursuant to its license agreement with Tatsunoko, has the legal right to bring infringement actions relating to the Characters. Defendants, strangers to the parties' agreements, cannot collaterally attack them here.

### E.  The Tatsunoko/Harmony Gold Arbitration.

Notwithstanding Harmony Gold's express, exclusive license in and to the Characters and the concurrence of both Tatsunoko and Big West that Harmony Gold has such a license and all attendant standing to pursue infringement actions, defendants claim that Harmony Gold's standing was truncated not only by the 2002 Japanese Court Decision, but also by an unrelated June 2017 arbitration award (the "Arbitration Award") between Tatsunoko and Harmony Gold. This claim, too, is simply not correct.

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 11

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

The arbitration had nothing to do with the rights Harmony Gold seeks to enforce against defendants in this case.  Rather, the primary dispute in the arbitration involved Harmony Gold's right to make live-action derivative motion pictures based on "Macross."  Bina Decl. ¶ 4.  Tatsunoko claimed that it had never granted Harmony Gold this right.  Duran Decl. ¶ 21; Dkt. 48-3 at 6-8.  Tatsunoko argued that the 2003 Amendment was not valid or binding on Tatsunoko, and as a result, Harmony Gold had no right to make a derivative work (of any kind, involving the Characters' images or not) based on "Macross."  Duran Decl. ¶ 21; Dkt.48-1 at 9-10.  Tatsunoko argued, in the alternative, that the restriction regarding the Characters in the 2003 Amendment included the Characters' names and storyline, and not just their visual depiction.  Duran Decl. ¶ 21.  Harmony Gold argued in response that the 2003 Amendment *was* valid, and that the *sole* restriction it imposed on Harmony Gold's licensed rights was that Harmony Gold did not have the right to make derivative works using the Characters' images (their "visual depiction"), and that the reason for this restriction was the outcome of the Big West litigation.  *Id*. ¶ 22.  The arbitrator agreed with Harmony Gold, and concluded that Harmony Gold's rights included "all [Tatsunoko's] remaining rights in *Macross*, including derivative and sequel rights but naturally excluding any right to create derivative works using the 41 original character[s] from *Macross* program which now belonged to Big West."  Dkt. 48-3 at 10.

Tatsunoko's claim regarding the Characters in arbitration addressed solely Harmony Gold's right to *make derivative motion pictures*.  Harmony Gold's other rights with respect to the Characters—for instance, its rights to reproduce, display, distribute, and merchandize them—were not disputed.[8]  Neither the 1982 Big West Agreement nor ████████████████ ████████████████ were considered by the arbitrator.  Bina Decl. ¶ 8.

_____

[8] Indeed, Tatsunoko sought damages based on claimed failures by Harmony Gold to properly pay royalties on such merchandise incorporating the Characters.  Duran Decl. ¶ 21.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 12

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

## IV.    ARGUMENT.

As the United States copyright holder in the "Macross" series, and the express exclusive licensee of Tatsunoko's rights in the Characters, Harmony Gold has standing to bring this action. To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) infringement of the copyright. *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990). An exclusive licensee of a copyright has standing to enforce that copyright. 17 U.S.C. § 510(b); *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015). Defendants assert that Harmony Gold does not possess a valid copyright ownership interest. Defendants, however, have wholly failed to meet their burden to demonstrate that Harmony Gold has no enforceable copyright in the Characters. At this stage of the litigation, Harmony Gold's presumptively valid copyright and facially valid license agreement are more than sufficient to establish standing. 17 U.S.C. § 410(c); Duran Decl. Exs. D–H, L.

Defendants make three primary arguments, each of which fails as a matter of fact and law. First, defendants claim that the 2002 Japanese Court decision, Big West's 2002 copyright registration, a 1983 Japanese book crediting copyright in images of the Characters to Big West, and the 2003 Amendment conclusively establish that Big West, and not Harmony Gold, owns all copyright interests in the Characters. In fact, *none* of these are sufficient to invalidate Harmony Gold's facially valid exclusive license in the Characters from Tatsunoko, or its 1985 copyright registration. *At most*, defendants' evidence creates a dispute as to ownership which must be addressed at trial and is not appropriate for summary judgment.

