# EXHIBIT A

[handwritten:] *(3)*                                                                                              [handwritten:] ③ - *1*

[handwritten:] *Addition of 4 characters on line 3*
[seal:] Representative Director of Studio Nue

## Memorandum

Promises are mutually made among the three (3) parties of Big West Co., Ltd. (hereinafter referred to as "A") and Tatsunoko Production Co., Ltd. (hereinafter referred to as "B") and [handwritten:] *Studio* Nue (hereinafter referred to as "C") on the following terms and conditions in connection with the attribution of the various rights arising from the Mainichi Broadcasting System, Inc. television animation movie "The Super Dimension Fortress Macross" and the distribution of the profits arising from such rights, and this Memorandum shall constitute proof thereof.

### Note

Among the rights arising from the television animation movie "The Super Dimension Fortress Macross"

1. The point of contact for the commercialization rights shall be A. Regarding the rights [sic: profits] arising from such rights, A shall obtain 10% as the point of contact commission, and the distribution of the remaining amount of 90% as 100 shall be 30% for A, 33% for B, 12% for C and 25% for Mainichi Broadcasting System, Inc.

2. Regarding the point of contact concerning publications, B shall be in charge as the point of contact thereof for the publications targeted to pre-school children through 6th grade primary school students, and the distribution concerning the profits arising therefrom shall be 30% for A, 40% for B and 30% for C.
   In addition, in connection with the publications targeted to middle school and older students, C shall be in charge as the point of contact thereof, and the distribution concerning the profits arising therefrom shall be 30% for A, 30% for B and 40% for C.

3. In connection with the various rights concerning music (for example, record master license, music copyrights, etc.), B shall be in charge as the point of contact, and the various expenses for obtaining these rights shall be borne at the ratio of 40% for A and 60% for B, and the distribution in connection with the various profits arising from these rights shall be 40% for A and 60% for B.

4. In connection with repeat program sales in Japan, A shall be in charge as the point of contact thereof, and the distribution in connection with the profits thereof shall be 50% for A and 50% for B.

HG00000082

[handwritten:] *(3)*                                                                 [handwritten:] ③ - *2*

5. In connection with overseas program sales and general commercialization rights overseas, B shall have these rights, and the profits arising therefrom shall completely belong to B. [handwritten:] ✕ *(Note) To be revised by means of Memorandum ④.*

6. Furthermore, the amounts arising from the various rights set forth in 1-4 shall be paid to the other party by means of the above-mentioned respective distributions by the end of the month following the month in which A, B and C obtained the respective deposits.

7. In the case where various rights arise other than [the ones set forth in] this Memorandum, A, B, and C shall consult each other and resolve the same.

IN WITNESS WHEREOF, this Memorandum has been prepared in triplicate, and A, B and C shall retain one (1) copy each.

Showa   Year   Month   Day
[stamp:] October 1, 1982

A
    6-12-4, Sotokanda, Chiyoda-ku, Tokyo
    Big West Co., Ltd.
    Yoshimasa Onishi, Representative Director
    [stamp:] Big West Co., Ltd.
    [seal:] Representative Director of Big West Co., Ltd.

B
    3-22-12, Minamicho, Kokubunji-shi, Tokyo
    Tatsunoko Production Co., Ltd.
    Kenji Yoshida, Representative Director
    [stamp:] Tatsunoko Production Co., Ltd.
    [seal:] Representative Director of Tatsunoko Production Co., Ltd.

C
    3-44-17, Honamanuma, Suginami-ku, Tokyo
    Studio Nue
    Kenichi Matsuzaki, Representative Director
    [stamp:] Studio Nue
    [seal:] Representative Director of Studio Nue

HG00000083

[handwritten:] *(4)*                                                                 [handwritten:] ④ - *1*


## Memorandum


Tatsunoko Production Co., Ltd. (hereinafter referred to as "A") and Big West Co., Ltd. (hereinafter referred to as "B") hereby exchange this Memorandum, as follows, with respect to the "The Super Dimension Fortress Macross Movie Version" (hereinafter referred to as the "Movie Version") and "The Super Dimension Fortress Macross Television Series" (hereinafter referred to as the "Television Version").

Article 1    (1)  In connection with the overseas program sales rights and the overseas commercialization rights for the Television Version, both A and B confirm that A will have such rights.
             (2)  Regarding the overseas program sales rights for the Movie Version, B shall have such rights.

Article 2    In connection with the overseas commercialization rights for the Movie Version, both A and B confirm that A will have such rights. ~~Provided, however, that the video and game software for the Movie Version shall be excluded.~~

[handwritten:]
*Deletion of 27 characters*
*Addition of 41 characters*

[seal:] Representative Director of Big West Co., Ltd.
[seal:] Representative Director of Tatsunoko Production Co., Ltd.

[handwritten:] *Provided, however, that regarding the types of video and game software for the Movie Version, B shall have the right to the overseas commercialization rights.*
[seal:] Representative Director of Big West Co., Ltd.

Article 3    A will distribute 15% of the profits obtained from the exercise of the overseas commercialization rights for the Television Version and the Movie Version to B.
[seal:] Representative Director of Tatsunoko Production Co., Ltd.

Article 4    Regarding A's distribution to B pursuant to the preceding Article, the object thereof shall be the profits of 60,000,000 yen or more.
             Furthermore, A's payment to B shall be made after attaching a statement of accounts by the end of the month following the month in which the deposit is obtained.

Article 5    With respect to the toys manufactured and sold by Bandai Co., Ltd., both A and B confirm that it is commercialization based on the Television Version.

Article 6    In the case where a problem arises with respect to matters other than those set forth in this Memorandum, A and B shall consult each other in good faith and seek a resolution.

HG00000084

[handwritten:] *(4)*                                                  [handwritten:] ④ - *2*

IN WITNESS WHEREOF, this Memorandum has been prepared in duplicate, and A and B shall retain one (1) copy each.

Showa   Year   Month   Day
[handwritten:] *December 1, 1984*

      A
          3-22-12, Minamicho, Kokubunji-shi, Tokyo
          Tatsunoko Production Co., Ltd.
          Kenji Yoshida, Representative Director
          [stamp:] Tatsunoko Production Co., Ltd.
          [seal:] Representative Director of Tatsunoko Production Co., Ltd.

      B
          6-12-4, Sotokanda, Chiyoda-ku, Tokyo
          Big West Co., Ltd.
          Yoshimasa Onishi, Representative Director
          [stamp:] Big West Co., Ltd.
          [seal:] Representative Director of Big West Co., Ltd.

