# EXHIBIT I

# FARELLA BRAUN & MARTEL LLP

ATTORNEYS AT LAW

RUSS BUILDING, 30TH FLOOR
235 MONTGOMERY STREET
SAN FRANCISCO, CA 94104

TELEPHONE:   (415) 954-4400
FACSIMILE:    (415) 954-4480

WINE COUNTRY OFFICE
TELEPHONE:   (707) 967-4000

DAVID E. STOLL
(415) 954-4964

July 30, 1999

VIA FAX AND CERTIFIED MAIL
FAX NO. (714) 816-6710

Mr. Mark Tsuki
President & CEO
Bandai America, Inc.
5551 E. Katella Avenue
Cypress, CA 90630

  Re:  Potential Infringement of the Trademark MACROSS

Dear Mr. Tsuji:

  We are writing to you on behalf of our client, Harmony Gold USA, Inc. ("Harmony Gold"), for the purpose of enforcing its rights in connection with the above-referenced title.

  Please be advised that Harmony Gold owns the exclusive right to exploit all the intellectual property, including trademarks and copyrights, associated with the ROBOTECH, MACROSS, MOSPEADA, and THE SOUTHERN CROSS television series.  These exclusive rights cover the entire world excluding Japan, and include, but are not limited to, all forms of television, merchandising and ancillary rights.  Furthermore, Harmony Gold has filed for protection of the trademark MACROSS in the United States as well as other major territories in the world.

  Harmony Gold has learned that Bandai is developing a Sony PlayStation-compatible CD-ROM game entitled MACROSS VFX2, which is due for market release this fall, both within and outside of Japan.  Harmony Gold believes that this release would constitute an infringement of Harmony Gold's trademark and copyright interests, and would infringe Harmony Gold's territorial exclusivity outside of Japan.

HG00000112-1

FARELLA BRAUN & MARTEL LLP

Mr. Mark Tsuki
July 30, 1999
Page 2


I therefore request, on behalf of Harmony Gold, that you please call me immediately at 415/954-4964 so that we can discuss this matter. If we do not hear from you in the next week, we will have no choice but to initiate the appropriate legal steps necessary to protect our client's interests.

Sincerely,

David E. Stoll

DES:ka
08616\78RX01!.DOC:337965

# EXHIBIT J

## Diana Brown

**From:** Christy Duran
**Sent:** Monday, January 20, 2014 12:45 PM
**To:** Brian J. Murphy
**Subject:** RE: Tatsunoko - Harmony Gold - ROBOTECH - Argentinean Fan Film

Dear Brian:

Thank you for your e-mail.

As we stated in our February 28, 2013 e-mail, we are happy to take the direction Tatsunoko desires. As such we will prepare and send a formal cease and desist and copy you on the same via blind copy. We will keep you informed as to subsequent correspondence.

Thank you.

Best,
Christy Duran

-----Original Message-----
From: Brian J. Murphy [mailto:brian.murphy@brianjmurphyesq.com]
Sent: Fri 1/17/2014 10:03 PM
To: Christy Duran
Subject: FW: Tatsunoko - Harmony Gold - ROBOTECH - Argentinean Fan Film

Dear Christy,

The CEO of BigWest has once again contacted Tatsunoko senior management to insist that Tatsunoko demand that Harmony Gold take immediate action with respect to the same referenced matter first called to your attention back on January 19, 2013 (see my initial 1/19/2013 email correspondence to you in the email correspondence string below). Here are the YouTube and Facebook links that my client Tatsunoko recently received along with the urgent request from BigWest:

<youtube>
Robotech Valkyrie Project. Episodio 01 HD. Non Profit Fan Film

http://www.youtube.com/watch?v=BlvPR9XeZik

<FACEBOOK>
https://www.facebook.com/RobotechValkyrieProject

Since in your prior email correspondence you referred to what was then showing on YouTube and Facebook as a 'fan short' or 'fan film', without providing any further information as to whether the video then available was the extent of what was to be produced/released, my client decided to adopt a 'wait and see' approach before taking any further action with respect to this matter.

What is now clear from the producer's own Facebook page posts is that they have now produced and made available on YouTube and Facebook, under the 'Robotech Valkyrie Project' moniker, two live-action 'episodes',

1

HG00000113

each episode approximately 10 minutes and 30 seconds in length (in Spanish; with English and Japanese language subtitles also available), of fairly high-quality production value evidenced, amongst other things, by the inclusion in the videos of an actual, fully operational mock-up version of the VF-1 Valkryie variable-sweep wing jet fighter aircraft design from the Macross animated television series.

In your prior email response you stated that Harmony Gold decided not to send the producers a cease and desist demand because in Harmony Gold's opinion 'no commercial exploitation was occurring or was intended' but that Harmony Gold had informed the producers that 'Harmony Gold would vehemently enforce their rights' if the production was 'intended for any form of commercial use or profit'. Based on the two episodes currently available, the fact that their Facebook page plainly states that they will soon announce the 'release date' for a third episode, presumably of the same length and incorporating similar production values, and there is no mention that they intend to do anything other than continue to produce additional episodes, it defies logic that the producers have no intention of obtaining some type of commercial benefit from this live-action episodic 'series' they continue to produce and release.

And regardless of whether the producers are receiving a sufficient amount of monetary revenues from their revenue share of the YouTube ads that are embedded in playback of the videos which may otherwise exceed production costs, amongst other things, BigWest is adamant that the first two episodes infringe upon BigWest's rights in the Macross characters, including the VF-1 Valkyrie variable-sweep wing jet fighter aircraft, and that it is readily apparent that any subsequent episodes produced and released will prominently feature the VF-1 Valkyrie character, especially since it is also apparent from the first two episodes themselves that the producers have expended the resources to create an actual, fully-operational mock-up of the VF-1 Valkyrie character.

In prior correspondence you have acknowledged BigWest's rights in and to the Macross 41 character designs and that Harmony Gold will be careful not to infringe upon such rights, and given that Harmony Gold filed a lawsuit against Hasbro over Hasbro's purported infringement of the very same VF-1 Valkyrie character design, BigWest is demanding that Harmony Gold take the very same aggressive rights infringement enforcement approach against this Argentinean live-action series. Tatsunoko senior management is in complete agreement with BigWest with respect to same and Tatsunoko has instructed me to relay BigWest's demand, now also fully adopted by Tatsunoko, to Harmony Gold.

Lastly, please also be advised that if Harmony Gold fails to undertake all necessary and appropriate action against such rights infringements by the Argentinean producers without undue delay BigWest and/or Tatsunoko will proceed with doing so separately.

I look forward to your response at your earliest convenience.

Sincerely,
Brian Murphy

Law Offices of Brian J. Murphy
Trident Center
11355 West Olympic Blvd.
Suite 300
Los Angeles, CA 90064
Tel: 310.473.3500
Fax: 310.317.7102
E-mail: brian.murphy@brianjmurphyesq.com<mailto:brian.murphy@brianjmurphyesq.com>


From: Brian J. Murphy [mailto:brian.murphy@brianjmurphyesq.com]

2

HG00000114

# EXHIBIT K

# Matchbox – Robotech (1985)



Note: DESTROID DEFENDER was released by Matchbox in 1985-86 as "Raidar X"



Note: DESTROID PHALANX was released by Matchbox in 1985-86 as "Spartan"

HG00000115



HG00000116



Note: **DESTROID SPARTAN** was released by Matchbox in 1985-86 as "Gladiator"



Note: **DESTROID TOMAHAWK** was released by Matchbox in 1985-86 as "Excaliber"

HG00000117

# Robotech Art I (Starblaze Editions) (February 1, 1986)



HG00000118

# Robotech: Battlecry for Playstation, Xbox, Nintendo (2002)





HG00000119





HG00000120

**BEN CLOWARD** - Technical Artist



## ROBOTECH: BATTLECRY - GAME CONSOLE TITLE

**PROJECT:**     Robotech: Battlecry
**COMPANY:**     Vicious Cycle Software / TDK Mediactive
**TIMEFRAME:**   January 2001 - September 2002
**SOFTWARE:**    3DS Max, Photoshop, Adobe Premiere, proprietary game editor
**PLATFORM:**    Xbox, PS2, Gamecube

### COMMENTS:



• My largest contribution to Battlecry was character animation. I rigged all of the characters and animated about 95% of the motion for the game including in-game animation and cut scenes. Character types ranged from transformable fighter jets and mecha to humans and vehicles.

• I contributed to the modeling of the main playable character, the veritech fighter, and was responsible for figuring out how to make it transform, assuring that all of the pieces fit together and worked in all modes: Battloid, Guardian, and Fighter. My rigging allowed the veritech to be easily animated in all of the modes and to transform between them. I created all of the animation for this main character.



• I was in charge of creating and implementing the in-game cut scenes at the beginning and ending of each level. Working from storyboards drawn by the art director, I animated characters, layed down camera paths, and scripted events in the company's proprietary game editor.

• One of the distinguishing features of Battlecry was the anime-style graphics designed to imitate the appearance of the Robotech TV show. I was a major contributor to developing this style and prototyped the first anime shader during early production.



• During production of the game, I worked closely with the engine programming team to aid in the development of level design tools and animation pipeline tools. I contributed to the design of the level editor and the particle system tool.

• I was in charge of creating the game-play mechanics for 15 of the 45 levels. I used the level editor to place objectives and enemy spawn points. I created triggers and scripted the resulting actions. I also helped to assemble the art for each of these maps including painting terrain height maps, applying terrain texture tiles, and arranging set dressing.



• Toward the end of the project I was in charge of creating and editing promotional videos for the game including the opening movie. I captured footage from the game and created the movies using Adobe Premiere and After Effects.

### DOWNLOADS:



📠 320 x 224 (15.4 mb DivX avi) - The Opening Movie from Robotech: Battlecry

HG00000121

# Robotech: Battlecry – Prima's Official Strategy Guide (October 1, 2002)



HG00000122

# Robotech: RPG Tactics (2015)





HG00000123



HG00000124

# Robotech Blind Box Figurines (2015)



HG00000125

# Robotech Transformable Action Figure
# 30th Anniversary Rick Hunter's GBP-1J Heavy Armor Veritech (2015)





HG00000127

# Robotech 1/100 Rick Hunter VF-1J Super Veritech Figure (2016)



HG00000128





HG00000129

# Titan Comics – Robotech (November 1, 2017)



HG00000130

# Robotech Visual Archive: The Macross Saga
# (December 19, 2017)



HG00000131

# EXHIBIT L

Case 2:17-cv-00327-TSZ   Document 64-2   Filed 12/11/17   Page 26 of 103

Harmony Gold U.S.A., Inc. v. FASA Corp., Not Reported in F.Supp. (1996)
40 U.S.P.Q.2d 1057

1996 WL 332689
United States District Court,
N.D. Illinois, Eastern Division.

HARMONY GOLD U.S.A., INC., a Corporation,
and Playmates Toys, Inc., a Corporation, Plaintiffs,
v.
FASA CORPORATION, a Corporation, and Virtual
World Entertainment, a Corporation, Defendants.

No. 95 c 2972.
|
June 13, 1996.

*MEMORANDUM OPINION AND ORDER*

ANDERSEN, District Judge.

**\*1** This case is before the Court on the motion of defendants FASA Corporation ("FASA") and Virtual World Entertainment ("VWE") for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, the motion is denied.

*BACKGROUND*

This copyright dispute concerns the designs for futuristic science-fiction warrior robots created by Tatsunoko Production Company, Ltd. ("Tatsunoko") and incorporated into several animated television series entitled "Macross," "Mospeada," and "The Southern Cross." For convenience, we refer to these designs collectively as the "Macross designs."

On January 15, 1984, Tatsunoko granted plaintiff Harmony Gold U.S.A., Inc. ("Harmony Gold") a license to market all products in the United States based on the Macross designs except for Japanese plastic model kits. Harmony Gold subsequently acquired co-ownership of the copyrights in both the original Macross designs and any derivative works. Harmony Gold has incorporated the Macross designs into an animated television series entitled "Robotech." Additionally, Harmony Gold has marketed, through its sublicensees, a broad array of

"Robotech" products including publications, actions figures and toys.

In or about 1984, defendant FASA created a fictional universe called "Battletech" which formed the basis for board games, role-playing games, novels, and game systems. The original "Battletech" game included both robotic images and model kits based on the Macross designs. FASA claims to have acquired the rights to these model kits and images from Twentieth Century Imports ("TCI"), which allegedly acquired them from Tatsunoko.

On January 31, 1985, FASA received a letter from Harmony Gold demanding that FASA cease all use of the Macross designs or risk a potential suit for copyright infringement and unfair competition. This letter sparked an exchange of correspondence between the parties including numerous cease and desist letters from Harmony Gold. Harmony Gold also demanded disclosure of the source of FASA's alleged rights in the Macross designs.

On January 13, 1995, Harmony Gold and its exclusive licensee, Playmates Toys, Inc. ("Playmates"), filed the instant action against defendants FASA and one of its sister companies, VWE, alleging copyright infringement under United States copyright laws, 17 U.S.C. § 101 *et seq.,* false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), deceptive trade practices in violation of the California Business & Professions Code Sections 17200 *et seq.,* the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.,* and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.,* and unfair competition under the common law. [1] Specifically, plaintiffs allege that defendants have unlawfully benefitted from the use of the Macross designs which are the subject of copyrights owned and exploited by Harmony Gold and its exclusive licensee, Playmates.

