HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARMONY GOLD U.S.A., INC.,

Plaintiff,

v.

HAREBRAINED SCHEMES LLC,
HAREBRAINED HOLDINGS, INC., JORDAN
WEISMAN, PIRANHA GAMES INC. and DOES
1–10,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:17-CV-00327-TSZ

**PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM**

**NOTE ON MOTION CALENDAR: MARCH 30, 2018**

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ

**DORSEY & WHITNEY LLP**
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

Case 2:17-cv-00327-TSZ    Document 87    Filed 03/08/18    Page 2 of 31

## TABLE OF CONTENTS

I.     INTRODUCTION AND RELIEF REQUESTED ..............................................................1

II.    BACKGROUND ...........................................................................................................2

       A.   Harmony Gold's Second Amended Complaint Does Not Allege Any New
            Facts Affecting Harmony Gold's Lack of Standing ................................................2

       B.   Big West and Studio Nue Created the Big West Characters ...................................3

       C.   Tatsunoko Received Limited Rights in the *Macross* Motion Picture, But
            Not in the Big West Characters ..............................................................................9

       D.   Tatsunoko Licensed Its Limited Rights to Harmony Gold......................................9

       E.   The Japanese Courts Confirmed Big West's Ownership of the Copyrights
            in the Characters ..................................................................................................10

       F.   The U.S. Litigation Confirmed Big West's Ownership of the Copyrights in
            the Characters.......................................................................................................11

III.   ARGUMENT................................................................................................................12

       A.   The Legal Standard for a Motion for Summary Judgment ...................................13

       B.   Harmony Gold Lacks Standing Because It Is Not the Owner or Exclusive
            Licensee of Any Copyright in the Characters.......................................................13

            1.   Only the Legal or Beneficial Owner of an Exclusive Right Can Sue
                 for Infringement .........................................................................................13

            2.   Tatsunoko Never Owned Any Copyright in the Big West
                 Characters ..................................................................................................14

            3.   The Japanese Courts Confirmed that Tatsunoko Never Owned Any
                 Copyright in the Big West Characters ........................................................15

            4.   Big West's Copyright Registration Is *Prima Facie* Evidence of the
                 Validity of Big West's Copyrights ..............................................................16

            5.   Harmony Gold's Copyright Registration for the "Motion Picture"
                 Does Not Give It Any Rights in the Big West Characters........................18

       C.   Collateral Estoppel Precludes Harmony Gold from Re-Litigating the
            Scope of Its Rights ...............................................................................................19

            1.   The Elements of Collateral Estoppel .........................................................20

            2.   Determining the Scope of Harmony Gold's Rights under the
                 License Agreement Was Critical and Necessary to the Judgment ...........22

       D.   The Recent Amendments to the Complaint Do Not Prevent Summary
            Judgment ..............................................................................................................22

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - ii

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

IV.      CONCLUSION..................................................................................................24

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. McCurry*,
      449 U.S. 90 (1980)...........................................................................................................20

*Ashe v. Swenson*,
      397 U.S. 436 (1970)...........................................................................................................21

*C.D. Anderson & Co., Inc. v. Lemos*,
      832 F.2d 1097 (9th Cir. 1987) .........................................................................................20

*Celotex Corp. v. Catrett*,
      477 U.S. 317 (1986)...........................................................................................................13

*CJ Prods. LLC v. Snuggly Plushez LLC*,
      809 F. Supp. 2d 127 (E.D.N.Y. 2011) ..............................................................................17

*Clark v. Bear Stearns & Co.*,
      966 F.2d 1318 (9th Cir. 1992) ..........................................................................................21

*DC Comics v. Towle*,
      802 F.3d 1012 (9th Cir. 2015) .......................................................................................3, 19

*Emich Motors Corp. v. General Motors Corp.*,
      340 U.S. 558 (1950)...........................................................................................................21

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
      122 F.3d 1211 (9th Cir. 1997) ..........................................................................................17

*Harmony Gold, USA, Inc. v. Tatsunoko Production Co., Ltd.*,
      Case No. 2:17-cv-06034-PA-MRW (C.D. Cal. Aug. 23, 2017)...................................2, 12, 17

*Marya v. Warner/Chappell Music, Inc.*,
      131 F. Supp. 3d 975 (C.D. Cal. 2015) ..............................................................................14

*Michael Grecco Photography, Inc. v. Everett Collection, Inc.*,
      589 F. Supp. 2d 375 (S.D.N.Y. 2008)...............................................................................17

*North Coast Indus. v. Maxwell*,
      972 F.2d 1031 (9th Cir. 1992) ..........................................................................................13

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - iv

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Righthaven LLC v. Hoehn*,
     716 F.3d 1166 (9th Cir. 2013) ...............................................................................13, 14, 23

*Russell v. Price*,
     612 F.2d 1123 (9th Cir. 1979) ...............................................................................18

*S. Cal. Darts Ass'n v. Zaffina*,
     762 F.3d 921 (9th Cir. 2014) ...............................................................................13

*Sybersound Records, Inc. v. UAV Corp.*,
     517 F.3d 1137 (9th Cir. 2008) ...............................................................................13, 14

*Town of N. Bonneville v. Callaway*,
     10 F.3d 1505 (9th Cir. 1993) ...............................................................................20, 22

*Trevino v. Gates*,
     99 F.3d 911 (9th Cir. 1996) ...............................................................................20

*Tri-Tron Intern. v. Velto*,
     525 F.2d 432 (9th Cir. 1975) ...............................................................................22

*U.S. v. King Features Entm't, Inc.*,
     843 F.2d 394 (9th Cir. 1988) ...............................................................................15

