# EXHIBIT 1



## The Leader in Global IP Solutions

Date: November 7, 2017

To whom it may concern:

This is to certify that the attached translation from Japanese into English is an accurate representation of the document received by this office.

The document is designated as:
- Case A-1st-Heisei 13_Wa_1844 | "Case Seeking Declaratory Judgment of Copyright, etc."

Caroline Camilo, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned document is a true, full and accurate translation of the specified document."

Signature of Caroline Camilo

**NEW YORK**
450 Seventh Avenue
10th Floor
New York, NY 10123, USA
P: (212) 643-8800

**SAN FRANCISCO**
111 Pine Street
Suite 1815
San Francisco, CA 94111, USA
P: (415) 580-6360

**KENT**
Corn Exchange House
49 The Pantiles
Tunbridge Wells
Kent TN2 5TE, UK
P: +44 (0)1892 549784

**HAMBURG**
Kurze Mühren 1
2nd Floor
Hamburg, Germany 20095
P: +49 (0) 407 679 6500

**JERUSALEM**
43 Emek Refaim
Entrance B
Jerusalem 9314104, Israel
P: +972 (02) 563-1728

info@morningsideip.com  |  www.morningsideIP.com

*2002 (Ne) 1911*
Judgment Issued on February 25, 2002
Original Copy of Judgment Received on the Same Date
Court Clerk (seal affixed)

2001 (Wa) 1844: Case Seeking Declaratory Judgment of Copyright, etc.
Concluding date of oral arguments: November 6, 2001

Judgment

| | |
|---|---|
| Plaintiff | Studio Nue Co., Ltd. |
| | 3-1-18, Shimoshakujii, Nerima-ku, Tokyo |
| Representative Director | Yasushi TAKEGAWA |
| Plaintiff | BigWest Inc. |
| | 3-19-8, Nishihara, Shibuya-ku, Tokyo |
| Representative Director | Kamon ONISHI |
| Attorney for Plaintiffs | Katsuyoshi SHINBO |
| Same as Above | Tadashi KUNIHIRO |
| Same as Above | Yuko GOMI |
| Defendant | Tatsunoko Production Co., Ltd. |
| | 3-22-12, Minami-cho, Kokubunji-shi, Tokyo |
| Representative Director | Kenji YOSHIDA |
| Attorney for Defendant | Mikinori ONO |
| Same as Above | Toshiko KUBOKI |
| Same as Above | Takayuki SHIONOYA |
| Same as Above | Yuko CHIYODA |

Main Text

1. It is recognized that the Plaintiffs have a copyright to each of the designs in Items 1-41 listed in the attachment.
2. The rest of the claims by the Plaintiffs are rejected.
3. The court costs are to be divided into thirds with two-thirds to be borne by the Defendant and the rest by the Plaintiffs.

Facts and Reasons

I. Claims

1. Same as 1 in the main text.
2. The Defendant did not produce a cinematographic work using each of the designs in Items 1-41 listed in the attachment by itself or with a third party.

II. Summary of Case

In this case, the Plaintiffs seek recognition of a copyright etc. as they have obtained a copyright to the designs in Items 1-41 listed in the attachment ("the Designs").

Note that the Plaintiffs and the Defendant are contesting the ownership of the copyright to the Television Animation Program described below, which is a copyrighted cinematographic work, in another lawsuit (2001 (Wa) 6447: Case Seeking Declaratory Judgment of Copyright, etc.).

1

1. Facts Serving as Premise (Uncontested Facts and Facts Arising From Oral Argument)

(1) **Plaintiff Studio Nue Co., Ltd. ("Plaintiff Studio Nue")** is an animation planner and producer etc., Plaintiff BigWest **Co., Ltd. ("Plaintiff** BigWest") is an advertising agency etc., and the Defendant is a planner and producer etc. of programs and movies.

(2) From October 3, 1982 to June 26, 1983, thirty-six episodes of The Super Dimension **Fortress Macross (the "Television Animation Program"), television series described in the** attachment of animation clips was broadcast with non-litigant Mainichi Broadcasting Co., **Ltd. ("Mainichi Broadcasting") as the key station. The Plaintiffs and the Defendant each** contributed to the production and broadcast of the Television Animation Program in some way.

(3) The Television Animation Program depicts the adventures of Hikaru Ichijyo, a civilian who volunteered to enter the military, Lynn Minmay, a popular singer aboard the Macross, and Misa Hayase, a bridge officer on the Macross against the backdrop of a fierce space war between the combined forces of Earth whose flagship is the giant spaceship Macross that covers a total length of 1200 meters and the forces of the Zentradi, an uncultured race of 10-meter tall giants. The Television Animation Program is characterized by its depiction of the life of the more than 50,000 civilians aboard the spaceship and by combat mecha which transform from aircraft into robots depending on the formation etc.

2. Point of Contention and Claims

(1) Cause of Claims

A. Plaintiff Studio Nue

Does Plaintiff Studio Nue own the copyright to the Designs made by persons engaged in work for the Plaintiff in the course of their duties?

B. Plaintiff BigWest

Did Plaintiff BigWest receive a transfer of equity rights related to the copyright for the Designs?

(Claims of the Defendant)

A. History of Planning for the Animation Work

**Kenichi MATSUZAKI ("Matsuzaki"), a representative (at the time)** of Plaintiff Studio Nue, and **Shoji KAWAMORI ("Kawamori")** and Shoji WATANABE aka Kazutaka MIYATAKE **("Miyatake"), employees of** Plaintiff Studio Nue, created a plan for the production of an animation work in which civilians lived aboard a giant spaceship and a space war was being fought with an army of giants both inside and outside of t**he spaceship ("the Plan").** **Haruhiko SATO aka Haruhiko MIKIMOTO ("Mikimoto"), a friend of** Kawamori, was added to develop the designs and characterization of the characters that appeared in the Plan.

Around February of 1981, Plaintiff Studio Nue presented the Plan to Plaintiff BigWest, and the Plaintiffs agreed that Plaintiff BigWest would secure sponsors and a broadcasting slot at a television station, Plaintiff Studio Nue would produce the animation, and Plaintiff BigWest would receive a transfer of equity in the copyright from Plaintiff Studio Nue and the copyright notice would name Plaintiff BigWest.

In accordance with the agreement, Plaintiff BigWest presented the Plan to television stations and manufacturers of toys etc. As a result, around January of 1982, it had been decided that Mainichi Broadcasting would broadcast the Plan as a Television Animation Program, and that several companies that manufactured toys, plastic models, stationery etc. would participate as sponsors.

B. Creation of the Original Designs

In the initial stages of the Plan, Kawamori created designs for a combat mecha called **"Valkyrie" that could transform into an aircraft mode, robot mode, and intermediate mode,** and the original designs depicted in Items 1-16 of the attachment had been created by December of 1981. By March of 1982, Miyatake had created the original designs in Items 17-27. They delivered three designs for mecha that would appear in the show to a plastic model manufacturer participating as a sponsor in March and April of the same year.

Mikimoto worked for non-litigant Artland Co., Ltd. **("Artland") which had a cooperative** relationship with Plaintiff Studio Nue, but participated in the production of the Television Animation Program and was in charge of designs related to characters appearing in the show. Mikimoto wrote descriptions of the personalities of the characters, created storyboards to convey a basic impression of the characters, and created model sheets of the characters. By March of 1982, he had created the original designs in Items 28-41 of the attachment. By May of the same year, the designs of the characters had been amended per the wishes of Matsuzaki, Kawamori, and Miyatake.

Kawamori was in charge of writing the story for the Television Animation Program and by February 1982 had created story sheets for a total of 39 episodes based on ideas hashed out at planning meetings held at Plaintiff Studio Nue (the story was changed at the start of production and the number of episodes was reduced to 36).

C. Timing a**nd Extent of the Defendant's Contribution**

Originally, the Plaintiffs intended to entrust all of the work of animating the Plan to Artland. However, because Artland did not have enough animators, work was entrusted to the Defendant. The Defendant, in turn, entrusted the work to non-litigant Anime Friend Co. Ltd. **("Anime Land"), which is a subsidiary of the Defendant.** The Defendant and Anime Friend contributed to production of the Television Animation Program beginning on April 27, 1982.

D. History of the Creation of the Designs

**Production of the animation was performed in stages. "Animation model sheets" ("model sheets") were created based on the original Designs, and "still images" and "moving images" were created to appear on the screen a**s animation based on these model sheets. The Television Animation Program was based on the original Designs of Kawamori, Miyatake, and **Mikimoto ("Kawamori et al."), and Kawamori et al. created the model sheets** in Items 1-41 of the attachment based on these original Designs (some being created by **employees of the Defendants' under the supervision of Kawamori et al.). Also,** animators at Plaintiff Studio Nue, Artland, and Anime Friend created still images and moving images based on the model sheets under the supervision of Plaintiff Studio Nue, creating the animation cuts shown in the lower half of Items 1-41 in the attachment.

