# EXHIBIT 2



Date: November 7, 2017

To whom it may concern:

This is to certify that the attached translation from Japanese into English is an accurate representation of the document received by this office.

The document is designated as:
- Case A-2nd-Heisei 14_Ne_1911 | "Appeal Seeking Declaratory Judgment of Copyright, etc."

Caroline Camilo, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned document is a true, full and accurate translation of the specified document."

_____
Signature of Caroline Camilo

**NEW YORK**
450 Seventh Avenue
10th Floor
New York, NY 10123, USA
P: (212) 643-8800

**SAN FRANCISCO**
111 Pine Street
Suite 1815
San Francisco, CA 94111, USA
P: (415) 580-6360

**KENT**
Corn Exchange House
49 The Pantiles
Tunbridge Wells
Kent TN2 5TE, UK
P: +44 (0)1892 549784

**HAMBURG**
Kurze Mühren 1
2nd Floor
Hamburg, Germany 20095
P: +49 (0) 407 679 6500

**JERUSALEM**
43 Emek Refaim
Entrance B
Jerusalem 9314104, Israel
P: +972 (02) 563-1728

info@morningsideip.com | www.morningsideIP.com

[Judgment Issued on February 25, 2002
Original Copy of Judgment Received on the Same Date
Court Clerk: Hiroaki KIGAWA]

2002 (Ne) 1911: Appeal Seeking Declaratory Judgment of Copyright, etc.
(Original Case: Tokyo District Court 2001 (Wa) 1844)
(Concluding date of oral arguments: August 19, 2002)

Judgment

| | |
|---|---|
| Appellant (Defendant) | Tatsunoko Production Co., Ltd. |
| | 3-22-12, Minami-cho, Kokubunji-shi, Tokyo |
| Representative Director | Kenji YOSHIDA |
| Attorney for Appellant | Mikinori ONO |
| Same as Above | Toshiko KUBOKI |
| Same as Above | Takayuki SHIONOYA |
| Same as Above | Tomoko MIYAGAWA |
| Appellee (Plaintiff) | Studio Nue Co., Ltd. |
| | 3-1-18, Shimoshakujii, Nerima-ku, Tokyo |
| Representative Director | Yasushi TAKEGAWA |
| Appellee (Plaintiff) | BigWest Inc. |
| | 3-19-8, Nishihara, Shibuya-ku, Tokyo |
| Representative Director | Kamon ONISHI |
| Attorney for Appellants | Katsuyoshi SHINBO |
| Same as Above | Tadashi KUNIHIRO |
| Same as Above | Yuko GOMI |

Main Text

1. All appeals shall be dismissed.

2. The court costs for this case shall be borne by the Appellant.

Facts and Reasons

I. Decision Sought by the Parties

1. The Appellant

(1) The portion of the judgment in the prior case lost by the Appellant shall be revoked.

(2) All of the Appellees' claims shall be dismissed.

(3) The court costs for the first and second cases shall be borne by the Appellees.

2. The Appellees

Same as the main text.

II. Summary of the Case

In this case, regarding the Designs ("Designs") listed in Items 1-41 of the attachment to the original judgment, which includes model sheets and animation cuts used in a total of thirty-

1

six episodes of The Super Dimension Fortress Macross, a television animation series shown in the attachment to the original judgment, which was broadcast from October 3, 1982 to June 26, 1984 with non-litigant Mainichi Broadcasting Co., Ltd. ("Mainichi Broadcasting") serving as the key station, the Appellees, claiming that Shoji KAWAMORI ("Kawamori") and Shoji WATANABE aka Kazutaka MIYATAKE ("Miyatake"), and Haruhiko SATO aka Haruhiko MIKIMOTO ("Mikimoto"), a friend of Kawamori worked for non-litigant Artland Co., Ltd. which had a cooperative relationship with Appellee Studio Nue ("Kawamori et al.") created the Designs in the course of duty for Appellee Studio Nue based on the initiative of the Appellee, that Appellee Studio Nue obtained a copyright for the Designs, and that Appellee BigWest had received a transfer of equity rights and joint ownership of the copyright from Plaintiff Studio Nue, sought against the Appellant recognition of the Appellee's ownership of the copyright to the Designs and an injunction against production of programs using the Designs.