Second, defendants claim that Harmony Gold seeks only to enforce a derivative works right it concededly does not have, and that its claim can be dismissed on that basis. This is false. Harmony Gold has standing to enforce *any* exclusive right it owns against a third-party infringer. While Harmony Gold's FAC does assert that defendants' works are "derivative" of the Characters, it also expressly alleges that defendants "have infringed Harmony Gold's copyrights

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

. . . through their ***unauthorized copying, distribution and display of warrior robots that are substantially similar to those owned by Harmony Gold***." Dkt. 31 ¶ 37 (emphasis added).[9] Harmony Gold's exclusive rights to reproduce, distribute, display, and merchandize the Characters are more than sufficient to grant it standing to pursue these claims.

Third, defendants argue that Harmony Gold is collaterally estopped by the Arbitration Award from relitigating the validity of the 2003 Amendment, which defendants assert in turn destroys Harmony Gold's standing. However, as a private arbitration decided under California law, the Arbitration Award has *no* preclusive effect in this action. Furthermore, even if the Arbitration Award could have such an effect, the Arbitration Award addresses only *derivative rights* to the Characters' images (and adopted Harmony Gold's position regarding those rights). Defendants have not met their burden to show that Harmony Gold's exclusive rights to reproduce, distribute, display, and merchandize the Characters were actually or necessarily litigated in the arbitration.

### A. Harmony Gold's Copyright And License Agreement Establish Its Standing.

A copyright plaintiff satisfies its *prima facie* burden to establish standing "by introducing its copyrights"—and the alleged infringer bears the burden to demonstrate invalidity. *United Fabrics Intern., Inc. v. C&J Wear, Inc.,* 630 F.3d 1255, 1258 (9th Cir. 2011) (reversing summary judgment based on plaintiff's presumptively valid copyright registration). "To survive a motion for summary judgment, a plaintiff *need not definitively establish standing*," but need only "set forth sufficient evidence to create a genuine issue of material fact concerning such requirements." *Murphy v. Best Buy Stores, L.P.*, 690 F. App'x 553, 554-55 (9th Cir. 2017) (emphasis added). Moreover, the evidence and facts presented by the non-moving party to establish standing must "be taken as true." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992). Where the evidence as to validity is unclear or in conflict, summary judgment must be denied.

---

[9] Harmony Gold has filed a motion to amend (Dkt. 51) to more clearly state its rights.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 14

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.,* 929 F. Supp. 2d 296, 309-10 (S.D.N.Y. 2013) (denying summary judgment because of questions of fact regarding validity of copyright). Here, Harmony Gold has presented more than sufficient evidence—which must be taken as true—to satisfy its standing at summary judgment:

- Harmony Gold has held an express, exclusive license granting it rights specifically to the Characters since 1984.  These rights expressly include the rights to "reproduce," "publish," "exhibit," "distribute," "display," "market," and "otherwise dispose of and exploit" the Characters.  Duran Decl. Ex. B ¶ 5, Ex. D ¶ 5.

- Since 1985, Harmony Gold has held, jointly with Tatsunoko, the U.S. copyright to the "Macross" series, expressly including the "Entire Work," including its "animation." *Id.* Ex. C.

- The 1982 Big West Agreement between Tatsunoko and Big West grants Tatsunoko all international licensing and merchandizing rights to "Macross," including the Characters. *Id.* Ex. A; Bina Decl. Exs. A, B.  The 1982 Big West Agreement's grant of international rights to Tatsunoko was expressly acknowledged in the 2002 Japanese Decision and was not terminated by any court decision.[10]  Dkt.48-1; Bina Decl. Exs. A, B.

- Harmony Gold has exercised its exclusive rights in and to the Characters continuously since 1984, including by the display of the Characters in the animated television series "Robotech," as well as the production of toys, books, video games, comics, and numerous other products based on the Characters, and has prosecuted multiple claims against infringers.  Duran Decl. ¶¶ 15-16 & Ex. K.

- In June 2002, *after* the 2002 Japanese Decision that defendants claim terminated Harmony Gold's right in the Characters, Tatsunoko extended its exclusive license

[10] Indeed, defendants concede that Tatsunoko received "overseas commercialization rights" for the "Macross animated series.  Mot. at 3.

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 15

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

agreement with Harmony Gold, including the exclusive license to reproduce, display, distribute, and merchandize the Characters. *Id.* Exs. D, F.  Tatsunoko affirmed again in a 2008 Amendment that the rights granted in the 1991 Agreement "remain in full force and effect." *Id.* Ex. H.

- Tatsunoko and Big West have both acknowledged Harmony Gold's exclusive license in the years since the 2002 Japanese Decision, and have specifically asked Harmony Gold to take enforcement action against persons who infringed the Characters. *Id.* ¶ 14 & Ex. J.