HG00000085

（3）



③－1

# 覚　書

株式会社　ビックウエスト（以下甲という）と株式会社　竜の子プロダクション（以下乙という）と株式会社　スタジオぬえ（以下丙という）の三者間に於て、毎日放送放映のテレビマンガ映画「超時空要塞マクロス」の諸権利の帰属並びにその権利から発生する利益の配分に関して下記の条件に於て、お互いに約策し、この覚書をもってその証とする。

## 記

テレビマンガ映画「超時空要塞マクロス」より発生する権利の内

1．商品化権の窓口は甲とする。その権利より発生する権利は甲が窓口手数料として10％を取得し、残額の90％を100としてその配分は　甲30％　乙33％　丙12％　毎日放送25％とする。

2．出版物に関する窓口は幼児より小学校6年生迄の対象となるものは乙がその窓口を担当し、これより発生する利益に関する配分は　甲30％　乙40％　丙30％とする。
　又、中学生以上を対象とする出版物に関しては丙がその窓口を担当し、これより発生する利益の配分は　甲30％　乙30％　丙40％とする。

3．音楽に関する諸権利（例えばレコードの原盤権、音楽著作権等）に関しては窓口を乙が担当し、これらの権利を得る為の諸経費は　甲40％　乙60％の割合で負担しこれらの権利から発生する諸利益に関しては　甲40％　乙60％の配分とする。

4．国内に於けるリピートの番組販売に関しては甲がその窓口を担当し、その利益に関しては　甲50％　乙50％の配分とする。

HG00000086

（3）                                                                    ③ース

5．海外番組販売並びに海外での一般商品化権に関しては、乙がこの権利を有し、そ
  の発生する利益はすべて乙のものとする 方法 ④ 覚書により修正される.

6．尚1～4迄の諸権利より発生する金額は甲・乙・丙がそれぞれ入金を得た月の翌
  月末迄にそれぞれの上記配分により、相手方に支払うものとする。

7．本覚書以外の諸権利が発生した場合は甲・乙・丙それぞれ協議してこれを解決す
  るものとする。

本覚書締結の証として本書三通を作成し甲・乙・丙各々一通を保有するものとする。

昭和 57. 10. 日

甲

東京都千代田区　　　ー12ー4
株式会社　　　　スト
代表取締役　　　　　　昌

乙

東京都　　　　市南町3丁目22番12号
株式会社　　の子プロダクション
代表取締役　　吉田健二

丙
東京都杉並区本天沼3丁目44番17号
株式会社 スタジオぬえ
代表取締役 松崎健一

（4）

④-1

## 覚　書

株式会社　竜の子プロダクション（以下甲という）と株式会社　ビックウエスト（以下乙という）とは「劇場版・超時空要塞マクロス」（以下劇場版という）と「テレビシリーズ・超時空要塞マクロス」（以下テレビ版という）について下記の通り覚書を取り交わす。

第1条　（1）甲・乙両者は、テレビ版の海外番組販売権並びに海外商品化権に関しては甲がその権利を有することを確認する。

（2）劇場版の海外番組販売権は乙がその権利を有するものとする。

第2条　甲・乙両者は、劇場版の海外商品化権に関しては甲がその権利を有することを確認する。~~但し、劇場版の海外番組販売権及び~~

27字削除
41字加入
但し劇場版のビデオ及びゲームソフト類は・乙が海外商品化権の権利を有するものとする。

第3条　甲は乙に対し、テレビ版・劇場版の海外商品化権の行使により取得した利益のうち15％を配分する。

第4条　前条に基づく甲の乙に対する配分は6,000 万円以上の利益についてその対象とする。

尚、甲の乙に対する支払は入金を得た月の翌月末迄に計算書を添えて支払うものとする。

第5条　甲・乙両者は、株式会社　バンダイより製造・販売されている玩具についてはテレビ版に基づく商品化であるこを確認する。

第6条　本覚書に規定された以外の事について問題が生じた場合は甲・乙誠意をもって協議し解決に当たるものとする。

HG00000088

(4)

④ーz

本覚書締結の証として本書二通を作成し甲・乙各々一通を保有するものとする。

昭和 59 年12月 / 日

甲



東京都国分寺市南町3丁目22番12号
株式会社竜の子プロダクション
代表取締役 吉田健二

乙



東京都千代田区　　　6－12－4
株式会社　　　　エスト
代表取締役 大西良昌

HG00000089



City of New York, State of New York, County of New York

I, Wendy Poon, hereby certify that the document "Memorandum Agreement By and Among Big West, Tatsunoko, and Studio Nue dated October 1, 1982, including Amendment dated December 1, 1984" is, to the best of my knowledge and belief, a true and accurate translation from Japanese into English.

_____
Wendy Poon

Sworn to before me this
December 8, 2017

_____
Signature, Notary Public

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM

OFFICES IN 90 CITIES WORLDWIDE

HG00000090

# EXHIBIT B

4

# ORIGINAL

## LICENSE AGREEMENT

TATSUNOKO PRODUCTION CO., LTD.

HARMONY GOLD, LTD.

HG00000091

.4

## AGREEMENT

THIS AGREEMENT is entered into this 11th day of September, 1984 by
and between

TATSUNOKO PRODUCTION CO., LTD.
3-22-12, Minami-cho, Kokubunji-shi,
Tokyo, Japan

(hereinafter referred to as the Licensor)

- and -

HARMONY GOLD, LTD.
8831 Sunset Boulevard, Suite 300
Los Angeles, CA 90069 U.S.A.

(hereinafter referred to as the Licensee)

WHEREBY IT IS AGREED as follows:

The Licensor hereby grants exclusively and irrevocably to the Licensee
the rights to exploit the animated television programs described below
produced and owned by the Licensor on the terms and conditions set out
below, which rights include, but are not limited to, television broad-
casting, merchandising exploitation, theatrical and nontheatrical exploi-
tation, video devices, sound recording devices and publications.

### PROGRAMS & PARTICULARS

MACROSS: 1/2 hour X 36 episodes

MOSPEADA: 1/2 hour X 25 episodes

THE SOUTHERN CROSS: 1/2 hour X 23 episodes

TOTAL: 84 episodes

1. TERRITORIES

ZONE NO. 1: The United States of America, and its territories and
possessions, and English-speaking Canada, and English-
-speaking territories and possessions of Canada.

ZONE NO. 2: All other English-speaking countries, territories and
areas, all German-speaking countries, territories and
areas including all Scandinavian countries, territories
and areas, and all French-speaking countries, territories
and areas.

However, all countries and territories in Asia including Japan
shall be excluded from the licensed territories under this Agreement.