**\*2** Defendants now move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Specifically, defendants argue that plaintiffs, as non-exclusive licensees of the designs at issue in this case, lack standing to maintain an action for copyright infringement. Additionally, defendants argue that "plaintiffs, who had knowledge of and have acquiesced in defendants' use of the designs at issue here for over ten years, have waived

Case 2:17-cv-00327-TSZ    Document 64-2    Filed 12/11/17    Page 27 of 103

Harmony Gold U.S.A., Inc. v. FASA Corp., Not Reported in F.Supp. (1996)
40 U.S.P.Q.2d 1057

any right to object to such use and are otherwise estopped from asserting that FASA's use of the designs is infringing or otherwise unlawful."

## DISCUSSION

### I. *Judgment On The Pleadings*

A motion under Rule 12(c) for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *United States v. Wood,* 925 F.2d 1580 (7th Cir.1991); *see also Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989). "Accordingly, the motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Thomason,* 888 F.2d at 1204; *see also Conley v. Gibson,* 355 U.S. 41, 45–46 (1957). The Court must view the facts in a light most favorable to the non-moving party. *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993).

Defendants argue that plaintiffs lack standing to maintain an action for copyright infringement. This argument is two-fold. First, FASA contends that it acquired the rights to certain Macross artwork from TCI. Second, defendants assert:

> [Harmony Gold's] Original License specifically acknowledges the existence of Macross robot toys and plastic model kits produced in Japan for worldwide export and unequivocally states that these items "shall be excluded from the rights granted [Harmony Gold] under this Agreement." Thus, any rights FASA acquired with respect to the plastic model kits and artwork it obtained through Twentieth Century Imports are explicitly excluded from the scope of Harmony Gold's license agreement. Harmony Gold and its licensee Playmates Toys, therefore have no standing to challenge FASA's use of these designs.

We reject this argument on two grounds. First, and most importantly, Harmony Gold and Tatsunoko are joint owners of the copyrights to the Macross designs in the United States. "The legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Contrary to defendants' assertions, plaintiffs do

not rely on the rights to Japanese model kits in bringing this suit. Rather, plaintiffs dispute FASA's use of the Macross designs for its entire "Battletech" product line. Because plaintiffs rely on their exclusive rights in the copyrights to the Macross designs, we find that plaintiffs have standing to bring this suit for copyright infringement.

 **\*3**  Second, we cannot determine FASA's rights to the Macross designs without considering material outside the pleadings. Whether FASA obtained any rights to the Macross designs from TCI involves factual determinations not properly decided in a motion for judgment on the pleadings.

Accordingly, defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is denied.

### II. *Summary Judgment*

Alternatively, defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 contending that this action is barred by the equitable defenses of laches, estoppel, and waiver. We disagree and find that genuine issues of material fact preclude summary judgment in this case.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.,* 38 F.3d 929, 932 (7th Cir.1994). The moving party bears the burden of demonstrating that there is an absence of evidence to support the position of the nonmoving party. *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 442–43 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion. *Associated Milk Producers, Inc. v. Meadow Gold Dairies, Inc.,* 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Walker v. Shansky,* 28 F.3d 666, 671 (7th Cir.1994).

Plaintiffs' considerable delay in bringing this action is not in dispute. Mere delay, however, is insufficient to establish laches. Reasonable reliance on the plaintiff's delay is also required. *See, e.g., Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.,* 560 F.2d 1325, 1334 (7th Cir.1977),

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:17-cv-00327-TSZ    Document 64-2    Filed 12/11/17    Page 28 of 103

Harmony Gold U.S.A., Inc. v. FASA Corp., Not Reported in F.Supp. (1996)
40 U.S.P.Q.2d 1057

*cert. denied,* 434 U.S. 1070 (1978). In the present case, we question whether defendants' reliance on the delay was reasonable in light of Harmony Gold's continuing protests. Moreover, laches does not bar an action against a defendant who knew of plaintiff's asserted rights or against a deliberate infringer. *See* 3 Melville B. Nimmer And David Nimmer, *Nimmer On Copyright* § 12.06 at 12–116 (1995); *Underwriters Laboratories, Inc. v. United Laboratories, Inc.,* 203 U.S.P.Q. 180, 182 (N.D.Ill.1978); *American Airlines, Inc. v. A 1–800–A–M–E–R–I–C–A–N Corp.,* 622 F.Supp. 673, 685 (N.D.Ill.1985). Similarly, laches will not protect a progressive encroacher who does not arouse hostile action by the plaintiff until the infringement is fully developed. *See SCI Systems, Inc. v. Solidstate Controls, Inc.,* 748 F.Supp. 1257, 1262–3 (S.D.Ohio 1990). Here, a genuine issue of triable fact exists as to whether defendants were deliberate and/or progressive infringers of plaintiffs' rights.

With regard to the defense of equitable estoppel, a copyright owner must be aware of the infringing conduct and yet act in a way that induces the infringer reasonably to rely upon such action to his detriment. *See* 3 *Nimmer On Copyright* § 13.07 at 13–284 to 13–286; *National Football League v. Rondor, Inc.,* 840 F.Supp. 1160, 1167 (N.D.Ohio 1993). We find genuine issues of material fact concerning the level of plaintiffs' knowledge of the alleged infringement and defendants' ignorance of plaintiffs' rights. Again, we question the reasonableness of defendants' reliance on plaintiffs' delay in light of Harmony Gold's continuing objections. *See Piper Aircraft Corp. v. Wag–Aero, Inc.,* 741 F.2d 925, 934 (7th Cir.1984).

**\*4** Finally, the undisputed facts do not establish waiver. Contrary to defendants' assertions, the record does not reflect the intentional relinquishment of any rights in the Macross designs by Harmony Gold. Indeed, the correspondence between Harmony Gold and FASA provides strong evidence to the contrary.

*CONCLUSION*

For all of the foregoing reasons, defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56 is denied.

It is so ordered.

**All Citations**

Not Reported in F.Supp., 1996 WL 332689, 40 U.S.P.Q.2d 1057

Footnotes

1    This case was originally filed and assigned to this Court as No. 94 C 7662. Playmates immediately moved to reassign and consolidate this case with *FASA Corp. v. Playmates Toys, Inc.,* 912 F.Supp. 1124 (N.D.Ill.1996) pending before Judge Castillo. When Judge Castillo denied the motion, Harmony Gold and Playmates voluntarily dismissed this case and subsequently refiled it in the United States District Court for the Central District of California. *See Harmony Gold U.S.A., Inc. et al. v. FASA Corp., et al.,* No. 95–0391 HLH (N.D.Cal. January 13, 1995). The California Court then granted FASA's motion to transfer the action back to Illinois in June of 1995. The case was returned to the Northern District of Illinois in June and assigned to Judge Duff, who transferred the case back to this Court upon learning the facts related to its initial filing.

**End of Document**                                                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT M



GAIMS, WEIL, WEST & EPSTEIN, LLP

ATTORNEYS AT LAW

MARC EPSTEIN *
BARRY G. WEST
ALAN JAY WEIL
JOHN GAIMS
STEVEN S. DAVIS
JEFFREY B. ELLIS
AMY L. RICE
COREY E. KLEIN
PETER L. STEINMAN
SYLVIA M. VIRSIK
ANDREW M. VOGEL
JOSHUA S. DAVIS
WALTER ZAGZEBSKI

*A PROFESSIONAL CORPORATION

1875 CENTURY PARK EAST
TWELFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4520
FAX (310) 277-2133

June 11, 2002

MARC EPSTEIN
(310) 407-4520
epstein@gwwe.com

**By Federal Express**

CC Frank
Ahmed
Alan
Leonard

Mr. Tsutomu Yumoto
C.E.O.
Sunwards Ltd.
6-14-15 Shimbashi
Minatoku, Tokyo
174-0071 JAPAN

   Re:   **MACROSS**

Dear Mr. Tsutomu Yumoto:

   We are litigation counsel to Harmony Gold. For many years Harmony Gold has owned certain exclusive rights in and to the television series MACROSS throughout the world (excluding Japan) (the "Harmony Gold Territory"). Harmony Gold's exclusive rights extend, without limitation, to the distribution of the Macross television series and properties and the right to create and authorize the sale of merchandise based thereon.

   We understand that your company has recently obtained a purported license from Big West to distribute certain Macross toys into the Harmony Gold Territory. In Sunward Ltd.'s press release dated May 1, 2002, it stated, "Our right is invested by Big West whose copyright ownership was judicially affirmed by the Tokyo District Court ruling on February 25, 2002."

   We wish to advise you that Harmony Gold controls distribution rights to Macross in the Harmony Gold Territory and that the Tokyo District Court ruling does not in any way affect Harmony Gold's rights. Harmony Gold's rights flow from an agreement executed by Big West, Studio Nue and Tatsunoko. Pursuant to this agreement, it was concluded that exploitation rights to Macross outside of Japan would be controlled by Tatsunoko in perpetuity. Tatsunoko, in turn, granted such exploitation rights to Harmony Gold, which has been exercising and enforcing such rights outside of Japan since 1984.

HG00000132

GAIMS, WEIL, WEST & EPSTEIN, LLP

Mr. Tsutomu Yumoto
June 11, 2002
Page 2

Harmony Gold is scheduled to meet with Big West later this month. If the discussions conclude positively, we would be willing to discuss this matter with you further at that time.

This letter is not intended to be a complete recitation of all the facts or law relevant to this matter. All of Harmony Gold's rights and remedies are reserved.

Very truly yours,

GAIMS, WEIL, WEST & EPSTEIN, LLP

Marc Epstein

ME/ss

# EXHIBIT N

GAIMS, WEIL, WEST & EPSTEIN, LLP
BARRY G. WEST (State Bar No. 55365)
MARC EPSTEIN (State Bar No. 61062)
WALTER R. ZAGZEBSKI (State Bar No. 190568)
1875 Century Park East, Twelfth Floor
Los Angeles, California 90067-2513
Telephone: (310) 407-4500
Facsimile: (310) 277-2133

Attorneys for Plaintiff
Harmony Gold-USA, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMONY GOLD-USA, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>SUNWARDS LTD., a Japanese corporation; and DOES 1 through 50, inclusive,<br><br>                    Defendants. | CASE NO. 02-7187<br><br>COMPLAINT<br><br>1. COPYRIGHT INFRINGEMENT<br><br>2. TRADEMARK INFRINGEMENT UNDER SECTION 43(a) OF THE LANHAM ACT<br><br>3. COMMON LAW TRADEMARK INFRINGEMENT<br><br>4. UNFAIR COMPETITION UNDER CALIFORNIA STATUTORY LAW<br><br>5. COMMON LAW UNFAIR COMPETITION<br><br>6. DECLARATORY RELIEF<br><br>DEMAND FOR JURY TRIAL |


ENTERED ON ICMS
SEP 17 2002
CV

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

09/13/2002 4:06:40 PM   Receipt #: 23081
      Cashier : ABELLAMY [LA 1-1]
Paid by: GAIMS, WEIL, WEST, AND EPSTEIN,
 LLP
2:CV02-07187
2002-086900      5 - Filing Fee Civil(1)
Amount :                          $60.00
2:CV02-07187
2002-510000      11 - Special Fund F/F(1)
Amount :                          $90.00
Check Payment : 8280 /            150.00
Total Payment :                   150.00

Plaintiff Harmony Gold-USA, Inc., alleges claims against Defendant Sunwards Ltd. and Does 1 through 50 (collectively "Defendants") as follows:

## JURISDICTION AND VENUE

1. This is an action for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.*, trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), related claims for trademark infringement and unfair competition under the laws of the State of California and the common law, and declaratory relief. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367.

2. This Court has personal jurisdiction over defendant Sunwards Ltd. because said Defendant has committed tortious acts within the State, and/or has committed tortious acts outside California causing injury within the state and derives substantial revenue from interstate commerce.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

## THE PARTIES

4.    Plaintiff Harmony Gold-USA, Inc., is a California corporation having offices and a principal place of business at 7655 Sunset Boulevard, Los Angeles, California 90046. It is doing business within the jurisdiction of this Court. Harmony Gold, Ltd., a Hong Kong corporation, entered into some of the agreements referred to in this Complaint and assigned all of its rights in said agreements, with the exception of certain foreign television broadcast rights not relevant to this Complaint, to Harmony Gold-USA, Inc. In this Complaint, "Harmony Gold" is used to refer to Harmony Gold-USA, Inc. itself or as the assignee in place and stead of Harmony Gold, Ltd.

5.    Upon information and belief, Defendant Sunwards Ltd. is and was at all times relevant hereto a Japanese Corporation with its principal United States office located at 17980 Savarona Way, Carson, California 90446. It is doing business within the jurisdiction of this Court.

6.    The true names and capacities, whether individual, corporate or otherwise, of defendants named herein as Does 1 through 50 are presently unknown to Harmony Gold, who therefore sues said defendants by such fictitious names. Harmony Gold will seek to amend this complaint to allege the true names and capacities of said defendants when it

3

has ascertained such information. Harmony Gold is informed and believes and on the basis of such information and belief alleges that each defendant Doe 1 through 50 has participated in some or all of the acts or conduct herein alleged and is liable to Harmony Gold by reason thereof.