**Statutes**

9 U.S.C. § 1, *et seq.*...............................................................................12

9 U.S.C. § 13(c) ...............................................................................12, 19, 21

17 U.S.C. § 101............................................................................................ *passim*

17 U.S.C. § 103(b) ...............................................................................1, 15, 18

17 U.S.C. § 106...............................................................................14, 23

17 U.S.C. § 201(a) ...............................................................................15

17 U.S.C. § 201(d) ...............................................................................14

17 U.S.C. § 410(c) ...............................................................................16, 18

17 U.S.C. § 501(b) ...............................................................................14, 23

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - v

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

**Other Authorities**

Fed. R. Civ. P. 52(a) ...............................................................................................................21

Fed. R. Civ. P. 56.....................................................................................................................1

Nimmer on Copyright § 3.05 ..................................................................................................19

9C Wright & Miller, Federal Practice & Procedure, § 2579 (3d ed. 2008)...................................21

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - vi

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

## I.    INTRODUCTION AND RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 56, defendant Piranha Games Inc. ("Piranha") moves for summary judgment dismissing the copyright infringement claim asserted by plaintiff Harmony Gold U.S.A., Inc. ("Harmony Gold") (Dkt. 83 at ¶¶ 39-45).  Harmony Gold lacks standing. Harmony Gold alleges that it owns an exclusive license to copyrights in certain robot warrior characters, and that a video game created by Piranha infringes those copyrights.  Piranha's position is simple: Harmony Gold is not the owner or exclusive licensee of the copyrights it seeks to enforce.  Therefore, Harmony Gold lacks standing to bring its copyright infringement claim, and it should be dismissed.

Harmony Gold claims that it obtained copyrights in the characters through a license agreement with a company called Tatsunoko.  However, Tatsunoko never owned any copyright in the characters, nor was it ever the exclusive licensee of any copyright in the characters.  Therefore Tatsunoko could not license those copyrights to Harmony Gold.  The asserted copyrights are owned by a company called Big West.  Big West owns the copyrights because it created the robot warrior characters (hereinafter "Big West Characters").  Big West's ownership of the copyrights is shown by the registration certificate it filed with the U.S. Copyright Office.  Big West's ownership of the copyrights has been confirmed by court rulings in Japan and the United States.

Big West created the Big West Characters for an animated movie it was developing called *Macross* (the "*Macross* Motion Picture").  For purposes of this motion, Piranha does not dispute that Harmony Gold received certain rights to copy, distribute, display and commercialize the *Macross* Motion Picture pursuant to its license agreement with Tatsunoko.  However, under the Copyright Act, a copyright in a "compilation or derivative work," like a motion picture, does not imply any exclusive right in "preexisting material," such as characters, screenplays, musical scores, etc. *See* 17 U.S.C. § 103(b).  The Big West Characters are "preexisting material" created and owned by Big West.  Harmony Gold is improperly claiming copyrights in the Big West

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 1

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Characters based on its limited commercialization rights for the *Macross* Motion Picture.

Big West's ownership of the copyrights in the Big West Characters has been extensively litigated, first in Japan, and most recently in a U.S. arbitration that resulted in a U.S. District Court Judgment. *See* Amended Judgment Confirming Arbitration Award in *Harmony Gold, USA, Inc. v. Tatsunoko Production Co., Ltd.*, Case No. 2:17-cv-06034-PA-MRW, at 2 (C.D. Cal. Aug. 23, 2017) (the "federal court Judgment") (copy attached as Exhibit 4 to the Meyer Decl.).  Tatsunoko tried—and failed—to convince two Japanese courts that it owned copyrights in the Big West Characters as a result of work that Tatsunoko performed in animating the *Macross* Motion Picture. The U.S. Judgment also confirmed that Tatsunoko could not, and did not, assign any copyrights in the Big West Characters to Harmony Gold.  The Judgment found that Harmony Gold received an assignment of Tatsunoko's copyrights in the *Macross* Motion Picture, but **not** in the Big West Characters, which are owned "exclusively" by Big West. Meyer Decl., Ex. 4 at 6.

There is no genuine dispute of material fact as to Harmony Gold's lack of standing. Accordingly, Piranha requests that the Court grant summary judgment dismissing Harmony Gold's copyright infringement claim (Count I) with prejudice, and dismissing Piranha from this case.

This motion is supported by the concurrently filed Declaration of Ryan B. Meyer ("Meyer Decl.") and Exhibits 1-9 attached thereto.  A proposed Order is filed herewith.

## II.    BACKGROUND

### A.    Harmony Gold's Second Amended Complaint Does Not Allege Any New Facts Affecting Harmony Gold's Lack of Standing

Piranha first moved for summary judgment on November 13, 2017. Dkt. 47.  Piranha's motion focused on Harmony Gold's allegation in the original and first Amended Complaints that Piranha's video game is a "derivative" work that allegedly incorporates certain features of the Big West Characters.  Piranha's motion demonstrated that Harmony Gold has no derivative works rights in the Big West Characters.  This was acknowledged by Harmony Gold and Tatsunoko in a

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 2

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

2003 amendment to their license agreement (the "2003 Amendment"). *See* Meyer Decl., Ex. 7.

In response to Piranha's motion, Harmony Gold requested leave to amend its Complaint a second time, purportedly to explain that Harmony Gold has *other* exclusive copyrights in the Big West Characters. The Second Amended Complaint deletes the word "derivative," and substitutes words like "copy," "commercialize," "distribute," "display" and "merchandize" to describe Harmony Gold's alleged rights. But no amount of artful pleading can salvage Harmony Gold's copyright claim. Harmony Gold has never owned **any** exclusive copyright in the individual characters, because Tatsunoko's international distribution rights were always limited to the completed *Macross* Motion Picture. Harmony Gold received an assignment of rights only in the *Macross* Motion Picture as a whole, not in the individual characters. *See DC Comics v. Towle*, 802 F.3d 1012, 1023-25 (9th Cir. 2015) (holding that DC Comics "retained its rights to the underlying Batmobile character" when it licensed the rights to produce a Batman movie and television series which display the Batmobile character).