Note that the Defendant claims that Kawamori et al. created the designs while performing work for the Defendant as staff members of the Defendant. However, Kawamori et al. never

performed work for the Defendant and the Defendant did not receive compensation or remuneration for the designs.

E. Conclusions

(A) Plaintiff Studio Nue

Because Kawamori et al. created the Designs over the course of work for Plaintiff Studio Nue based on initiative taken by the Plaintiff, Plaintiff Studio Nue owns the copyright for the Designs.

(B) Plaintiff BigWest

The Plaintiffs agreed to a transfer of equity rights from Plaintiff Studio Nue to Plaintiff BigWest and joint ownership of the copyright obtained during production of the Television Animation Program. Plaintiff BigWest owns a copyright (equity rights) to the Designs. (Note that the copyright notice names Plaintiff BigWest.)

(Defendant's Refutation)

A. Characteristics of the Plan

This is denied. Plaintiff Studio Nue is a planning company that presents plans to major animation production companies and assists in production at major animation production companies. Plaintiff BigWest is an advertising agent. Neither has the experience nor staff to produce an animation program. The Defendant is an animation production company that has produced many famous animation programs and has been a pioneer of the current anime boom. It is popularly known as "Tatsunoko Pro".

B. Creation of the Original Designs

This is denied. Kawamori et al. created the Designs after production work for the Television Animation Program had begun based in instructions from the Defendant or producers working for the Defendant. The original designs produced by Kawamori et al. before this time were merely rough sketches which did not have the identifying characteristics of the Designs.

C. Timing and Extent of the Defendant's Contribution and Creation of the Designs

This is denied. Plaintiff BigWest had proposed animation of the Plan to the Defendant no later than January of 1982. Because Plaintiff BigWest was in charge of securing a broadcast slot at a television station and finding sponsors, the Plaintiff proposed production of an animation program around characters and mecha related to ideas put forth by Mikimoto and Kawamori. At the time, there were rough ideas for the personalities of the characters and the beginnings of a story. The designs for the characters and the mecha used in the Television Animation Program and detailed storyboards came later.

The Defendant decided to produce the Television Animation Program under its own initiative and responsibility using the proposal from Plaintiff BigWest as a starting point. An employee of the Defendant was named on-site producer, relationships were established with the television station and sponsors, and the Television Animation Program was produced with production costs such as compensation of the production staff assumed by the Defendant.

4

D. Conclusion

Kawamori et al. created the Designs while working with the Defendant to produce the Television Animation Program. Also, the Television Animation Program including these Designs was publicized during its broadcast under the name of the Defendant. Therefore, the Designs are a corporate work of the Defendant and the copyright is not owned by Plaintiff Studio Nue.

Even though there was no employment relationship between the Defendant and Kawamori et al., Kawamori et al. created the work in the course of duty for the Defendant and were also compensated by the Defendant, so application is not inhibited under Article 15 of the Copyright Act.

(2) Protest

(Defendant's Claim)

The Defendant paid for costs borne by Plaintiff Studio Nue over the course of producing the Television Animation Program. Plaintiff Studio Nue also promised to participate in production when the Defendant was producing the Television Animation Program. In light of these circumstances, Plaintiff Studio Nue should be seen as displaying an intent to expressly or implicitly transfer the copyright for the Designs to the Defendant.

(Plaintiff's Refutation)

This is denied.

Plaintiff Studio Nue did not receive remuneration from the Defendant for any transfer of the copyright to the Designs and never displayed any intent to transfer the copyright. Kawamori et al. received compensation and remuneration for the Designs from the Defendant and did not do this work over the course of duty for the Defendant. The Defendant and Anime Friend merely did production work on the animation after the story and original Designs had been completed by the Plaintiffs and sponsors etc. were secured by the Plaintiffs. Therefore, the Television Animation Program cannot be said to have been produced under the initiative and responsibility of the Defendant.

III. Decision on the Contested Points

1. Cause of Claims

The decision concerns whether Plaintiff Studio Nue can be recognized has owning the copyright to the Designs because Kawamori et al. had created the Designs in the course of duty for the Plaintiff Studio Nue based on the initiative of the Plaintiff.

(1) Findings of Fact

We recognize the following facts based on evidence such as the uncontested facts (Exhibits A1-A3, A5-A10, A12, A19, B1-B3, B6, B12, and B14, all branch numbers have been omitted and portions contrary to subsequent discovered facts in B6-14 have been omitted) and the gist of the oral arguments, and there is not sufficient evidence to overturn this.

A. Creation of the Plan

Around 1980, Plaintiff Studio Nue planned to produce an animation work in which civilians lived aboard a giant spaceship and a space war was being fought with an army of giants both inside and outside of the spaceship and characterized by the use of combat mecha which transform into different modes playing a major role in the conflict, and representative Matsuzaki and employees Kawamori and Miyatake worked as a team to start production. Kawamori noticed the drawings of characters created by his friend Mikimoto, and Mikimoto was placed in charge implementing the Plan while remaining at Artland, which had a cooperative relationship with Defendant Studio Nue.

Plaintiff Studio Nue initially considered implementing the Plan in collaboration with third parties, and sought cooperation from toy manufacturers. Because they would not cooperate, they finally implemented the Plan on their own. Then, in the latter half of 1980, Kawamori created the entire draft story and designs of the initial mecha for the fighter spacecraft, Miyatake created the designs for the spaceships and enemy force among the initial mecha, and Mikimoto created the designs for the initial characters and began creating the story for the plan and the designs for the initial characters.

In February and March of 1981, Plaintiff Studio Nue obtained the cooperation of Plaintiff BigWest to promote the Plan. Onishi, representative of BigWest at the time, considered broadcasting the Plan as an animated work for television.

To make the Plan a success, Onishi considered selling related action figures, magazines, etc. linked to the start of the television broadcast. Also, because it would require time to develop toys etc. that transformed into robots, he believed it would be necessary to secure the cooperation of toy manufacturers early. Beginning in August of 1981, Onishi began showing mecha designs and hand-crafted models made by Kawamori et al. to toy manufacturers and plastic model makers, asking about the possibility of selling toys etc. that transformed and asking them to be sponsors of the television broadcast. He also negotiated with publishers of magazines for young people to serialize comic books and novels concurrent with the initial broadcasts of the television program.

Onishi originally considered starting broadcasts in April of 1982. However, around January of that year, as he had secured the prospect of obtaining a time slot with Mainichi Broadcasting beginning in October of that year, received the approval from toy, plastic model, stationary, and candy manufacturers as sponsors of the Plan by that time, and secured the prospect of procuring broadcasting expenses, it was decided to proceed with making a television animation program of the Plan. Onishi also came up with the name **"Macross".**

B. Creation of the Original Designs

Kawamori had created rough story outlines for a total of 39 episodes by November of 1981, and story panels were created based on the story outlines by February 1982. Afterwards, they narrowed down the story boards to 26 episodes to fit the time slot, and Matsuzaki constructed the entire series on the basis of these. (Note that an extension was agreed to after the start of the broadcast and a total of 36 episodes were eventually created.)

Kawamori was in charge of creating the designs for the mecha that would appear in the show. Beginning in 1981, he worked on creating the designs for the transformable battle **mecha called "Valkyrie" used by the protagonists, and by December of that year had** comple**ted the original design for the "Valkyrie" in both spacecraft mode and robot mode. By March of 1982,** he had completed the original designs for the "Valkyrie" in an intermediate mode between spacecraft and robot as well as other mecha. Because toy manufacturers etc.

6

wanted to be able to manufacture several different toys using the same basic molds, he **created different versions of the "Valkyrie" with different s**pecifications and equipment. In April of the same year, three designs required for the manufacture of toys and plastic models had been delivered to manufacturers.

**Miyatake was in charge of creating the designs and logos for the giant spaceship "Macross"** and other mecha appearing in the show, and the original designs were complete by March of the same **year. By April of the same year, three designs for "Macross" and a comparison** table showing the relative sizes of the designs for the various mecha has been created and delivered to manufacturers.

Mikimoto was in charge of creating the designs for the characters appearing in the show based on the story created by Kawamori, such as Hikaru Ichijyo, Lynn Minmay, and Misa Hayase. He had completed several rough sketches by December of 1981, and had created the original designs for the characters appearing in the show by January 1982 with the exception of Hikaru Ichijyo. In February and March of the same year, he created several rough sketches of the characters with different facial expressions, postures, and costumes. Around the same time, he created many rough sketches for the story boards in order to fix the form of the figures and the story. The initial Design for Hikaru Ichijyo was considered too weak for the hero of the program by Kawamori et al. and was revised. The original design was completed by May of that year.