In the original judgment, there was a finding of fact for the claims of the Appellees, the defense of the Appellant, that Appellee Studio Nue had displayed an intent to expressly or implicitly transfer the copyright for the Designs to the Appellant, was refuted by the circumstances of the production of the television animation series, and the request for recognition of the ownership of the Appellees to the copyright for the Designs was allowed, but the risk of the Appellant producing future programs was not recognized so the request for an injunction against production of the program was dismissed. The Appellant appealed this case.

The facts serving as a premise for the case, the points of contention, and the claims of the parties regarding these points of contention have been updated to include the main points of the additional claims in the Appellant's defense and the Appellee's refutation, as well as corrections of errors in the "Facts and Reasons" and "II. Summary of Case" sections of the original judgment ("giants" to "space giants" in line 3 of page 3, "characteristics of the Designs" to "details of the Designs" in line 15 of page 6, "Design" to "Designs" in line 23 of the same page, and "creation of the Designs" to "details of the creation of the Designs" in line 2 of page 7 in the original judgement).

1. Main Points of the (Additional) Claims in the Appellant's Defense in the Case

(1) Naturally, many designs are used in the production of animated works and the participation of many people is essential to the production of these designs. Because the Appellant is such an animation production company, it is not a strange thing that Kawamori et al. participated in the production of the Designs.

However, animation production companies do not create agreements to purchase copyrights to each design that is actually drawn because they conclude individual agreements with the animators in charge of producing the drawings. There is an implied consensus in the world of motion picture production regarding designs provided by animators to animation production companies in which production costs are paid directly to the animator and the copyrights to the designs are assigned directly to the animation production company, or that production costs are paid to the company employing the animator, the copyrights are assigned to the employing company, and the copyrights are then transferred to the animation production company.

(2) Also, in the world of animation production companies, there are without question customs or business practices in which there is a consensus that the copyrights for designs are transferred from the animator to the animation production company when the animator

2

or company employing the animator (subcontracting production company) has not demonstrated an agreement different from this consensus.

If there were no such consensus, custom, or business practices and the designs created by an individual animator were used on the screen of an animated work, it would be extremely unrealistic and impractical to make changes without getting the permission of the creator to make those changes. If such a conclusion were accepted, it would be practically impossible to create an animated work. Conversely, the animators drawing each design for incorporation of each design into an animated work as a whole, would provide the designs after receiving an integrated copyright.

2. Main Points of the Appellee's Refutation

(1) In the world of animated production companies, there are individual agreements between animation production companies and producers of character designs for ownership of the character designs used in the production of an animated work (Exhibits A21-A23), and there is no general consensus or custom in the world of animation production companies as described by the Appellant.

(2) The Designs were not initially ordered by or produced for the Appellant. In this case, the Appellees planned the television animation program, made the original draft, created the original Designs. These were unrelated to the contractual relationships between the animation production company and each animator doing the subsequent animation production work.

The claims of the Appellant ignore the facts of the case and treat as improper the common sense understanding that works planned and produced in-house remain in-house.