Harmony Gold's 1985 copyright registration, standing alone, constitutes *prima facie* evidence of the validity of its copyright in the Characters.  The registration (and the facts contained within the certificate) are presumed valid, because registration was made within five years of the "Macross" series' publication, shifting the burden on summary judgment to defendants to conclusively demonstrate *invalidity*.  *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."); *Overseas Direct Imp.,* 929 F. Supp. 2d at 309.

Defendants do not dispute Harmony Gold's valid copyright, but instead argue that the copyright somehow does not include the Characters' images. Mot. 2, n.2., 9.  This argument is foreclosed by both by the language of the registration itself—Harmony Gold expressly registered the "animation" of the "Macross" series, which includes the Characters' images—but also by the 1996 action between Harmony Gold and defendant Weisman's predecessor company, FASA, which expressly held that Harmony Gold's copyright in the "Macross" series includes the "Macross" Characters.  Duran Decl. Ex. L, *Harmony Gold U.S.A., Inc. v. FASA Corp. et al.*, No. 95-cv-2972, 1996 WL 332689, at *1, 2 (N.D. Ill. June 13, 1996); *see also* Duran Decl. Ex. O (C.D. Cal. decision post-dating the 2002 Japanese Court Decision and holding that Harmony Gold's copyright constitutes "prima facie evidence of ownership" of rights in the Characters).  It

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 16

is also inconsistent with established law holding that copyright in a motion picture includes copyright for "any significant characters portrayed therein." *Metro-Goldwyn-Mayer, Inc. v Am. Honda Motor Corp.*, 900 F. Supp. 1287, 1293 (C.D. Cal. 1995); *accord Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 754-55 (9th Cir. 1978); *New Line Cinema Corp. v. Bertlesman Music Grp.*, 693 F. Supp. 1517, 1521 n. 5 (S.D.N.Y. 1988). Defendants' position also ignores Harmony Gold's express exclusive license to the Characters, *see* Duran Decl. Ex. D ¶ 5, by which Harmony Gold enjoys "all of the protection and remedies accorded to the owner" under federal copyright law.  17 U.S.C. § 201(d)(2).[11]

Together, Harmony Gold's copyright and exclusive license establish Harmony Gold's presumptive standing to bring this lawsuit.  The burden is thus on defendants to demonstrate that Harmony Gold's presumptively valid copyright and facially valid exclusive license are invalid. They have not done so, and their motion must be denied.

**B.  Defendants Have Not Established That The 2002 Japanese Court Decision Or The 2003 Amendment Terminated Harmony Gold's Rights To The Characters.**

Defendants' next argument, that the 2002 Japanese Decision and Big West's related 2002 registration of copyright in the Characters conclusively refute Harmony Gold's 33-year-old license and copyright, fares no better.

The 2002 Japanese Decision expressly addresses only Japanese *domestic* copyright.  As detailed above, there is simply nothing in the 2002 Japanese Decision that invalidates Tatsunoko's exclusive license of the international rights to exploit the Characters to Harmony Gold.  Indeed, the 2002 Japanese Decision expressly recognized that international sales and

---

[11] Relying on 17 U.S.C. § 103(b), defendants argue that Tatsunoko could not copyright the Characters in the U.S. or license them to Harmony Gold because the 2002 Japanese Decision found that Big West owned the Japanese copyright in them. *See* Mot. at 17.  However, defendants have not shown that Japanese law is similar to Section 103 or that it would prevent Tatsunoko (which owns the Japanese copyright in the "Macross" series) from registering the work as a whole, including the Characters.  More fundamentally, defendants' argument ignores the 1982 Big West Agreement giving Tatsunoko exclusive international rights to the work, including the Characters, and thus the right to license the Character rights to Harmony Gold, and to register the U.S. copyright in the same.

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 17

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

merchandizing rights belonged to Tatsunoko based on the 1982 Big West Agreement.  Dkt.48-1 at 9; Bina Decl. Ex. A; Duran Decl. Ex. A ¶ 5, Art. 1.  The only limitation actually imposed by the court in the 2002 Japanese Decision was that Tatsunoko could not create "new programs" using the Characters' designs.  Dkt. 48-1 at 11.[12]

The fact that the 2002 Japanese Decision did not terminate Harmony Gold's license is further evidenced by the 2003 Japanese Decision, which again acknowledged that international rights were granted by contract to Tatsunoko.  Bina Decl. Ex. B at 9.  It is also supported by the fact that, shortly after the 2002 Japanese Decision, and while still in litigation against Big West, Tatsunoko *renewed* Harmony Gold's exclusive license to the Characters, affirming its representation and warranty that it had the right to do so, and that it later carved out *only* the right to make derivative works containing the Characters' images, and not any other granted rights.  Duran Decl. Ex. D ¶ 5, Exs. F, G.  And it is supported by the fact that, in 2014, Tatsunoko and Big West *jointly* asked Harmony Gold to pursue an infringement action based on a work that infringed the Characters.  *Id.* Ex. J.