HG00000092

4

2. PERIOD OF LICENSE

The initial period of license is seven (7) years from the date hereof and the license period shall be renewable at the end of every seven years on the terms and conditions mutually agreed upon. At the Licensee's request, the Licensor shall negotiate with the Licensee reasonably and in good faith so that the Licensor shall grant to the Licensee at least one (1) further seven (7) year license period hereunder. If, for any reason, the Licensor and the Licensee shall not agree upon such terms and conditions, the Licensor shall not license any of the rights licensed to the Licensee hereunder to any other party, or exploit those rights itself, without first providing to the Licensee the exclusive right for thirty (30) days to match terms and conditions that the Licensor is prepared to accept from another party or upon which the Licensor will exploit such right itself. The Licensee shall be required to accept only financial terms and conditions that may be satisfied as easily by one person as by another. The Licensor shall send to the Licensee written notice of each of such terms and conditions.

3. LICENSE FEE

Zone No. 1: US$4,000.- per episode

Zone No. 2: US$6,000.- per episode

4. MANNER OF PAYMENT

Zone No. 1: US$4,000.- X 84 eps. = Total US$336,000.-

Down payment of US$25,000.- shall be made upon signing this Agreement.

US$25,000.- - no later than December 31, 1984.

The balance of US$286,000.- shall be paid in the following install-ments:

US$28,600.- - no later than January 31, 1985.

US$28,600.- - no later than March 15, 1985.

US$28,600.- - no later than September 30, 1985.

US$28,600.- - no later than December 31, 1985.

US$28,600.- - no later than March 31, 1986.

US$28,600.- - no later than June 30, 1986.

US$28,600.- - no later than September 30, 1986.

US$28,600.- - no later than December 31, 1986.

HG00000093

4

US$28,600.- - no later than March 31, 1987.

US$28,600.- - no later than June 30, 1987.

Zone No. 2: US$6,000.- X 84 eps. = Total US$504,000.-

The total sum of US$504,000.- shall be paid in the following quarter-annual installments.

US$63,000.- - no later than March 31, 1986.

US$63,000.- - no later than June 30, 1986.

US$63,000.- - no later than September 30, 1986.

US$63,000.- - no later than December 31, 1986.

US$63,000.- - no later than March 31, 1987.

US$63,000.- - no later than June 30, 1987.

US$63,000.- - no later than September 30, 1987.

US$63,000.- - no later than December 31, 1987.

5.  COPYRIGHT

The Licensor, as the exclusive author and owner of all worldwide copyrights, moral rights and rights of publication in and to the underlying series, grants to the Licensee exploitation of the copyrights in accordance with provisions in this Agreement whereby the Licensee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, diffuse, display, market, edit, dub, translate, arrange musically, transform, dramatize and otherwise adapt and prepare derivative works based on, advertise, and otherwise dispose of and exploit the underlying series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof, using any methods or devices of exploitation with limitation as provided in A, B, C of Article 6 herein. The Licensor represents and warrants that the underlying series, and the rights granted to the Licensee, do not and will not infringe upon the rights of any third party, and are and will be free of any right, claim or encumbrance of any third party. The Licensee is authorized to register the transfer of rights and licenses to the Licensee as set forth in this Agreement in any copyright, trademark or other appropriate register in Japan or elsewhere to protect the Licensee's rights and licenses under this Agreement. The Licensor and the Licensee shall be joint owners of copyrights in the underlying series for the territories licensed to the Licensee during the license period and shall take necessary legal measures to protect such copyrights from infringement or copying by any third party including registration of trademarks or copyright, and the use of copyright notices in the joint names of the Licensor and the Licensee. All trademarks utilized by the Licensee in connection with the exercise of its rights under this Agreement, other than the existing titles of the underlying

HG00000094

4

series, shall belong jointly to the Licensor and the Licensee and utilization of such trademarks shall be automatically renewed at the termination of this Agreement for a reasonable length of period mutually agreed upon unless such termination is due to default on the part of the Licensee. With respect to any new materials created by the Licensee, copyright and all other rights in such materials shall also belong jointly to the Licensor and the Licensee.

6. <u>MERCHANDISING RIGHTS</u>

The Licensee is the lawful and authorized representative to exercise merchandising rights related to the underlying series in the licensed territories specified in Article 1 herein except for such items and articles as set forth below.

A. With regard to MACROSS series, die-cast toys and other toys manufactured in Japan by Takatoku Toys and plastic model kits made by Imai Chemical Co. for domestic and overseas markets shall be excluded.

B. With regard to MOSPEADA series, die-cast toys and other toys manufactured in Japan by Gakken Co. and plastic model kits made by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

C. With regard to THE SOUTHERN CROSS series, plastic model kits manufactured in the past by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

The Licensor shall not engage in or authorize, except as allowed in A, B and C above, any merchandising exploitation related to the underlying series in any of the territories licensed to the Licensee hereunder at any time during the license period.

7. <u>COMPENSATION FOR MERCHANDISING</u>

A. In connection with exercise by the Licensee of merchandising rights granted hereunder, as distinguished from any other rights granted hereunder, the Licensee shall pay to the Licensor fifty (50) percent of net revenue after deduction of ten (10) percent of merchandising expenses from the total proceeds actually received by the Licensee in case sales are made directly by the Licensee whereas the Licensee shall pay to the Licensor fifty (50) percent of net revenue without deduction of merchandising expenses provided that sales are made through third parties.

B. The Licensee shall not be beneficiary of revenues accrued by sales of articles licensed in the past by the Licensor to and produced by Takatoku Toys, Gakken Co., Imai Chemical Co., and Arii Works regardless of whether or not such sales are made inside or outside of Japan.

HG00000095

4

C. With regard to such articles produced in Japan as not included in the Licensee's schedule of merchandising exploitation, the Licensor may export them individually to markets in the licensed territories hereunder with prior consent of the Licensee who shall have option priority on such articles. In case the Licensor exports such articles in compliance with the aforesaid provision, the Licensee shall not be beneficiary of revenues accrued by such exportation.

D. The Licensee shall pay the Licensor's share of merchandising revenue to the Licensor on a quarter-annual basis, for the period of January 1 through March 31, April 1 through June 30, July 1 through September 30, and October 1 through December 31 of each year, with payment forty-five (45) days after the end of each applicable period, and the Licensee shall make monthly business reports available to the Licensor during the license period.

E. The initial term of merchandising agreement is seven (7) years from the date hereof as provided in Article 2 herein. However, in case the total amount of the Licensor's share of merchandising revenue fails to reach US$120,000.- in the first three and a half years and US$80,000.- in the second three and a half years of the license period, the Licensor shall be entitled to eliminate the merchandising license portion from this Agreement unless the Licensee takes measures acceptable by the Licensor to cure the deficit.

8. SPECIAL PROVISIONS

A. Limiting to German-speaking territories, home video and video disc rights which constitute a part of rights granted hereunder shall be excluded. With regard to publication rights for said territories, the Licensee shall present to the Licensor a project plan including natures and contents of publications in each instance of publication for the Licensor's prior consent and approval.