## FACTS

7. This action involves an infringement of Harmony Gold's rights - including the right to prepare derivative works, such as toys and other merchandise - in and to an animated television series that originated in Japan between 1982 and 1984. The subject television series (the "Series") is entitled: *Macross,* Episodes 1-36, which was first telecast in 1982-83. The Series featured futuristic animation and "transforming" mechanical robot characters, vehicles, and weaponry for extraterrestrial combat. By agreement dated October 1, 1982, the three companies that originally contributed to the creation of the Series in Japan - K.K. Studio Nue, K.K. Big West, and Tatsunoko Production Company, Ltd. ("Tatsunoko"), agreed that with respect to the sale of the Series outside Japan, and all merchandising rights outside Japan, Tatsunoko was entitled to such sale and exploitation and was to be entitled to any and all proceeds by exploitation of such rights.

4

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

8.   By agreement dated September 11, 1984 (the "1984 Agreement"), Tatsunoko granted to Harmony Gold exclusively and irrevocably the rights to exploit the copyrights and trademarks in the Series in the United States and certain other countries, including but not limited to television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications, and to prepare derivative works based on, advertise, and otherwise dispose of and exploit, the Series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof. A true and correct copy of the 1984 Agreement is attached hereto as Exhibit A and incorporated herein by this reference. The initial term of the 1984 Agreement was seven years.

9.   After acquiring the rights to the Series from Tatsunoko in 1984, Harmony Gold marketed the Series to United States audiences under its original title, *Macross*. In addition, Harmony Gold combined the Series with two other animated programs and marketed them to United States audiences under the alternate title "*Robotech*."

10.   On March 28, 1985, Tatsunoko and Harmony Gold registered the Series for copyright with the U.S. Copyright Office.  A true and correct copy of the certificate of U.S.

5

Copyright Registration, together with a supplementary certificate filed March 13, 2000 are attached hereto as Exhibit B.

11. On May 28, 1985, Harmony Gold recorded in the U.S. Copyright Office a Short Form Assignment dated May 15, 1985 made subject to and in confirmation of the exclusive and irrevocable rights granted to it in the 1984 Agreement. A true and correct copy of the certificate of recordation from the U.S. Copyright Office is attached hereto as Exhibit C. By so doing, Harmony Gold put all persons on constructive notice of its rights in and to the Series.

12. Since 1984, Harmony Gold has exercised and continues to exercise its valuable exclusive rights in and to the Series to engage in extensive production, distribution, and merchandising activities in interstate commerce throughout the United States and certain other territories throughout the world.

13. Since 1984, Harmony Gold has used and exploited, and continues to use and exploit, the trademark *Macross* in interstate commerce throughout the United States and certain other territories throughout the world, directly and indirectly through licensees, through among other things, television broadcasting; distribution of videos; manufacture and sale of merchandise, including comic books,

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

6

toys, novels, games, and apparel, and Harmony Gold has developed secondary meaning for the *Macross* trademark. The designs and images in Harmony Gold's *Macross* works comprise an inherently distinctive trademark and trade dress that distinguishes Harmony Gold's products from the products of others and serves as an indication of the source and origin.

14. By agreement dated March 15, 1991 (the "1991 Agreement") Tatsunoko renewed the grant to Harmony Gold of the rights granted in the 1984 Agreement for an additional term of ten years, to include all worldwide territories excluding only Japan and all other Asian territories. A true and correct copy of the 1991 Agreement is attached hereto as Exhibit D and incorporated herein by this reference.

15. On August 6, 1998, Tatsunoko and Harmony Gold entered into a contract called Amendment to Main Agreement which renewed the grant to Harmony Gold of the rights granted in the 1991 Agreement for a renewal term through and including March 14, 2011. A true and correct copy of the 1998 Amendment to Main Agreement is attached hereto as Exhibit E and incorporated herein by this reference.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

7

FIRST CLAIM FOR RELIEF

(Copyright Infringement Under 17 U.S.C. §§ 101 *et seq.* – Against All Defendants)

16. Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 15 of this Complaint as though fully and completely set forth herein.

17. Without Harmony Gold's authorization or consent, Defendants have produced and plan to offer for sale in the United States a line of children's toys which infringes the copyrights and other rights Tatsunoko granted to Harmony Gold.

18. Unless permanently enjoined by Order of this Court, Defendants have and will continue to infringe Harmony Gold's rights, all to Harmony Gold's irreparable injury. As a result of Defendants' acts of infringement, Harmony Gold is without an adequate remedy at law in that damages are difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Harmony Gold will be required to pursue a multiplicity of actions.

19. Harmony Gold has sustained, and will continue to sustain, substantial pecuniary damage to the value of its exclusive rights in and to the Series in that the previously described activities of Defendants have

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

8

diminished and will continue to diminish the revenues that Harmony Gold otherwise would receive.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. §§ 1125(a) – Against All Defendants)

20. Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 19 of this Complaint as though fully and completely set forth herein.

21. In connection with the advertising and sale of the line of children's toys which infringes Harmony Gold's copyrights, as alleged above, Defendants have used and continue to use in interstate commerce, including internet websites, the trademark *Macross*, which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of Defendants with Harmony Gold, and as to the origin, sponsorship, and approval of Defendants' line of children's toys and its commercial activities with those of Harmony Gold.

22. Defendants' conduct alleged above was and continues to be intentional, deliberate, and willful, with knowledge of Harmony Gold's prior exclusive right to use the trademark *Macross*.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

9

23. Harmony Gold has been damaged by Defendants' conduct as alleged above, in an amount to be proven at trial.

24. By reason of Defendants' conduct as alleged above, subject to the principles of equity, Harmony Gold is entitled to recover Defendants' profits.

25. As a proximate result of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation.

26. Harmony Gold has no plain, speedy, or adequate remedy at law for the injuries currently suffered. It will be difficult or impossible for Harmony Gold to determine the full amount of damages it has suffered and will continue to suffer or to calculate the full amount of its economic loss to its business if its trademark continues to be infringed upon by Defendants.

27. Unless enjoined by this Court, Defendants will continue to infringe upon Harmony Gold's trademark and will thereby cause irreparable injury and damage to Harmony Gold.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

**THIRD CLAIM FOR RELIEF**

**(Common Law Trademark Infringement - Against All Defendants)**

28.  Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 27 of this Complaint as though fully and completely set forth herein.

29.  Defendants' past, present, and future use of the trademark *Macross*, constitutes infringement of Harmony Gold's trademark under the common law of the State of California on the basis of Defendants' unauthorized use of the trademark *Macross* in connection with toys and merchandise of substantially the same character as those for which the trademark has already been legitimately appropriated by Harmony Gold, and which flow in the same or similar channels of commerce as do those of Harmony Gold.

30.  Defendants' use of Harmony Gold's common law trademark *Macross* has caused actual confusion, and is likely to cause confusion, in the marketplace concerning the source or origin of Harmony Gold's television broadcasting, videos, and merchandise.

31.  Defendants' use of the trademark *Macross* in connection with their merchandise and commercial activities is likely to cause injury to Harmony Gold's business

11

reputation and confusion among customers and members of the trade and public.

32. By reason of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation unless and until Defendants are enjoined from continuing their wrongful acts, and Harmony Gold has no adequate remedy at law.

33. Defendants' infringement has been willful and deliberate, with full knowledge of Harmony Gold's prior right to use the trademark *Macross*, has injured Harmony Gold, and will continue to cause irreparable injury to Harmony Gold unless enjoined by this Court.

34. Harmony Gold is entitled to recover damages from Defendants to compensate Harmony Gold for the willful infringement of Harmony Gold's trademark *Macross*.

35. In engaging in the conduct alleged above, Defendants acted willfully and maliciously and were motivated by oppression, fraud, and malice, and Harmony Gold is entitled to an award of exemplary damages.

12

## FOURTH CLAIM FOR RELIEF

### (Unfair Competition Under California Statutory Law)
### (California Business and Professions Code
### §§ 17200 and 17500, *et seq.* - Against All Defendants)

36.  Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37.  A competitive relationship exists between Harmony Gold and Defendants, in that all manufacture and sell merchandise including toys. Defendants' continued unauthorized use of Harmony Gold's trademark *Macross* constitutes an unlawful, unfair, and fraudulent business act or practice.

38.  Defendants' conduct as alleged above constitutes unfair competition under the statutory laws of the State of California, particularly under California Business and Professions Code §17200, *et seq.*

39.  Harmony Gold has been damaged by Defendants' conduct as alleged above, in an amount to be proven at trial.

40.  By reason of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation unless and until Defendants are enjoined from continuing their wrongful acts.

13

41. Harmony Gold has no plain, speedy, or adequate remedy at law for the injuries it is suffering. It will be difficult or impossible for Harmony Gold to determine the full amount of damages it has suffered and will continue to suffer or to calculate the full amount of its economic loss to its business if its trademark continues to be infringed upon by Defendants.

42. Unless enjoined by this Court, Defendants will continue to infringe upon Harmony Gold's trademark and will thereby cause irreparable injury and damage to Harmony Gold by depriving Harmony Gold of the benefit of the good will associated with the trademark *Macross*.

### FIFTH CLAIM FOR RELIEF

### (Common Law Unfair Competition – Against All Defendants)

43. Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. Defendants' conduct as alleged above constitutes unfair competition under the common law of the State of California.

45. Harmony Gold has been damaged by Defendants' conduct as alleged above, in an amount to be proven at trial.

14

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

46.   By reason of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation unless and until Defendants are enjoined from continuing their wrongful acts.

47.   Defendants' unlawful acts were motivated by oppression, fraud, and malice, and constitute willful and malicious conduct by Defendants, for which Harmony Gold is entitled to an award of exemplary damages.

48.   Harmony Gold has no plain, speedy, or adequate remedy at law for the injuries it is suffering. It will be difficult or impossible for Harmony Gold to determine the full amount of damages it has suffered and will continue to suffer or to calculate the full amount of its economic loss to its business if its trademark continues to be infringed upon by Defendants.

49.   Unless enjoined by this Court, Defendants will continue to infringe upon Harmony Gold's trademark and will thereby cause irreparable injury and damage to Harmony Gold by depriving Harmony Gold of the benefit of the good will associated with the trademark *Macross*.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief – Against All Defendants)

50. Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 49 of this Complaint as though fully and completely set forth herein.

51. An actual controversy has arisen and now exists between Harmony Gold, on the one hand, and Defendants on the other hand, relating to their respective rights regarding ownership of copyrights and trademarks based on the Series, including the right to create derivative works based on the Series, such as those sold or to be sold by Defendants. Harmony Gold contends that Tatsunoko validly granted to Harmony Gold exclusively and irrevocably the rights to exploit the copyrights and trademarks in the Series in the United States and certain other countries, including but not limited to television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications, and to prepare derivative works based on, advertise, and otherwise dispose of and exploit the Series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof. Harmony Gold further

16

contends that the conduct of Defendants as alleged above violates the rights Tatsunoko granted to Harmony Gold.

52. Harmony Gold is informed and believes and on the basis of such information and belief alleges that Defendants dispute these contentions and contend otherwise.

53. Harmony Gold desires a judicial determination of its rights and duties under the aforesaid contracts and a declaration that its contentions, as hereinabove set forth, are correct. Such a declaration is necessary and appropriate in order to set at rest the respective rights and obligations of the parties and in order to avoid a multiplicity of actions.

WHEREFORE, Plaintiff Harmony Gold prays for relief against Defendants, and each of them, as follows:

A. That Defendants, their agents, servants and employees and all persons acting in concert with them be restrained and enjoined permanently from manufacturing, copying, duplicating, selling, marketing, distributing, or otherwise disposing of any unauthorized toys or other products that are based on the Series.

B. That Defendants be required to deliver upon oath all products, molds, prototypes, and drawings based on the Series, and documents related thereto in their possession, held for delivery to them or under their control, which

17

infringe or which may have been used to infringe Harmony Gold's exclusive rights under copyright to the Series; and that Orders for Seizure in respect of the foregoing be issued out of this Court and that at the conclusion of this action, the Court shall order all such material so held to be surrendered to Harmony Gold or to be destroyed under 17 U.S.C. § 503, whichever shall seem to this Court to be most just and proper.

C.    That Defendants be required to recall from all distributors, wholesalers, jobbers, dealers, retailers, and all others known to them, all copies of any unauthorized toys or other products based on the Series.

D.    That Defendants be required to account for all gains, profits and advantages derived from their acts of infringement and for their other violations of law.

E.    That Defendants be required to pay over to Harmony Gold the actual damages suffered by Harmony Gold as a result of the infringement of Harmony Gold's copyrights, and any profits of Defendants attributable to the infringement of Harmony Gold's copyrights, and to pay such damages to Harmony Gold as this Court shall deem to be just and proper within the provisions of the Copyright Act or, in the alternative, at Harmony Gold's election, statutory damages as set forth in 17 U.S.C. § 504.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

F. For compensatory damages against Defendants for trademark infringement and unfair competition, according to proof.

G. That Defendants, including their subsidiaries, affiliates, related companies, agents, employees and representatives (and all persons in active concert and participation with them), be enjoined from making any further use of the trademark *Macross* or any other confusingly similar trademarks, in connection with the advertising, selling, or distributing of merchandise including toys.