The following subsections explain the relevant chronology with respect to this motion. Specifically, they explain: (1) how Big West created the Big West Characters; (2) how Tatsunoko received limited rights to distribute the *Macross* Motion Picture outside Japan; (3) how Tatsunoko subsequently assigned those rights to Harmony Gold; (4) how Tatsunoko and Big West litigated their respective rights in the Japanese courts, which ruled that Big West owns the copyrights to the Big West Characters; (5) how Big West registered its copyrights with the U.S. Copyright Office; and (6) how the limited scope of Harmony Gold's copyrights was recently litigated and confirmed in an arbitration ruling that was confirmed as a U.S. District Court Judgment.

**B.      Big West and Studio Nue Created the Big West Characters**

In 1981, a company called Studio Nue, in partnership with Big West, began development of a story and 41 characters that would eventually be incorporated into the *Macross* Motion Picture. Meyer Decl., Ex. 1 at 6-8. Employees of Studio Nue were responsible for creating and designing

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 3

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

the Big West Characters. *Id.* The characters created by Studio Nue (Meyer Decl., Ex. 5) include the nine characters at issue in this litigation. *See* Dkt. 83 at ¶ 16. By agreement, Big West and Studio Nue jointly own the copyrights to the Big West Characters. Meyer Decl., Ex. 1 at 10-11 (Japanese trial court decision). As held by the Japanese court: "… it is recognized that the copyright for the designs belongs jointly to the plaintiffs [Studio Nue and Big West]." *Id.* at 11. Because of their joint ownership, Studio Nue and Big West are referred to in the balance of this brief as "Big West."

As shown below, the allegedly infringed characters displayed in the Second Amended Complaint are nine of the 41 Big West Characters. *Compare* Dkt. 83 at ¶ 16 (nine allegedly infringed characters) with Meyer Decl.*,* Ex. 5 (Big West Copyright Registration, Character Nos. 2, 11, 13, 14, 16, 19, 20 and 21) and Ex. 6 (characters displayed in *Macross: Perfect Memory* book (© Big West, et al. 1983) at 154-57, 161, 163 and 170):

| "Armored Valkyrie" from the Second Amended Complaint ¶ 16 at p. 6. | Character No. 13 from the Big West Copyright Registration. | Character from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 156 |
|---|---|---|
| | | |

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 4

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

| "Destroyed Defender" from the Second Amended Complaint ¶ 16 at p. 6. | Character No. 20 from the Big West Copyright Registration. | Character from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 161. |
|---|---|---|
| | | |
| "Destroid Phalanx" from the Second Amended Complaint ¶ 16 at p. 7. | Character No. 19 from the Big West Copyright Registration. | Character from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 163. |
| | | |

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

| "Destroid Spartan" from the Second Amended Complaint ¶ 16 at 7. | Character No. 14 from the Big West Copyright registration. | Character from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 163. |
|---|---|---|
|  |  |  |
| "Destroid Tomahawk" from the Second Amended Complaint ¶ 16 at p. 7. | Character No. 21 from the Big West Copyright registration. | Character from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 161. |
|  |  |  |

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 6

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

| "Officer's Pod (Glaug)" from the Second Amended Complaint ¶ 16 at p. 8. | Character No. 16 from the Big West Copyright Registration. | Character from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 170. |
|---|---|---|
| | | |
| "Super Valkyrie" from the Second Amended Complaint ¶ 16 at p. 8. | Character No. 2 from the Big West Copyright Registration. | Character from *Macross: Perfect Memory* book at 157 (© Big West, *et al.* 1983) |
| | | |



PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 7

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

| "Valkyrie VF-1A" from the Second Amended Complaint ¶ 16 at p. 9. | Character No. 11 from the Big West Copyright Registration. | "Valkyrie VF-1A" from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 155 (**with alternate helmet and antenna designs shown**) |
|---|---|---|
| | | |



| "Valkyrie VF-1S" from the Second Amended Complaint ¶ 16 at p. 9. | Character No. 2 from the Big West Copyright Registration. | "Valkyrie VF-1S" from *Macross: Perfect Memory* book (© Big West, *et al.* 1983) at 154 |
|---|---|---|

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

## C.    Tatsunoko Received Limited Rights in the *Macross* Motion Picture, But Not in the Big West Characters

After creating the Big West Characters, Big West made arrangements with Tatsunoko to assist in completing the animation for the *Macross* Motion Picture.  As compensation for its work, Tatsunoko received overseas commercialization rights for the completed *Macross* Motion Picture. Meyer Decl., Ex. 1 at 8-9.  Tatsunoko's rights to distribute the *Macross* Motion Picture overseas are set forth in two "Memorandum" agreements dated October 1, 1982 and December 1, 1984. Meyer Decl., Ex. 3.  Tellingly, those agreements do not transfer, *or even mention*, any rights in the "characters" created and owned by Big West.  The agreements also do not mention "copyrights." Tatsunoko received the overseas rights to distribute and commercialize the "television animation movie" called *Macross* (*Id.* at HG00000082), which the agreements alternatively referred to as the "Movie Version" and "Television Version" of *Macross*. *Id.* at HG00000084.[1]

## D.    Tatsunoko Licensed Its Limited Rights to Harmony Gold

In 1984, Tatsunoko entered into a license agreement which purported to grant Harmony Gold an exclusive and irrevocable license to adapt and commercialize the *Macross* Motion Picture in the United States. S*ee* Dkt. 83 at ¶¶ 12-13.  In 1991, Tatsunoko entered into a new license agreement which purported to grant Harmony Gold "the exclusive and irrevocable right to exploit three Japanese animated television series" in the United States. Meyer Decl., Ex. 4 at 2 (Arbitration Award).[2]  The license agreement was amended several times thereafter. *Id.*  The license agreements purported to assign various rights **that Tatsunoko never owned**, as shown by Tatsunoko's 1982 and 1984 Memorandum agreements with Big West. Meyer Decl., Ex. 3.