C. **Timing and Extent of the Defendant's Contribution**

Plaintiff Studio Nue initially planned to entrust the work of animating the Plan to Artland, with which it had a cooperative relationship. However, Artland alone did not have a sufficient number of animators, so Onishi in December of 1981 asked for the cooperation of the Defendant to supply a number of animators. Participation in the work of producing the animation was formally requested in April 1982, and the Defendant accepted the request. **The Defendant designated Akira INOUE ("Inoue") as the producer of the Television** Animation Program, and the animation work was carried out by Anime Friend, which is a subsidiary of the Defendant. The first meeting between the Defendant and the Plaintiffs occurred on April 27, 1982, and on-**site producer Hiroshi IWATA ("Iwata") from Anime** Friend attended. Matsuzaki, Miyatake, and Mikimoto provided details of the Plan and instructions such as the characteristics of the mecha. Anime Friend began creating the Television Animation Program in May of the same year.

D. Specific Work in Creating the Designs

In the Television Animation Program, screenplays and storyboards were created based on the story created by Kawamori, model sheets were created based on the designs for the mecha and characters, and drawing work was conducted to create still images and video based on the model sheets. Because the work for each was done in parallel, those in charge of the screenplay, storyboard, and directing were different for each broadcast. The creative work on the model sheets forming the basis of the program were, as explained below, done by Kawamori et al. or by animators supervised by Kawamori et al.

(A) The Designs in Items 1-16 of the attachment are the model sheets for the mecha **appearing in the show such as the fighter spacecraft "Valkyrie". The animation was** completed by Kawamori or animators supervised by him based on the original Designs created by Kawamori.

(B) The Designs in Items 17-27 of the attachment are the model sheets for the mecha such as the "Macross" and the roundels etc. **The animation was completed by Miyatake or** animators supervised by him based on the original designs created by Miyatake.

(C) The Designs in Items 28-41 of the attachment are the model sheets for the characters appearing in the show. The animation was all completed by Mikimoto himself based on original designs created by Mikimoto.

(D) The creative work of drawing the images and video based on these model sheets was performed primarily by Artland and Anime Friend, and the result was the animated portion of the Television Animation Program including the animation cuts in the lower portion of Items 1-41 in the attachment. Mikimoto et al. created many storyboards to explain the look of the characters appearing in the show and the relationships between the characters so that there would be no inconsistences among the staff doing the drawing work etc.

Memos from Inoue (Exhibits B6, B14) while the Defendant was contributing to the production of the Television Animation Program mention that the original designs created by Kawamori et al. were little more than rough sketches, that they were not at the level of creativity found in the style of other animation artists, and that the Designs were completed as a result of work by Kawamori et al. guided by Inoue. However, in memos from Mikimoto and Kawamori (Exhibit A15, Exhibit A16), there was no mention of receiving specific instructions from the Defendant during creation of the original designs, during creation of the model sheets based on these designs, and during subsequent animation work. In light of these other memos, the descriptions in Inoue's memos lack specificity and cannot be accepted.

E. Payment of Production Costs and Distribution of Profits

(A) Plaintiff BigWest concluded a memorandum of understanding on broadcasting fees with Mainichi Broadcasting in September 1982. The Plaintiff BigWest received payment of advertising fees from sponsors of the Television Animation Program such as toy makers, plastic model makers, stationery makers and candy makers, paid Mainichi Broadcasting during the broadcast period of the Television Animation Program a total of 48 million yen monthly at the end of the following month (production fee 24.05 million yen, broadcasting fee 22.445 million yen, and micro expenses 1.505 million yen, minus 5.2426 million yen for **Plaintiff BigWest's fee**), and entrusted 50 million yen with Mainichi Broadcasting as a payment guarantee. According to the agreements concluded between the Defendant and Mainichi Broadcasting, Mainichi Broadcasting acquired exclusive broadcasting rights for the Television Animation Program for two years after the broadcast of the final episode, and Mainichi Broadcasting agreed to assume the obligation to pay the Plaintiff 5.5 million yen per episode for delivery the following month in production costs for the Television Animation Program. Anime Friend etc. working on animation production were not formally paid production costs from the Defendant. Because Mainichi Broadcasting wanted an agreement with the Defendant, which had a successful track record of producing anime, Plaintiff BigWest did not pay production costs directly to Anime Friend etc. but via Mainichi and the Defendant.

(B) However, before broadcast of the Television Animation Program began, the Defendant complained to Plaintiff BigWest that production costs were greater than originally estimated and that the broadcast fee amount paid via Mainichi Broadcast was insufficient. In order to cover the shortcoming in production costs, the Plaintiffs and the Defendant on October 1, 1982 concluded a memorandum of understanding (Exhibit B3) in which some profits from commercialization and overseas program sales rights and merchandising rights for the

Television Animation Program would be given to the Plaintiff. In other words, according to the memorandum of understanding.

In the memorandum, Plaintiff BigWest would exercise rights as gatekeeper of commercial rights to the characters etc. and program sales for domestic re-broadcast, the Defendant would exercise rights as gatekeeper to overseas program sales rights and of general commercial rights to publications and music for elementary students up to sixth grade, and Plaintiff Studio Nue would exercise rights as gatekeeper of publications for middle school students on up: and the ratio for distribution of profits for each was determined between the Plaintiffs and the Defendant (profits for domestic commercialization rights were also distributed to Mainichi Broadcasting and all profits from the exercise of commercialization rights overseas went to the Defendant).

F. Copyright Notice, etc.

(A) From July to October 1982 before broadcast of the Television Animation Program, articles introducing the Television Animation Program appeared in student magazines etc. (Exhibits B15-B20), and all of them had a copyright notice with the names of Plaintiff Studio Nue and the Defendant. These articles mention that Plaintiff Studio Nue has created an original work, that Matsuzaki wrote the story, and that Mikimoto was in charge of character design.

(B) The opening credits during broadcast of the Television Animation Program listed Onishi for planning, Plaintiff Studio Nue for original work, Mikimoto for character design, and Miyatake and Kawamori for mechanical design. They also listed the names of people working at the Plaintiffs and at Artland for planning, original work, help with original work, series composition, chief director, and setting supervision. The producers were listed as Inoue from the Defendant and Iwata from Anime Friend. Both the opening credits and the closing credits listed Mainichi Broadcasting, the Defendant, and Anime Friend under production.

(C) From August to October of 1983, material from the production of the Television Animation Program and staff recollections were published (Exhibits B1, B2, B9 and B14), and all of these include a copyright notice) with the names of Plaintiff BigWest and Mainichi Broadcasting. These publications cite Plaintiff Studio Nue for original work, Matsuzaki for series composition, and Mikimoto for character design.

(D) A 30th anniversary commemorative issue on the Plaintiff was published in April of 1993 (Exhibit B18). In this publication, the sections on other animation programs created by the Defendant did not carry a copyright notice, but the section on the Television Animation Program carried a copyright with the name of Plaintiff BigWest. The same publication also cited Plaintiff Studio Nue for the creative story, Mikimoto for character design, Miyatake and Kawamori for mechanical designs, and Kawamori for participation with both directing and the screenplay.

(E) The Amine Big History on the Defendant supervised by the Defendant and published in February 1998 (Exhibit A3) includes animation works organized by decade, by series, and by other works. All of the copyright notices for the works in the first two sections name the Defendant solely or jointly, but most of the products in the last section do not have a copyright notice for the Defendant. The Television Animation Series is in the last category and only carries a copyright notice for Plaintiff BigWest. The same publication calls it an original work of Plaintiff Studio Nue, credits Kawamori with mechanical designs, directing,

9

and the screenplay, and mentions that Mikimoto and other young people played a part in character design.

(2) Decision

A. Plaintiff Studio Nue

As established above, Kawamori et al. created the original designs for the characters and mecha appearing in the story of the Television Animation Program as employees or persons working for Plaintiff Studio Nue, each Design listed in Items 1-41 of the attachment were original designs in the form of model sheets serving as the basis of the animation production work, and the animation cuts in the lower portions of the same Items were created based on the model sheets under the supervision of Kawamori et al.

Therefore, because the Designs are works created by Kawamori et al. in the course of duty for the Plaintiff Studio Nue based on the initiative of the Plaintiff Studio Nue, Plaintiff Studio Nue owns the copyright to the Designs.

B. Plaintiff BigWest

From the established facts and the gist of oral arguments, it is recognized that the Defendants agreed to a transfer of equity rights from Plaintiff Studio Nue to Plaintiff BigWest and joint ownership of the copyright obtained during production of the Television Animation Program.

2. Refutations

(1) The Defendant claims that it paid for costs borne by Plaintiff Studio Nue over the course of producing the Television Animation Program, that Plaintiff Studio Nue promised to participate in production of the Television Animation Program by the Defendant, and that in light of these circumstances, Plaintiff Studio Nue should be seen as displaying an intent to expressly or implicitly transfer the copyright for the Designs to the Defendant. It is these points that have been studied.

(2) As explained below, the facts related to the Defendant's claims cannot be admitted.