III. Decision of the Court

1. This court also rules that the case seeking a declaratory judgment of a copyright for the Designs is reasonable, and the reasoning is explained in the "Facts and Reasons" and "III. Decision on the Points of Contention" sections of the original judgment in addition to the decision on the claims of the Appellant's defense below. (Here, "Exhibits B1-B3, B6, B12-14" in line 22 of page 8 in the original ruling are "Exhibits B1-3, B6, B12-14, Physical Evidence B1-3", "protagonists" in line 12 of page 11 is "protagonist characters", "primarily" in line 21 of page 12 in line 21 of page 12 is "primarily under the supervision of Kawamori et al.", "A et al." in line 2 of page 13 is "Kawamori et al.", "original drawings of the same Drawings" in line 6 of page 16 is "the same original Drawings", and "A et al." in line 9 on the same page is "Kawamori et al."),  and "payment of production costs to Anime Friend required for the animation work in the animation cuts while working on the Television Animation Program were paid formally by the Appellant, but essentially borne by Appellee BigWest" is added to line 4 on page 17.) In the Reasons for Appeal Brief, the Appellant claims the findings of fact in the original ruling were mistaken and provided the memos in Exhibits B21, B22, B24, and B25 to support this claim. However, the evidence in the original ruling, Exhibit A20 provided in this trial, and the overall gist of the oral arguments uphold the findings of fact in the original ruling, so the passages in the memos running counter to these facts are not admissible.

2. Decision on the (Additional) Claims in the Appellant's Case

(1) The Appellant claims that, even though Kawamori et al. participated in the production of the Designs, there is an implied consensus, custom, or business practice in the world of

3

motion picture production regarding the purchase of copyrights for designs used in animated works in which the copyright to designs produced by animators are naturally transferred to animation production companies such as the Appellant without concluding individual agreements, and submitted the memos in Exhibit B24, B26, and B27 as evidence.

However, according to Exhibit A21-A23 submitted in this case and the overall gist of the oral arguments, it is recognized even at this time that individual agreements are concluded between animation production companies and producers of designs used in animated works for ownership of the designs and that there are real examples of such agreements, but there are many doubts as to whether there is an implied consensus, custom, or business in the world of animation production companies in which the copyright to designs produced by animators and used in animated works are generally transferred to animation production companies despite the existence of individual instances in the history of producing designs used in animated works. The passages in Exhibits B24, B26, and B27 supporting the claim of the Appellant lack specificity, and in light of passages denying the claim of the Appellant in the memo in Exhibit A21, passages in Exhibits B24, B26, and B27 are not immediately admissible or do not constitute precise evidence sufficient to recognize the claim of the Appellant. (Note that, in the individual circumstances such as the history of the production of the Designs by Kawamori et al. in this case, the original ruling found in the "(2) Protest" section on pages 16 and 17 that the presence of an implicit agreement to transfer the copyright for the Designs from the Appellees to the Appellant could not be recognized.)

(2) If there is no consensus, custom, or business practice for the implied transfer of copyrights used in an animated work as claimed by the Appellant, the Appellant claims production of animated works would be practically impossible.

In the production of an animated work by an animation production company, production of the animated work would clearly be unimpeded if preliminary permission for the use of copyrighted work in the animated work were obtained without any transfer of the copyrights for the designs used in the animated work. In this case, as explained in section (1) of the preliminary ruling, because Appellee Studio Nue, the copyright holder for the Designs, could be considered to have displayed an intention to grant permission to the Appellant for use of the Designs in the television animation program, the claim of the Appellant is unreasonable.

(3) Also, as mentioned above, the additional claims of the defense to the Appellant's prior case cannot be accepted.

IV. Conclusion

Based on the above, the original judgment was appropriate, the appeal is revoked as unreasonable, and the judgment rendered is cited in the main text above.

Tokyo High Court, 3rd Civil Division

| | |
|---|---|
| Presiding Judge | Motoaki KITAYAMA |
| Judge | Eiji HASHIMOTO |
| Judge | Yasuki KUROKAWA |

4

This is a duplicate copy.