As for Big West's 2002 copyright registration, contrary to defendants' contention, that registration is *not* entitled to the statutory presumption of validity, because it was filed twenty years after first publication—well more than the permitted five years.  *See* 17 U.S.C. § 410(c).  Moreover, there is no evidence that Big West ever exploited this copyright in any fashion after its registration, further suggesting it was not valid.  Duran Decl. ¶ 13.  Defendants' cited cases do not support their claim that a copyright registered two decades after first publication and never exploited in the fifteen years after its registration is presumptively valid.  To the contrary, the cases each involved diligent behavior by copyright holders and minor, technical deficiencies.[13]

---

[12] The same is true of the 1983 Japanese book.  Given that Big West held domestic merchandizing rights, and Tatsunoko international merchandizing rights, it is entirely consistent that a book published in Japan would name Big West as copyright holder, but this in no way truncates Tatsunoko's international rights stemming from contract.

[13] Thus, in *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 142-44 (E.D.N.Y. 2011), the court found certificates of registration valid when eight of ten certificates were issued within the five year period and there was

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 18

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Unlike in those cases, Harmony Gold has offered substantial evidence that undermines the validity of Big West's copyright registration, and the mere existence of Big West's registration is certainly not enough to overcome Harmony Gold's presumptively valid copyright registered two decades earlier. At most, defendants demonstrate a triable issue of fact that is not appropriate for summary judgment.

Finally, with regard to the 2003 Amendment, once again the amendment only modifies Harmony Gold's rights with respect to *derivative* works. Duran Decl. Ex. G; Dkt. 48-3 at 10. It does not eliminate Harmony Gold's exclusive rights to reproduce, display, distribute, or merchandize the Characters. To the contrary, the 2003 Amendment expressly affirms the grant to Harmony Gold of *all* Tatsunoko's rights in "Macross," Duran Decl. Ex. G, and Tatsunoko has affirmed in the years since that all other rights granted by the 1991 Agreement "remain in full force and effect." *Id.* Ex. H.

**C. Defendants' Derivative Works Argument Is Contrary To Law And Fact.**

Faced with conclusive evidence of Harmony Gold's valid copyright interest in the Characters and standing to pursue its claims, defendants assert that regardless of Harmony Gold's rights to reproduce, distribute, display, and merchandize the Characters, Harmony Gold lacks standing because, according to defendants, "the only theory of copyright infringement in this case is that Harmony Gold alleges that [defendants have] created infringing derivative works of the ["Macross"] Characters." Mot. at 12-13. This assertion is belied by the language defendants themselves quote from the FAC on the very same page: Harmony Gold alleges that defendants' infringing conduct includes "unauthorized copying, distribution, and display of the warrior robots[.]" Mot. at 12 (quoting Dkt. 31 at ¶ 37).

---

no evidence submitted that the other two were invalid. And in *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008), the plaintiff sought partial summary judgment as to the validity of its own untimely copyrights, which the court granted because the defendant did not offer evidence demonstrating invalidity or lack of ownership.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 19

Defendants' apparent theory—that because Harmony Gold does not have the right to make a derivative animated film based on the Characters pursuant to the 2003 Amendment, it has no enforceable rights to the Characters at all—is factually and legally meritless. The law grants standing to sue to the holder of *any* of the six separate statutory rights of a copyright: the rights to reproduce the work, to prepare derivative works based on the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, or to record and perform the work. *See* 17 U.S.C. § 106; *see also Minden*, 795 F.3d at 1003 ("It is established law under the 1976 [Copyright] Act that any party to whom such a right [under § 106] has been transferred — whether via an assignment or an exclusive license — has standing to bring an infringement action based on that right."); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) ("exclusive rights may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small.") As owner of the exclusive rights of reproduction, display, distribution, and merchandizing rights in the Characters, Harmony Gold has standing to sue defendants for infringement of those rights in this case. *See Minden*, 795 F.3d at 1003-06; *DC Comics v. Towle,* 989 F. Supp. 2d 948, 962 (C.D. Cal. 2013), *aff'm* 802 F.3d 1012 (9th Cir. 2015) (exclusive merchandising rights were "sufficient to afford Plaintiff standing," in copyright dispute); *Halicki Films, LLC v. Sanderson Sales and Mktg.,* 547 F.3d 1213, 1220 (9th Cir. 2008) (same).