B. The Licensor is entitled to make an audit in each twelve (12) months after providing the Licensee with advance written notice requesting audit.

C. If the Licensee fails to perform its obligations hereunder, the Licensor is entitled to terminate this Agreement in its entirety or partially merchandising exploitation provisions only without prejudice to any of its rights against the Licensee. Such termination shall be made only after the Licensee's receipt of written notice stating in detail the Licensee's failure. However, the Licensee has the right to confirm and cure the failure within sixty (60) days after receipt of the written notice. Notwithstanding any termination, pre-existing licenses entered into by the Licensee shall not be disturbed in any way.

HG00000096

D. In case any dispute arises between the two parties in connection with this Agreement, it shall be settled with the bona fide efforts on the part of each party. The parties hereto mutually agree that if no settlement is reached after exertion of such efforts, the dispute shall be submitted to the competent court in Tokyo, Japan, whose decision shall be final and binding upon both parties.

E. The Licensee has first refusal right for territories other than countries in Asia, and Zone No. 1 and Zone No. 2 specified in Article 1 herein.

F. This Agreement is subject to force majeure.

9. REEDITION, ALTERATION, AND MODIFICATION

The Licensee is entitled to reedit, alter, or modify any and all the underlying series as the Licensee determines to conform with marketing requirements including addition of different language dialogue, new stories, new sound effects, new music, a new title or titles and credits to personnel utilized by the Licensee in connection with any such activity. However, such reedition, alteration, or modification shall be done in a reasonable manner acceptable by the Licensor which does not detract from the underlying series.

10. ASSIGNMENT AND SUBLICENSE

The Licensee shall have the right to assign, license, delegate, lend or otherwise transfer its rights, options or privileges granted hereunder in whole or in part to any third party, but in no case the Licensee shall transfer its obligations to the Licensor to any third party.

IN WITNESS WHEREOF, the parties hereto signed hereunder to execute this Agreement on the date first above written.

TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD, LTD.

_____        _____

HG00000097

# EXHIBIT C

# FORM PA

# CERTIFICATE OF COPYRIGHT REGISTRATION

UNITED STATES COPYRIGHT OFFICE



This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*Donald C Curman*

ACTING REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

| REGISTRATION NUMBER |
| --- |
| PAU 740 323 |

| PA | PAU |

| EFFECTIVE DATE OF REGISTRATION |
| --- |
| 3 (Month)   28 (Day)   85 (Year) |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

## (1) Title

**TITLE OF THIS WORK:**
MACROSS        Episodes 1-36
1. Booby Trap   3. Spacefold
2. Countdown    4. Lin Minmei (See PA/CON for 5-36)

**NATURE OF THIS WORK:** (See instructions)
MOTION PICTURE

**PREVIOUS OR ALTERNATIVE TITLES:**

## (2) Author(s)

**IMPORTANT:** Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

**1**

**NAME OF AUTHOR:**
TATSUNOKO PRODUCTION COMPANY, LTD.
Was this author's contribution to the work a "work made for hire"?   Yes X   No

**DATES OF BIRTH AND DEATH:**
Born ......... Died .........
(Year)         (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of ................ } or { Domiciled in Japan
(Name of Country)                    (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?   Yes ...... No ......
Pseudonymous?   Yes ...... No ......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)
Entire Work including animation, story, soundtrack

**2**

**NAME OF AUTHOR:**
Was this author's contribution to the work a "work made for hire"?   Yes ...... No ......

**DATES OF BIRTH AND DEATH:**
Born ......... Died .........
(Year)         (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of ................ } or { Domiciled in ................
(Name of Country)                    (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?   Yes ...... No ......
Pseudonymous?   Yes ...... No ......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

**3**

**NAME OF AUTHOR:**
Was this author's contribution to the work a "work made for hire"?   Yes ...... No ......

**DATES OF BIRTH AND DEATH:**
Born ......... Died .........
(Year)         (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of ................ } or { Domiciled in ................
(Name of Country)                    (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?   Yes ...... No ......
Pseudonymous?   Yes ...... No ......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

## (3) Creation and Publication

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:**
Year 1983
(This information must be given in all cases.)

**DATE AND NATION OF FIRST PUBLICATION:**
Date ................ (Month) (Day) (Year)
Nation ................ (Name of Country)
(Complete this block ONLY if this work has been published.)

## (4) Claimant(s)

**NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):**
HARMONY GOLD U.S.A., INC.   AND   TATSUNOKO PRODUCTION COMPANY, LTD.
8831 Sunset Blvd. Ste 300          c/o Harmony Gold U.S.A., Inc.
Los Angeles, CA. 90069             8831 Sunset Blvd. Ste 300
                                   Los Angeles, CA 90069

**TRANSFER:** (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)
Agreement

- Complete all applicable spaces (numbers 5-9) on the reverse side of this page
- Follow detailed instructions attached   • Sign the form at line 8

**DO NOT WRITE HERE**
Page 1 of 3 pages

HG00000098

*Amended and added by C.O. authority telephone conversation with Susan Christison on May 17, 1985.

PAU __ 740 323

| EXAMINED BY: | | APPLICATION RECEIVED: |
|---|---|---|
| CHECKED BY: | | |
| CORRESPONDENCE: ☐ Yes | | DEPOSIT RECEIVED: MAR 28 1985 |
| DEPOSIT ACCOUNT FUNDS USED: ☐ | | REMITTANCE NUMBER AND DATE: 505997 MAR 28 85 |

FOR COPYRIGHT OFFICE USE ONLY

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET ( FORM PA/CON)**

**\* PREVIOUS REGISTRATION:**

- Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes . . . X . . . . No . . . . . . .

- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form.
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☒ This is a changed version of the work, as shown by line 6 of the application.

- If your answer is "Yes," give: Previous Registration Number . . . . . . . . . . . . . . . Year of Registration . . . . . . . . . . . . . . .

**⑤ Previous Registration**

---

**✱ COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

. . . . . English version including animation

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

. . . . Japanese soundtrack and story

**⑥ Compilation or Derivative Work**

---

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: . . . . . . . . . . . . . . . . . . . . .

Account Number: . . . . . . . . . . . . . . .

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: Harmony Gold U.S.A., Inc.

Address: 8831 Sunset Blvd. Ste. #300
(Apt.)

Los Angeles, CA        90069
(City)        (State)        (ZIP)

**⑦ Fee and Correspondence**

---

**CERTIFICATION:** ✱ I, the undersigned, hereby certify that I am the: (Check one)
☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☒ authorized agent of: Harmony Gold U.S.A., Inc.
(Name of author or other copyright claimant, or owner of exclusive right(s))
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) . . . . . . . . . . . . . . . .