H. For exemplary damages against Defendants in an amount sufficient to punish and make a public example of Defendants, and to deter such wrongful conduct in the future.

I. That the Court enter a declaratory judgment in favor of Harmony Gold reciting that each of the matters set forth in the paragraphs alleged above have been conclusively determined for Harmony Gold and against all of the Defendants.

J. That Harmony Gold recover its costs of suit incurred herein.

K. That Harmony Gold recover its attorneys' fees incurred in this action.

19

L.   That Harmony Gold have such other and further relief as the Court deems just and appropriate under the circumstances.

DATED: September 13, 2002

GAIMS, WEIL, WEST & EPSTEIN, LLP
BARRY G. WEST
MARC EPSTEIN
WALTER R. ZAGZEBSKI

By: _____
            WALTER R. ZAGZEBSKI
       *Attorneys for Plaintiff*
       *Harmony Gold USA, Inc.*

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

20

## DEMAND FOR JURY TRIAL

Plaintiff Harmony Gold-USA, Inc. hereby demands a jury trial.

DATED: September 13, 2002

GAIMS, WEIL, WEST & EPSTEIN, LLP
BARRY G. WEST
MARC EPSTEIN
WALTER R. ZAGZEBSKI

By: _____
WALTER R. ZAGZEBSKI
*Attorneys for Plaintiff*
*Harmony Gold-USA, Inc.*

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

21

# ORIGINAL

## LICENSE AGREEMENT

TATSUNOKO PRODUCTION CO., LTD.

HARMONY GOLD, LTD.

22

AGREEMENT

THIS AGREEMENT is entered into this 11th day of September, 1984 by and between

TATSUNOKO PRODUCTION CO., LTD.
3-22-12, Minami-cho, Kokubunji-shi,
Tokyo, Japan

(hereinafter referred to as the Licensor)

- and -

HARMONY GOLD, LTD.
8831 Sunset Boulevard, Suite 300
Los Angeles, CA 90069 U.S.A.

(hereinafter referred to as the Licensee)

WHEREBY IT IS AGREED as follows:

The Licensor hereby grants exclusively and irrevocably to the Licensee the rights to exploit the animated television programs described below produced and owned by the Licensor on the terms and conditions set out below, which rights include, but are not limited to, television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications.

PROGRAMS & PARTICULARS

MACROSS: 1/2 hour X 36 episodes

MOSPEADA: 1/2 hour X 25 episodes

THE SOUTHERN CROSS: 1/2 hour X 23 episodes

TOTAL: 84 episodes

1. TERRITORIES

ZONE NO. 1: The United States of America, and its territories and possessions, and English-speaking Canada, and English-speaking territories and possessions of Canada.

ZONE NO. 2: All other English-speaking countries, territories and areas, all German-speaking countries, territories and areas including all Scandinavian countries, territories and areas, and all French-speaking countries, territorie and areas.

However, all countries and territories in Asia including Japan shall be excluded from the licensed territories under this Agreemen

- 1 -

23

2. <u>PERIOD OF LICENSE</u>

The initial period of license is seven (7) years from the date hereof and the license period shall be renewable at the end of every seven years on the terms and conditions mutually agreed upon. At the Licensee's request, the Licensor shall negotiate with the Licensee reasonably and in good faith so that the Licensor shall grant to the Licensee at least one (1) further seven (7) year license period hereunder. If, for any reason, the Licensor and the Licensee shall not agree upon such terms and conditions, the Licensor shall not license any of the rights licensed to the Licensee hereunder to any other party, or exploit those rights itself, without first providing to the Licensee the exclusive right for thirty (30) days to match terms and conditions that the Licensor is prepared to accept from another party or upon which the Licensor will exploit such right itself. The Licensee shall be required to accept only financial terms and conditions that may be satisfied as easily by one person as by another. The Licensor shall send to the Licensee written notice of each of such terms and conditions.

3. <u>LICENSE FEE</u>

Zone No. 1: US$4,000.- per episode

Zone No. 2: US$6,000.- per episode

4. <u>MANNER OF PAYMENT</u>

Zone No. 1: US$4,000.- X 84 eps. = Total US$336,000.-

Down payment of US$25,000.- shall be made upon signing this Agreement.

US$25,000.- - no later than December 31, 1984.

The balance of US$286,000.- shall be paid in the following install-ments:

US$28,600.- - no later than January 31, 1985.

US$28,600.- - no later than March 15, 1985.

US$28,600.- - no later than September 30, 1985.

US$28,600.- - no later than December 31, 1985.

US$28,600.- - no later than March 31, 1986.

US$28,600.- - no later than June 30, 1986.

US$28,600.- - no later than September 30, 1986.

US$28,600.- - no later than December 31, 1986.

- 2 -

24

US$28,600.- - no later than March 31, 1987.

US$28,600.- - no later than June 30, 1987.

Zone No. 2: US$6,000.- X 84 eps. = Total US$504,000.-

The total sum of US$504,000.- shall be paid in the following quarter-annual installments.

US$63,000.- - no later than March 31, 1986.

US$63,000.- - no later than June 30, 1986.

US$63,000.- - no later than September 30, 1986.

US$63,000.- - no later than December 31, 1986.

US$63,000.- - no later than March 31, 1987.

US$63,000.- - no later than June 30, 1987.

US$63,000.- - no later than September 30, 1987.

US$63,000.- - no later than December 31, 1987.

5. <u>COPYRIGHT</u>

The Licensor, as the exclusive author and owner of all worldwide copyrights, moral rights and rights of publication in and to the underlying series, grants to the Licensee exploitation of the copyrights in accordance with provisions in this Agreement whereby the Licensee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, diffuse, display, market, edit, dub, translate, arrange musically, transform, dramatize and otherwise adapt and prepare derivative works based on, advertise, and otherwise dispose of and exploit the underlying series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof, using any methods or devices of exploitation with limitation as provided in A, B, C of Article 6 herein. The Licensor represents and warrants that the underlying series, and the rights granted to the Licensee, do not and will not infringe upon the rights of any third party, and are and will be free of any right, claim or encumbrance of any third party. The Licensee is authorized to register the transfer of rights and licenses to the Licensee as set forth in this Agreement in any copyright, trademark or other appropriate register in Japan or elsewhere to protect the Licensee's rights and licenses under this Agreement. The Licensor and the Licensee shall be joint owners of copyrights in the underlying series for the territories licensed to the Licensee during the license period and shall take necessary legal measures to protect such copyrights from infringement or copying by any third party including registration of trademarks or copyright, and the use of copyright notices in the joint names of the Licensor and the Licensee. All trademarks utilized by the Licensee in connection with the exercise of its rights under this Agreement, other than the existing titles of the underlying

- 3 -

25

series, shall belong jointly to the Licensor and the Licensee and utilization of such trademarks shall be automatically renewed at the termination of this Agreement for a reasonable length of period mutually agreed upon unless such termination is due to default on the part of the Licensee. With respect to any new materials created by the Licensee, copyright and all other rights in such materials shall also belong jointly to the Licensor and the Licensee.

6. <u>MERCHANDISING RIGHTS</u>

The Licensee is the lawful and authorized representative to exercise merchandising rights related to the underlying series in the license territories specified in Article 1 herein except for such items and articles as set forth below.

A. With regard to MACROSS series, die-cast toys and other toys manufactured in Japan by Takatoku Toys and plastic model kits made by Imai Chemical Co. for domestic and overseas markets shall be excluded.

B. With regard to MOSPEADA series, die-cast toys and other toys manufactured in Japan by Gakken Co. and plastic model kits made by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

C. With regard to THE SOUTHERN CROSS series, plastic model kits manufactured in the past by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

The Licensor shall not engage in or authorize, except as allowed in A, B and C above, any merchandising exploitation related to the underlying series in any of the territories licensed to the Licensee hereunder at any time during the license period.

7. <u>COMPENSATION FOR MERCHANDISING</u>

A. In connection with exercise by the Licensee of merchandising rights granted hereunder, as distinguished from any other rights granted hereunder, the Licensee shall pay to the Licensor fifty (50) percent of net revenue after deduction of ten (10) percent of merchandising expenses from the total proceeds actually received by the Licensee in case sales are made directly by the Licensee whereas the Licensee shall pay to the Licensor fifty (50) percent of net revenue without deduction of merchandising expenses provided that sales are made through third parties.

B. The Licensee shall not be beneficiary of revenues accrued by sales of articles licensed in the past by the Licensor to and produced by Takatoku Toys, Gakken Co., Imai Chemical Co., and Arii Works regardless of whether or not such sales are made inside or outside of Japan.

- 4 -

26

C. With regard to such articles produced in Japan as not included in the Licensee's schedule of merchandising exploitation, the Licensor may export them individually to markets in the licensed territories hereunder with prior consent of the Licensee who shall have option priority on such articles. In case the Licensor exports such articles in compliance with the aforesaid provision, the Licensee shall not be beneficiary of revenues accrued by such exportation.

D. The Licensee shall pay the Licensor's share of merchandising revenue to the Licensor on a quarter-annual basis, for the period of January 1 through March 31, April 1 through June 30, July 1 through September 30, and October 1 through December 31 of each year, with payment forty-five (45) days after the end of each applicable period, and the Licensee shall make monthly business reports available to the Licensor during the license period.

E. The initial term of merchandising agreement is seven (7) years from the date hereof as provided in Article 2 herein. However, in case the total amount of the Licensor's share of merchandising revenue fails to reach US$120,000.- in the first three and a half years and US$80,000.- in the second three and a half years of the license period, the Licensor shall be entitled to eliminate the merchandising license portion from this Agreement unless the Licensee takes measures acceptable by the Licensor to cure the deficit.

8. SPECIAL PROVISIONS

A. Limiting to German-speaking territories, home video and video disc rights which constitute a part of rights granted hereunder shall be excluded. With regard to publication rights for said territories, the Licensee shall present to the Licensor a project plan including natures and contents of publications in each instance of publication for the Licensor's prior consent and approval.

B. The Licensor is entitled to make an audit in each twelve (12) months after providing the Licensee with advance written notice requesting audit.

C. If the Licensee fails to perform its obligations hereunder, the Licensor is entitled to terminate this Agreement in its entirety or partially merchandising exploitation provisions only without prejudice to any of its rights against the Licensee. Such termination shall be made only after the Licensee's receipt of written notice stating in detail the Licensee's failure. However, the Licensee has the right to confirm and cure the failure within sixty (60) days after receipt of the written notice. Notwithstanding any termination, pre-existing licenses entered into by the Licensee shall not be disturbed in any way.

- 5 -

27

D. In case any dispute arises between the two parties in connection with this Agreement, it shall be settled with the bona fide efforts on the part of each party. The parties hereto mutually agree that if no settlement is reached after exertion of such efforts, the dispute shall be submitted to the competent court in Tokyo, Japan, whose decision shall be final and binding upon both parties.

E. The Licensee has first refusal right for territories other than countries in Asia, and Zone No. 1 and Zone No. 2 specified in Article 1 herein.

F. This Agreement is subject to force majeure.

9. REEDITION, ALTERATION, AND MODIFICATION

The Licensee is entitled to reedit, alter, or modify any and all the underlying series as the Licensee determines to conform with marketing requirements including addition of different language dialogue, new stories, new sound effects, new music, a new title or titles and credits to personnel utilized by the Licensee in connection with any such activity. However, such reedition, alteration, or modification shall be done in a reasonable manner acceptable by the Licensor which does not detract from the underlying series.

10. ASSIGNMENT AND SUBLICENSE

The Licensee shall have the right to assign, license, delegate, lend or otherwise transfer its rights, options or privileges granted hereunder in whole or in part to any third party, but in no case the Licensee shall transfer its obligations to the Licensor to any third party.

IN WITNESS WHEREOF, the parties hereto signed hereunder to execute this Agreement on the date first above written.

TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD, LTD.

- 6 -

28

# CERTIFICATE OF COPYRIGHT REGISTRATION

UNITED STATES COPYRIGHT OFFICE

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*Donald C. Curran*

ACTING REGISTER OF COPYRIGHTS

United States of America

OFFICIAL SEAL

| REGISTRATION NUMBER |
|---|
| PAU — 740 323 |
| PA    (PAU) |

| EFFECTIVE DATE OF REGISTRATION |
| 3 . 28 . 85 |
| (Month)    (Day)    (Year) |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

**(1) Title**

TITLE OF THIS WORK:

MACROSS        Episodes 1-36

1. Booby Trap    3. Spacefold
2. Countdown    4. Lin Minmei (See PA/CON for 5-36)

PREVIOUS OR ALTERNATIVE TITLES:

NATURE OF THIS WORK: (See Instructions)

MOTION PICTURE

---

**(2) Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

1

NAME OF AUTHOR:
TATSUNOKO PRODUCTION COMPANY, LTD.
Was this author's contribution to the work a "work made for hire"?    Yes X    No......