---

[1] The Court should note that Tatsunoko is referred to as "B" in the 1982 agreement and referred to as "A" in the 1984 agreement.

[2] Unless otherwise stated, page citations to Exhibit 4 of the Meyer Declaration, which is an Amended Judgment Confirming Arbitration Award, refer to the page numbers of the Arbitration Award attached to the Amended Judgment as "EXHIBIT A."

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 9

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Pursuant to its license, Harmony Gold combined the *Macross* Motion Picture with two unrelated animations, and re-named the compilation "Robotech." Essentially, Harmony Gold "repackaged" *Macross* to appeal to a U.S. audience, for example, by substituting an English language soundtrack for the original Japanese soundtrack. Harmony Gold refers to the Big West Characters as "Robotech" warrior robots, but both terms refer to the same set of characters which were created by Big West.[3]

### E. The Japanese Courts Confirmed Big West's Ownership of the Copyrights in the Characters

Nearly 20 years after the *Macross* Motion Picture first aired, Big West and Studio Nue filed a lawsuit against Tatsunoko in Japan to resolve a dispute over which company owned the copyrights to the Big West Characters. Meyer Decl., Exs. 1-2. The Japanese trial court held that the copyrights to the Big West Characters belong to Big West and Studio Nue. *Id.*, Ex. 1 at 10-11. The court held: "As mentioned above, it is recognized that the copyright for the Designs belongs jointly to the Plaintiffs [Studio Nue and Big West]." *Id.* at 11. The trial court judgment was affirmed on appeal. Meyer Decl., Ex. 2. The Japanese appellate court held: "the original judgment was appropriate, and the appeal [by Tatsunoko] is revoked as unreasonable …." *Id.* at 4. An exhibit displaying the Big West Characters is attached to the 2002 Japanese district court decision (*see* Meyer Decl., Ex. 1) and is also referenced in the appellate decision. Meyer Decl., Ex. 2 at 1.[4]

On May 17, 2002, after the Japanese district court decision, Big West registered its copyrights in the Big West Characters with the U.S. Copyright Office. *See* Meyer Decl., Ex. 5 (Copyright Reg. No. Vau000534107). Along with its registration certificate, Big West deposited

[3] The characters from the other two animated series are not at issue in this lawsuit.

[4] A copy of the exhibit, which contains color pictures of the Big West Characters, is found after the Japanese-language version of the decision at the end of Exhibit 1 to the Meyer Declaration. A translation of the text contained in the Japanese court exhibit follows the certified English-language translation of the decision.

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 10

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

with the Copyright Office a set of drawings of the Big West Characters. *Id.* The drawings are the same drawings that are attached to the Japanese trial court decision holding that Big West owns the copyrights to the Big West Characters. Meyer Decl., Ex. 1. These "deposit copies" further demonstrate that Harmony Gold does not own the copyrights to the Big West Characters. In addition, Big West published a copyrighted fan book called *Macross: Perfect Memory,* which displays each of the nine characters for which Harmony Gold claims copyrights.[5]

In sharp contrast to Big West's copyright registration in the 41 Big West <u>Characters</u>, Harmony Gold filed copyright registrations for a series of animated "MOTION PICTURES," including the 36 episodes of *Macross*.[6] *See* Meyer Decl., Ex. 8; Dkt. 83-1. Harmony Gold may have received from Tatsunoko certain rights to copy, commercialize, distribute, display, and merchandize the *Macross* Motion Picture, but it did not receive any copyrights in the Big West Characters.

**F.    The U.S. Litigation Confirmed Big West's Ownership of the Copyrights in the Characters**

Any rights Harmony Gold has in the *Macross* Motion Picture flow from its license agreement with Tatsunoko, and can be no greater than the rights Tatsunoko obtained from Big West. *See* Dkt. 83 at ¶¶ 12-13; Meyer Decl., Ex. 3. The U.S. Copyright registration certificate that Harmony Gold filed for the *Macross* Motion Picture acknowledges that Harmony Gold's claimed copyrights were obtained by "Agreement" (*i.e.*, not as a result of Harmony Gold creating

---

[5] It appears that Harmony Gold copied all of the *Macross* drawings appearing in the Second Amended Complaint from *Macross: Perfect Memory*. *Macross: Perfect Memory* has a 1983 copyright notice showing copyright ownership by Big West, along with the book's publisher and a broadcasting company, but not by Harmony Gold or Tatsunoko. Meyer Decl., Ex. 6.

[6] The Second Amended Complaint identifies eight copyright registrations filed by Harmony Gold. *See* Dkt. 83 at ¶ 15. However, the *Macross* Motion Picture is the only work registered to Harmony Gold at issue in this lawsuit. Five of Harmony Gold's registrations do not contain any of the Big West Characters, and the other two are duplicative of the *Macross* Motion Picture. Moreover, each copyright registration is directed to a "MOTION PICTURE," not to the Big West Characters.

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 11

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

or authoring the *Macross* Motion Picture). *Id.*, Ex. 8.

In a 2017 arbitration, Harmony Gold and Tatsunoko litigated various disputes concerning their licensing agreement. Meyer Decl., Ex. 4. On June 27, 2017, the arbitrator issued a detailed, 21-page Arbitration Award which describes the creation of *Macross*, analyzes the various agreements between Big West, Tatsunoko and Harmony Gold, and describes the outcome of the Japanese litigation. *Id.* The arbitrator's findings recognize the Japanese court rulings that Big West owns the copyrights in the Big West Characters. *Id.* at 6 (finding that the Japanese courts ruled that "Big West owned **exclusively** the original visual depictions of [the] 41 characters as used in the *Macross* program") (emphasis added). The arbitrator also found that the rights assigned by Tatsunoko to Harmony Gold necessarily <u>exclude</u> "the visual depiction of the original 41 animated graphic characters from the underlying Program." *Id.* at 18.