A. As recognized in Section 1, Kawamori et al. received payment of salary etc. from Plaintiff Studio Nue or Artland and worked on the production of the Television Animation Program as business for Plaintiff Studio Nue, and the Designs were created by Kawamori et al. based on the initiative of Plaintiff Studio Nue. Thus, it has been recognized that Plaintiff Studio Nue owned the copyright thereto.

In none of the exhibits were Kawamori et al. acknowledged as receiving payment such as salary etc. from the Defendant or working in the course of duty for the Defendant such as being subject to its instructions. Also, in none of the exhibits was Plaintiff Studio Nue acknowledged as having transferred the copyright for the Designs to the Defendant or as displaying an intent to expressly or implicitly transfer the copyright for the Designs to the Defendant.

B. As recognized in Section 1, Plaintiff Studio Nue made contributions jointly with the Defendant and actively participated in the production of the Television Animation Program, which is a secondary copyrighted work with respect to the Designs (primary copyrighted work). However, joint production and participation by Plaintiff Studio Nue cannot be seen as

displaying an intention to grant permission to the Defendant and it cannot be presumed at all to be displaying an intention to transfer the copyright of the Designs to the Defendant. Therefore, the claims of the Defendant on these points cannot be accepted.

3. Conclusion

As mentioned above, it is recognized that the copyright for the Designs belongs jointly to the Plaintiffs. Also, because the Defendant contested them believing the copyright to belong to itself, the lawsuit brought by the Plaintiffs to seek declaratory judgment of the copyright has brought the benefit of confirmation.

Note that according to all of the evidence, the risk of the Defendant producing new programs as secondary copyrighted words of the Designs or granting permission to a third party for the same cannot be recognized, so there is no reason to seek an injunction.

The judgment rendered is cited in the main text above.

Tokyo District Court, 29th Civil Division

Presiding Judge:              Toshiaki IIMURA
Judge:                        Yuko TANI
Judge:                        Makoto SANO

| VF-1S Fighter Mode | Item 1 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| VF-1S Battroid Mode | Item 2 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| VF-1S GERWALK Mode | Item 3 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| VF-1J Fighter Mode | Item 4 |
| --- | --- |
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 6 | |

| VF-1J Battroid Mode | Item 5 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 3 | |

| VF-1J GERWALK Mode | Item 6 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| VF-1D Fighter Mode | Item 7 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 17 | |

| VF-1D Battroid Mode | Item 8 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| VF-1D GERWALK Mode | Item 9 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| VF-1A Fighter Mode | Item 10 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| VF-1A Battroid Mode | Item 11 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 8 | |

| VF-1A GERWALK Mode | Item 12 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 10 | |

| Armored Valkyrie Mode | Item 13 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 9 | |

| Spartan | Item 14 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 31 | |

| Regult | Item 15 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 2 | |

| Glaug | Item 16 |
|---|---|
| Model Sheet: Shoji KAWAMORI | |
| | |
| Animation Cut: Episode 7 | |

| SFD-1 (Macross) Cruiser | Item 17 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| Animation Cut: Episode 4 | |

| SFD-1 (Macross) Storm Attacker | Item 18 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| | |
| Animation Cut: Episode 5 | |

| Phalanx | Item 19 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| Animation Cut: Episode 27 | |

| Defender | Item 20 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| | |
| Animation Cut: Episode 21 | |

| Tomahawk | Item 21 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| Animation Cut: Episode 14 | |

| Queadluun-Rau | Item 22 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| Animation Cut: Episode 18 | |

| Nousjadeul-Ger | Item 23 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| | |
| Animation Cut: Episode 31 | |

| Monster | Item 24 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| | |
| Animation Cut: Episode 7 | |

| Queadol-Magdomilla 10107 | Item 25 |
| --- | --- |
| Model Sheet: Kazutaka MIYATAKE | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| U.N. Spacy Roundel | Item 26 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| | |
| Animation Cut: Episode 10/Episode 4 | |

| Zentradi Military Emblem | Item 27 |
|---|---|
| Model Sheet: Kazutaka MIYATAKE | |
| Animation Cut: Episode 12/Episode 6 | |

| Misa Hayase | Item 28 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| Hikaru Ichijyo 1 | Item 29 |
| --- | --- |
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 6 | |

| Hikaru Ichijyo 2 | Item 30 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 18 | |

| Lynn Minmay 1 | Item 31 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 5 | |

| Lynn Minmay 2 | Item 32 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 6 | |

| Lynn Minmay 3 | Item 33 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 9 | |

| Lynn Minmay 4 | Item 34 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Macross Special (Joint Broadcast of Episode 1 and Episode 2) | |

| Claudia LaSalle | Item 35 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 6 | |

| Captain Global | Item 36 |
| --- | --- |
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 6 | |

| Maximilian Jenius | Item 37 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 9 | |

| Roy Focker | Item 38 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 6 | |

| Milia Fallyna | Item 39 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 11 | |

| Britai Kridanik | Item 40 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 7 | |

| Exsedol Folmo | Item 41 |
|---|---|
| Model Sheet: Haruhiko MIKIMOTO | |
| | |
| Animation Cut: Episode 9 | |

Attachment

**Animation "The Super Dimension Fortress Macross"**

1 Episode 1 Booby Trap
2 Episode 2 Countdown
3 Episode 3 Space Fold
4 Episode 4 Lynn Minmay
5 Episode 5 Transformation
6 Episode 6 Daedalus Attack
7 Episode 7 Bye Bye Mars
8 Episode 8 Longest Birthday
9 Episode 9 Miss Macross
10 Episode10 Blind Game
11 Episode 11 First Contact
12 Episode 12 Big Escape
13 Episode 13 Blue Wind
14 Episode 14 Global Report
15 Episode 15 Chinatown
16 Episode 16 Kung Fu Dandy
17 Episode 17 Phantasm
18 Episode 18 Pineapple Salad
19 Episode 19 Burst Point
20 Episode 20 Paradise Lost
21 Episode 21 Micro Cosmos
22 Episode 22 Love Concert
23 Episode 23 Drop Out
24 Episode 24 Good-bye Girl
25 Episode 25 Virgin Road
26 Episode 26 Messenger
27 Episode 27 Love Flows by
28 Episode 28 My Album
29 Episode 29 Lonely Song
30 Episode 30 Viva Maria
31 Episode 31 Satan Dolls
32 Episode 32 Broken Heart
33 Episode 33 Rainy Night
34 Episode 34 Private Time
35 Episode 35 Romanesque
36 Episode 36 Farewell to Tenderness

This is a duplicate copy.

October 26, 2017
Tokyo High Court, 29th Civil Division
Court Clerk: Hirotoshi KURODA [seal]

平成14年(ネ)1911　号

平成１４年２月２５日判決言渡　同日原本領収　裁判所書記官

平成１３年(ワ)第１８４４号　著作権確認等請求事件

口頭弁論終結日　平成１３年１１月６日


判　　　　　　決


東京都練馬区下石神井３丁目１番１８号

　　　　　　原　　　　　告　　　株式会社スタジオぬえ

　　　　　　代表者代表取締役　　　竹　　　川　　　裕　　　司

東京都渋谷区西原３丁目１９番８号

　　　　　　原　　　　　告　　　株式会社ビックウエスト

　　　　　　代表者代表取締役　　　大　　　西　　　加　　　紋

　　　　　　原告ら訴訟代理人弁護士　　新　　保　　克　　芳

　　　　　　同　　　　　　　　　　國　　廣　　　　　正

　　　　　　同　　　　　　　　　　五　　味　　祐　　子

東京都国分寺市南町３丁目２２番１２号

　　　　　　被　　　　　告　　　株式会社竜の子プロダクション

　　　　　　代表者代表取締役　　　吉　　　田　　　健　　　二

　　　　　　訴訟代理人弁護士　　　大　　　野　　　幹　　　憲

　　　　　　同　　　　　　　　　　窪　　木　　登　志　　子

　　　　　　同　　　　　　　　　　塩　　谷　　崇　　之

　　　　　　同　　　　　　　　　　千　代　田　　有　　　子

主　　　　　　文

１　原告らが，別紙目録１ないし４１記載の各図柄について，著作権を有す

- 1 -

19

　　ることを確認する。

　２　原告らのその余の請求を棄却する。

　３　訴訟費用は，３分して，その２を被告の，その余を原告らの負担とする。

事　実　及　び　理　由

第１　請求

　１　主文１項同旨

　２　被告は，別紙目録１ないし４１記載の各図柄を使用した映画を自ら制作
　　し，又は第三者に制作させてはならない。

第２　事案の概要

　　　本件は，原告らが，別紙目録１ないし４１記載の各図柄（以下「本件各図
　　柄」という場合がある。）の著作権を取得したとして，著作権の確認等を求
　　めた事案である。

　　　なお，映画の著作物である後記テレビアニメの著作権の帰属に関して，原
　　告らと被告との間で争いがあり，別件訴訟（当庁平成１３年㈱６４４７号著
　　作権確認等請求事件）が係属している。