October 26, 2017
Tokyo High Court, 29th Civil Division
Court Clerk: Hirotoshi KURODA [seal]

```
平成14年10月2日判決言渡
同 日 判 決 原 本 領 収
裁判所書記官 木 川 博 晶
```

平成14年(ネ)第1911号 著作権確認等請求控訴事件(原審・東京地方裁判所平成13年(ワ)第1844号)
(平成14年8月19日口頭弁論終結)

判　　　決

東京都国分寺市南町3丁目22番12号
　　　　控訴人(被告)　　　　株式会社竜の子プロダクション
　　　　同代表者代表取締役　　吉　田　健　二
　　　　同訴訟代理人弁護士　　大　野　幹　憲
　　　　同　　　　　　　　　　窪　木　登志子
　　　　同　　　　　　　　　　塩　谷　崇　之
　　　　同　　　　　　　　　　宮　川　倫　子
東京都練馬区下石神井3丁目1番18号
　　　　被控訴人(原告)　　　株式会社スタジオぬえ
　　　　同代表者代表取締役　　竹　川　裕　司
東京都渋谷区西原3丁目19番8号
　　　　被控訴人(原告)　　　株式会社ビックウエスト
　　　　同代表者代表取締役　　大　西　加　紋
　　　　被控訴人ら訴訟代理人弁護士　新　保　克　芳
　　　　同　　　　　　　　　　國　廣　正
　　　　同　　　　　　　　　　五　味　祐　子

主　　　文

1　本件控訴をいずれも棄却する。
2　控訴費用は、控訴人の負担とする。

事　実　及　び　理　由

第1　当事者の求めた裁判
1　控訴人

（1）　原判決中控訴人敗訴部分を取り消す。

（2）　被控訴人らの請求をいずれも棄却する。

（3）　訴訟費用は、第1、2審とも被控訴人らの負担とする。

2　被控訴人ら

主文と同旨

第2　事案の概要

　本件は、昭和57年10月3日から昭和58年6月26日までの間に訴外株式会社毎日放送をキー局として放映された原判決添付別紙アニメーション目録記載の連続テレビジョン放送用アニメーション「超時空要塞マクロス」全36話（以下「本件テレビアニメ」という。）に使用された設定画及びアニメカットである原判決添付別紙目録1ないし41記載の各図柄（以下「本件各図柄」という。）について、被控訴人株式会社スタジオぬえの従業員である河森正治及び宮武一貴こと渡邉一貴、並びに河森の友人であり、被控訴人スタジオぬえと協力関係にある訴外株式会社アートランドに所属する美樹本晴彦こと佐藤晴彦の3者（以下「河森ら3名」という。）が、被控訴人株式会社スタジオぬえの発意に基づき、その業務に従事する過程で創作したものであり、被控訴人株式会社スタジオぬえは本件各図柄に係る著作権を取得し、また、被控訴人株式会社ビックウエストは被控訴人株式会社スタジオぬえからその著作権の持分権を譲り受け、著作権を共有していると主張して、被控訴人らが控訴人に対して、被控訴人らが本件各図柄について著作権を有することの確認、及び本件各図柄を使用した映画の制作の差止めを求めた事案である。

　原判決は、被控訴人ら主張の上記の請求原因事実を認め、また、本件テレビアニメの制作の経緯からすれば、被控訴人株式会社スタジオぬえは控訴人に対して本件各図柄の著作権を明示又は黙示に譲渡する旨の意思表示をした旨の控訴人主張の抗弁を排斥して、被控訴人らが本件各図柄につき著作権を有することの確認を求める本訴請求を認容し、映画の制作の差止めを求める本訴請求については、控訴人が将来映画の制作をするおそれがあるとは認められないとして、これを棄却した。これ

に対し、控訴人が本件控訴を提起した。

　本件の前提となる事実、争点及びこれに関する当事者の主張は、次のとおり当審における控訴人の抗弁の追加的な主張及びこれに対する被控訴人らの反論の各要点を付加するほか、原判決の「事実及び理由」中の「第２　事案の概要」に記載のとおりである（但し、原判決３頁３行目の「巨人宇宙人」を「巨大宇宙人」と、同６頁１５行目の「本件企画の性格」を「本件企画の経緯」と、同２３行目の「本件図柄」を「本件各図柄」と、同７頁２行目の「本件図柄の作成」を「本件各図柄の作成経緯」と改める。）。