Defendants' cited authorities purportedly to the contrary are, in fact, inapposite. In *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 1002 (C.D. Cal. 2015), there was "no evidence a transfer [of the rights] occurred, whether by oral statement, by writing, or by conduct." And in *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169, 1171-72 (9th Cir. 2013) and *Sybersound*, 517 F.3d at 1146, the plaintiffs lacked standing because they were not the owners of *any* exclusive rights. Here, Harmony Gold has an express exclusive license to the Characters,

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

which is supported by the 1982 Big West Agreement granting Tatsunoko all international rights to "Macross," including international merchandizing rights, and has not granted those rights to any other person or entity.

Defendants have not come close to meeting their burden to demonstrate that there are no triable issues of fact as to Harmony Gold's right to enforce its exclusive rights of reproduction, display, distribution, and merchandizing against defendants.

### D.   The Arbitration Award Is Inapposite And Has No Preclusive Effect.

Defendants' final argument, that the August 2017 confirmation of Harmony Gold's Arbitration Award against Tatsunoko somehow "determined" that Harmony Gold lacks standing in this case, also fails.  As a threshold matter, under controlling California law, the private Arbitration Award has no preclusive effect in favor of defendants, non-parties to the arbitration. The preclusive effect of a federal diversity judgment is determined by applying the collateral estoppel rules of the state in which the earlier court sits.  *See Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."); *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th Cir. 2009) (same); *see also In re JPMorgan Chase Derivative Litig.*, No. 2:13-cv-02414, 2017 WL 2833402, at *6 (E.D. Cal. June 30, 2017) ("If a federal court sitting in diversity jurisdiction issued the arguably precluding opinion, then the preclusion rules of the state in which that court sits would apply.").

Here, Harmony Gold's arbitration proceeding was governed by California law, *see* Duran Decl. Ex. E ¶ 4, and Harmony Gold sought judicial confirmation of the Arbitration Award pursuant to the FAA and the California District Court's diversity jurisdiction.  Bina Decl. Ex. C. Thus, California law governs the preclusive effect of the Arbitration Award.  Under California law, however, a "private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the particular case,

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 21

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

that such a consequence should apply." *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 834 (Cal. 1999). Defendants were not a party to the arbitration, nor did the parties agree to preclusive effect in favor of third parties. Bina Decl. ¶¶ 4, 5. Defendants' entire issue preclusion argument fails for this basis alone.[14]

Furthermore, even if the Arbitration Award were preclusive here (it is not), the award in no way supports defendants' contention that the "arbitrator recognized that Tatsunoko itself did not have, and could not grant, the rights that Harmony Gold is trying to enforce in the present action[.]" Mot. at 14-15. Defendants concedes that the carve out of Harmony Gold's rights in the 2003 Amendment was limited to the right to make *derivative works* containing the Characters' images. Mot. at 17 ("The arbitrator found that the 2003 amendment … gave Harmony Gold the right to make derivative works from the *Macross* Motion Picture 'except for the visual depiction of the original 41 animated characters[.]'"). The Arbitration Award did not address—and accordingly did not foreclose—Harmony Gold's other rights to exploit the Characters by reproduction, distribution, display, and merchandizing.

Moreover, even were issue preclusion to apply (and it cannot, as a matter of law), defendants have wholly failed to meet their burden to "introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321-23 (9th Cir. 1992) (claims not barred where party asserting preclusion failed to show with "clarity and certainty what issues were determined in the

---

[14] Defendants' cited cases are inapposite—none applies California issue preclusion or involves confirmation of an arbitration award by a federal court sitting in diversity. Rather, the cases (the majority of which do not even involve arbitration awards) discuss the preclusive effect of prior *federal* claims that do not involve diversity jurisdiction (*e.g.*, *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097 (9th Cir. 1987) (RICO and federal securities claims); *Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) (§ 1983 claim); *Allen v. McCurry*, 449 U.S. 90 (1980) (§ 1983 claim); *Town of North Bonneville v. Callaway*, 10 F.3d 1505 (9th Cir. 1993) (lawsuit against the US government regarding federal legislation)); prior criminal prosecutions (*e.g.*, *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558 (1951) (prior criminal conviction for violating antitrust laws); *Ashe v. Swenson*, 397 U.S. 436 (1970) (holding collateral estoppel embodies the guarantee against double jeopardy to preclude a subsequent criminal prosecution)); or a prior arbitration award involving the *same* parties (*e.g.*, *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318 (9th Cir. 1992)). Further, all of Defendants' cases predate *Taylor*, *Taco Bell*, and *Vandenberg*.