Typed or printed name. Frank Agrama, President        Date 3/15/85

**⑧ Certification (Application must be signed)**

---

HARMONY GOLD U.S.A., INC.
(Name)
8831 Sunset Blvd. Suite 300
(Number Street and Apartment Number)
Los Angeles, CA   90069
(City)        (State)        (ZIP code)

**MAIL CERTIFICATE TO**

(Certificate will be mailed in window envelope)

**⑨ Address For Return of Certificate**

---

✱ 17 U.S.C. §506(e) FALSE REPRESENTATION—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
☆ U.S. GOVERNMENT PRINTING OFFICE: 1980-311-425/2

Jan. 1980—500,000

HG00000099

# CONTINUATION SHEET FOR FORM PA

## FORM PA/CON

UNITED STATES COPYRIGHT OFFICE

- If at all possible, try to fit the information called for into the spaces provided on Form PA.
- If you do not have space enough for all of the information you need to give on Form PA, use this continuation sheet and submit it with Form PA.
- If you submit this continuation sheet, leave it attached to Form PA. Or, if it becomes detached, clip (do not tape or staple) and fold the two together before submitting them.
- **PART A** of this sheet is intended to identify the basic application. **PART B** is a continuation of Space 2. **PART C** is for the continuation of Spaces 1, 4, or 6. The other spaces on Form PA call for specific items of information, and should not need continuation.

| REGISTRATION NUMBER |
| --- |
| PAU — 740-323 |
| PA          PAU |

EFFECTIVE DATE OF REGISTRATION

3         28         85
(Month)    (Day)    (Year)

CONTINUATION SHEET RECEIVED

MAR 28 1985

Page 3 of 3 pages

---

**DO NOT WRITE ABOVE THIS LINE.  FOR COPYRIGHT OFFICE USE ONLY**

---

### (A) Identification of Application

**IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on Form PA, submitted for the following work:

- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of Form PA.)

  MACROSS

- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of Form PA.)

Harmony Gold U.S.A., Inc. 8831 Sunset Blvd. Ste 300, Los Angeles, CA 90069

---

### (B) Continuation of Space 2

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"?   Yes......   No......

**DATES OF BIRTH AND DEATH:**
Born .......... Died .........
(Year)          (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**

Citizen of ....................... } or { Domiciled in .......................
(Name of Country)                    (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?   Yes......   No......
Pseudonymous?   Yes......   No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

---

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"?   Yes......   No......

**DATES OF BIRTH AND DEATH:**
Born .......... Died .........
(Year)          (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**

Citizen of ....................... } or { Domiciled in .......................
(Name of Country)                    (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?   Yes......   No......
Pseudonymous?   Yes......   No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

---

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"?   Yes......   No......

**DATES OF BIRTH AND DEATH:**
Born .......... Died .........
(Year)          (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**

Citizen of ....................... } or { Domiciled in .......................
(Name of Country)                    (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous?   Yes......   No......
Pseudonymous?   Yes......   No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

---

### (C) Continuation of Other Spaces

**CONTINUATION OF** (Check which):   ☒ Space 1   ☐ Space 4   ☐ Space 6

5. The Transformation
6. The Daidarus Attack
7. Bye-Bye Mars
8. The Longest Birthday
9. Miss Macross
10. The Blind Game
11. First Contact
12. The Big Escape
13. Blue Wind
14. Gloval's Report
15. Chinatown
16. Kung Fu Dandy

17. Phantasm
18. Pineapple Salad
19. Bursting Point
20. Paradise Lost
21. Micro-Cosmos
22. Love Concert
23. Drop Out
24. Goodbye Girl
25. Virgin Road
26. The Messenger
27. Love Floats Away
28. My Album

29. Loli's Song
30. Viva Mariya
31. Satan's Dolls
32. Broken Heart
33. Rainy Night
34. Private Time
35. Romanesque
36. A Gentle Farewell

HG00000100

# HOW TO FILL OUT FORM PA

## Specific Instructions for Spaces 1-4

- The line-by-line instructions on this page are keyed to the spaces on the first page of Form PA, printed opposite.
- Please read through these instructions before you start filling out your application, and refer to the specific instructions for each space as you go along.

## SPACE 1: TITLE

- **Title of this Work:** Every work submitted for copyright registration must be given a title that is capable of identifying that particular work. If the copies or phonorecords of the work bear a title (or an identifying phrase that could serve as a title), transcribe its wording completely and exactly on the application. Remember that indexing of the registration and future identification of the work will depend on the information you give here.

If the work you are registering is an entire "collective work" (such as a collection of plays or songs), give the over-all title of the collection. If you are registering one or more individual contributions to a collective work, give the title of each contribution, followed by the title of the collection. Example: " 'A Song for Elinda' in *Old and New Ballads for Old and New People.*"

- **Nature of this Work:** Briefly describe the general nature or character of the work being registered for copyright. Examples: "Music"; "Song Lyrics"; "Words and Music"; "Drama"; "Musical Play"; "Choreography"; "Pantomime"; "Motion Picture"; "Audiovisual Work".
- **Previous or Alternative Titles:** Complete this space if there are any additional titles for the work under which someone searching for the registration might be likely to look, or under which a document pertaining to the work might be recorded.

## SPACE 2: AUTHORS

- **General Instructions:** First decide, after reading these instructions, who are the "authors" of this work for copyright purposes. Then, unless the work is a "collective work" (see below), give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work. If you need further space, use the attached Continuation Sheet and, if necessary, request additional Continuation Sheets (Form PA/CON).
- **Who is the "Author"?** Unless the work was "made for hire," the individual who actually created the work is its "author." In the case of a work made for hire, the statute provides that "the employer or other person for whom the work was prepared is considered the author."
- **What is a "Work Made for Hire"?** A "work made for hire" is defined as: (1) "a work prepared by an employee within the scope of his or her employment"; or (2) "a work specially ordered or commissioned" for certain uses specified in the statute, but only if there is a written agreement to consider it a "work made for hire."
- **Collective Work:** In the case of a collective work, such as a song book or a collection of plays, it is sufficient to give information about the author of the collective work as a whole.
- **Author's Identity Not Revealed:** If an author's contribution is "anonymous" or "pseudonymous," it is not necessary to give the name and dates for that author. However, the citizenship or domicile of the author **must** be given in all cases, and information about the nature of that author's contribution to the work should be included.
- **Name of Author:** The fullest form of the author's name should be given. If you have checked "Yes" to indicate that the work was "made for hire," give the full legal name of the employer (or other person for whom the work was prepared). You may also include the name of the employee (for example: "Music Makers Publishing Co., employer for hire of Lila Crane"). If the work is "anonymous" you may: (1) leave the line blank, or (2) state "Anonymous" in the line, or (3) reveal the author's identity. If the work is "pseudonymous" you may (1) leave the line blank, or (2) give the pseudonym and identify it as such (for example: "Huntley Haverstock, pseudonym"), or (3) reveal the author's name, making clear which is the real name and which is the pseudonym (for example, "Judith Barton, whose pseudonym is Madeleine Lister").