DATES OF BIRTH AND DEATH:
Born........    Died........
(Year)    (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of.................. } or { Domiciled in.. Japan..........
(Name of Country)    (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?    Yes......    No......
Pseudonymous?    Yes......    No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)
Entire Work including animation, story, soundtrack

2

NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"?    Yes......    No.....

DATES OF BIRTH AND DEATH:
Born........    Died........
(Year)    (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of.................. } or { Domiciled in........
(Name of Country)    (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?    Yes......    No......
Pseudonymous?    Yes......    No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

3

NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"?    Yes......    No......

DATES OF BIRTH AND DEATH:
Born........    Died........
(Year)    (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of.................. } or { Domiciled in........
(Name of Country)    (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?    Yes......    No......
Pseudonymous?    Yes......    No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

---

**(3) Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:

Year.. 1983...
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date...............
(Month)    (Day)    (Year)
Nation...............
(Name of Country)
(Complete this block ONLY if this work has been published.)

---

**(4) Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):

HARMONY GOLD U.S.A., INC.    AND    TATSUNOKO PRODUCTION COMPANY, LTD.
8831 Sunset Blvd. Ste 300    c/o Harmony Gold U.S.A., Inc.
Los Angeles, CA. 90069    8831 Sunset Blvd. Ste 300
Los Angeles, CA 90069

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)    Agreement

---

• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• Follow detailed instructions attached    • Sign the form at line 8

DO NOT WRITE HERE

29

*Amended and added by C.O. & rity telephone conversation with Jan Christison on May 17, 1985.

PAu — 740 323

| CHECKED BY: ... | MAR 985 |
|---|---|
| CORRESPONDENCE: ☐ Yes | DEPOSIT RECEIVED: MAR 28 1985 |
| DEPOSIT ACCOUNT FUNDS USED: ☐ | REMITTANCE NUMBER AND DATE: 505997 MAR 28 85 |

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET ( FORM PA/CON)**

**PREVIOUS REGISTRATION:**

• Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?  Yes ... X .... No ...

• If your answer is "Yes," why is another registration being sought?  (Check appropriate box)

☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☑ This is a changed version of the work, as shown by line 6 of the application.

• If your answer is "Yes," give:  Previous Registration Number ................... Year of Registration ...................

**5** Previous Registration

**COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)
..... English version including animation

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)
.... Japanese soundtrack and story

**6** Compilation or Derivative Work

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: ...................
Account Number: ...................

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name: Harmony Gold U.S.A., Inc.
Address: 8831 Sunset Blvd. Ste. #300
Los Angeles, CA    90069

**7** Fee and Correspondence

**CERTIFICATION:** I, the undersigned, hereby certify that I am the: (Check one)
☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☑ authorized agent of: Harmony Gold U.S.A., Inc.
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) ...................
Typed or printed name: Frank Agrama, President      Date 3/15/85

**8** Certification

HARMONY GOLD U.S.A., INC.
8831 Sunset Blvd. Suite 300
Los Angeles, CA 90069

MAIL CERTIFICATE TO

(Certificate will be mailed in window envelope)

**9** Address For Return of Certificate

Sep 09 02 04:13p   HARMONY GOLD   323-436-7257   p.4

# CONTINUATION SHEET FOR FORM PA

## FORM PA/CON

UNITED STATES COPYRIGHT OFFICE

- If at all possible, try to fit the information called for into the spaces provided on Form PA.
- If you do not have space enough for all of the information you need to give on Form PA, use this continuation sheet and submit it with Form PA.
- If you submit this continuation sheet, leave it attached to Form PA. Or, if it becomes detached, clip (do not tape or staple) and fold the two together before submitting them.
- PART A of this sheet is intended to identify the basic application. PART B is a continuation of Space 2. PART C is for the continuation of Spaces 1, 4, or 6. The other spaces on Form PA call for specific items of information, and should not need continuation.

| REGISTRATION NUMBER |
| --- |
| PAU __ 746-323 |
| PA        PAU |

| EFFECTIVE DATE OF REGISTRATION |
| --- |
| 3      28      85 |
| (Month)   (Day)   (Year) |

CONTINUATION SHEET RECEIVED
MAR 28 1985

Page 3 of 3 pages

---

**DO NOT WRITE ABOVE THIS LINE.  FOR COPYRIGHT OFFICE USE ONLY**

| (A) Identification of Application | IDENTIFICATION OF CONTINUATION SHEET: This sheet is a continuation of the application for copyright registration on Form PA, submitted for the following work: |
| --- | --- |
| | • TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of Form PA.)   MACROSS |
| | • NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of Form PA.)   Harmony Gold U.S.A., Inc. 8831 Sunset Blvd., Ste. 300, Los Angeles, CA 90069 |

| (B) Continuation of Space 2 | NAME OF AUTHOR: | DATES OF BIRTH AND DEATH: Born ........ Died ........ (Year) (Year) |
| --- | --- | --- |
| | Was this author's contribution to the work a "work made for hire"?   Yes ...... No ...... | |
| ☐ | AUTHOR'S NATIONALITY OR DOMICILE: Citizen of ............ (Name of Country) } or { Domiciled in ............ (Name of Country) | WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous?   Yes ...... No ...... Pseudonymous?   Yes ...... No ...... |
| | AUTHOR OF: (Briefly describe nature of this author's contribution) | If the answer to either of these questions is "Yes," see detailed instructions attached. |
| | NAME OF AUTHOR: | DATES OF BIRTH AND DEATH: Born ........ Died ........ (Year) (Year) |
| | Was this author's contribution to the work a "work made for hire"?   Yes ...... No ...... | |
| ☐ | AUTHOR'S NATIONALITY OR DOMICILE: Citizen of ............ (Name of Country) } or { Domiciled in ............ (Name of Country) | WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous?   Yes ...... No ...... Pseudonymous?   Yes ...... No ...... |
| | AUTHOR OF: (Briefly describe nature of this author's contribution) | If the answer to either of these questions is "Yes," see detailed instructions attached. |
| | NAME OF AUTHOR: | DATES OF BIRTH AND DEATH: Born ........ Died ........ (Year) (Year) |
| | Was this author's contribution to the work a "work made for hire"?   Yes ...... No ...... | |
| ☐ | AUTHOR'S NATIONALITY OR DOMICILE: Citizen of ............ (Name of Country) } or { Domiciled in ............ (Name of Country) | WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous?   Yes ...... No ...... Pseudonymous?   Yes ...... No ...... |
| | AUTHOR OF: (Briefly describe nature of this author's contribution) | If the answer to either of these questions is "Yes," see detailed instructions attached. |

| (C) Continuation of Other Spaces | CONTINUATION OF (Check which):   ☒ Space 1   ☐ Space 4   ☐ Space 6 |
| --- | --- |

5. The Transformation
6. The Daidarus Attack
7. Bye-Bye Mars
8. The Longest Birthday
9. Miss Macross
10. The Blind Game
11. First Contact
12. The Big Escape
13. Blue Wind
14. Gloval's Report
15. Chinatown
16. Kung Fu Dandy
17. Phantasm
18. Pineapple Salad
19. Bursting Point
20. Paradise Lost
21. Micro-Cosmos
22. Love Concert
23. Drop Out
24. Goodbye Girl
25. Virgin Road
26. The Messenger
27. Love Floats Away
28. My Album
29. Loli's Song
30. Viva Mariya
31. Satan's Dolls
32. Broken Heart
33. Rainy Night
34. Private Time
35. Romanesque
36. A Gentle Farewell

31

Sep 09 02 04:13p        HARMONY GOLD                    323-436-7257                P.5

# CERTIFICATE OF REGISTRATION



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*



Supplementary Registration
UNITED STATES COPYRIGHT OFFICE
REGISTRATION NUMBER

PAu 2-503-627

RE

EFFECTIVE DATE OR SUPPLEMENTARY REGISTRATION

Mar 13 2000
Month  Day  Year

USE CONTINUATION SHEET.

---

Title of Work ▼ Macross    Episodes 1.) Booby trap  2.) Countdown.
3.) Space fold    4.) Lin Minmei  (See CA/CON for 5.36)

Registration Number of the Basic Registration ▼
PAU 740 323

Year of Basic Registration ▼
3-28-85

Name(s) of Author(s) ▼
Tatsunoko Production Co., Ltd.

Name(s) of Copyright Claimant(s) ▼
Harmony Gold U.S.A., Inc &
Tatsunoko Production Co., Lt

---

Location and Nature of Incorrect Information in Basic Registration ▼
Line Number 5 & 6 _____  Line Heading or Description Compilation or Derivative Work

Incorrect Information as It Appears in Basic Registration ▼ 5.  X yes __ No. ; Preexisting Material:
English  Version including animation; Material added to this Work:
Japanese soundtrack and story

Corrected Information ▼

5. Previous Registration  yes___  NO X

Explanation of Correction ▼

Administrative ERROR

---

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____  Line Heading or Description _____

Amplified Information and Explanation of Information ▼

---

MORE ON BACK ▶  • Complete all applicable spaces (D-G) on the reverse side of this page.     DO NOT WRITE HERE
• See detailed instructions.     • Sign the form at Space F.     Page 1 of __4__ pages

32

Sep 09 02 04:14p       HARMONY GOLD           323-436-7257          p.6

FORM CA RECEIVE

FUNDS RECEIVED DATE

EXAMINED BY

CORRESPONDENCE ☐

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION        ☑ YES     ☐ NO

FOR
COPYRIGHT
OFFICE
USE
ONLY

**FORM CA**

O NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

ontinuation of:  ☐ Part B  or  ☐ Part C

**D**

rrespondence: Give name and address to which correspondence about this application should be sent.

Harmony Gold    c/o J. Hoffman
7655 Sunset Blvd.
Los Angeles, CA 90046
(323) 851 4900 ____ Fax (323) 851 5599 ____ Email Johoffman@harmonygold.cor

**E**

Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Harmony Gold

Number  DA 076422

rtification* I, the undersigned, hereby certify that I am the: (Check only one)

☐ author              ☐ owner of exclusive right(s)
☐ other copyright claimant   ☑ duly authorized agent of   Harmony Gold
                            Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

ped or printed name ▼  Frank Agrama                    Date ▼  2/28/00

ndwritten signature (X) ▼

**F**

rtificate
l be
led in
idow
velope
his
dress:

Name ▼  Harmony Gold    c/o J. Hoffman

Number/Street/Apt ▼  7655 Sunset Blvd

City/State/ZIP ▼  Los Angeles, CA 90046

• Complete all necessary spaces
• Sign your application in Space F

1. Application form
2. Nonrefundable filing fee in check or
   money order payable to Register of
   Copyrights

Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of July 1,
1999, the fee
for filing Form
CA is $65.

**G**

U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999                    @ PRINTED ON RECYCLED PAPER                    @U.S. GOVERNMENT PRINTING OFFICE: 2000-461-113/107

33

Sep 09 02 04:14p        HARMONY GOLD                32̃-436-725̃

# CONTINUATION SHEET
# FOR APPLICATION FORMS

This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA, only.
Indicate which basic form you are continuing in the space in the upper right-hand corner.
If at all possible, try to fit the information called for into the spaces provided on the basic form.
If you do not have enough space for all the information you need to give on the basic form, use
this Continuation Sheet and submit it with the basic form.
If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the
two together before submitting them.
Space A of this sheet is intended to identify the basic application.
Space B is a continuation of Space 2 on the basic application. Space B is not applicable
to Short forms.
Space C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on
the basic application or for the continuation of Space 1 on any of the three Short Forms
A, TX, or VA.

**FORM CA /CON**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**PAu 2-503-627**

PA |||||||||  ᵛPA u02503627u  |||||||||  U

EFFECTIVE DATE OF REGISTRATION

MAY 13 2000

(Month)   (Day)   (Year)

CONTINUATION SHEET RECEIVED

May 15 2000

Page **3** of **4** pages

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY

**A**
fication of application

**IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:
• TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)

Macross

• NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S) : (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form or Space 2 of any of the Short Forms PA, TX, or VA.) Harmony Gold USA, Inc.,
7655 Sunset Blvd, LA, CA 90046 + Tatsunoko Productions Ltd
c/o 7655 Sunset Blvd. LA, CA 90046

**B**
Continuation of Space 2

**d**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born▼          Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ( ) Yes ( ) No
Pseudonymous? ( ) Yes ( ) No

If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**e**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born▼          Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ( ) Yes ( ) No
Pseudonymous? ( ) Yes ( ) No

If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born▼          Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ( ) Yes ( ) No
Pseudonymous? ( ) Yes ( ) No

If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form or for the continuation of Space 1 on any of the Short Forms PA, TX, or VA

34

Sep 09 02 04:14p        HARMONY GOLD          323-436-7257              p.8

CONTINUATION OF (Check which):    X Space 2    [ ] Space 4    [ ] Space 6

**C**

Continuation
of other
Spaces

5. The Transformation
6. The Daidarus Attack
7. Bye-Bye Mars
8. The Longest Birthday
9. Miss Macross
10. The Blind Game
11. First Contact
12. The Big Escape
13. Blue Wind
14. Gloval's Report
15. Chinatown
16. Kung Fu Dandy

17. Phantasm
18. Pineapple Salad
19. Bursting Point
20. Paradise Lost
21. Micro-Cosmos
22. Love Concert
23. Drop Out
24. Goodbye Girl
25. Virgin Road
26. The Messenger
27. Love Floats Away
28. My Album

29. Loli's Song
30. Viva Mariya
31. Satan's Dolls
32. Broken Heart
33. Rainy Night
34. Private Time
35. Romanesque
36. A Gentle Farewell

**D**

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Harmony Gold   c/o J. Hoffman

Number/Street/Apt ▼
7655   Sunset Blvd.