Although disappointed by those aspects of the arbitrator's ruling, Harmony Gold prevailed on other claims, and filed a U.S. district court lawsuit to confirm the award under the Federal Arbitration Act. *See* 9 U.S.C. § 1, *et seq.* On August 23, 2017, the U.S. District Court for the Central District of California entered its Amended Judgment confirming the Arbitration Award in its entirety. Meyer Decl., Ex. 4 at 2 (Amended Judgment Confirming Arbitration Award in *Harmony Gold, USA, Inc. v. Tatsunoko Production Co., Ltd.*, Case No. 2:17-cv-06034-PA-MRW, at 2 (C.D. Cal. Aug. 23, 2017)). Having been confirmed, the Arbitration Award is now a Judgment of the District Court "in all respects." 9 U.S.C. § 13(c) ("The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.")

## III. ARGUMENT

The undisputed evidence shows that Harmony Gold lacks standing to assert its copyright infringement claim. Harmony Gold simply does not own or have an exclusive license to any

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 12

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

copyright in the Big West Characters.  Its copyright registration is for a "MOTION PICTURE" (Meyer Decl., Ex. 8), not for the Big West Characters, which are registered to Big West. Meyer Decl., Ex. 5.  While Harmony Gold may have certain rights to reproduce, distribute, display and merchandize the *Macross* Motion Picture, Harmony Gold does not have any copyright in the Big West Characters.

### A.    The Legal Standard for a Motion for Summary Judgment

"Summary judgment is appropriate if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014) (affirming grant of summary judgment), *quoting* Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (reversing court of appeals reversal of district court's grant of summary judgment).  It is Harmony Gold's burden to prove ownership of a valid copyright. *See North Coast Indus. v. Maxwell*, 972 F.2d 1031, 1033 (9th Cir. 1992).

### B.    Harmony Gold Lacks Standing Because It Is Not the Owner or Exclusive Licensee of Any Copyright in the Characters

#### 1.    Only the Legal or Beneficial Owner of an Exclusive Right Can Sue for Infringement

"Copyright is wholly a 'creature of statute, and the only rights that exist under copyright law are those granted by statute.'" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1143-44 (9th Cir. 2008) (affirming dismissal for lack of standing), *quoting Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 883-84 (9th Cir. 2005) (reversing denial of motion to dismiss for lack of standing); *see Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) (affirming dismissal of copyright infringement suits for lack of standing), *citing* 17 U.S.C. § 106.

The Copyright Act identifies the exclusive rights that can provide standing to sue for

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 13

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

infringement.  17 U.S.C. § 106.  Each of the various exclusive rights to a copyrighted work can be parceled out to different entities, as occurred with the three companies that developed *Macross*. The Copyright Act states:

> (1) The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law….
>
> (2) Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by [17 U.S.C.] section 106 may be transferred as provided by clause (1) and owned separately.  The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d).  The only copyrights that Tatsunoko received were the overseas rights to adapt, distribute and commercialize the **completed** *Macross* Motion Picture. Meyer Decl., Ex. 3.  The copyrights in the Big West Characters remained with the creators of those characters: Big West and Studio Nue.

Only the "legal or beneficial owner of an **exclusive** right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added); *see Sybersound*, 517 F.3d at 1146; *Righthaven*, 716 F.3d at 1169 ("only the legal or beneficial owner of an exclusive right under a copyright has standing to sue for infringement of **that right**") (citations and internal quotation marks omitted) (emphasis added).  An exclusive licensee can sue to protect a particular right that it has been granted, but cannot sue for infringement of rights outside of its exclusive license. *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 1002 (C.D. Cal. 2015) (exclusive licensee of piano arrangement for the song *Happy Birthday* was not the exclusive licensee of the lyrics, so it could not sue for infringement of the lyrics).

### 2.    Tatsunoko Never Owned Any Copyright in the Big West Characters

Harmony Gold's rights can be no greater than the rights Tatsunoko received through its 1982 and 1984 "Memorandum" agreements with Big West. Meyer Decl., Ex. 3.  The 1982

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Memorandum allocates various rights in the *Macross* "**television animation movie**." Meyer Decl., Ex. 3 at HG00000082 (emphasis added).  With regard to overseas distribution of the movie, the Memorandum states: "In connection with overseas program sales and general commercialization rights overseas [Tatsunoko] shall have these rights, and the profits arising therefrom shall completely belong to [Tatsunoko]." *Id.* at ¶ 5. Thus, Tatsunoko was given overseas commercialization rights for the "**television animation movie**," which it later assigned to Harmony Gold, and which Harmony Gold registered with the U.S. Copyright Office. Meyer Decl., Ex. 8.  Under the Copyright Act, that registration implies no separate copyrights in the preexisting character designs owned by Big West. *See* 17 U.S.C. § 103(b).

Similarly, the 1984 Memorandum states that Tatsunoko shall have the "overseas program sales rights and general commercialization rights" for the **"Television Version"** and **"Movie Version"** of *Macross*. Meyer Decl., Ex. 3 at HG00000084 (*see* Intro. Para. and Art. 1 and 2) (emphasis added).  Once again, there is no mention of any assignment of rights in the robot warrior "characters" or the preexisting "designs" created and owned by Big West. *See U.S. v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988) ("Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning.").[7]

### 3.    The Japanese Courts Confirmed that Tatsunoko Never Owned Any Copyright in the Big West Characters

It is basic copyright law that the author of a work initially owns the copyrights to that work. 17 U.S.C. § 201(a).  The Japanese courts found that the Big West characters were created by employees of Studio Nue, and that Studio Nue originally owned all copyrights to the characters before agreeing to joint ownership with Big West.  The trial court held:

> As established above, Kawamori et al. created the original designs for the characters and mecha appearing in the story of the Television Animation Program

---

[7] The Court should note that Tatsunoko is referred to as "B" in the 1982 agreement and referred to as "A" in the 1984 agreement.