　１　前提となる事実（争いのない事実及び弁論の全趣旨より認められる事実）

　(1)　原告株式会社スタジオぬえ（以下「原告スタジオぬえ」という。）はア
　　　ニメーションの企画，制作等を，原告株式会社ビックウエスト（以下「原
　　　告ビックウエスト」という。）は広告代理業等を，被告は映画，動画の企
　　　画，制作等を，それぞれ業としている。

　(2)　昭和５７年１０月３日から昭和５８年６月２６日までの間，訴外株式会
　　　社毎日放送（以下「毎日放送」という。）をキー局として，別紙アニメー
　　　ション目録記載の連続テレビジョン放送用アニメーション「超時空要塞マ
　　　クロス」全３６話（以下「本件テレビアニメ」という。）が放映され，原
　　　告らと被告は，それぞれ，何らかの形で，本件テレビアニメの制作，放映
　　　に関与した。

－ ２ －

20

(3)　本件テレビアニメは，地球に落下した全長１２００メートルに及ぶ巨大
　　　な宇宙艦「マクロス」を旗艦とする統合軍と，文化を持たない身長１０メ
　　　ートルの巨人宇宙人ゼントラーディ軍との激しい宇宙戦闘を背景に，民間
　　　人から志願して軍に入った「一条輝」，マクロス艦内でアイドル歌手とな
　　　る「リン・ミンメイ」及びマクロスの主任管制官「早瀬未沙」らの活躍を
　　　描いている。また，本件テレビアニメには，宇宙艦の内部に５万人を超え
　　　る民間人が居住することや，使用される戦闘メカが，合体等によらず，飛
　　　行機からロボットの形態に変形するといった特徴がある。
２　争点及び主張
(1)　請求原因
　　ア　原告スタジオぬえ
　　　　原告スタジオぬえは，本件各図柄について，その業務に従事する者が
　　　職務上著作したことにより，著作権を取得したか。
　　イ　原告ビックウエスト
　　　　原告ビックウエストは，原告スタジオぬえから，本件各図柄の著作権
　　　について持分権の譲渡を受けたか。
（原告らの主張）
　　ア　アニメーション作品企画の経緯
　　　　原告スタジオぬえの代表者（当時）である松崎健一（以下「松崎」と
　　　いう。），並びに従業員である河森正治（以下「河森」という。）及び
　　　宮武一貴こと渡邊一貴（以下「宮武」という。）は，巨大な宇宙艦の中
　　　に民間人を住まわせ，宇宙艦の内外で巨大宇宙人軍との宇宙戦争を行う
　　　ことを内容とするアニメーション作品の制作を企画し（以下「本件企
　　　画」という。），河森の友人である美樹本晴彦こと佐藤晴彦（以下「美
　　　樹本」という。）を加えて，登場人物の図柄，性格付け等の作成作業等
　　　を進めていた。

- 3 -

21

　　原告スタジオぬえは，昭和５６年２月ころ，本件企画を原告ビックウエストに持ち込み，原告らは，原告ビックウエストがスポンサー探し及びテレビ局の放送枠の確保を，原告スタジオぬえがアニメーションの制作をそれぞれ行うこと，著作権については原告スタジオぬえから原告ビックウエストが持分を譲り受けて，共有とすること，著作権表示は原告ビックウエストとすることを合意した。

　　原告ビックウエストは，上記合意に基づき，本件企画をテレビ局及び玩具等のメーカーに持ち込み，その結果，昭和５７年１月ころ，毎日放送が本件企画をテレビアニメーションとして放映すること，玩具，プラモデル，文具等を製造する数社がそのスポンサーとなることが決定された。

イ　本件各図柄の原図柄の作成

　　河森は，本件企画の初期段階から，飛行機，ロボット及びその中間形態に変形することのできる「バルキリー」と呼ばれる戦闘メカに関する図柄の作成作業を行い，昭和５６年１２月ころまでに，別紙目録１ないし１６記載の原図柄を作成した。また宮武は，昭和５７年３月ころまでに，別紙目録１７ないし２７記載の各図柄の原図柄を作成した。同人らは，同年３月から４月にかけて，スポンサーであるプラモデルメーカー等に，登場メカの三面図等を交付した。

　　美樹本は，原告スタジオぬえと協力関係にある訴外株式会社アートランド（以下「アートランド」という。）に所属していたが，本件テレビアニメの制作に参加し，人物に関する図柄の作成を担当した。美樹本は，人物の性格を描写した説明文，人物の基本的なイメージを伝えるためのストーリー設定ボード及び人物の設定画を作成し，昭和５７年３月ころまでに，別紙目録２８ないし４１記載の原図柄をほぼ完成し，同年５月までに，松崎，河森，宮武の意見を参考にして，人物の図柄を修正した。

－ 4 －

　　河森は，本件テレビアニメのストーリー構成をも担当し，原告スタジオぬえの企画会議で出されたアイデアを基に，昭和５７年２月までに，全３９話のストーリー構成表を作成した（制作開始後にストーリー構成に変更が加えられ，全３６話となった。）。

ウ　被告の関与の時期及びその程度

　　原告らは，当初，本件企画をアニメーション化する作業のすべてを，アートランドに委託しようとしたが，アニメーターの人員が不足することから，被告にもこれを委託することとし，被告は，これをその関連会社である訴外株式会社アニメフレンド（以下「アニメフレンド」という。）に更に委託した。被告及びアニメフレンドが，本件テレビアニメの制作に関与するようになったのは，昭和５７年４月２７日以降である。

エ　本件各図柄の作成経緯

　　アニメーションの制作は，前記の原図柄を基にして，作画作業の基本となる「アニメ設定画」（以下単に「設定画」という。）を作成し，次に，設定画を基に，アニメーションとして画面上で動かすための「原画」及び「動画」を作成する手順で進める。本件テレビアニメにおいては，河森，宮武及び美樹本（以下この３名を「河森ら３名」ということがある。）が作成した前記原図柄等に基づいて，河森ら３名が別紙目録１ないし４１の各上段記載の設定画を作成した（一部，原告らの従業員が，河森ら３名の指揮監督下に作成したものも含まれる。）。さらに，原告スタジオぬえ，アートランド，アニメフレンドに所属するアニメーターらが，原告スタジオぬえの指揮監督の下に，各設定画に基づいて原画又は動画を作成して，別紙目録１ないし４１の各下段記載のとおりアニメカットを作成した。

　　なお，被告は，河森ら３名が，被告のスタッフとして被告の業務に従事する過程で本件各図柄を作成した旨主張する。しかし，河森ら３名が

- 5 -

23

被告の業務に従事したことはないし，被告から，報酬又はデザインに対する対価を受領したこともない。

オ　結論

　(ｱ)　原告スタジオぬえ

　　本件各図柄は，いずれも河森ら３名が，原告スタジオぬえの発意に基づき，その業務に従事する過程で創作したので，原告スタジオぬえは，本件各図柄に係る著作権を取得した。

　(ｲ)　原告ビックウエスト

　　原告らの間では，本件テレビアニメ制作の過程で取得した著作権について，原告スタジオぬえから原告ビックウエストが持分権の譲渡を受け，共有とする旨の合意がある。原告ビックウエストは，本件図柄に係る著作権（持分権）を取得した。（なお，原告ビックウエストの著作権表示がされている。）

（被告の反論）

ア　本件企画の性格

　　否認する。原告スタジオぬえは，企画を大手のアニメーション製作会社に持ち込んだり，大手のアニメーション製作会社の制作の補助をする企画会社の一つであり，原告ビックウエストは広告代理業者であって，いずれも，アニメーション映画を制作する経験もスタッフも持ち合わせていない。被告は，数々の著名なアニメーション映画の制作を手がけ，現在のアニメブームの草分け的存在というべきアニメーション映画製作会社であって，「タツノコプロ」の名で親しまれている。

イ　本件図柄の原図柄の作成

　　否認する。河森ら３名は，被告が本件テレビアニメの製作を開始した後に，被告又は被告が選任したプロデューサーの指示に基づき，本件各図柄を制作した。河森ら３名がそれ以前に制作していた原図柄は，ラフ

－ 6 －

24

スケッチにすぎず，本件各図柄との同一性もない。

ウ　被告の関与の時期，程度，本件図柄の作成

　否認する。原告ビックウエストは，遅くとも昭和５７年１月ころまでに，本件企画のテレビアニメ化を被告に持ち込んだ。原告ビックウエストは，同原告においてテレビ局の放送枠の確保とスポンサー探しを行うので，被告において，美樹本及び河森の発意に係る登場人物や登場メカを中心としたアニメーション映画を制作するよう提案した。この時点では，登場人物の性格付け及び物語の端緒についての大まかな設定が存するにとどまり，後に本件テレビアニメで使用された登場人物や登場メカの図柄及び詳細なストーリー構成は作成されていなかった。

　被告は，原告ビックウエストの提案を契機として，その発意と責任において本件テレビアニメを制作することを決め，被告の従業員を担当プロデューサーに選任してテレビ局やスポンサーとの連絡調整を行わせ，制作スタッフへの報酬等の制作費用を捻出するなどして，本件テレビアニメを制作した。