　１　当審における控訴人の抗弁の主張（追加）の要点

　（１）　アニメーション映画の制作では、当然のこととして多くの図柄が使われるものであり、その図柄の制作について、多くの人々の参加が不可欠となる。控訴人は、このようなアニメーション映画の制作会社であるから、河森ら３名が、それぞれ本件各図柄の制作に参加したとしても特に不思議なことはない。

　ただ、アニメーション映画制作会社が実際に描かれたそれぞれの図柄の著作権を買い上げるに当たり、図柄の制作担当者であるアニメーターとの間で個別的な契約を締結するために契約書等を作成することはない。上記映画制作会社の業界では、アニメーターからアニメーション映画制作会社に提供される図柄について、その制作費をアニメーターに直接支払い、アニメーション映画制作会社にその図柄の著作権を直接帰属させるか、そのアニメーターが所属する会社に制作費を支払い、所属会社に著作権を帰属させた上で、アニメーション映画制作会社に著作権を当然譲渡する旨の黙示の合意が存在しているのである。

　（２）　また、アニメーション映画制作会社の業界では、上記の合意と異なる合意があることをアニメーターやその所属する会社（下請制作会社）が表示しない限り、図柄についての著作権はアニメーター等からアニメーション映画制作会社に当然譲渡されるとの合意があるという事実たる慣習ないし商慣習が存在しているといわざるを得ない。

このような、合意、事実たる慣習、商慣習がない限り、アニメーター一個人が作成する図柄について映画の画面上で使用する際、その修正をする度にその作成者の許可を受けない限り、修正をすることが一切できないという極めて非現実的で不都合なことになってしまうのである。そして、かかる結論を許容するとなると、具体的なアニメーション映画の制作が事実上不可能になる。逆にいえば、それぞれの図柄を描くアニメーターは、その作成する図柄がそのアニメーション映画の中で、その全体の一要素としてとけ込んでおり、一体化した著作権となることを容認した上で、その図柄を提供しているということができる。

2　被控訴人らの反論の要点

（1）　アニメーション映画制作会社の業界では、アニメーション映画の制作に使用されるキャラクターデザインの著作権の帰属について、アニメーション映画制作会社とキャラクターデザインの制作者との間で個別に契約書が作成されているのであり（甲第21ないし第23号証参照）、控訴人が主張するようなアニメーション映画制作会社の業界における一般的な合意ないし慣習は存在しない。

（2）　そもそも、本件各図柄は控訴人から発注を受けて制作されたものではなく、本件では、被控訴人らが本件テレビアニメの作品を企画し、原案し、本件各図柄の原図柄を作成したものであり、それ以降のアニメーション制作作業に従事する個々のアニメーターとアニメーション映画制作会社との契約関係とは関連しない事案である。

控訴人の主張は、このような本件の事案を無視して、自社内で企画制作した作品について、自社内のみで通用する常識を本件に当てはめようとするものであり、失当である。

第3　当裁判所の判断

1　当裁判所も、被控訴人らが本件各図柄の著作権を有することの確認を求める本訴請求は理由があるものと判断するが、その理由は、次のとおり控訴人の当審における抗弁の主張に対する判断を付加するほか、原判決が「事実及び理由」中の

「第3 争点に対する判断」として説示するとおりである(但し、原判決8頁22行目の「乙1ないし3、6、12ないし14。」を「乙1ないし3、6、12ないし14、検乙1ないし3。」と、同11頁12行目の「主人公」を「主人公のキャラクター」と、同12頁21行目の「主として」を「河森ら3名の指揮監督の下に主として」と、同13頁2行目の「河森ら」を「河森ら3名」と、同16頁6行目の「同図柄の原図柄」を「同原図柄」と、同9行目の「河森ら」を「河森ら3名」と改め、同17頁4行目の「従事していたこと、」の次に「本件テレビアニメの制作過程においてアニメカットの作画作業に要したアニメフレンド等に対する制作費の支払いは形式的には控訴人によってなされているが、実質的には被控訴人ビックウエストが負担していること、」を加える。)。なお、控訴人は、本件の控訴理由補充書において、原判決の事実認定の誤りを主張し、当審において、その主張に沿う乙第21、第22号証、第24、第25号証の各陳述書を提出しているが、原判決掲記の本件各証拠及び当審提出の甲第20号証並びに弁論の全趣旨によれば、原判決認定の事実を優に認めることができ、これに反する上記の各陳述書の供述記載部分は、採用することができない。