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 22

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

arbitration"). Defendants have not submitted the pleadings, briefs, or testimony giving rise to the Arbitration Award, nor does the Arbitration Award itself contain formal findings of fact or conclusions of law. Instead, defendants attempt to contort the language of the Arbitration Award to adjudicate an issue that was never in dispute between Tatsunoko and Harmony Gold. This is an impermissible expansion of the doctrine of issue preclusion, and must be rejected.

### E.   In the Alternative, The Court Should Deny The Motion Pursuant to Rule 56(d).

As the foregoing demonstrates, there is ample evidence from which a trier of fact could conclude that Harmony Gold is the lawful holder of the exclusive rights to exploit, reproduce, display, distribute, and merchandize the Characters, and thus has standing to bring this case. Were the Court to conclude otherwise, however, Harmony Gold believes it would be necessary and appropriate to allow Harmony Gold to seek discovery relevant to this issue from Tatsunoko, Big West, and Studio Nue, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, before granting the extreme remedy of summary judgment. Specifically, during the arbitration,

. Bina Decl. ¶ 7. Harmony Gold intends to seek these documents, as well as related documents and testimony, from Tatsunoko and Big West—and is in the process of preparing letters rogatory seeking the same.[15]

"[W]hen a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Commer. Cleaning Servs. v. Colin Serv. Sys.*, 271 F.3d 374, 386 (2d Cir.

---

[15] As defendants actually challenge Tatsunoko's rights in the Characters, and only collaterally attack Harmony Gold's, a full analysis of all agreements and understandings between and among Tatsunoko, Big West, and Studio Nue, including, but not limited to an evaluation of the 1982 Big West Agreement and any related agreements under Japanese law, would be critical to evaluating defendants' claims.

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

2001).  Deciding the issue of copyright ownership against Harmony Gold at this early stage of the case, without permitting Harmony Gold the opportunity to present ████████████████ ███████████████, would be premature and prejudicial.  The discovery cutoff in this case is months away, and formal discovery has barely begun.  Bina Decl. ¶ 9.  Under such circumstances, the Court should deny or defer defendants' Motion pursuant to Rule 56(d).  *See, e.g.*, *Atigeo LLC v. Offshore Ltd. D*, No. C13-1694, 2014 U.S. Dist. LEXIS 53206, at \*12-13 (W.D. Wash. Apr. 16, 2014) (allowing Rule 56(d) discovery where discovery did not close for another seven months because "[i]n these circumstances, the Ninth Circuit and the United States Supreme Court interpret Rule 56(d) to require additional discovery"); *accord Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

**V.    CONCLUSION.**

For the foregoing reasons, Harmony Gold respectfully requests that the Court deny Defendant Motion for Summary Judgment as to Plaintiff's Lack of Standing to Assert Copyright Infringement Claim.

DATED:  December 11, 2017.          CALFO EAKES & OSTROVSKY PLLC


By   *s/ Andrew R.W. Hughes*
　　　Damon C. Elder, WSBA #46754
　　　Andrew R.W. Hughes, WSBA #49515
　　　1301 Second Avenue, Suite 2800
　　　Seattle, WA  98101
　　　Phone:  (206) 407-2200
　　　Fax:  (206) 407-2224
　　　Email:  damone@calfoeakes.com
　　　　　　andrewh@calfoeakes.com

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 24

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

LATHAM & WATKINS LLP


By: _s/ Jessica Stebbins Bina_
    Jessica Stebbins Bina
    10250 Constellation Blvd., Suite 1100
    Los Angeles, CA  90067
    Telephone: (424) 653-5525
    Facsimile: (424) 653-5501
    Email:  jessica.stebbinsbina@lw.com

*Attorneys for Plaintiff Harmony Gold U.S.A., Inc.*

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 11, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants.

DATED this 11th day of December, 2017.

_s/ Susie Clifford_
Susie Clifford

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 26

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224