- **Dates of Birth and Death:** If the author is dead, the statute requires that the year of death be included in the application unless the work is anonymous or pseudonymous. The author's birth date is optional, but is useful as a form of identification. Leave this space blank if the author's contribution was a "work made for hire."
- **"Anonymous" or "Pseudonymous" Work:** An author's contribution to a work is "anonymous" if that author is not identified on the copies or phonorecords of the work. An author's contribution to a work is "pseudonymous" if that author is identified on the copies or phonorecords under a fictitious name.
- **Author's Nationality or Domicile:** Give the country of which the author is a citizen, or the country in which the author is domiciled. The statute requires that either nationality or domicile be given in all cases.
- **Nature of Authorship:** After the words "Author of" give a brief general statement of the nature of this particular author's contribution to the work. Examples: "Words"; "Co-Author of Music"; "Words and Music"; "Arrangement"; "Co-Author of Book and Lyrics"; "Dramatization"; "Entire Work"; "Compilation and English Translation"; "Editorial Revisions".

## SPACE 3: CREATION AND PUBLICATION

- **General Instructions:** Do not confuse "creation" with "publication." Every application for copyright registration must state "the year in which creation of the work was completed." Give the date and nation of first publication only if the work has been published.
- **Creation:** Under the statute, a work is "created" when it is fixed in a copy or phonorecord for the first time. Where a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.

- **Publication:** The statute defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; a work is also "published" if there has been an "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." Give the full date (month, day, year) when, and the country where, publication first occurred. If first publication took place simultaneously in the United States and other countries, it is sufficient to state "U.S.A."

## SPACE 4: CLAIMANT(S)

- **Name(s) and Address(es) of Copyright Claimant(s):** Give the name(s) and address(es) of the copyright claimant(s) in this work. The statute provides that copyright in a work belongs initially to the author of the work (including, in the case of a work made for hire, the employer or other person for whom the work was prepared). The copyright claimant is either the author of the work or a person or organization that has obtained ownership of the copyright initially belonging to the author.

- **Transfer:** The statute provides that, if the copyright claimant is not the author, the application for registration must contain "a brief statement of how the claimant obtained ownership of the copyright." If any copyright claimant named in space 4 is not an author named in space 2, give a brief, general statement summarizing the means by which that claimant obtained ownership of the copyright.

HG00000101

# EXHIBIT D

ORIGINAL

# A G R E E M E N T



HG00000102

21

<u>A G R E E M E N T</u>

THIS AGREEMENT is entered into this 15th day of March, 1991 by and between

TATSUNOKO PRODUCTION CO., LTD.
3-22-12, Minami-cho, Kokubunji-shi,
Tokyo, Japan

(hereinafter referred to as the Licensor)

- and -

HARMONY GOLD, USA.
7655 Sunset Boulevard
Los Angeles, CA 90046-2700
U.S.A.

(hereinafter referred to as the Licensee)

WHEREBY IT IS AGREED as follows:

The Licensor hereby grants exclusively and irrevocably to the Licensee the rights to exploit the animated television programs described below produced and owned by the Licensor on the terms and conditions set out below, which rights include, but are not limited to, television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications.

PROGRAMS & PARTICULARS

MACROSS: 1/2 hour X 36 episodes

MOSPEADA: 1/2 hour X 25 episodes

THE SOUTHERN CROSS: 1/2 hour X 23 episodes

TOTAL: 84 episodes

1. TERRITORIES

Worldwide territories excluding Japan and all other Asian territories.

2. PERIOD OF LICENSE

The initial period of license is ten (10) years from the date hereof and the license period shall be renewable at the end of every ten years on the terms and conditions mutually agreed upon. At the Licensee's request, the Licensor shall negotiate with the Licensee reasonably and in good faith so that the Licensor shall grant to the Licensee further ten (10) year license period hereunder. If, for any reason, the Licensor and the Licensee shall not agree upon such terms and conditions,

- 1 -

HG00000103

21

the Licensor shall not license any of the rights licensed to the Licensee hereunder to any other party, or exploit those rights itself, without first providing to the Licensee the exclusive right for thirty (30) days to match terms and conditions that the Licensor is prepared to accept from another party or upon which the Licensor will exploit such right itself. The Licensee shall be required to accept only financial terms and conditions that may be satisfied as easily by one person as by another. The Licensor shall send to the Licensee a written notice of each of such terms and conditions.

3. LICENSE FEE

License fee for TV and other visual rights: US$3,000.00 per episode.

> Total: US$3,000 X 84 episodes = US$252,000.00

Minimum guarantee for merchandising royalty = US$50,000.00

4. MANNER OF PAYMENT

The total sum of US$302,000.00 (US$252,000 for visual rights and US$50,000 for minimum guarantee for merchandising) shall be paid in a lump-sum payment upon signing this Agreement.

5. COPYRIGHT

The Licensor, as the exclusive author and owner of all world-wide copyrights, moral rights and rights of publication in and to the underlying series, grants to the Licensee exploitation of the copyrights in accordance with provisions in this Agreement whereby the Licensee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, diffuse, display, market, edit, dub, translate, arrange musically, transform, dramatize and otherwise adapt and prepare derivative works based on, advertise, and otherwise dispose of and exploit the underlying series, and any and all versions, character, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof, using any methods or devices of exploitation with limitation as provided in A, B, C of Article 6 herein. The Licensor represents and warrants that the underlying series, and the rights granted to the Licensee, do not and will not infringe upon the rights of any theird party, and are and will be free of any right, claim or encumbrance of any third party. The Licensee is authorized to register the transfer of rights and licenses to the Licensee as set forth in this Agreement in any copyright, trademark or other appropriate register in Japan or elsewhere to protect the Licensee's rights and licenses under this Agreement. The Licensor and the Licensee shall be joint owners of copyrights in the underlying series for the territories licensed to the Licensee during the license period and shall take necessary legal measures to protect such copyrights from infringement or copying by any third party including registration of trademarks or copyright, and the use of copyright notices in the joint

HG00000104

names of the Licensor and the Licensee. All trademarks utilized by the Licensee in connection with the exercise of its rights under this Agreement, other than the existing titles of the underlying series, shall belong jointly to the Licensor and the Licensee and utilization of such trademarks shall be automatically renewed at the termination of this Agreement for a reasonable length of period mutually agreed upon unless such termination is due to default on the part of the Licensee. With respect to any new materials created by the Licensee, copyright and all other rights in such materials shall also belong jointly to the Licensor and the Licensee.