City/State/ZIP ▼
Los Angeles, CA  90046

• Complete all necessary spaces
• Sign your application

1. Application form
2. Nonrefundable fee in check or money order payable to *Register of Copyrights*
3. Deposit Material

Library of Congress, Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

Fees are effective through June 30, 2002. After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

November 1999—80,000
WEB REV: June 1999

♻ PRINTED ON RECYCLED PAPER

☆U.S.GOVERNMENT PRINTING OFFICE: 2000-461-113/78



Copyright
Office
of the
United
States

THE
LIBRARY
OF
CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCU-
MENT WAS RECORDED IN THE COPYRIGHT OFFICE
ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

28May85

| VOLUME | PAGE |
|--------|------|
| 2086 | 348 |
| VOLUME | PAGE |
| 2086 | 353 |

OFFICIAL SEAL

*Donald C Curran*

Acting
Register of
Copyrights and
Assistant
Librarian for
Copyright
Services

Certificate of Recordation
C-762  November 1984—15,000

36

OPTIONAL FORM 175
(FORMERLY FS-88)
MARCH 1975
DEPT. OF STATE
50175-101

VOL. 2086 PAGE 350

## Certificate of Acknowledgment of Execution of an Instrument

(Country)

JAPAN
CITY OF TOKYO
EMBASSY OF THE UNITED STATES OF AMERICA }ss

(County and/or other political division)

SS:

(County and/or other political division)

(Name of foreign service office)

I, **David L. Gossack**                    Vice Consul

the United States of America at          Tokyo, Japan

ly commissioned and qualified, do hereby certify that on this _____ 15th _____

of ___ May, 1985 _____, before me personally appeared _____
     (DATE)
     * * * * * Koki NARUSHIMA * * * * *

personally known, and known to me to be the individual—described in, whose

s___ subscribed to, and who executed the annexed instrument, and being

by me of the contents of said instrument __he____ duly acknowledged to me

executed the same freely and voluntarily for the uses and purposes therein

In witness whereof I have hereunto set my hand and

official seal the day and year last above written.

**David L. Gossack**

Vice Consul _____ of the United States of America.

NOTE.— cv ticable all signatures to a document should be included in one certificate. ☆U.S.GPO:1980-0-311-163/6279

37



VOL.2086 PAGE348

## SHORT FORM ASSIGNMENT

FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency of which is hereby acknowledged, the undersigned, Tatsunoko Production Co., Ltd. ("Assignor"), hereby grants, assigns and transfers to Harmony Gold, Ltd. ("Assignee") the exclusive and irrevocable rights to exploit the animated television programs entitled "MACROSS" (1/2 hour x 36 episodes), "MOSPEADA" (1/2 hour x 25 episodes) and "THE SOUTHERN CROSS" (1/2 hour x 23 episodes) (such episodes being listed in Exhibit "A" attached hereto and collectively referred to as the "Series") which rights include, but are not limited to, television broadcasting, merchandising exploitation, theatrical and non-theatrical exploitation, video devices, sound recording devices and publications.

This Assignment is made subject to and in confirmation of that certain Agreement (the "Agreement"), dated September 11, 1984, between Licensor and Licensee.

1.   TERRITORIES.

        Assignee's rights extend to the following territories:

        The United States of America, and its territories and possessions, and English-speaking Canada, and English-speaking territories and possessions of Canada.  All other English-speaking countries, territories and areas, all German-speaking countries, territories and areas including all Scandanavian countries, territories and areas, and all French-speaking countries, territories and areas.  In addition, Assignee has the exclusive rights of first refusal in certain other territories as more particularly pescribed in the Agreement.

2.   PERIOD OF LICENSE.

        The initial period for such assignment is seven (7) years from the date of the Agreement and said period shall be renewable at the end of every seven (7) years on the terms provided for in the Agreement.

3.   COPYRIGHT.

        Assignor, as the exclusive author and owner of all worldwide copyrights, moral rights and rights of publication in and to the underlying series, grants to Assignee exploitation of the copyrights in accordance with the provisions of the Agreement whereby the Assignee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, dif-

38

0193000310
177-203-850409

VOL.2086 PAGE349

fuse, display, market, edit, dub, translate, arrange musically, transform, dramatize and otherwise adapt and prepare derivative works based on, advertise, and otherwise dispose of and exploit the Series, and any and all versions, characters, stories, settings, titles, music, sound tracks and effects, animation, art work and all other components thereof, using any methods or devices of exploitation with certain limitation as provided in the Agreement. Assignor and Assignee shall be joint owners of all copyrights in the Series in the Territories during the period of Assignee's rights, and Assignor hereby irrevocably grants to Assignee an undivided 50% interest in said copyrights.

4. MERCHANDISING RIGHTS.

The Licensee is the lawful and authorized representative to exercise merchandising rights relating to the *Series in* the Territories with certain exceptions as set forth in the Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Assignment as of the 15th day of May , 1985.

TATSUNOKO PRODUCTION CO., LTD.

By: Koki Narushima
Its: Manager, Int'l Affairs Dept.

On the ____ day of ____, 1985, before me, a diplomatic or consular officer of the United States, personally appeared ____, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that s/he executed the same.

5-4-85                                                 2.

VOL.2086 PAGE 351

EXHIBIT "A"

MOSPEADA

Episodes 1-25

1. Prelude of Assault
2. The March of Love Lost
3. A Duel Concert at High Noon
4. Feel Like A Survival Song
5. Live at the Robbery
6. Tough Little Girl Blues
7. Ragtime for the Departed Hero
8. Elegy for Jonathan
9. Lost World Getaway
10. Requiem for a Battlefield
11. Lullaby of a Distant Hope
12. Fortress Breakthrough Boogie
13. Sandstorm Playback
14. Mint's Wedding March
15. The Ballad of the Comrades' Split
16. Trap Reggae
17. Serenade of the Midnight Sun
18. Polka of the Old Soldiers
19. Folte, the Glacier City
20. A Birthday Song in the Evening
21. Murder's Arpeggio
22. New York Beebop
23. Black-haired Paltita
24. The Finale of Darkness
25. Symphony of Light

SOUTHERN CROSS

Episodes 1-23

1. Shower Cologne
2. Rabbit Hat
3. Star Angel
4. Half Moon
5. Trouble City
6. Prelude
7. Mujika
8. Metal Fire
9. Star Dust

36

EXHIBIT "A"   p. 2

VOL. 2086 PAGE 352

SOUTHERN CROSS (cont.)

10. Outsider
11. Deja Vu
12. Lost Memory
13. Triple Mirror
14. Hope for Glory
15. Love Story
16. The Hunter Killer
17. The Biopsych Car
18. Wonderland
19. Crisis
20. Daydream
21. Nightmare
22. Catastrophic
23. Jeh-nen-Su

MACROSS

Episodes 1-36

1. Booby Trap
2. Countdown
3. Spacefold
4. Lin Minmei
5. The Transformation
6. The Daidarus Attack
7. Bye-Bye Mars
8. The Longest Birthday
9. Miss Macross
10. The Blind Game
11. First Contact
12. The Big Escape
13. Blue Wind
14. Gloval's Report
15. Chinatown
16. Kung Fu Dandy
17. Phantasm
18. Pineapple Salad
19. Bursting Point

34

VOL.2086 PAGE 353

EXHIBIT "A"  p.3

MACROSS (cont.)

20. Paradise Lost
21. Micro-Cosmos
22. Love Concert
23. Drop Out
24. Goodbye Girl
25. Virgin Road
26. The Messenger
27. Love Floats Away
28. My Album
29. Loli's Song
30. Viva Mariya
31. Satan's Dolls
32. Broken Heart
33. Rainy Night
34. Private Time
35. Romanesque
36. A Gentle Farewell

17

42

## A G R E E M E N T

THIS AGREEMENT is entered into this 15th day of March, 1991 by
and between

>            TATSUNOKO PRODUCTION CO., LTD.
>            3-22-12, Minami-cho, Kokubunji-shi,
>            Tokyo, Japan

>            (hereinafter referred to as the Licensor)

>                     - and -

>            HARMONY GOLD, USA.
>            7655 Sunset Boulevard
>            Los Angeles, CA 90046-2700
>            U.S.A.

>            (hereinafter referred to as the Licensee)

WHEREBY IT IS AGREED as follows:

The Licensor hereby grants exclusively and irrevocably to the
Licensee the rights to exploit the animated television programs
described below produced and owned by the Licensor on the terms
and conditions set out below, which rights include, but are not
limited to, television broadcasting, merchandising exploitation,
theatrical and nontheatrical exploitation, video devices, sound
recording devices and publications.

### PROGRAMS & PARTICULARS

>            MACROSS: 1/2 hour X 36 episodes

>            MOSPEADA: 1/2 hour X 25 episodes

>            THE SOUTHERN CROSS: 1/2 hour X 23 episodes

>                              TOTAL: 84 episodes

### 1. TERRITORIES

Worldwide territories excluding Japan and all other Asian
territories.

### 2. PERIOD OF LICENSE

The initial period of license is ten (10) years from the date
hereof and the license period shall be renewable at the end
of every ten years on the terms and conditions mutually agreed
upon. At the Licensee's request, the Licensor shall negotiate
with the Licensee reasonably and in good faith so that the
Licensor shall grant to the Licensee further ten (10) year
license period hereunder. If, for any reason, the Licensor and
the Licensee shall not agree upon such terms and conditions,

43

the Licensor shall not license any of the rights licensed to the Licensee hereunder to any other party, or exploit those rights itself, without first providing to the Licensee the exclusive right for thirty (30) days to match terms and conditions that the Licensor is prepared to accept from another party or upon which the Licensor will exploit such right itself. The Licensee shall be required to accept only financial terms and conditions that may be satisfied as easily by one person as by another. The Licensor shall send to the Licensee a written notice of each of such terms and conditions.

3. LICENSE FEE

License fee for TV and other visual rights: US$3,000.00 per episode.

   Total: US$3,000 X 84 episodes = US$252,000.00

Minimum guarantee for merchandising royalty = US$50,000.00

4. MANNER OF PAYMENT

The total sum of US$302,000.00 (US$252,000 for visual rights and US$50,000 for minimum guarantee for merchandising) shall be paid in a lump-sum payment upon signing this Agreement.

5. COPYRIGHT

The Licensor, as the exclusive author and owner of all world-wide copyrights, moral rights and rights of publication in and to the underlying series, grants to the Licensee exploitation of the copyrights in accordance with provisions in this Agreement whereby the Licensee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, diffuse, display, market, edit, dub, translate, arrange musically, transform, dramatize and otherwise adapt and prepare derivative works based on, advertise, and otherwise dispose of and exploit the underlying series, and any and all versions, character, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof, using any methods or devices of exploitation with limitation as provided in A, B, C of Article 6 herein. The Licensor represents and warrants that the underlying series, and the rights granted to the Licensee, do not and will not infringe upon the rights of any theird party, and are and will be free of any right, claim or encumbrance of any third party. The Licensee is authorized to register the transfer of rights and licenses to the Licensee as set forth in this Agreement in any copyright, trademark or other appropriate register in Japan or elsewhere to protect the Licensee's rights and licenses under this Agreement. The Licensor and the Licensee shall be joint owners of copyrights in the underlying series for the territories licensed to the Licensee during the license period and shall take necessary legal measures to protect such copyrights from infringement or copying by any third party including registration of trademarks or copyright, and the use of copyright notices in the joint

44

names of the Licer   and the Licensee. All t  emarks utilized by the Licensee in connection with the exercise of its rights under this Agreement, other than the existing titles of the underlying series, shall belong jointly to the Licensor and the Licensee and utilization of such trademarks shall be automatically renewed at the termination of this Agreement for a reasonable length of period mutually agreed upon unless such termination is due to default on the part of the Licensee. With respect to any new materials created by the Licensee, copyright and all other rights in such materials shall also belong jointly to the Licensor and the Licensee.

6. MERCHANDISING RIGHTS

The Licensee is the lawful and authorized representative to exercise merchandising rights related to the underlying series in the licensed territories specified in Article 1 herein except for such items and articles as set forth below.

A. With regard to MACROSS series, die-cast toys and other toys manufactured in Japan by Takatoku Toys and plastic model kits made by Imai Chemical Co. for domestic and overseas markets shall be excluded.

B. With regard to MOSPEADA series, die-cast toys and other toys manufactured in Japan by Gakken Co. and plastic model kits made by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

C. With regard to THE SOUTHERN CROSS series, plastic model kits manufactured in the past by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

The Licensor shall not engage in or authorize, except as allowed in A, B and C above, any merchandising exploitation related to the underlying series in any of the territories licensed to the Licensee hereunder at any time during the license period.