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 15

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

as employees or persons working for Plaintiff Studio Nue …. Therefore, because the Designs are works created by Kawamori et al. in the course of duty for the Plaintiff Studio Nue based on the initiative of the Plaintiff Studio Nue, Plaintiff Studio Nue owns the copyright to the Designs.

Meyer Decl., Ex. 1 at 10. The court found that, by agreement, the copyrights are now jointly owned by Studio Nue and Big West. *Id.*

The Japanese courts also held that cooperation between Studio Nue and Tatsunoko in creating the animated TV series did **not** result in a transfer of any **copyrights** in the character designs: "[J]oint production and participation by Plaintiff Studio Nue cannot be seen as displaying an intention to grant permission to [Tatsunoko] and it **cannot be presumed at all to be displaying an intention to transfer the copyright of the Designs to [Tatsunoko]**. Therefore, the claims of [Tatsunoko] on these points cannot be accepted." Meyer Decl., Ex. 1 at 10-11 (emphasis added).

### 4. Big West's Copyright Registration Is *Prima Facie* Evidence of the Validity of Big West's Copyrights

Big West registered its copyrights with the U.S. Copyright Office in 2002, after the Japanese trial court confirmed Big West's ownership. Meyer Decl., Ex. 5. Unlike Harmony Gold, which registered U.S. copyrights in the *Macross* "MOTION PICTURE," Big West registered its copyrights in the 41 Big West Characters. *Id.* This Court has discretion to determine what evidentiary weight should be given to a copyright registration that was filed more than five years after the date of publication of the copyrighted work. 17 U.S.C. § 410(c).[8]

It is well established that a copyright registration filed more than five years after publication may constitute *prima facie* evidence of the validity of the copyright. *See CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143-44 (E.D.N.Y. 2011) (concluding that two

---

[8] 17 U.S.C. § 410(c) provides: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 16

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

certificates filed more than five years after publication were considered *prima facie* evidence of a valid copyright); *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008) (certificates of registration issued more than five years after publication were *prima facie* evidence of valid copyrights because no evidence suggesting invalidity was offered) (*vacated on other grounds*).

To refute *prima facie* evidence of copyright validity, Harmony Gold must provide "some evidence or proof to dispute or deny the" validity of the copyright. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217-18 (9th Cir. 1997). There is no admissible evidence even suggesting that Big West is not the owner of the copyrights to the Big West Characters. This issue has been fully litigated, and Big West's copyright registration clearly corresponds to the allegedly infringed characters that Harmony Gold displays in each version of its Complaint. *Compare* Dkt. 83 at ¶ 16 (allegedly infringed characters) with Meyer Decl.*,* Ex. 5 (Big West Characters). Moreover, the Memorandum agreements conveyed to Tatsunoko limited rights in the *Macross* Motion Picture, and do not even mention the "characters" or any "copyrights." Meyer Decl., Ex. 3. Because the rights of Harmony Gold can be no greater than the rights of its assignor, Tatsunoko, this fact alone is dispositive.

Multiple pieces of evidence confirm that Big West is the copyright owner. Meyer Decl., Exs. 1-8. Big West's copyright registration is consistent with the findings and conclusions of the Japanese courts (Meyer Decl., Exs. 1-2), the Memorandum agreements (*id.*, Ex. 3), the federal court Judgment (*id.*, Ex. 4), the *Macross: Perfect Memory* book (*id.*, Ex. 6; *see also* footnote 5, *supra*), and Harmony Gold's **own** registration statement claiming copyrights in the *Macross* "MOTION PICTURE," and **not** in the characters. *Id*., Ex. 8. Big West's registration should be considered *prima facie* evidence that Big West owns the copyrights to the Big West Characters (*see* 17 U.S.C. § 410(c)), which places the burden on Harmony Gold to rebut Big West's claim of ownership.

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 17

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

### 5.      Harmony Gold's Copyright Registration for the "Motion Picture" Does Not Give It Any Rights in the Big West Characters

Harmony Gold filed a U.S. Copyright Registration for the 36-Episode animated series entitled *Macross*. Meyer Decl., Ex. 8.  The registration certificate identifies the work as a "MOTION PICTURE" and as a "COMPILATION OR DERIVATIVE WORK." *Id*. In other words, the motion picture is a "compilation" of preexisting works (story, characters, screenplay, music, etc.), which created a new work with different copyrights.[9]

Tatsunoko helped animate *Macross*, but that did not give Tatsunoko any rights in the "preexisting material." 17 U.S.C. § 103(b); *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) ("Thus, we reaffirm, without finding it necessary to repeat the rationale, the well-established doctrine that a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work").  The "copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, **and does not imply any exclusive right in the preexisting material**." 17 U.S.C. § 103(b) (emphasis added).  "The copyright in such work is independent of, and **does not affect** or enlarge the scope, duration, ownership, or subsistence of, **any copyright protection in the preexisting material**." *Id.* (emphasis added).  Thus, any rights Harmony Gold received in the *Macross* "MOTION PICTURE" did not affect Big West's copyrights in the preexisting characters.

The Ninth Circuit squarely addressed this issue in *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015).  The defendant in that case was sued by DC Comics for making working replicas of

---

[9] The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, **motion picture version**, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'" 17 U.S.C. § 101 (emphasis added).