エ　結論

　河森ら３名は，被告が本件テレビアニメを制作するという業務の過程で，本件各図柄を作成した。また，本件各図柄を含む本件テレビアニメは，その放映時に被告の名義の下に公表された。したがって，本件各図柄は被告の法人著作物であり，原告スタジオぬえは著作権を有しない。

　なお，被告と河森ら３名との間に雇用関係がなかったとしても，河森ら３名は，被告の業務に従事し，その報酬も被告が負担したのであるから，著作権法１５条の適用が妨げられるものではない。

(2)　抗弁

（被告の主張）

　被告は，本件テレビアニメを制作する過程で，原告スタジオぬえが負担

- 7 -

25

すべき費用を支払った。また，原告スタジオぬえは，被告が本件テレビア
ニメを制作するに当たり，制作に参加することを約束した。このような経
緯に照らすならば，原告スタジオぬえは被告に対して，明示又は黙示に，
本件各図柄に係る著作権を譲渡する旨の意思表示をしたとみるべきである。
（原告らの反論）

　　否認する。

　　原告スタジオぬえは，被告から本件各図柄に係る著作権の譲渡の対価を
受け取ったことはないし，著作権譲渡の意思表示をしたこともない。河森
ら３名は，被告から報酬又はデザインに対する対価を受領したことはない
し，被告の業務に従事したこともない。被告及びアニメフレンドは，原告
らがストーリー構成や原図柄を完成した後に，アニメーションの制作作業
に関与したにすぎず，スポンサーの獲得等も原告らにおいて行っているの
であるから，本件テレビアニメが，被告の発意と責任により制作されたと
いうこともできない。

第３　争点に対する判断

１　請求原因について

　　河森ら３名が，原告スタジオぬえの発意に基づき，その業務に従事する過
程で，本件各図柄を創作したことにより，原告スタジオぬえが本件各図柄に
係る著作権を取得したと認められるかについて判断する。

(1)　事実認定

　　前記前提となる事実，証拠（甲１ないし３，５ないし１０，１２ないし
１９，乙１ないし３，６，１２ないし１４。枝番号の表示を省略する。た
だし乙６及び１４のうち後記認定事実に反する部分は除く。）及び弁論の
全趣旨によれば，以下のとおりの事実を認めることができ，これを覆すに
足りる証拠はない。

　　ア　本件企画の立案

－ 8 －

26

　原告スタジオぬえは，昭和５５年ころ，巨大な宇宙艦の中に民間人を住まわせ，宇宙艦の内外で巨大宇宙人軍との宇宙戦争を行うことなどを内容とし，戦闘の主役となる戦闘機に，従来のものとは異なる変形メカを使用することなどを特徴とする新しいアニメ作品の制作を企画して，代表者である松崎，並びに従業員である河森及び宮武らがチームを組んでその制作に着手した。また河森は，友人の美樹本が行った人物キャラクターの作画に注目し，美樹本を，原告スタジオぬえと協力関係にあるアートランド在籍のまま，前記企画の実施を担当させた。

　原告スタジオぬえは，当初，第三者と共同して，玩具メーカー等に企画の説明を行ったが，採用されなかったため，その後は単独で本件企画の実施をすることとし，昭和５５年後半から，河森が，全体のストーリー案の作成及び戦闘機を中心とする登場メカの図柄等を，宮武が，登場メカのうち宇宙艦や敵軍の図柄等を，美樹本が，登場人物の図柄等を作成して，本件企画のストーリー構成及び登場人物等の図柄の制作を進めた。

　昭和５６年２，３月ころ，原告スタジオぬえが原告ビックウエストに本件企画を持ち込んだところ，原告ビックウエストの代表者である大西良昌（以下「大西」という。）は，その斬新性に着目して，本件企画をテレビアニメ作品として放映することを考えた。

　大西は，本件企画を成功させるためには，テレビ放映開始と同時に関連するキャラクター製品や雑誌等を販売する必要があり，また，戦闘機がロボットに変形する玩具等の開発には困難が予想されることから，早くから玩具メーカー等の協力を得る必要があると考え，昭和５６年８月ころから，玩具メーカー及びプラモデルメーカーに対し，河森ら３名が作成した登場メカの図柄や手作りの見本を示して，変形する玩具等の販売の可能性について協議し，テレビ放映時にスポンサーとなるよう要請

- 9 -

27

した。また，幼児誌及び学年誌を発行する出版社に対しても，テレビ放映開始と同時にマンガや小説の連載をすることができるよう交渉した。

　大西は，当初，昭和５７年４月の放映開始を考えたが，適当な放送枠が得られずにいたところ，同年１月ころ，毎日放送の放送枠を同年１０月以降確保できる見通しが立ち，また，そのころまでに，玩具，プラモデル，文具及び菓子のメーカー等から本件企画のスポンサーとなる承諾が得られ，放送費用を調達する目途が立ったことから，本件企画のテレビアニメ化を進めることを決めた。また，大西は，その題名を「マクロス」と名付けた。

イ　本件各図柄の原図柄の作成

　河森は，昭和５６年１１月ころまでに全３９話分のおおまかなストーリーメモを作成し，昭和５７年２月までに，このストーリーメモを基にストーリー構成表を作成した。その後，放送枠の決定に伴い，エピソードを減らすなどして２６話のストーリー構成とし，これに基づいて松崎がシリーズ全体の構成を行った（放映開始後に延長が決定され，最終的に全３６話の構成となった。）。

　河森は，登場メカの図柄も担当し，昭和５６年以降，主人公らが使用する，「バルキリー」と呼ばれる変形可能な戦闘メカの図柄の作成作業を進め，同年１２月ころまでに，飛行機の形態及びロボットの形態の「バルキリー」について，原図柄を作成した。飛行機とロボットの中間形態の「バルキリー」やその他のメカについても，昭和５７年３月ころまでにその原図柄を作成した。また，玩具メーカー等から，同一の金型を使用して複数の玩具を製造したいとの要望があったことから，仕様や装備が異なる複数の「バルキリー」の図柄を作成し，同年４月には，玩具やプラモデルの制作に必要な三面図をメーカーに交付した。

　宮武は，宇宙艦「マクロス」やその他の登場メカの図柄及びマーク類

について作成を担当し，同年３月ころまでにその原図柄を作成した。また，同年４月には，各種メカの図柄のサイズの対比表や「マクロス」等の三面図を作成して，メーカーに交付した。

　美樹本は，河森が制作したストーリー構成を基に，「一条輝」，「リン・ミンメイ」，「早瀬未沙」等の登場人物の図柄の作成を担当し，昭和５６年１２月ころまでにはそのラフ・スケッチを多数作成し，昭和５７年１月ころまでには，「一条輝」を除く登場人物の原図柄を作成し，同年２月から３月に掛けて，登場人物について様々な表情，姿勢，衣装を変えたラフ・スケッチを多数作成し，同じころ，人物像の設定やストーリーの設定を行うためのストーリー設定ボードのラフスケッチを多数作成した。なお，「一条輝」については，当初作成した図柄について，河森らから，作品の主人公としては弱いとの指摘を受けたため，修正を加えた上で，同年５月に原図柄を作成した。

ウ　被告関与の時期，程度

　原告スタジオぬえは，当初，本件企画のアニメーション化の作業を，協力関係にあるアートランドに委託することを予定していた。しかし，大西は，アートランド１社ではアニメーターの数が不足すると考え，昭和５６年１２月末ころ，多数のアニメーターを擁する被告に協力を打診し，昭和５７年４月，アニメーション制作作業への参加を正式に依頼した。被告は，本件テレビアニメの担当プロデューサーとして井上明（以下「井上」という。）を選任し，その子会社であるアニメフレンドに対し，アニメ化の作業を担当させることとした。被告側を交えての最初の打合せは，昭和５７年４月２７日に行われ，アニメフレンド側の担当プロデューサーとなる岩田弘（以下「岩田」という。）がこれに出席し，松崎，宮武，河森，美樹本らから，本件企画の内容やメカの特徴等についての説明を受けた。アニメフレンドは，同年５月以降，本件テレビア

- 11 -

ニメの制作作業に関与した。

エ　本件各図柄の作成経緯

　　本件テレビアニメを制作するための作業としては，河森が作成したストーリー案に基づいて脚本及び絵コンテを作成する作業，並びに原図柄に基づいて設定画を作り，設定画を基に原画及び動画を描く作画作業その他の作業があるが，各回の制作が並列的に進められるため，脚本，絵コンテ，演出等の担当者は放映回によって異なる。基本となる設定画の作成作業については，以下のとおり，河森ら３名が自ら，又は河森ら３名の指揮監督を受けたアニメーターがこれを担当した。