2 控訴人の当審における抗弁の主張(追加)に対する判断

(1) 控訴人は、当審において、本件各図柄の制作に河森ら3名が参加したとしても、アニメーション映画制作会社の業界においては、アニメーション映画に使用される図柄の著作権の買い上げについて、個別の契約を締結することなく、控訴人のようなアニメーション映画制作会社に対してアニメーターが制作した図柄の著作権を当然に譲渡する旨の黙示の合意又は事実たる慣習ないし商慣習が存在している旨主張し、これに沿う証拠として、乙第24号証、第26、第27号証の各陳述書を提出している。

しかしながら、当審提出の甲第21ないし第23号証及び弁論の全趣旨によれば、本件当時においても、アニメーション映画制作会社とアニメーション映画に使用される図柄の制作者側との間で、その図柄の著作権の帰属について、個別に契約が締

結され、現に契約書が作成される例があったことが認められるのであり、アニメーション映画制作会社の業界において、アニメーション映画に使用される図柄の制作の経緯等の個別事情に関わりなく、一般的にアニメーション映画に使用される図柄の著作物を創作した者がその著作権をアニメーション映画制作会社に対して当然に譲渡する旨の黙示の合意又は事実たる慣習ないし商慣習が存在することについては疑問が多いといわざるを得ない。そして、乙第24号証、第26、第27号証中の控訴人の上記主張に沿う供述記載部分は、具体性に乏しい内容であること、及び甲第21号証の陳述書中の控訴人の上記主張を否定する内容の供述記載部分に照らせば、乙第24号証、第26、第27号証中の上記の供述記載部分は、直ちに採用することができず、他に、控訴人の上記主張を認めるに足りる的確な証拠はない（なお、本件における河森ら3名の本件各図柄の制作の経緯等の個別事情において、被控訴人らが控訴人に対して、本件各図柄の著作権を譲渡する旨の黙示的な合意が存在したことを認定することができないことは、原判決が判決書16、17頁に「2　抗弁について」として説示するとおりである。）。

（2）　控訴人は、控訴人主張のように、アニメーション映画に使用される図柄の著作権の黙示の譲渡の合意又は事実たる慣習ないし商慣習が存在しなければ、アニメーション映画の制作が事実上不可能になる旨主張している。

しかしながら、アニメーション映画制作会社がアニメーション映画を制作するに当たり、それに利用する図柄の著作権の譲渡を受けなくても、その著作物をアニメーション映画に利用することについて予め著作権者の許諾を得ていれば、アニメーション映画の制作に支障がないことは明らかであり、本件においても、原判決が上記（1）の箇所において説示するとおり、本件各図柄の著作権者である被控訴人株式会社スタジオぬえは、控訴人に対して、本件各図柄を本件テレビアニメに利用することについて許諾を与える意思表示をしたとみることができるのであるから、控訴人の上記主張は、失当である。

（3）　以上のとおり、控訴人の当審における追加的な抗弁の主張も、採用す

548

ることができない。

第4　結論

　以上の次第で、原判決は相当であり、本件控訴は理由がないからいずれも棄却することとして、主文のとおり判決する。

　　東京高等裁判所第3民事部

　　　　　　裁判長裁判官　　　北　　山　　元　　章

　　　　　　　　裁判官　　　橋　　本　　英　　史

　　　　　　　　裁判官　　　絹　　川　　泰　　毅

これは謄本である。
平成29年10月26日
東京地方裁判所民事第29部
裁判所書記官 黒田洋