6. MERCHANDISING RIGHTS

The Licensee is the lawful and authorized representative to exercise merchandising rights related to the underlying series in the licensed territories specified in Article 1 herein except for such items and articles as set forth below.

A. With regard to MACROSS series, die-cast toys and other toys manufactured in Japan by Takatoku Toys and plastic model kits made by Imai Chemical Co. for domestic and overseas markets shall be excluded.

B. With regard to MOSPEADA series, die-cast toys and other toys manufactured in Japan by Gakken Co. and plastic model kits made by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

C. With regard to THE SOUTHERN CROSS series, plastic model kits manufactured in the past by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

The Licensor shall not engage in or authorize, except as allowed in A, B and C above, any merchandising exploitation related to the underlying series in any of the territories licensed to the Licensee hereunder at any time during the license period.

7. COMPENSATION FOR MERCHANDISING

A. In connection with exercise by the Licensee of merchandising rights granted hereunder, as distinguished from any other rights granted hereunder, the Licensee shall pay to the Licensor twenty-five (25) percent of net revenue after deduction of ten (10) percent of merchandising expenses from the total proceeds actually received by the Licensee in case sales are made directly by the Licensee whereas the Licensee shall pay to the Licensor twenty-five (25) percent of net revenue without deduction of merchandising expenses provided that sales are made through third parties. Further, it is agreed by the parties hereto that the minimum guarantee of US50,000 paid the Licensor as specified in Article 3 shall constitute part of the Licensor's share of merchandising royalty.

B. The Licensee shall not be beneficiary of revenues accrued by sales of articles licensed in the past by the Licensor to and produced by Takatoku Toys, Gakken Co., Imai Chemical Co., and Arii Works regardless of whether or not such sales are made inside or outside of Japan.

HG00000105

C. With regard to such articles produced in Japan as not included in the Licensee's schedule of merchandising exploitation, the Licensor may export them individually to markets in the licensed territories hereunder with prior consent of the Licensee who shall have option priority on such articles. In case the Licensor exports such articles in compliance with the aforesaid provision, the Licensee shall not be benificiary of revenues accrued by such exportation.

D. The Licensee shall pay the Licensor's share of merchandising revenue to the Licensor on a semiannual basis, for the period of January 1 through June 30 and July 1 through December 31 of each year. Such payment shall be made within forty-five (45) days after the end of each applicable period, and the Licensee shall make monthly business reports available to the Licensor during the license period.

E. The initial term of merchandising agreement is ten (10) years from the date hereof as provided in Article 2 herein.

8. SPECIAL PROVISIONS

A. The Licensor is entitled to make an audit each twelve (12) months after providing the Licensee with advance written notice requesting audit.

B. If the Licensee fails to perform its obligations hereunder, the Licensor is entitled to terminate this Agreement in its entirety or partially merchandising exploitation provisions only without prejudice to any of its rights against the Licensee. Such termination shall be made only after the Licensee's receipt of written notice stating in detail the Licensee's failure. However, the Licensee has the right to confirm and cure the failure within sixty (60) days after receipt of the written notice. Notwithstanding any termination, pre-existing licenses entered into by the Licensee shall not be disturbed in any way.

C. In case any dispute arises between the two parties hereto in connection with this Agreement, it shall be settled with the bona fide efforts on the part of each party. The parties hereto mutually agree that if no settlement is reached after exertion of such efforts, the dispute shall be submitted to the competent court in Tokyo, Japan, whose decision shall be final and binding upon both parties.

D. This Agreement is subject to force majeure.

9. REEDITION, ALTERATION, AND MODIFICATION

The Licensee is entitled to reedit, alter, or modify any and all the underlying series as the Licensee determines to conform with marketing requirements including addition of different language dialogue, new stories, new sound effects, new music, a new title or titles and credits to personnel utilized by the Licensee in connection with any such activity. However, such redition, alteration, or modification shall be done in a reasonable manner acceptable by the Licensor which does not detract from the under-

HG00000106

21

15. ASSIGNMENT AND SUBLICENSE.

The Licensee shall have the right to assign, license, delegate, lend or otherwise transfer its rights, options or privileges granted hereunder in whole or in part to any third party, but in no case the Licensee shall transfer its obligations to the Licensor to any third party.

IN WITNESS WHEREOF, the parties hereto have signed hereunder to execute this Agreement on the date first above written.


TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD, USA ~~LTD.~~

_____               _____


- 5 -

HG00000107

# EXHIBIT E

26

## AMENDMENT TO MAIN AGREEMENT

THIS AMENDMENT is entered into as of August 6, 1998 by and between

TATSUNOKO PRODUCTION CO., LTD. ("Tatsunoko")
3-22-12, Minami-cho, Kokubunji-shi,
Tokyo, Japan

(hereinafter referred to as the Licensor)

- and -

USA
HARMONY GOLD LTD. ("Harmony Gold")
7655 Sunset Boulevard,
Los Angeles, California 90046
U.S.A.

(hereinafter referred to as the Licensee)



Reference is made to that certain MAIN LICENSE AGREEMENT dated March 15, 1991 between Tatsunoko and Harmony Gold, as amended by that certain AMENDMENT dated February 19, 1993 between Tatsunoko and Harmony Gold (collectively the "Main Agreement").

WHEREBY, as Harmony Gold wishes to extend its rights described in the Main Agreement in and to the television programs listed below (the "Programs"):

    a. "MACROSS" (36 1/2 hour episodes);
    b. "MOSPEADA" (25 1/2 hour episodes): and
    c. "THE SOUTHERN CROSS" (23 1/2 hour episodes)

IT IS AGREED as follows:

1. PAYMENTS - As consideration for the rights granted in this Amendment, Harmony Gold agrees to pay Tatsunoko the sum Two Hundred Fifty Two Thousand united States Dollars (US$252,000), payable in ten equal 6 month installments, commencing on June 1, 1999 (the "Renewal Fee").

- 1 -

HG00000108

26

2. RIGHTS GRANTED - Tatsunoko hereby irrevocably extends the grant of exclusive rights to Harmony Gold described in the Main Agreement in and to the Programs. Such exclusive rights shall include all rights in all media now existing or hereafter invented, including, but not limited to, theatrical, non-theatrical, television, video, merchandising, soundtrack and publication rights, excluding only the merchandising rights in Japan previously granted to certain Japanese manufacturers as set forth in the Main Agreement. Notwithstanding anything to the contrary in the Main Agreement, all trademarks, copyrights and other rights in any materials created or utilized by Harmony Gold in connection with the exercise of its rights under the Main Agreement, including, but not limited to, the right to the name "ROBOTECH", shall be exclusively owned and controlled throughout the universe in perpetuity by Harmony Gold. Notwithstanding the foregoing, harmony Gold shall not have the right to make a sequel to "Macross", "Mospeada" or "The Southern Cross".