7. COMPENSATION FOR MERCHANDISING

A. In connection with exercise by the Licensee of merchandising rights granted hereunder, as distinguished from any other rights granted hereunder, the Licensee shall pay to the Licensor twenty-five (25) percent of net revenue after deduction of ten (10) percent of merchandising expenses from the total proceeds actually received by the Licensee in case sales are made directly by the Licensee whereas the Licensee shall pay to the Licensor twenty-five (25) percent of net revenue without deduction of merchandising expenses provided that sales are made through third parties. Further, it is agreed by the parties hereto that the minimum guarantee of US50,000 paid the Licensor as specified in Article 3 shall constitute part of the Licensor's share of merchandising royalty.

B. The Licensee shall not be beneficiary of revenues accrued by sales of articles licensed in the past by the Licensor to and produced by Takatoku Toys, Gakken Co., Imai Chemical Co., and Arii Works regardless of whether or not such sales are made inside or outside of Japan.

- 3 -

C. With regard t   .ch articles produced in .   .n as not included
in the Licensee's schedule of merchandising exploitation, the
Licensor may export them individually to markets in the licensed
territories hereunder with prior consent of the Licensee who
shall have option priority on such articles. In case the Licensor
exports such articles in compliance with the aforesaid provision,
the Licensee shall not be benificiary of revenues accrued by
such exportation.

D. The Licensee shall pay the Licensor's share of merchandising
revenue to the Licensor on a semiannual basis, for the period
of January 1 through June 30 and July 1 through December 31
of each year. Such payment shall be made within forty-five (45)
days after the end of each applicable period, and the Licensee
shall make monthly business reports available to the Licensor
during the license period.

E. The initial term of merchandising agreement is ten (10) years
from the date hereof as provided in Article 2 herein.

## 8. SPECIAL PROVISIONS

A. The Licensor is entitled to make an audit each twelve (12)
months after providing the Licensee with advance written
notice requesting audit.

B. If the Licensee fails to perform its obligations hereunder,
the Licensor is entitled to terminate this Agreement in its
entirety or partially merchandising exploitation provisions
only without prejudice to any of its rights against the Licensee.
Such termination shall be made only after the Licensee's
receipt of written notice stating in detail the Licensee's
failure. However, the Licensee has the right to confirm and
cure the failure within sixty (60) days after receipt of the
written notice. Notwithstanding any termination, pre-existing
licenses entered into by the Licensee shall not be disturbed
in any way.

C. In case any dispute arises between the two parties hereto in
connection with this Agreement, it shall be settled with the
bona fide efforts on the part of each party. The parties hereto
mutually agree that if no settlement is reached after exertion
of such efforts, the dispute shall be submitted to the competent
court in Tokyo, Japan, whose decision shall be final and binding
upon both parties.

D. This Agreement is subject to force majeure.

## 9. REEDITION, ALTERATION, AND MODIFICATION

The Licensee is entitled to reedit, alter, or modify any and all
the underlying series as the Licensee determines to conform with
marketing requirements including addition of different language
dialogue, new stories, new sound effects, new music, a new title
or titles and credits to personnel utilized by the Licensee in
connection with any such activity. However, such redition, alte-
ration, or modification shall be done in a reasonable manner
acceptable by the Licensor which does not detract from the under-
lying series.

- 4 -

46

10. ASSIGNMENT AND SUBLICENSE

The Licensee shall have the right to assign, license, delegate, lend or otherwise transfer its rights, options or privileges granted hereunder in whole or in part to any third party, but in no case the Licensee shall transfer its obligations to the Licensor to any third party.

IN WITNESS WHEREOF, the parties hereto have signed hereunder to execute this Agreement on the date first above written.

TATSUNOKO PRODUCTION CO., LTD.     HARMONY GOLD, USA ~~LTD.~~

- 5 -

47



# TATSUNOKO PRODUCTION CO., LTD.

3-22-12 MINAMI-CHO, KOKUBUNJI-SHI
TOKYO, JAPAN
TELEPHONE: 0423-23-9111
TELEX: 02832427 ANIPRO J
FAX: 0423-23-9350

# ORIGINAL

February 10. 1993

Re:   "ROBOTECH"

To Whom It May Concern:

This letter is sent with reference to that License Agreement dated October 1, 1989 by and between Tatsunoko Production Co., Ltd. at 3-22-12, Minami-cho, Kokubunji-shi, Tokyo, Japan and Harmony Gold, Ltd. at 7655 Sunset Boulevard, Los Angeles, California 90046 with reference to the television programming of "MACROSS" (30' X 36 eps.), "MOSPEADA" (30' X 25 eps.) and "SOUTHERN CROSS" (30' X 23 eps.) collectively entitled "ROBOTECH". This letter shall confirm that the aforesaid License Agreement includes merchandising and home video rights to the programs.

Sincerely,

TATSUNOKO PRODUCTION CO., LTD.

Toyoharu Yoshida
President

48



## AMENDMENT TO MAIN AGREEMENT

THIS AMENDMENT is entered into as of August 6, 1998 by and between

**TATSUNOKO PRODUCTION CO., LTD. ("Tatsunoko")**
3-22-12, Minami-cho, Kokubunji-shi,
Tokyo, Japan

(hereinafter referred to as the Licensor)

- and -



Reference is made to that certain LICENSE AGREEMENT dated March 15, 1991 by and between Tatsunoko, as amended by that certain AMENDMENT dated February 1, 1993, by and between Tatsunoko and Harmony Gold.

WHEREBY, as Harmony Gold wishes to acquire the rights described in the Main Agreement to the following programs listed below (the "Programs"):

    a. "MACROSS" (36 1/2 hour episodes);
    b. "MOSPEADA" (25 1/2 hour episodes): and
    c. "THE SOUTHERN CROSS" (23 1/2 hour episodes)

IT IS AGREED as follows:

1. PAYMENTS - As consideration for the rights granted in this Amendment, Harmony Gold agrees to pay Tatsunoko the sum Two Hundred Fifty Two Thousand united States Dollars (US$252,000), payable in ten equal 6 month installments, commencing on June 1, 1999 (the "Renewal Fee").

- 1 -

49

2. <u>RIGHTS GRANTED</u> - Tatsunoko hereby irrevocably extends the grant of exclusive rights to Harmony Gold described in the Main Agreement in and to the Programs. Such exclusive rights shall include all rights in all media now existing or hereafter invented, including, but not limited to, theatrical, non-theatrical, television, video, merchandising, soundtrack and publication rights, excluding only the merchandising rights in Japan previously granted to certain Japanese manufacturers as set forth in the Main Agreement. Notwithstanding anything to the contrary in the Main Agreement, all trademarks, copyrights and other rights in any materials created or utilized by Harmony Gold in connection with the exercise of its rights under the Main Agreement including, ~~but not limited to the right to~~ the name "ROBOTECH", shall be ~~exclusively owned and~~ controlled throughout the universe in perpetuity. ~~Harmony~~ ~~notwithstanding~~ the foregoing, harmony Gold shall ~~not have the right~~ ~~to any sequel~~ to "Macross", "Mospeada" or ~~"Southern Cross".~~

3. <u>TERRITORY</u> ~~The~~ ~~territory~~ ~~shall be worldwide~~ ~~excluding~~ Japan. With respect to ~~television~~ ~~distribution~~ ~~only in Asian~~ languages, Harmony Gold's right to ~~distribute~~ ~~the same~~ ~~shall be limited~~ to English language ROBOTECH ~~series~~ ~~only, including the~~ ~~versions~~ of these Tatsunoko shall have ~~the right~~ ~~to distribute~~ ~~the above mentioned~~ Programs independently ~~in the~~ ~~Asian languages~~ ~~and in Asian~~ languages ~~except~~ ~~for Japan in Australia, New Zealand~~ come under its coverage.

4. <u>TERM</u> - Tatsunoko hereby grants to Harmony Gold a Renewal Term of <u>ten (10) years</u> through and including <u>March 14, 2011.</u> In addition, provided Harmony Gold has complied with the terms of the Agreement, and provided Harmony Gold wishes to extend the Renewal Term for an additional <u>ten (10) years</u> (through and including March 14, 2021), Harmony Gold will notify Tatsunoko of its interest in extending the Term. In which case, the parties agree to negotiate in good faith for such renewal using the payment terms of this Amendment as a guideline.

This Amendment and the Main Agreement will be governed by the laws of the State of California of the United States of America and all disputes shall be resolved by binding arbitration in Los Angeles, California pursuant to the rules of the American Film Marketing Association. Except as amended herein, all of the rights and obligations set forth in the Main Agreement remain in full force and effect. This Amendment is executed as of the date set forth above by duly authorized officers of the parties hereto.

(A) For the avoidance of doubt, the Japanese exclusion and the Asian / English language limitation will not apply to any new Robotech series to be produced by Harmony Gold.

50

TATSUNOKO PRODUCTION CO., LTD.          HARMONY GOLD LTD.

KENJI YOSHIDA                                    April 12 1999



- 3 -

51

# EXHIBIT O

# ORIGINAL

__ Priority
__ Send
__ Clsd
__ Enter
__ JS-5/JS-6
__ JS-2/JS-3

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES-GENERAL

**Case No.:** CV 02-7187-GHK(SHSx)      **Date:** December 10, 2002

**Title:   Harmony Gold v. Sunwards**

==================================================================
**DOCKET ENTRY**

==================================================================
**PRESENT:   Hon. George H. King, U.S. DISTRICT JUDGE**

Beatrice Herrera                None
Deputy Clerk                    Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFF:**      **ATTORNEYS PRESENT FOR DEFENDANT:**

None                            None

**PROCEEDINGS:    (In Chambers): Motion to Dismiss**

This matter is before the court on the above-titled motion. This motion is appropriate for resolution without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After fully considering the briefs and papers pertaining to this matter, we rule as follows:

Plaintiff Harmony Gold filed a complaint on September 13, 2002, which included a claim for copyright infringement against Defendant Sunwards. Plaintiff claims Sunwards infringed upon its copyright of an animated television series called Macross. This series, featuring "futuristic animation and 'transforming' mechanical robot characters, vehicles and weaponry for extraterrestrial combat," Def.'s Motion, at 3, was created by a consortium of studios in Japan, which included Tatsunoko Production Company. Complaint, at ¶ 7. Harmony Gold was assigned "exclusive and irrevocable rights" to exploit the copyright in the Macross series in the United States from Tatsunoko. Def. Motion, at 3. On March 28, 1985 Harmony Gold and Tatsunoko Production together filed a certificate of copyright registration with the U.S. Copyright office. Complaint, Exh. B.

Sunwards now moves to dismiss the copyright infringement claim on the grounds that it fails to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6).

In its motion to dismiss, Sunwards claims Harmony Gold



ENTERED ON ICMS

DEC 11 2002

CV



failed to plead both elements necessary for a copyright infringement claim: (1) ownership and (2) infringement. For the following reasons we **DENY** Sunwards' motion.

### 1. Ownership

Sunwards argues Plaintiff's complaint does not assert a proper basis for claiming ownership because Plaintiff provides no evidence that an agreement exists giving Tatsunoko the intellectual property rights it assigned to Harmony Gold. See Def. Mot., at 3.

To assert a claim for copyright infringement, plaintiff must show that it has title to the copyright at issue. Here, a distinction must be observed between a plaintiff who, as assignee of the copyright, first registered a claim of statutory copyright in his or her name, and a plaintiff who was merely an assignee of a previously registered copyright. When the plaintiff is an assignee of the copyright and has registered a claim of statutory copyright in its name, that registration serves as prime facie evidence of ownership. See Nimmer on Copyright § 12.11[C]. The burden then shifts to the defendant to controvert plaintiff's title. Thus, Sunwards' assertion that Plaintiff must provide evidence of Tatsunko's right to assign is inaccurate.

Harmony Gold has presented prima facie evidence of ownership by attaching to its complaint a copy of a copyright registration with its name on it. Sunwards does not controvert this presumption of ownership with its own evidence. Therefore, Plaintiff has sufficiently pled the first element of a copyright infringement case.

### 2. Infringement

Sunwards next argues that plaintiff has failed to plead infringement because Plaintiff did not plead that the defendant had access to the infringed work, or that defendant's work is substantially similar to the copyrighted work. Sunwards cites Frybarger v. IBM Corp., 812 F.2d 529 (9th Cir. 1987) for this proposition. In response, Plaintiff asserts infringement can be proven with either direct or circumstantial evidence. Allegations of infringement need not contain the theory by which a plaintiff plans to prove his or her claim. Access and substantial similarity are evidentiary facts, which need not be alleged at the pleading stage.

Sunwards' reliance on Frybarger is misplaced. Frybarger was a summary judgment case, where proof of infringement must be

2

shown.  Here, at the pleading stage, a plaintiff need only allege infringement.  Plaintiff has satisfied the liberal pleading requirements of Rule 8.

    3.    Motion for a More Definite Statement

Sunwards also requests that we order plaintiff to provide a more definite statement.  We decline to do so.  Under Fed. R. Civ. P. 8, plaintiff must provide a "plain and concise" statement of the claim.  Plaintiff here has done so.  A motion for a more definite statement attacks the unintelligibility of the complaint, not simply lack of detail.  QTL Corp v. Lakeshore Learning, U.S. Dist. LEXIS 10670, * 4 (N.D. Cal. Feb. 2, 1998). When detail sought is obtainable through discovery, the motion should be denied.  Id., at *5.