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 18

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

the Batmobile, which Towle copied from a Batman movie and television series created by third parties under license from DC Comics.  Towle argued that DC Comics lost the ability to sue for infringement of the Batmobile **character** when it assigned to third parties the rights to create a Batman movie and television series which displayed that character. *Id.* at 1025-26.

The Court rejected Towle's argument, holding that assigning copyrights for the Batman movie and television series did not result in an assignment of copyrights in the preexisting Batmobile character. *Id.* at 1026.  The Ninth Circuit held: "This argument fails because DC retained its rights to the underlying Batmobile character, and the creation of derivative works by sublicensees cannot deprive DC of such rights.  DC may sue any third party who infringes on that work, even if the third party copies 'indirectly via the derivative work.'" *Id., quoting* Nimmer on Copyright § 3.05.  Like DC Comics with the Batmobile character, Big West retained its copyrights in the preexisting Big West Characters when it agreed that Tatsunoko would have limited rights in the commercialization of the *Macross* Motion Picture.

### C.   Collateral Estoppel Precludes Harmony Gold from Re-Litigating the Scope of Its Rights

The scope of the rights assigned to Tatsunoko, and then to Harmony Gold, has been litigated in Japan and in the United States. Meyer Decl., Exs. 1, 2, and 4.  The U.S. arbitrator ruled that Harmony Gold's license excludes "the visual depiction of the original 41 animated graphic characters from the underlying Program [*Macross*]." Meyer Decl., Ex. 4 at 18.   The U.S. District Court for the Central District of California confirmed the Arbitration Award. *Id*.  By statute, the Arbitration Award is now a Judgment of the District Court "in all respects." 9 U.S.C. § 13(c) ("The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.").

The arbitrator ruled that Tatsunoko licensed all of its limited rights to Harmony Gold,

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 19

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

which necessarily <u>excluded</u> the rights to "the visual depictions of the 41 [*Macross*] characters" which are owned by Big West. Meyer Decl., Ex. 4 at 6 and 18.[10]  Harmony Gold petitioned the District Court to confirm the Arbitration Award, and the District Court did so.  Having litigated the scope of its rights under the license agreement, Harmony Gold is estopped from re-litigating that issue here.

### 1.     The Elements of Collateral Estoppel

"Federal law governs the collateral estoppel effect of a case decided by a federal court." *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996).  "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude litigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  There are three requirements for collateral estoppel to apply:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Town of N. Bonneville v. Callaway,* 10 F.3d 1505, 1508 (9th Cir. 1993).  When these requirements are met as to a particular issue, that issue cannot be re-litigated.  The requirements are met here.

An arbitration award confirmed by a federal court can have a preclusive effect in subsequent litigation. *See, e.g.*, *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987) (affirming application of collateral estoppel based on arbitration award).  To determine if collateral estoppel applies, a Court must examine the record, including the findings of the

---

[10] Indeed, the arbitrator found that Tatsunoko had breached its own representation and warranty that Harmony Gold would not be infringing any third party's copyright when it exercised the rights that Tatsunoko *purported* to assign to Harmony Gold. Meyer Decl., Ex. 4 at 6-7 (holding that the Japanese court decisions "left [Tatsunoko] in breach of its representations and warranties to Claimant [Harmony Gold] in the Operative Agreements (as to the visual depictions of the 41 characters) wherein it had represented that the rights granted would not infringe in any way upon the rights of third parties") (parentheses in original).

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 20

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

arbitrator. *See*, *e.g.*, *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1950). The Court must also determine whether a rational factfinder could have based its conclusion upon an issue other than the issue to be precluded. *Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (holding that collateral estoppel applied). If the Court finds that the previous factfinder's conclusion was based on the issue to be precluded, then that issue is foreclosed from further litigation. *Id.*

A party may prove that collateral estoppel applies to a particular issue by pointing to an arbitrator's specific findings of fact and conclusions of law. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1322 n.4 (9th Cir. 1992). In *Clark*, the record failed to "show with clarity and certainty what issues were determined in the arbitration …." *Id.*, 966 F.2d at 1322. Importantly, the Ninth Circuit held that "[s]uch a result could have been avoided if the arbitration panel had made specific findings of fact and conclusions of law similar to those required of the district court under Fed. R. Civ. P. 52(a)." *Id.* at 1322 n.4. In the present case, the arbitrator (and therefore the federal District Court under 9 U.S.C. § 13(c)) clearly stated what issues were being decided, and made detailed findings of fact and conclusions of law in a 21 page opinion.

Under Fed. R. Civ. P. 52(a), a court "should state separately its findings of fact and conclusions of law without commingling them, **but any error in this respect is unimportant if the ruling of the [factfinder] is clearly understandable**." 9C Wright & Miller, Federal Practice & Procedure, § 2579 (3d ed. 2008) (emphasis added). Findings of fact and conclusions of law need not be labeled as such to provide sufficient clarity and certainty:

> The fact that the district court intermingled some of its findings of fact with its conclusions of law is of no significance. We look at a finding or a conclusion in its true light, regardless of the label that the district court may have placed on it. In other words, the findings are sufficient if they permit a clear understanding of the basis for the decision of the trial court, irrespective of their mere form or arrangement.

*Tri-Tron Intern. v. Velto*, 525 F.2d 432, 435-36 (9th Cir. 1975) (citations omitted).

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 21

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

### 2. Determining the Scope of Harmony Gold's Rights under the License Agreement Was Critical and Necessary to the Judgment

The Judgment necessarily included findings and conclusions regarding Harmony Gold's rights under the license agreement, because the litigation resolved a dispute between Tatsunoko and Harmony Gold concerning the scope of those rights. *Meyer Decl.,* Ex. 4 at 9-10.  Specifically, the parties disagreed about whether Harmony Gold's license included the right to create a live action sequel to the *Macross* Motion Picture.  *Id.* at 7, 18.  In order to resolve that dispute, it was necessary for the arbitrator to decide what Harmony Gold's license permitted, and what it excluded.  The arbitrator ruled that Harmony Gold "has been granted therein all of Respondent [Tatsunoko's] copyright rights in *Macross,* **except for the visual depiction of the original 41 animated graphic characters** …." *Id.* at 18 (emphasis added).[11]

All of the required elements for collateral estoppel are present here.  First, the issue at stake in the instant case (the scope of Harmony Gold's rights under its license agreement) is identical to the one decided in the prior litigation.  Second, that issue was actually litigated by the party (Harmony Gold) against whom preclusion is asserted.  And third, the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action, because the parties litigated the scope of the rights assigned to Harmony Gold. *See Town of N. Bonneville*, 10 F.3d at 1508.  Therefore, Harmony Gold is precluded from re-litigating those issues.

### D. The Recent Amendments to the Complaint Do Not Prevent Summary Judgment

Harmony Gold's recent amendments do not prevent summary judgment, because the undisputed evidence shows that Tatsunoko never owned any copyrights in the Big West Characters, and therefore, could not assign any such rights to Harmony Gold.  Harmony Gold

---

[11] The broad language of this ruling shows that Harmony Gold has no rights in the visual depiction of the Big West Characters apart from the *Macross* Motion Picture.  The ruling is not limited to derivative works.

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 22

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

admits that its agreement with Tatsunoko is the only source of any rights it has in the *Macross* Motion Picture (Dkt. 83 at ¶¶ 12-13). This is also clear from the Federal Court Judgment. Likewise, there is no genuine dispute that Tatsunoko's limited rights in the "**television animation movie**" originate with the 1982 and 1984 Memorandum agreements with Big West. Meyer Decl., Ex. 3 (emphasis added).

Harmony Gold's pre-litigation correspondence (Meyer Decl., Ex. 9), original Complaint and first Amended Complaint repeatedly assert that Harmony Gold "has the exclusive right to make **derivative** works of the Robotech warrior robots in the United States" (Dkt. 31 at ¶ 16) (emphasis added) and that Piranha's original artwork designs "are **derivative** of the copyrighted Robotech warrior robots owned by Harmony Gold." *Id.* at ¶ 37 (emphasis added). Harmony Gold made these allegations despite the 2003 amendment to its license agreement stating that Harmony Gold has no derivative works rights. Meyer Decl., Ex. 7.

In an attempt to defeat summary judgment, Harmony Gold has attempted to re-characterize or redefine the derivative rights it admittedly does not have. The Second Amended Complaint deletes the word "derivative," and substitutes the allegation that Piranha's designs "infringe upon Harmony Gold's exclusive rights to reproduce, distribute, display, and merchandize" the Big West Characters. Dkt. 83 at ¶ 41.[12] The fact remains that Harmony Gold does not own or have an exclusive license to **any** copyrights in the Big West Characters, because Tatsunoko never owned or had an exclusive license to such copyrights.

The law is clear that a plaintiff has no standing to assert a copyright of which it is not the owner or exclusive licensee. *See* 17 U.S.C. § 501(b); *Righthaven*, 716 F.3d at 1169 ("the assignment of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing to sue"), *citing*

---

[12] "Merchandizing" rights are not one of the six exclusive rights recognized by the Copyright Act. 17 U.S.C. § 106.

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 23

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Silvers*, 402 F.3d at 890.  Because Harmony Gold has no exclusive copyright in the Big West Characters, it has no standing to prevent the alleged copying, reproduction, display, distribution, or commercialization of those characters by Piranha or anyone else.

## IV.   CONCLUSION

There is no disputed material fact concerning Harmony Gold's lack of standing.  The evidence shows that Harmony Gold is not the owner or exclusive licensee of any copyright in the Big West Characters.  Those copyrights are owned by Big West.  The issue of what copyrights were assigned to Harmony Gold was recently litigated.  The federal court Judgment shows that Harmony Gold does not own or have an exclusive license to the copyrights it seeks to enforce. For the foregoing reasons, Piranha respectfully requests that this Court enter summary judgment dismissing Harmony Gold's copyright infringement claim (Count I), and enter judgment in favor of Piranha.

Respectfully submitted this 8th day of March, 2018.

DORSEY & WHITNEY LLP

*/s/ Ryan B. Meyer* _____
Paul T. Meiklejohn, WSBA No. 17477
J. Michael Keyes, WSBA No. 29215
Ryan B. Meyer, WSBA No. 37832
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Phone: (206) 903-8800
Fax: (206) 903-8820

*Attorneys for Defendant Piranha Games Inc.*

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 24

**DORSEY & WHITNEY LLP**
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON  98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of (1) PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM; (2) DECLARATION OF RYAN B. MEYER IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM; and (3) [PROPOSED] ORDER GRANTING PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM were served by ECF on the following parties on March 8, 2018:

Damon C. Elder, WSBA #46754
damone@calfoeakes.com
Andrew R.W. Hughes, WSBA #49515
andrewh@calfoeakes.com
CALFO EAKES & OSTROVSKY PLLC
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808

Jessica Stebbins Bina (admitted *pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., 3rd Floor
Los Angeles, CA 90067

*Attorneys for Plaintiff Harmony Gold U.S.A., Inc.*

Warren J. Rheaume, WSBA No. 13627
warrenrheaume@dwt.com
James H. Corning, WSBA No. 45177
jamescorning@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 757-8265
Fax: (206) 757-7265

*Attorneys for Defendants Harebrained Schemes LLC, Harebrained Holdings, Inc., and Jordan Weisman*

*/s/ Ryan B. Meyer*
Ryan B. Meyer

PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT
AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT
INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 25

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820