㋐　別紙目録１ないし１６上段記載の各図柄は，「バルキリー」等の登場メカの設定画である。河森が，前記のとおり作成した原図柄に基づいて，自ら又は河森の指揮監督を受けたアニメーターがこれを完成させた。

㋑　別紙目録１７ないし２７上段記載の各図柄は，「マクロス」等のメカ及びマークの設定画である。宮武が，前記のとおり作成した原図柄に基づいて，自ら又は宮武の指揮監督を受けたアニメーターがこれを完成させた。

㋒　別紙目録２８ないし４１上段記載の各図柄は，登場人物の設定画である。美樹本が，前記のとおり作成した原図柄に基づいて，美樹本自身がすべて完成させた。

㋓　上記設定画を基に原画及び動画を描く作画作業が，主としてアートランド及びアニメフレンドにおいて行われ，別紙目録１ないし４１下段記載の各アニメカットを含む，本件テレビアニメのアニメーション部分が作成された。また美樹本らは，作画作業等を行うスタッフらの間に誤解が生じないよう，登場人物の人物像や登場人物相互の関係等を説明するストーリー設定ボードを多数作成して，作業を進めた。

- 12 -

　　井上の陳述書（乙６，１４）には，被告が本件テレビアニメの制作に
　関与するまでの間に，河森らによって作成された原図柄は，ラフスケッ
　チ程度のものや，他のアニメ作家の作風に酷似した創作性のないもので
　あったこと，河森ら３名が井上の指示に沿って作業した結果，本件各図
　柄が完成した旨の記載部分がある。しかし，美樹本及び河森の陳述書
　（甲１５，１６）には，原図柄の作成過程において，また，これに基づ
　く設定画の作成及びその後の作画作業の過程において，被告側から特段
　の指示等を受けたことはなかった旨が陳述記載されていることに照らす
　ならば，前記井上の陳述記載は，具体性に乏しく，採用することはでき
　ない。

オ　制作費の支払及び利益の配分

　(ア)　原告ビックウエストは，本件テレビアニメのスポンサーである玩具，
　　プラモデル，文具及び菓子のメーカー等から広告料の支払を受け，本
　　件テレビアニメの放映期間中，毎日放送に対し月額４８００万円（制
　　作費２４０５万円，電波料２２４４万５０００円，マイクロ費１５０
　　万５０００円。ただし原告ビックウエストの手数料５２４万２６００
　　円を控除する。）を支払い，その支払の保証として，毎日放送に５０
　　００万円を預託した。また，毎日放送と被告との契約に基づき，毎日
　　放送は被告に対し，本件テレビアニメの制作費として１話につき５５
　　０万円を支払い，毎日放送は，最終話の放送終了から２年を経過する
　　までの間，本件テレビアニメの独占的放送権を取得した。これによっ
　　て，アニメーション制作に従事するアニメフレンド等は，形式的には，
　　被告から制作費の支払を受けることとなったが，これは，毎日放送が，
　　アニメ制作に関する長年の実績を有する被告との契約を希望したこと
　　から，原告ビックウエストがアニメフレンド等に直接制作費を支払う
　　のではなく，毎日放送と被告を経由して支払ったためである。

- 13 -

㈠　被告は，本件テレビアニメの放映開始前に，原告ビックウエストに
　対し，当初の予定よりも制作に費用が掛かり，毎日放送を通して支払
　われる前記制作費では不足する旨を訴えた。このため原告らと被告は，
　制作費の不足分に充当するために，昭和５７年１０月１日，商品化事
　業の利益の一部並びに海外における番組販売権及び商品化権を被告に
　与えることなどを内容とする覚書（乙３）を作成した。

　　上記覚書により，キャラクター等の商品化権及び国内再放送のため
　の番組販売については原告ビックウエストが，小学６年生までを対象
　とする出版物，音楽並びに海外における番組販売権及び一般商品化権
　については被告が，中学生以上を対象とする出版物については原告ス
　タジオぬえが，それぞれ窓口となって権利行使をすること，また，対
　象ごとに，原告らと被告の間で利益を配分する比率が定められた（国
　内の商品化権については毎日放送にも利益が配分され，海外における
　商品化権行使等による利益は，被告がすべて取得した。）。

カ　著作権等の表示

　㈠　本件テレビアニメ放映前の昭和５７年７月から同年１０月に掛けて，
　本件テレビアニメの内容等を紹介する記事が学習雑誌等に掲載された
　が（乙１５ないし２０），これらすべてに，原告スタジオぬえと被告
　連名の著作権表示がある。また本文中に，原告スタジオぬえが原作を
　作成したこと，シリーズ構成は松崎，キャラクターデザインは美樹本
　がそれぞれ担当したことなどを説明したものもある。

　㈠　本件テレビアニメ放映時のオープニングクレジットでは，企画は大
　西，原作は原告スタジオぬえ，キャラクター・デザインは美樹本，メ
　カニック・デザインは宮武及び河森であることなど，企画，原作，原
　作協力，シリーズ構成，チーフディレクター，設定監修については，
　原告ら及びアートランドの関係者が担当したことが表示され，プロデ

－ 14 －

32

ューサーとして，被告の井上及びアニメフレンドの岩田が表示されている。また，オープニングクレジット及びエンドクレジットの双方において，製作は，毎日放送，被告及びアニメフレンドであることが表示されている。

㈡　昭和５８年８月から１０月に掛けて，本件テレビアニメの制作時の資料やスタッフの回想等を集めた書籍（甲１，２，９，１４）が多数発行され，そのすべてに，原告ビックウエストと毎日放送の連名の著作権表示がある。また本文中には，原告スタジオぬえが原作を担当したこと，シリーズ構成は松崎，キャラクターデザインは美樹本であることなどが記載されている。

㈢　平成５年４月に，被告の３０周年記念全集（甲１８）が発行された。同書中，被告が制作した他のテレビアニメを取り上げた部分には，著作権表示は存しないが，本件テレビアニメを取り上げた部分には，原告ビックウエストの著作権表示がある。また，本文中には，原告スタジオぬえによる独創的な物語であること，美樹本がキャラクターデザインを担当したこと，メカニックデザインは宮武，河森が担当したこと，河森は，演出，脚本にも参加したことなどが記載されている。

㈣　平成１０年２月に発行された被告監修に係る被告のアニメ大全史（甲３）は，アニメ作品を年代順に整理した部分，一連のギャグ・アニメシリーズを取り上げた部分，及びそれ以外の作品を集めた部分に大別され，前２者に収録された作品には，すべて，単独又は連名で被告の著作権表示があるのに対し，後者に属する作品は，被告の著作権表示のないものが大部分である。本件テレビアニメは後者に分類され，原告ビックウエストの著作権表示のみがある。また，本文中には，原告スタジオぬえ原作による初のオリジナル作品であること，メカニックデザインの河森は演出や脚本にも加わったこと，キャラクターデザ

－ 15 －

33

　　　インの美樹本その他若手が活躍したことなどが記載されている。

(2)　判断

　ア　原告スタジオぬえ

　　　　上記認定したとおり，河森ら３名は，原告スタジオぬえの従業員又は
　　　担当者として，本件テレビアニメのストーリーに対応する登場人物，登
　　　場メカの原図柄を作成したこと，同図柄の原図柄に基づいて，アニメー
　　　ション制作作業の基本となる設定画である別紙目録１ないし４１各上段
　　　記載の各図柄を作成したこと，また，同目録下段記載の各図柄は，アニ
　　　メーターらが，河森らの指揮監督の下に，前記設定画に基づき作画作業
　　　を行って，作成したものであることが認められる。

　　　　そうとすると，本件各図柄は，河森ら３名が，原告スタジオぬえの発
　　　意に基づき，原告スタジオぬえの業務に従事する過程で職務上作成した
　　　著作物であるから，原告スタジオぬえは，本件各図柄に係る著作権を取
　　　得した。

　イ　原告ビックウエスト

　　　　前記認定した事実及び弁論の全趣旨によれば，原告らの間では，本件
　　　テレビアニメ制作の過程で取得した著作権について，原告スタジオぬえ
　　　から原告ビックウエストが持分権の譲渡を受け，共有とする旨の合意が
　　　あると認められる。

2　抗弁について

(1)　被告は，本件テレビアニメを制作する過程で，原告スタジオぬえが負担
　すべき費用を支払ったこと，原告スタジオぬえが，被告の本件テレビアニ
　メ制作に関して参加することを約束したこと等の経緯に照らすならば，原
　告スタジオぬえは，被告に対して，本件各図柄の著作権を，明示又は黙示
　に譲渡する旨の意思表示をしたものとみるべきである旨主張するので，こ
　の点について検討する。

(2)　以下のとおり，被告の主張に係る事実を認めることはできない。

　　ア　前記１のとおり，河森ら３名は，原告スタジオぬえ又はアートランド

　　　　から給与等の支払を受け，原告スタジオぬえの業務である本件テレビア

　　　　ニメの制作に従事していたこと，本件各図柄は，河森ら３名が，原告ス

　　　　タジオぬえの発意に基づいて作成したことによって，原告スタジオぬえ

　　　　がその著作権を取得したことが認められる。

　　　　　本件全証拠によるも，河森ら３名が被告から給与等の支払を受け，あ

　　　　るいはその指示に服するなど，被告の業務に従事していたと認めること

　　　　はできず，また，原告スタジオぬえが，被告から，本件各図柄に係る著

　　　　作権の譲渡の対価を受け取ったり，著作権譲渡の明示又は黙示の意思表

　　　　示をしたと認めることもできない。

　　イ　前記１認定のとおり，原告スタジオぬえは，本件各図柄（原著作物）

　　　　に対する二次的著作物に当たる本件テレビアニメの制作について，被告

　　　　と共同して関与したか，あるいは，被告が制作するに当たって，積極的

　　　　に参加した。しかし，原告スタジオぬえが，共同して制作し又は参加し

　　　　たことは，本件各図柄を本件テレビアニメに利用することについて，被

　　　　告に許諾を与える意思表示をしたとみることはできるけれども，本件各

　　　　図柄の著作権を被告に譲渡する意思表示をしたと推認することは到底で

　　　　きない。したがって，被告のこの点の主張は採用できない。

３　結論

　　以上によれば，本件各図柄の著作権は原告らの共有に属すると認められる。

他方，被告は，本件各図柄の著作権は自己に帰属するとして争っているので

あるから，その著作権の確認を求める原告らの訴えには，確認の利益がある。

　　なお，本件全証拠によるも，将来，被告が本件各図柄の二次的著作物に当

たる新たな映画を製作し，又はこれを第三者に許諾しようとするおそれがあ

ると認めることはできないから，差止請求は理由がない。

- 17 -

35

よって，主文のとおり判決する。

東京地方裁判所民事第２９部

裁判長裁判官　　飯　村　敏　明　㊞

裁判官　　谷　　有　恒

裁判官　　佐　野　　信　㊞

－ 18 －

36

## VF-1S ファイター形態 目録1

設定画　河森 正治





アニメカット　マクロススペシャル（1話2話を同時放送）



37

# VF-1S バトロイド形態　　目録 2

設定画　河森　正治



アニメカット　　マクロススペシャル　（1話2話を同時放送）



38

# VF-1S ガウォーク形態

目録 3

設定画　河森　正治



アニメカット　マクロススペシャル　（1話2話を同時放送）



# VF-1J　ファイター形態　　目録 4

設定画　河森　正治




アニメカット　6話



40

## VF-1J　バトロイド形態　目録5

設定画　河森　正治



アニメカット　3話



# VF-1J　ガウォーク形態　目録6

設定画　河森 正治




アニメカット　マクロススペシャル　（1話2話を同時放送）



## VF-1D ファイター形態

目録7

設定画　河森　正治



アニメカット　17話



- 25 -

43

## VF-1D バドロイド形態

目録8

設定画 河森 正治





アニメカット　マクロススペシャル（1話2話を同時放送）



- 26 -

44

## VF-1D ガウォーク形態

目録 9

設定画　河森　正治



アニメカット　マクロススペシャル　(1話2話を同時放送)



# VF-1A ファイター形態

設定画　河森　正治

アニメカット　　マクロススペシャル　（1話2話を同時放送）



# VF-1A バトロイド形態

設定画　河森 正治





決定

アニメカット　8話



- 29 -

## VF-1A　ガウォーク形態

設定画　河森 正治



アニメカット　10話



目録13

設定画　河森　正治



アニメカット　9話



49

## スパルタン

**目録14**

設定画　河森　正治



アニメカット　31話



## リガード

設定画　河森 正治



アニメカット　2話



- 33 -

グラージ

目録 16

設定画　河森　正治



アニメカット　7話



## SFD-1（マクロス）戦艦型

目録17

設定画　宮武　一貴



アニメカット　4話



- 35 -

## ＳＦＤ－１（マクロス）強行型

目録18

設定画　宮武 一貴




アニメカット　5話



54

## ファランクス

目録19

設定画　宮武　一貴



アニメカット　27話



## ディフェンダー
目録 20

設定画　宮武　一貴



アニメカット　21話



56

設定画　宮武 一貴



アニメカット　14話



クァドラン・ロー

目録22

設定画　宮武　一貴



アニメカット　18話



- 40 -

58

## ヌージャデル・ガー　　目録23

設定画　宮武　一貴



アニメカット　31話



モンスター

目録 24

設定画　宮武　一貴



アニメカット　7話



－ 42 －

60

Case 2:17-cv-00327-TSZ　　Document 88-1　　Filed 03/08/18　　Page 99 of 117

設定画　宮武　一貴



アニメカット　マクロススペシャル（1話2話を同時放送）



- 43 -

61

## 統合軍マーク

設定画　宮武　一貴



アニメカット　10話　　　　　　　4話





## ゼントラーディ軍マーク

設定画　宮武　一貴



アニメカット　　12話　　　　　　　6話




－ 45 －

## 早瀬 未沙

設定画　美樹本 晴彦





アニメカット　マクロススペシャル （1話2話を同時放送）



- 46 -

64

一 条　輝 1

目録 29

設定画　美樹本　晴彦



アニメカット　6話



- 47 -

一条　輝 2

設定画　美樹本　晴彦



アニメカット　18話



## リン・ミンメイ 1

目録 31

設定画　美樹本　晴彦

 

アニメカット　5話



Case 2:17-cv-00327-TSZ    Document 88-1    Filed 03/08/18    Page 106 of 117

設定画　美樹本　晴彦





アニメカット　6話



Case 2:17-cv-00327-TSZ     Document 88-1     Filed 03/08/18     Page 107 of 117

設定画　美樹本 晴彦

 

アニメカット　9話



- 51 -

69

リン・ミンメイ4

目録34

設定画　美樹本　晴彦





アニメカット　マクロススペシャル　（1話2話を同時放送）



70

## クローディア・ラサール

目録 35

設定画　美樹本　晴彦



アニメカット　6話



71

## グローバル艦長

設定画　美樹本　晴彦





アニメカット　6話



## マクシミリアン・ジーナス

目録37

設定画　美樹本　晴彦



アニメカット　9話



73

Case 2:17-cv-00327-TSZ    Document 88-1    Filed 03/08/18    Page 112 of 117

設定画　美樹本　晴彦



アニメカット　6話



74

Case 2:17-cv-00327-TSZ     Document 88-1     Filed 03/08/18     Page 113 of 117

設定画　美樹本　晴彦



アニメカット　11話



## ブリタイ＝クリダニフ

目録**40**

設定画　美樹本　晴彦



アニメカット　7話



- 58 -

76

## エキセドル＝フォルモ

目録 41

設定画　美樹本　晴彦

 

アニメカット　9話



別紙目録

アニメーション「超時空要塞マクロス」

| | | |
|---|---|---|
| 1 | 第1話 | ブービー・トラップ |
| 2 | 第2話 | カウント・ダウン |
| 3 | 第3話 | スペース・ホールド |
| 4 | 第4話 | リン・ミンメイ |
| 5 | 第5話 | トランス・フォーメーション |
| 6 | 第6話 | ダイダロス・アタック |
| 7 | 第7話 | バイバイ・マルス |
| 8 | 第8話 | ロンゲスト・バースデー |
| 9 | 第9話 | ミス・マクロス |
| 10 | 第10話 | ブラインド・ゲーム |
| 11 | 第11話 | ファースト・コンタクト |
| 12 | 第12話 | ビッグ・エスケープ |
| 13 | 第13話 | ブルー・ウインド |
| 14 | 第14話 | グローバル・レポート |
| 15 | 第15話 | チャイナ・タウン |
| 16 | 第16話 | カンフー・ダンディ |
| 17 | 第17話 | ファンタズム |
| 18 | 第18話 | パイン・サラダ |
| 19 | 第19話 | バースト・ポイント |
| 20 | 第20話 | パラダイス・ロスト |
| 21 | 第21話 | ミクロ・コスモス |
| 22 | 第22話 | ラブ・コンサート |
| 23 | 第23話 | ドロップ・アウト |
| 24 | 第24話 | グッバイ・ガール |
| 25 | 第25話 | バージン・ロード |
| 26 | 第26話 | メッセンジャー |
| 27 | 第27話 | 愛は流れる |
| 28 | 第28話 | マイ・アルバム |
| 29 | 第29話 | ロンリー・ソング |
| 30 | 第30話 | ビバ・マリア |
| 31 | 第31話 | サタン・ドール |
| 32 | 第32話 | ブロークン・ハート |
| 33 | 第33話 | レイニー・ナイト |
| 34 | 第34話 | プライベート・タイム |
| 35 | 第35話 | ロマネスク |
| 36 | 第36話 | やさしさサヨナラ |

78

これは謄本である。
平成 29 年 10 月 26 日
東京地方裁判所民事第 29 部
裁判所書記官　黒田　淨華