3. TERRITORIES and LANGUAGES - Worldwide, excluding Japan. With respect to television distribution in Asia (excluding Japan), Harmony Gold's right to distribute the Programs shall be limited to English language ROBOTECH series. Notwithstanding the provision of this clause, Tatsunoko shall have the right to distribute the three licensed Programs independently for the Asian Satellite Broadcasting limiting to use in Asian languages even if the territories of Australia and New Zealand come under its coverage.

4. TERM - Tatsunoko hereby grants to Harmony Gold a Renewal Term of ten (10) years through and including March 14, 2011. In addition, provided Harmony Gold has complied with the terms of the Agreement, and provided Harmony Gold wishes to extend the Renewal Term for an additional ten (10) years (through and including March 14, 2021), Harmony Gold will notify Tatsunoko of its interest in extending the Term. In which case, the parties agree to negotiate in good faith for such renewal using the payment terms of this Amendment as a guideline.

This Amendment and the Main Agreement will be governed by the laws of the State of California of the United States of America and all disputes shall be resolved by binding arbitration in Los Angeles, California pursuant to the rules of the American Film Marketing Association. Except as amended herein, all of the rights and obligations set forth in the Main Agreement remain in full force and effect. This Amendment is executed as of the date set forth above by duly authorized officers of the parties hereto.

(✱) For the avoidance of doubt, the Japanese exclusion and the Asian/English language limitation will not apply to any new Robotech series to be produced by Harmony Gold.

HG00000109

TATSUNOKO PRODUCTION CO., LTD.          HARMONY GOLD ~~LTD.~~

26

KEN YOSHIDA                                                    April 12 199





HG00000110

# EXHIBIT F

27

## AMENDMENT TO MAIN LICENSE AGREEMENT#2

THIS AMENDMENT is entered into as of June 28, 2002 by and between TATSUNOKO PRODUCTION CO., LTD. (the Licensor) and HARMONY GOLD, U.S.A. (the Licensee).

Reference is made to a certain License Agreement dated March 15, 1991 and to Amendment dated August 6, 1998 on three (3) animated TV series namely "Macross", "Mospeada" and "The Southern Cross"

Whereby it is agreed that the term of License Agreement in 4 of the said Amendment is further extended up to March 14, 2021. Moreover, if the Licensee desires to extend the license further again, the Licensor agrees to do so on the same or considerably the same conditions as this Amendment unless the Licensee is in default of fulfilling its obligations during the existing license period including appropriate payment of the License's share of royalties. For the avoidance of doubt, the parties hereto agree that the Licensee has fulfilled its obligations to date under the License Agreement and the August 6, 1998 Amendment.

As consideration for the extension of license, the Licensee agrees to pay to the Licensor US$125,000 which shall be payable upon execution of this Amendment.

In addition to the extension of license as provided above, the Licensor grants a new right to the Licensee as described below:

1. The Licensor, as the owner of copyright, grants production right of derivative works and sequels to the animated TV series "Mospeada" and "The Southern Cross" excluding "Macross".

2. In exchange for use of copyright for the production of derivative works and sequels, the Licensee agrees to pay to the Licensor US$50,000 which shall be payable upon execution of this Amendment.

3. With regard to the merchandising activities and other secondary exploitation of the derivative works and sequels to "Mospeada" and "The Southern Cross", the Licensee agrees to pay to the Licensor ten percent (10%) of net revenues accrued and received by the Licensee from such business transaction throughout their existence. Nevertheless, the share of royalties stipulated in the Main License Agreement remains unchanged.

4. In further consideration of the foregoing, the Licensee hereby agrees not to exploit the video and game soft rights, as well as the broadcast distribution rights, to the theatrical version of "Macross, Do You Remember Love".

In confirmation of the above, the parties hereto have signed hereunder to execute this Amendment on the date first above written.

TATSUNOKO PRODUCTION CO., LTD.          HARMONY GOLD, U.S.A.

_KENJI YOSHIDA_                          _Neo Tanue_

HG00000111

# EXHIBIT G

28

Tatsunoko Production Co. Ltd.
3-22-12 Minami-Cho
Kokubunjo-Shi
Tokyo, Japan

As of January 20, 2003

Re:    Macross

Dear Mr. Narushima:

This amendment is entered into as of January 20, 2003 by and between Tatsunoko Production Co. Ltd. ("Licensor") and Harmony Gold USA, Inc. ("Licensee") in reference to that certain Agreement between Licensor and Licensee dated March 15, 1991.

For good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Licensor hereby grants to Licensee whatever rights Licensor has (if any) in the copyright of the original 36 episode series Macross (the "Series").

Licensee expressly acknowledges that Licensor is not granting Licensee any rights to create derivative works using the original 41 characters as contained in the Series.

TATSUNOKO PRODUCTION CO. LTD.                    HARMONY GOLD USA, INC.

HG00000050

# EXHIBIT H

35

# AMENDMENT TO ORIGINAL AGREEMENT

THIS AMENDMENT is entered into as of March 20, 2008 by and between Tatsunoko Production Co., Ltd. (hereinafter referred to as Tatsunoko) and Harmony Gold Ltd. (hereinafter referred to as Harmony Gold). Tatsunoko and Harmony Gold hereby agree to constitute an amendment to " AGREEMENT" dated March 15, 1991 between Tatsunoko and Harmony Gold, as amended February 19, 1993, April 15, 1993, August 6, 1998, June 28, 2002, January 20, 2003 and September 19, 2003 (hereinafter referred to as the Original Agreement), regarding the English and Japanese version of the television program entitled, Macross, Mospeada and Southern Cross(collectively referred to as "Robotech"). Unless otherwise specified , all terms used herein have the same meaning as in the Original Agreement. The parties agree as follows:

1) Tatsunoko agrees to removed the language limitation in the Original Agreement for the territory of Asia, excluding Japan and Free TV in Indonesia. Both parties understand that the removal of the language limitation related to Robotech will now extend until the expiration of the Agreement (i.e.,March 14,2021).

2) Also, both parties acknowledge that Tatsunoko has retained the right to exploit the free television rights to Macross, Mospeada and Sotbern Cross in Indonesia,in the Indonesian language only.

Except as modified by the foregoing, all other terms and conditions of the Original Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date the parties mutually signed hereunder.

TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD

Koki Narushima                                          Frank Agrama
CEO                                                              CEO

HG00000049