For the foregoing reasons, Defendant's motion to dismiss and motion for a more definite statement are **DENIED**.  Defendant shall answer the complaint within ten (10) days hereof.

**IT IS SO ORDERED.**

MINUTES FORM 11           Initials of Deputy Clerk
CIV - GEN

3

# EXHIBIT P

GAIMS, WEIL, WEST & EPSTEIN, LLP
BARRY G. WEST, State Bar No. 55365
MARC EPSTEIN, State Bar No. 61062
JESSE J. CONTRERAS, State Bar No. 190538
1875 Century Park East, 12th Floor
Los Angeles, California  90067
Telephone:  (213) 300-1313
email: bgwest@gwwe.com; epstein@gwwe.com
jcontreras@gwwe.com

*Attorneys for Harmony Gold USA, Inc.*



FILED
CLERK, U.S. DISTRICT COURT

JUL 2 2 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| HARMONY GOLD-USA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HASBRO, INC., a Rhode Island corporation; and Does 1 through 10, inclusive<br><br>Defendants. | Case No.  CV13- 5268 JFW (JEMx)<br><br>**COMPLAINT**<br><br>**COPYRIGHT INFRINGEMENT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

**COMPLAINT**

Plaintiff Harmony Gold-USA, Inc., alleges claims against Defendant Hasbro, Inc., and DOES 1 through 10 (hereinafter collectively "Defendants") as follows:

## THE PARTIES

1.     Plaintiff Harmony Gold-USA, Inc., is a California corporation having offices and its principal place of business at 7655 Sunset Boulevard, Los Angeles, California 90046. It is doing business within the jurisdiction of this Court. Harmony Gold, Ltd., a Hong Kong corporation, entered into some of the agreements referred to in this Complaint and assigned all of its rights in said agreements, with the exception of certain foreign television broadcast rights not relevant to this Complaint, to Harmony Gold-USA, Inc. In this Complaint, "Harmony Gold" is used to refer to Harmony Gold-USA, Inc. itself or as the assignee in place and stead of Harmony Gold, Ltd.

2.     Upon information and belief, Defendant Hasbro, Inc. ("Hasbro") is and was at all times relevant hereto a Rhode Island corporation. Hasbro is doing business within the jurisdiction of this Court.

3.     The true names and capacities, whether individual, corporate or otherwise, of defendants named herein as DOES 1 through 10 are presently unknown to Harmony Gold, who therefore sues said defendants by such fictitious names. Harmony Gold will seek to amend this complaint to allege the true names and capacities of said defendants when it has ascertained such information. Harmony Gold is informed and believes and on the basis of such information and

2

**COMPLAINT**

belief alleges that each defendant DOE 1 through 10 has participated in some or all of the acts or conduct herein alleged and is liable to Harmony Gold by reason thereof

## JURISDICTION AND VENUE

4. This is an action for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.*, and related claims for unfair competition under the laws of the State of California and the common law. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338, and 1367. By this action, Harmony Gold seeks injunctive relief and damages against all Defendants.

5. This Court has personal jurisdiction over Defendants Hasbro and DOES 1 through 10 because they conduct continuous, systematic, and routine business within the State and within the County of Los Angeles. This Court also has personal jurisdiction over Defendants as they have committed tortious acts within the State, and/or have committed tortious acts outside California causing injury within the State and derive substantial revenue from interstate commerce.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

**FACTS**

7.  This action involves an infringement of Harmony Gold's rights – including the right to prepare derivative works, such as toys and other merchandise – in and to three animated television series that originated in Japan between 1982 and 1984. The subject television series (collectively, the "Series") are entitled: Macross, Episodes 1-36, which was telecast in 1982-83; Mospeada, Episodes 1-25, which was telecast in 1983-84; and The Southern Cross, Episodes 1-23, which was also telecast in 1983-84. The Series featured futuristic animation and mechanical robot characters, vehicles, and weaponry for extraterrestrial combat, including without limitation a vehicle known as the Veritech Fighter VF-1. Tatsunoko Production Company, Ltd. ("Tatsunoko"), a Japanese corporation, is the exclusive author and owner of all worldwide copyrights, moral rights, and rights of publication of the Series, except for certain limited rights not related to this action which Tatsunoko granted to third parties. By agreement dated October 1, 1982, the three companies that originally contributed to the creation of the Series in Japan – K.K. Studio Nue, K.K. Big West, and Tatsunoko – agreed that with respect to the sale of the Series outside Japan, and all merchandising rights outside Japan, Tatsunoko was entitled to such sale and exploitation and was to be entitled to any and all proceeds by exploitation of such rights.

8.  By agreement dated September 11, 1984 (the "1984 Agreement"), Tatsunoko granted to Harmony Gold, subject to certain exceptions not relevant to

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

4
COMPLAINT

Harmony Gold's claims asserted herein, exclusively and irrevocably the rights to exploit the copyrights in the Series in the United States and certain other countries, including but not limited to television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications, and to prepare derivative works based on, advertise, and otherwise dispose of and exploit, the Series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof. The initial term of the 1984 Agreement was seven years.

9. After acquiring the rights to the Series from Tatsunoko in 1984, Harmony Gold combined the three programs comprising the Series, and marketed them to United States audiences under the title "Robotech."

10. Since 1984, Harmony Gold has used and exploited, and continues to use and exploit, its rights in the Series in interstate commerce throughout the United States and certain other territories throughout the world, directly and indirectly through licensees, through among other things, television broadcasting; distribution of videos; manufacture and sale of merchandise, including comic books, toys, novels, games, and apparel.

11. On March 28, 1985, Tatsunoko and Harmony Gold registered the Series for copyright with the U.S. Copyright Office.

12. On May 28, 1985, Harmony Gold recorded in the U.S. Copyright Office a Short Form Assignment dated May 15, 1985 made subject to and in

5
**COMPLAINT**

confirmation of the exclusive and irrevocable rights granted to it in the 1984 Agreement. By so doing, Harmony Gold put all persons on constructive notice of its rights in and to the Series.

13.   By agreement dated March 15, 1991 (the "1991 Agreement") Tatsunoko renewed the grant to Harmony Gold of the rights granted in the 1984 Agreement for an additional initial term of ten years, to include all worldwide territories excluding only Japan and all other Asian territories.

14.   On August 6, 1998, Tatsunoko and Harmony Gold entered into a contract called Amendment to Main Agreement which renewed the grant to Harmony Gold of the rights granted in the 1991 Agreement for a renewal term through and including March 14, 2011.

15.   From and after 1985, from time to time, Harmony Gold, together with licensees, created and expressed derivative works in the form of toys based on the Series and the Veritech VF-1 that appeared in the Series. Hereinafter the toys so created and expressed and the Series, including without limitation the depiction and expression of the Veritech VF-1 in the Series, are referred to collectively as the "Copyrighted Works." Harmony Gold is the sole and exclusive owner of all rights of copyright in the Copyrighted Works in the United States, and Harmony Gold's licensees own no rights of copyright in the Copyrighted Works.

16.   On March 20, 2008, Tatsunoko and Harmony Gold entered into a contract called Amendment to Original Agreement which renewed the grant to

6
**COMPLAINT**

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

Harmony Gold of the rights granted in the 1991 Agreement for a renewal term through and including March 14, 2021.

## CLAIM FOR RELIEF

### (Copyright Infringement Under 17 U.S.C. §§ 101 *et seq.* Against All Defendants)

17.    Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 16 of this Complaint as though fully and completely set forth herein.

18.    Without Harmony Gold's authorization or consent, Defendants have sold and distributed and continue to sell and distribute in the United States a toy in a box labeled, "G.I. Joe and the Transformers … The Epic Conclusion" (the "Hasbro Toy") which infringes Harmony Gold's copyrights in the Copyrighted Works.

19.    Unless permanently enjoined by Order of this Court, Defendants have and will continue to offer for sale and distribution toys that infringe Harmony Gold's rights, all to Harmony Gold's irreparable injury. As a result of Defendants' acts of infringement, Harmony Gold is without an adequate remedy at law in that damages are difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Harmony Gold will be required to pursue a multiplicity of actions.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

20.     Harmony Gold has sustained, and will continue to sustain, substantial pecuniary damage to the value of its exclusive rights in and to the Copyrighted Works in that the previously described activities of Defendants have diminished and will continue to diminish the revenues that Harmony Gold otherwise would receive.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Harmony Gold-USA, Inc. prays for relief against Defendants, including without limitation Defendant Hasbro, Inc., as follows:

A.     That Defendants, their agents, servants and employees and all persons acting in concert with them be restrained and enjoined permanently from selling, marketing, distributing, or otherwise disposing of any unauthorized toys or other products that are based on the Copyrighted Works.

B.     That Defendants be required to deliver upon oath all toys or other products in their possession, held for sale or distribution, or otherwise under their control, which infringe or which may have been used to infringe Harmony Gold's exclusive rights under copyright to the Copyrighted Works; and that Orders for Seizure in respect of the foregoing be issued out of this Court and that at the conclusion of this action, the Court shall order all such material so held to be surrendered to Harmony Gold or to be destroyed under 17 U.S.C. § 503, whichever shall seem to this Court to be most just and proper.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

8
COMPLAINT

C.     That Defendants be required to recall from any person or entity known to them who purchased or received from Defendants any copies of any unauthorized toys or other products based on the Copyrighted Works.

D.     That Defendants be required to account for all gains, profits and advantages derived from their acts of infringement and for their other violations of law.

E.     That Defendants be required to pay over to Harmony Gold the actual damages suffered by Harmony Gold as a result of the infringement of Harmony Gold's copyrights, and any profits of Defendants attributable to the sale or distribution of toys and merchandise that infringes Harmony Gold's copyrights, and to pay such damages to Harmony Gold as this Court shall deem to be just and proper within the provisions of the Copyright Act or, in the alternative, at Harmony Gold's election, statutory damages as set forth in 17 U.S.C. § 504.

F.     For exemplary damages against Defendants in an amount sufficient to punish and make a public example of Defendants, and to deter such wrongful conduct in the future.

G.     That Harmony Gold recover prejudgment interest.

H.     That Harmony Gold recover its costs of suit incurred herein.

I.     That Harmony Gold recover its attorneys' fees incurred in this action.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

9
**COMPLAINT**

J.   That Harmony Gold have such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: July 22, 2013

GAIMS, WEIL, WEST & EPSTEIN, LLP
BARRY G. WEST
MARC EPSTEIN
JESSE J. CONTRERAS

By:_____
      Jesse J. Contreras
*Attorneys for Plaintiff Harmony Gold-USA, Inc.*

## DEMAND FOR JURY TRIAL

Plaintiff Harmony Gold-USA, Inc. hereby demands a trial by jury in this action.

Dated: July 22, 2013

GAIMS, WEIL, WEST & EPSTEIN, LLP
BARRY G. WEST
MARC EPSTEIN
JESSE J. CONTRERAS

By:_____
      Jesse J. Contreras
*Attorneys for Plaintiff Harmony Gold-USA, Inc.*

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 407-4500

10
**COMPLAINT**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV13- 5268 JFW (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [✓] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| **312 N. Spring St., Rm. G-8** | **411 West Fourth St., Rm. 1-053** | **3470 Twelfth St., Rm. 134** |
| **Los Angeles, CA 90012** | **Santa Ana, CA 92701-4516** | **Riverside, CA 92501** |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Barry G. West (State Bar No. 55365)
Marc Epstein (State Bar No. 61062)
Jesse J. Contreras (State Bar No. 190538)
Gaims, Weil, West & Epstein LLP
1875 Century Park East, 12th Fl., L.A. CA 90067
Phone: 213 300-1313; email: bgwest@gwwe.com; epstein@gwwe.com
jcontreras@gwwe.com
Attorneys for Plaintiff Harmony Gold-USA, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMONY GOLD-USA, INC, a California corporation, <br><br> PLAINTIFF(S) <br><br> v. <br><br> HASBRO, INC., a Rhode Island corporation; and Does 1 through 10, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV13- 5268** JFW (JENx) <br><br><br> **SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Jesse J. Contreras _____ , whose address is Gaims, Weil, West & Epstein, LLP, 1875 Century Park East, 12th Fl., L.A., CA 90067 ____ .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**JUL 2 2 2013**

Dated: _____

**JULIE PRADO**

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                              **SUMMONS**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Harmony Gold-USA, Inc. a California corporation

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Hasbro, Inc. a Rhode Island corporation; and Does 1 through 10, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Barry G. West (State Bar No. 55365); Marc Epstein (State Bar No. 61062); Jesse J. Contreras (State Bar No. 190538); Gaims, Weil, West & Epstein, LLP 1875 Century Park East, 12th Floor, Los Angeles, CA 90067 Email: bgwest@gwwwe.com; epstein@gwwwe.com; Telephone: 213 300-1313

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Copyright infringement, 17 U.S.C. §§ 101 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: _____ **CV13- 5268**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)  CIVIL COVER SHEET  Page 1 of 2

### UNITED ( TES DISTRICT COURT, CENTRAL DISTI ( OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | State of Rhode Island |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____  DATE: July 19, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |