THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HARMONY GOLD U.S.A., INC.,

Plaintiff,

v.

HAREBRAINED SCHEMES LLC,
HAREBRAINED HOLDINGS, INC.,
JORDAN WEISMAN, PIRANHA GAMES
INC., INMEDIARES PRODUCTIONS,
LLC, and DOES 1–10,

Defendants.

CASE NO.  2:17-cv-00327-TSZ

**PLAINTIFF HARMONY GOLD U.S.A., INC.'S OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**

**REDACTED**

**NOTING DATE: April 13, 2018**

**ORAL ARGUMENT REQUESTED**

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     THE SUMMARY JUDGMENT STANDARD.................................................. 3

III.    SUMMARY OF THE RELEVANT EVIDENCE ............................................. 4

        A.      Origination Of The Characters And Harmony Gold's Exclusive License. ........... 4

                1.      The 1982 Agreement Gave Tatsunoko The Right To License The
                        Characters To Harmony Gold. ................................................... 5

                2.      Harmony Gold Has Exclusively Exploited The Characters For 34
                        Years, Including Against Piranha's Predecessor. ....................... 6

        B.      The Japanese Court Cases And Their Effect On Tatsunoko's Rights. .................. 7

                1.      The 2002 And 2003 Japanese Court Decisions Addressed Only The
                        Copyright To The Characters *In Japan*. ................................... 7

                2.      During The Various Japanese Litigations, Harmony Gold Relied On
                        The 1982 Agreement To Defend Its Exclusive Rights. ............. 8

                3.      After The Japanese Litigation, Big West Agreed That Tatsunoko
                        Remained The International Licensor Of The Characters. ...... 10

                4.      Big West Has Acknowledged Harmony Gold's Rights To The
                        Characters, And Requested Harmony Gold Enforce The Rights. ........... 10

        C.      The 2003 Amendment And The 2017 Arbitration................................................ 11

                1.      The 2003 Amendment Merely Clarified That Harmony Gold Did Not
                        Have Derivative Rights To The Characters. ............................. 11

                2.      The 2017 Arbitration Did Not Eliminate Harmony Gold's Rights.......... 12

IV.     ARGUMENT .................................................................................................... 13

        A.      Harmony Gold's Copyright And License Agreement Establish Its Standing. ..... 14

        B.      Piranha Has Failed To Invalidate Harmony Gold's License Agreement. ............ 16

        C.      The 1982 And ███████████ Provide The Right To License........................ 17

                1.      Piranha's Claim Is Inconsistent With The 1982 Agreement And 1984
                        Amendment....................................................................... 17

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - i

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

2.     Piranha's Claim Is Inconsistent With The Japanese Decisions. ............... 18

3.     █████████████████████████. ................. 19

4.     Piranha's Claim Is Inconsistent With The Parties' Conduct. .................. 19

D.   Piranha May Not Challenge Rights The Parties Do Not Dispute. ........................ 20

E.   Neither The 2002 Japanese Decision Nor The 2017 Arbitration Award
     Eliminated Harmony Gold's Exclusive Rights To The Characters. ..................... 21

F.   The Arbitration Award Has No Preclusive Effect. ................................................. 23

G.   In The Alternative, The Motion Should Be Denied Pursuant To Rule 56(D). ...... 24

V.   CONCLUSION. ............................................................................................................... 24

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

## CASES

5
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................3

6

7
*Atigeo LLC v. Offshore Ltd. D*,
   No. C13-1694, 2014 U.S. Dist. LEXIS 53206 (W.D. Wash. Apr. 16, 2014) .........................24

8
*Barefoot Architect v. Bunge*,
   632 F.3d 822 (3rd Cir. 2011) ....................................................................................21

9

10
*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
   329 F.3d 586 (7th Cir. 2003) ....................................................................................21

11
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................................4

12

13
*CJ Prods. LLC v. Snuggly Plushez LLC*,
   809 F. Supp. 2d 127 (E.D.N.Y. 2011) .....................................................................19

14
*Clark v. Bear Stearns & Co.*,
   966 F.2d 1318 (9th Cir. 1992) ..................................................................................23

15

16
*Commer. Cleaning Servs. v. Colin Serv. Sys.*,
   271 F.3d 374 (2d Cir. 2001) .....................................................................................24

17
*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) ..................................................................................16

18

19
*DC Comics v. Towle*,
   989 F. Supp. 2d 948 (C.D. Cal. 2013) ......................................................................16

20

21
*Fleming v. Miles*,
   181 F. Supp. 2d 1143 (D. Or. 2001) .........................................................................21

22
*Halicki Films, LLC v. Sanderson Sales and Mktg.*,
   547 F.3d 1213 (9th Cir. 2008) ..................................................................................16

23

24
*Harmony Gold U.S.A., Inc. v. FASA Corp.*,
   40 U.S.P.Q.2d 1057 (N.D. Ill. 1996) .......................................................................1, 7

25
*Harmony Gold U.S.A., Inc. v. FASA Corp.*,
   No. 95-cv-2972, 1996 WL 332689 (N.D. Ill. June 13, 1996) ................................15

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - iii

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,
  70 F.3d 96 (11th Cir. 1995) ............................................................21

*In re JPMorgan Chase Derivative Litig.*,
  No. 2:13-cv-02414, 2017 WL 2833402 (E.D. Cal. June 30, 2017) ........................23

*Kent 160 LLC v. City of Auburn*,
  No. C09-1670, 2010 WL 1691870 (W.D. Wash. Apr. 26, 2010) ...........................21

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................4

*Magnuson v. Video Yesteryear*,
  85 F. 3d 1424 (9th Cir. 1991) ......................................................13, 21

*May Dep't Store v. Graphic Process Co.*,
  637 F.2d 1211 (9th Cir. 1980) .......................................................3

*MedChoice Risk Retention Grp. v. Katz*,
  C7-287-TSZ, 2017 U.S. Dist. LEXIS 145958 (W.D. Wash. Sept. 8, 2017) ...............23

*Metro-Goldwyn-Mayer, Inc. v Am. Honda Motor Corp.*,
  900 F. Supp. 1287 (C.D. Cal. 1995) .................................................15

*Michael Grecco Photography, Inc. v. Everett Collection, Inc.*,
  589 F. Supp. 2d 375 (S.D.N.Y. 2008) ................................................19

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
  795 F.3d 997 (9th Cir. 2015) .......................................................14, 15

*Murphy v. Best Buy Stores, L.P.*,
  690 F. App'x 553 (9th Cir. 2017) ...................................................4

*New Line Cinema Corp. v. Bertlesman Music Grp.*,
  693 F. Supp. 1517 (S.D.N.Y. 1988) .................................................15

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*,
  929 F. Supp. 2d 296 (S.D.N.Y. 2013) ...............................................4

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .....................................................15

*Taco Bell Corp. v. TBWA Chiat/Day Inc.*,
  552 F.3d 1137 (9th Cir. 2009) .....................................................23

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ...............................................................23

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

*United States v. Diebold, Inc.*,
  369 U.S. 654 (1962)........................................................................................3

*Vandenberg v. Superior Court*,
  21 Cal. 4th 815 (Cal. 1999)...........................................................................23

*Walt Disney Prods. v. Air Pirates*,
  581 F.2d 751 (9th Cir. 1978) ........................................................................15

## STATUTES

17 U.S.C. § 106.............................................................................14, 15, 16

17 U.S.C. § 410(c) ...............................................................................19

## RULES

Fed. R. Civ. P. 56(a) ..............................................................................4

Fed. R. Civ. P. 56(d) .............................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - v

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1    I.    **INTRODUCTION**

2          Defendant Piranha Games, Inc.'s ("Piranha")[1] challenge to Harmony Gold's standing in

3    this action is truly astounding.  Harmony Gold has held the U.S. copyright in and to "Macross,"

4    including the animated warrior robots contained therein (the "Characters"), since 1985, and has

5    held an express, exclusive license to reproduce, display, distribute and merchandize the same

6    from Tatsunoko Production Co. ("Tatsunoko") since 1984.  Consistent with its exclusive rights,

7    Harmony Gold has exploited the Characters in toys, games, books, video games, and other

8    merchandise, as well as in television and movies, for over 30 years, and has regularly enforced

9    those rights against infringers, including Piranha's predecessor.  Notwithstanding this history,

10   Piranha claims that Harmony Gold has never held an exclusive license to the Characters, and that

11   those exclusive rights belong to a third party in Japan.  Piranha is wrong, and its opportunistic

12   argument is flawed in numerous fatal respects.

13         Twenty years ago, Piranha's predecessor acknowledged Tatsunoko's right to license the

14   Characters to Harmony Gold, and in fact claimed to have obtained a license from Tatsunoko

15   itself.  *See Harmony Gold U.S.A., Inc. v. FASA Corp.*, 40 U.S.P.Q.2d 1057, at *1 (N.D. Ill. 1996)

16   ("FASA claims to have acquired the rights to these model kits and images from Twentieth

17   Century Imports ("TCI"), which allegedly acquired them from Tatsunoko").  When its argument

18   failed, Piranha's predecessor settled the case and agreed stop infringing.

19         Ten years later—after repeatedly seeking and being denied a license to the Characters

20   from Harmony Gold—Piranha nonetheless decided to release new works containing the

21   Characters' images.  Piranha's works are near carbon copies of Harmony Gold's exclusively

22   licensed and copyrighted Characters, and, given the prior settlement and Piranha's repeated

23   unsuccessful attempts to license the Characters, Piranha's infringement was plainly both

24

---

25   [1] Harmony Gold refers to the motion as Piranha's motion because Piranha filed the motion, but notes that the other defendants have filed a joinder to the motion, *see* Dkt. 91, and Harmony Gold opposes all defendants by this opposition brief.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 1

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1   knowing and willful.  Thus, taking the tactic that the best defense is a good offense, Piranha now

2   disputes Harmony Gold's standing, claiming that Harmony Gold's thirty-four-year license to the

3   Characters was terminated by a third-party lawsuit sixteen years ago.  Piranha is, to put it

4   bluntly, absolutely wrong.

5       As a threshold matter, Piranha does not dispute that Harmony Gold has a facially valid

6   exclusive license to the Characters from Tatsunoko, the Japanese company who owns the

7   copyright in the "Macross" series, or that Harmony Gold has a presumptively valid copyright

8   expressly incorporating the series' "animation."  Instead, Piranha asserts Harmony Gold's

9   license is invalid because Tatsunoko did not create the Characters and does not own the Japanese

10  copyright in their first form, drawings.  But Tatsunoko's right to license the Characters to

11  Harmony Gold stems from contract, not copyright.  Under a 1982 agreement (the "1982

12  Agreement") between Tatsunoko and the entities who owned the Character drawings—Big West

13  Frontier Co. ("Big West") and Studio Nue Co., Ltd. ("Studio Nue")—Tatsunoko holds the

14  exclusive international rights to display, distribute, reproduce, and merchandize the Characters,

15  and to license the Characters to third parties.

16      Piranha asserts that Tatsunoko's rights were abrogated by a 2002 Japanese court decision

17  in a litigation between Tatsunoko, Big West, and Studio Nue.  But that decision concerned only

18  the underlying Japanese copyright in the Characters, and affected only Tatsunoko's ability to

19  make derivative works, which were not addressed in the 1982 Agreement.  Tatsunoko's contract-

20  based rights to display, distribute, reproduce, and merchandize the Characters outside Japan were

21  not even litigated, let alone adjudicated.  Indeed, after the litigation ended, ████████████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  ████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████, both Tatsunoko and Big West have asked Harmony Gold to

4 bring infringement claims involving the Characters, including as recently as 2014.

5      Piranha also claims that a 2017 arbitration between Tatsunoko and Harmony Gold

6 somehow determined that Harmony Gold had no license to the Characters.  But this issue was

7 <u>not disputed</u> in the 2017 arbitration.  To the contrary, Tatsunoko continues to affirm today that

8 Harmony Gold holds exclusive rights "to reproduce, display, distribute and merchandize [the

9 Characters]" in the United States.

10      Piranha, a stranger to all these agreements and court actions, has no basis to challenge the

11 parties' longstanding understanding of them.  Yet it asks this Court to invalidate Harmony

12 Gold's license based on Piranha's self-serving interpretation of the agreements and decisions,

13 <u>even though that interpretation is contrary to the one adopted by the parties themselves</u>.

14      Piranha cannot show that Harmony Gold lacks standing to pursue its claims, let alone that

15 the issue can be resolved as a matter of law.  Summary judgment must therefore be denied.

16 **II.**     **THE SUMMARY JUDGMENT STANDARD**

17      Summary judgment "should not be granted unless the movant has established its right to

18 judgment with such clarity as to leave no room for controversy."  *May Dep't Store v. Graphic*

19 *Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980).  This Court must view the facts, and all

20 reasonable inferences that may be drawn from them, in the light most favorable to Harmony

21 Gold.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Anderson v. Liberty*

22 *Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court's "function is not . . . to weigh the evidence

23 and determine the truth of the matter but to determine whether there is a genuine issue for trial."

24 *Anderson*, 477 U.S. at 249.

25      "To survive a motion for summary judgment, a plaintiff need not definitively establish

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 3

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

standing," but need only "set forth sufficient evidence to create a genuine issue of material fact concerning such requirements." *Murphy v. Best Buy Stores, L.P.*, 690 F. App'x 553, 554-55 (9th Cir. 2017).  Moreover, the evidence and facts presented by the non-moving party to establish standing must "be taken as true." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).  Where the evidence as to validity is unclear or in conflict, summary judgment must be denied.  *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.,* 929 F. Supp. 2d 296, 309-10 (S.D.N.Y. 2013).

As the party moving for summary judgment, Piranha bears the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).

## III.   <u>SUMMARY OF THE RELEVANT EVIDENCE</u>

Piranha's motion rests on the false premise that Tatsunoko never had rights to the Characters, and thus could not have licensed those rights to Harmony Gold.  This is simply not true.  As the United States copyright holder in the "Macross" series, and the express exclusive licensee of Tatsunoko's rights in the Characters, Harmony Gold has standing to bring this action. The relevant facts are discussed below.

### A.   <u>Origination Of The Characters And Harmony Gold's Exclusive License</u>.

Harmony Gold's rights to the Character stem from its 1984 license agreement with Tatsunoko, which it renewed in substantially identical form in 1991.  Declaration of Christy Duran ("<u>Duran Decl.</u>") Exs. B, D.  In these agreements, Tatsunoko granted to Harmony Gold both a joint copyright interest and an exclusive international license in and to the "Macross" television series, including express rights to "reproduce," "distribute," "display," and "exercise merchandising rights," the series' "characters," "animation," "artwork," and "all other components."  *Id.* Ex. B ¶¶ 5, 6; Ex. D. ¶¶ 5, 6.  Pursuant to these agreements, in 1985, Harmony Gold registered a copyright in the "Entire Work" of "Macross," expressly including the animation, story, and soundtrack.  Duran Decl. Ex. C.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 4

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Tatsunoko's right to license the Characters to Harmony Gold likewise stems from contract: initially, from the 1982 Agreement among Tatsunoko, Big West, and Studio Nue, relating to the creation of the "Macross" television series, and later, from ██████████ ████████████████████.

## 1.     The 1982 Agreement Gave Tatsunoko The Right To License The Characters To Harmony Gold.

The respective rights of Tatsunoko, Big West, and Studio Nue to "Macross" arise both from law and from contract. The original drawings that became the basis for the Characters were created by Studio Nue and assigned to Big West in the early 1980s. Dkt. 88-1. Subsequently, animated images based on these drawings were incorporated into the "Macross" television series. *Id*. Tatsunoko produced the "Macross" series on a work-for-hire basis,[2] engaging and paying the artists who created the animation and storyline. *Id*. As a result of their various roles in creating "Macross," Studio Nue and Big West own the Japanese copyright in the drawings, while Tatsunoko owns the Japanese copyright, excluding the moral rights,[3] in the "Macross" television series. *Id.;* Declaration of Jessica Stebbins Bina ("Bina Decl.") Ex. B at 13.

Tatsunoko's rights to "Macross," however, are not limited to its statutory copyright in the "Macross" series. In the 1982 Agreement, Tatsunoko, Big West, and Studio Nue also agreed that all "commercialization rights overseas" in and to "Macross" belonged exclusively to Tatsunoko. Duran Decl. ¶ 3 & Ex. A ¶ 5, Art. 1 ¶ 1; Bina Decl. ¶¶ 2-3 & Exs. A, B (the "[1982 Agreement] stated that . . . Big West would be the point of contact and exercise rights concerning character merchandising rights" domestically, while Tatsunoko "would do the same for. . . overseas broadcasting syndication rights and general merchandising rights.").

---

[2] Because "Macross" was made in Japan, it was not produced pursuant to the U.S. work-for-hire doctrine; however, Harmony Gold understands that it was produced under an analogous framework existing under Japanese law.

[3] Japanese copyright law, like that of many countries but unlike the United States, distinguishes between legal copyrights and moral rights, and provides separate rights to those holding moral rights as creators of a work, even if done on a work-for-hire basis. Such rights cannot be eliminated, but their exercise can be waived by contract, as was the case here.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 5

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

As Tatsunoko affirms by declaration, the 1982 Agreement gave Tatsunoko an exclusive, perpetual license to reproduce, display, distribute and merchandize the Characters outside Japan, and to grant those rights to others.  Declaration of Atsushi Noguchi ("Noguchi Decl.") ¶ 4.  Indeed, by its plain language, the 1982 Agreement allocated all international rights in "Macross" to Tatsunoko, reserving none to Big West or Studio Nue:  "In connection with overseas program sales and general commercialization rights overseas, [Tatsunoko] shall have these rights, and the profits arising therefrom shall completely belong to [Tatsunoko]."  Duran Decl. Ex. A.

While Piranha claims the 1982 Agreement gave Tatsunoko a license to exploit the completed "Macross" television series, Mot. at 9, this claim is contrary not only to Tatsunoko's sworn declaration but to the 1982 Agreement itself.  That the parties' broad definition of "commercialization" included the right to reproduce, display, distribute and merchandize the series' Characters is made explicit in a 1984 amendment to the 1982 Agreement (the "1984 Amendment"), in which the parties described both the production of toys and the making of video games based on the series as part of "commercialization" rights.  Duran Decl. Ex. A Art. 2, 5 (toys manufactured by Bandai Co., Ltd constitute "commercialization based on the Television Version" and "video and game software" are also part of "commercialization rights").

## 2. Harmony Gold Has Exclusively Exploited The Characters For 34 Years, Including Against Piranha's Predecessor.

Similarly, and contrary to Piranha's claim that Harmony Gold merely "repackaged" the "Macross" television series and released it for a U.S. audience, Mot. at 10, Harmony Gold from the beginning exploited the Characters in a wide variety of forms, including toys, games, books, comic books, video games, apparel, and all other kinds of merchandize, as well as in movies and television.  Duran Decl. ¶¶ 16, 17, Ex. L.  Harmony Gold has also regularly taken enforcement actions in support of its copyright and other exclusive rights.  Duran Decl. ¶¶ 18-21.

As part of these enforcement mechanisms, in 1995, Harmony Gold sued Piranha's predecessor, FASA Corporation ("FASA"), along with several others, alleging copyright

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 6

LAW OFFICES
CALFO EAKES & OSTROVSKY PLLC
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

infringement based on the Characters.  FASA defended that action by asserting that it, too, had a license to the Characters from Tatsunoko.  *See Harmony Gold U.S.A., Inc. v. FASA Corp.*, 40 U.S.P.Q.2d 1057, at *1 (N.D. Ill. 1996) ("FASA claims to have acquired the rights to these model kits and images from Twentieth Century Imports ("TCI"), which allegedly acquired them from Tatsunoko").  When that defense failed, FASA settled the lawsuit and agreed to refrain from infringing the Characters.  Duran Decl. ¶ 19.  Through at least 2011, Piranha acknowledged this settlement was binding and valid.  *Id.* ¶ 25, Ex. R.[4]

> **B.    The Japanese Court Cases And Their Effect On Tatsunoko's Rights.**
>
> **1.    The 2002 And 2003 Japanese Court Decisions Addressed Only The Copyright To The Characters *In Japan*.**

In the late 1990s, Tatsunoko and Big West began disputing certain of each other's rights to "Macross."[5]  In one such dispute, the parties litigated over which party held the Japanese copyright in the original graphic designs of the Characters, thus holding the right to use their images in sequel films.  Noguchi Decl. ¶ 8.  In another dispute, the parties litigated over who owned the "Macross" television series, which included animated versions of the Characters as well as an extensive storyline and additional animation.  Bina Decl. Ex. B.  In the first dispute, the Tokyo District Court held that Studio Nue was responsible for creating the initial graphic designs of the Characters, and that, by agreement, Studio Nue and Big West had joint ownership of the Japanese copyright to those designs.  Dkt. 88-1 (the "2002 Japanese Decision").  In the second dispute, the Japanese court held that Tatsunoko held the entirety of the Japanese copyright, excluding moral rights, in the television series, to the exclusion of Studio Nue and Big West.  Bina Decl. Ex. B (the "2003 Japanese Decision").

While the 2002 Japanese Decision established that Studio Nue and Big West owned the

---

[4] In 2011, Piranha's president, Russ Bullock, told Harmony Gold that he was aware of the settlement and intended to honor it.  Duran Decl. Ex. R.  Five years later, Piranha nonetheless released the infringing works.  *Id.* ¶¶ 25, 26.
[5] Harmony Gold is not aware of any disputes that challenged Tatsunoko's license of international "Macross" rights to Harmony Gold.  Dkt. 63 ¶ 5; *see also* Duran Decl. ¶ 7; Noguchi Decl. ¶ 7.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 7

LAW OFFICES
**CALFO EAKES & OSTROVSKY** PLLC
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Japanese copyright in the Characters' designs, it did <u>not</u>, as Piranha claims, invalidate Harmony Gold's exclusive license to display, distribute, reproduce, and merchandize the Characters outside Japan. To the contrary, throughout the entirety of the Japanese litigation, the 1982 Agreement remained in effect and continued to imbue Tatsunoko with a perpetual exclusive license to exploit the Characters outside Japan. This is because, critically, the 2002 Japanese Decision determined only the parties' <u>Japanese copyrights</u>, not their <u>international contract rights</u>. Dkt 88-1 at 11; Bina Decl. Ex. A; Noguchi Decl. ¶ 9. Far from invalidating the 1982 Agreement, the decision expressly acknowledged that the Agreement granted Tatsunoko the sole right to license and retain all profits from "overseas broadcast distribution rights and [overseas] merchandising rights." Bina Decl. ¶ 2, Ex. A.[6] Similarly, in the 2003 Japanese Decision, the court again acknowledged that all international "merchandising rights" belonged to Tatsunoko. Bina Decl. Ex. B at 9.

> ### 2.   During The Various Japanese Litigations, Harmony Gold Relied On The 1982 Agreement To Defend Its Exclusive Rights.

During the long period that rights were disputed between Tatsunoko and Big West, (approximately 1998 through 2008), Big West made sporadic challenges to Harmony Gold's exercise of its exclusive rights in an attempt to gain leverage in its long fight against Tatsunoko. Relying on its own exclusive license agreement with Tatsunoko and the 1982 Agreement, Harmony Gold <u>successfully prevented each of these efforts</u>, *see* Duran Decl. ¶¶ 12, 18-21 & Exs. I (1999), M (1996), N-O (2002), and—as detailed below—Big West eventually changed course and acknowledged Harmony Gold's exclusive rights.

Indeed, in the immediate aftermath of the 2002 Japanese Decision (before the 2003 Japanese Decision affirmed that Tatsunoko, not Big West, owns the "Macross" series), Big West even attempted to license Character-based merchandise in Harmony Gold's territories on the

---

[6] As explained in Ms. Bina's declaration, Piranha's translation of key language on this point is ambiguous; thus, Harmony Gold has obtained an additional certified translation of the relevant excerpt. Bina Decl. ¶ 2 & Ex. A.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 8

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

basis of its ownership of the drawings.  Harmony Gold successfully fought these efforts, consistently explaining that its rights to exploit the Characters arose from the 1982 Agreement, which was unaffected by the 2002 Japanese Decision.  For instance, on June 11, 2002, after the 2002 Japanese Decision, Harmony Gold sent a letter to an infringer, Sunwards Ltd., and explained:

> We understand that your company has <u>recently obtained a purported license from Big West</u> to distribute certain Macross toys into the Harmony Gold Territory.  In Sunward Ltd.'s press release dated May 1, 2002, it stated, 'Our right is invested by Big West <u>whose copyright ownership was judicially affirmed by the [2002 Japanese Decision.]</u>
>
> We wish to advise you that Harmony Gold controls distribution rights to Macross in the Harmony Gold Territory and that <u>the [2002] Tokyo District Court ruling does not in any way affect Harmony Gold's rights.   Harmony Gold's rights flow from an agreement executed by Big West, Studio Nue, and Tatsunoko.</u>  Pursuant to this agreement, it was concluded that exploitation rights to Macross outside of Japan would be controlled by Tatsunoko in perpetuity.  Tatsunoko, in turn, granted such exploitation rights to Harmony Gold, which has been exercising and enforcing such rights outside of Japan since 1984.

Duran Decl. Ex. N at 1 (emphases added).

From Piranha's summary judgment motion, it appears that in 2002, around the same time Big West and Studio Nue tested Harmony Gold's will to enforce its rights by purporting to license merchandise to third parties, they also registered drawings of the Characters with the U.S. Copyright office, under the name "Kabushiki Kaisha Studio Nue & Kabushiki Kaisha Big West."  Dkt. 88-5.  Harmony Gold was not aware of this registration, which conflicts with Harmony Gold's registration of copyright in the "Macross" animation, and which post-dates creation of the Characters by over 20 years.  Duran Decl. ¶ 13. To Harmony Gold's knowledge, Big West never attempted to exploit the U.S. copyright it registered.  To the contrary, as further detailed below, Big West <u>subsequently acknowledged Harmony Gold's exclusive rights in the</u>

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 9

LAW OFFICES
**CALFO EAKES & OSTROVSKY** PLLC
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1    <u>Characters</u> and ceased efforts to license them outside Japan itself.

2         **3.**    ███████████████████████████████

3         ███████████████████████████████

4    ████████████████████████████████████████

5    ████████████████████████████████████

6    ████████████████████████████    Bina Decl. Ex. D; Noguchi Decl. ¶ 9. ████

7    ████████████████████████████████████████

8    ████████████████████████████████████████

9    ████████████    Bina Decl. Ex. D    ████████████████████

10   ████████████████████████████████████

11   ████████████████████████████████████

12   ██████████████████████    *Id.*    ████████████

13        **4.**    **<u>Big West Has Acknowledged Harmony Gold's Rights To The</u>**

14             **<u>Characters, And Requested Harmony Gold Enforce The Rights.</u>**

15        After the ████████████████, to Harmony Gold's knowledge, Big West stopped all efforts

16   to market products based on the Characters outside Japan, Duran Decl. ¶ 13, and instead

17   acknowledged Harmony Gold's rights to the Characters based on its license with Tatsunoko.

18   Indeed, Big West has <u>requested</u> that Harmony Gold pursue actions against third-party infringers.

19   For example, in 2014, Tatsunoko conveyed to Harmony Gold Big West's request that Harmony

20   Gold take action against an infringing work including one of the same Characters at issue in this

21   action.  In an email dated January 17, 2014, from Tatsunoko's then-counsel, Brian Murphy, to

22   Harmony Gold, Mr. Murphy wrote:

23             <u>The CEO of Big West has once again contacted Tatsunoko senior</u>
             <u>management to insist that Tatsunoko demand that Harmony Gold</u>
24             <u>take immediate action</u> with respect to the [infringing work] . . .

25   *Id.* ¶ 15 & Ex. K (emphasis added).  Mr. Murphy further explained that Big West was aware of

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 10

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Harmony Gold previously bringing an infringement action against Hasbro based on the same Character, and "Big West is demanding that Harmony Gold take the very same aggressive rights infringement enforcement approach against this Argentinean live-action series."  *Id.* (emphasis added); *see also* Duran Decl. Ex. Q.

C. **The 2003 Amendment And The 2017 Arbitration.**

1. **The 2003 Amendment Merely Clarified That Harmony Gold Did Not Have Derivative Rights To The Characters.**

While the 2002 Japanese Decision did not affect the majority of Tatsunoko's license to Harmony Gold, it did alter Harmony Gold's rights in one respect.  In the 1984 and 1991 license agreements with Harmony Gold, Tatsunoko had granted Harmony Gold derivative works rights in addition to the rights of distribution, display, reproduction, and merchandising.  Duran Decl. Exs. B, D ¶ 5.  However, because the 1982 Agreement did not address the right to make derivative works based on the Characters, and because the 2002 Japanese Decision held that Tatsunoko did not own their underlying copyright, the 2002 Japanese Decision meant that Tatsunoko (and thus Harmony Gold) could no longer make derivative works including the Characters' images.  Dkt. 88-1.

In 2006, after the Japanese decisions were affirmed on appeal, Tatsunoko and Harmony Gold amended their agreement.  The new amendment—dated as of January 20, 2003 to coincide with the date the Japanese court awarded copyright in the "Macross" series to Tatsunoko (the "2003 Amendment")—granted Harmony Gold all of Tatsunoko's rights to "Macross." Consistent with the 2002 Japanese Decision, the 2003 Amendment further acknowledged that this right did not include the right to "make derivative works" based on the Characters' images. Duran Decl. Ex. G.  In other words, the purpose of the 2003 Amendment was to make Harmony Gold's rights coextensive with Tatsunoko's:  because the 1982 Agreement did not give Tatsunoko the right to create derivative works based on the Characters, Harmony Gold could not have that right either.  But Tatsunoko and Harmony Gold's other exclusive rights to the

PLTF HARMONY GOLD'S OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 11

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Characters—reproduction, display, distribution and merchandising—remained in place.
Noguchi Decl. ¶¶ 6, 9. [7]

Indeed, because Harmony Gold has the exclusive right to <u>all</u> "Macross" exploitation outside of Japan, Duran Decl. ¶ 12, Big West has not been able to exploit any "Macross" sequels outside Japan and instead has asked Harmony Gold (via Tatsunoko) to modify its license to permit Big West to exploit its "Macross" sequels internationally. *See, e.g.,* Duran Decl. Ex. J ("Big West has an intention of distributing the derivative pictures of "Macross" produced by them in the overseas territories and wants to inquire of Harmony Gold about its feasibility through the intermediary of Tatsunoko….As a matter of course, it would be necessary to seek Harmony Gold's approval in order to distribute such derivative programs in North America.") Again, if Big West, and not Harmony Gold, actually held these rights, it would simply have exploited them, not asked permission.

### 2.   The 2017 Arbitration Did Not Eliminate Harmony Gold's Rights.

In 2017, Tatsunoko and Harmony Gold conducted a private arbitration addressing disputes pertaining to their license agreement.  Contrary to Piranha's claims, <u>neither Tatsunoko nor Harmony Gold disputed Harmony Gold's exclusive license to the Characters</u> in that arbitration.[8]  Rather, the parties' primary dispute centered on Harmony Gold's right to make a live-action "Robotech" motion picture incorporating the "Macross" storyline.  Tatsunoko argued that the 2003 Amendment was not valid, and that Harmony Gold had no right to make a live-action derivative work.  Duran Decl. ¶ 22; Dkt. 88-4 at 9-10.  In the alternative, Tatsunoko argued that the limitation on derivative works in the 2003 Amendment applied to the Characters' names and storylines, not just their images.  *Id.* ¶ 22 & Ex. G.  Harmony Gold argued that the 2003 Amendment *was* valid, and that the *sole* limitation it imposed was that Harmony Gold did

---

[7] Piranha concedes that the 2003 Amendment is limited to "derivative works rights" in the Characters.  Mot. at 2-3.

[8] To the contrary, Tatsunoko sought damages based on claimed failures by Harmony Gold properly to pay royalties on such merchandise incorporating the Characters.  Duran Decl. ¶ 22.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 12

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

not have the right to make derivative works using the Characters' "visual depictions."  Harmony

Gold's argument was based on the history of the 2003 Amendment and its adoption as a result of

the 2002 Japanese Decision, which had limited Tatsunoko's right to use the Characters' <u>images</u>

in derivative works.  *Id.* ¶ 23.  Harmony Gold argued that the 2003 Amendment merely clarified

that Harmony Gold's rights mirrored Tatsunoko's rights.  *Id.*

      The Arbitrator agreed with Harmony Gold, and concluded that Harmony Gold's rights

included "all [Tatsunoko's] remaining rights in *Macross*, including derivative and sequel rights

but naturally excluding any right to <u>create derivative works</u> using the 41 original character[s]

from *Macross* program which now belonged to Big West."  Dkt. 88-4 at 10 (emphasis added)

(the "<u>Arbitration Award</u>").  Far from being "disappointed" by this ruling, Mot. at 12, Harmony

Gold was pleased the arbitrator adopted its interpretation of the 2003 Amendment.

      The arbitrator's ruling was limited to the issues raised by the parties:  specifically, that

Harmony Gold's "Macross" rights were coextensive with Tatsunoko's rights.  Duran Decl. ¶ 24;

Dkt. 88-4.  Nothing in the arbitration addressed—let alone eliminated—Harmony Gold's

exclusive rights to reproduce, display, distribute or merchandize the Characters.  Bina Decl. ¶ 4.

This is unsurprising given that both Tatsunoko and Harmony Gold fully understand and agree as

of today that Tatsunoko owns these rights and has exclusively licensed them to Harmony Gold.

Noguchi Decl. ¶ 6; Duran Decl. ¶ 6, 10.  Indeed, the Arbitrator did not even consider the 1982

Agreement (from which those rights derive), or the ▮▮▮▮▮▮.  Bina Decl. ¶ 7.

## IV.   <u>ARGUMENT</u>

      A third-party infringer (Piranha) cannot challenge a plaintiff's (Harmony Gold) standing

where the party that the third-party infringer alleges actually holds the relevant rights (Big West)

does not dispute that the plaintiff (Harmony Gold) holds those rights.  *See Magnuson v. Video

Yesteryear*, 85 F. 3d 1424, 1429 n.1 (9th Cir. 1991).  That is the situation here.  Harmony Gold

has a presumptively valid copyright that includes the "Macross" animation, and a valid exclusive

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2224

license expressly including the Characters.  Harmony Gold's rights have been affirmed by its licensor, Tatsunoko.  Noguchi Decl. ¶¶ 6, 9.  And Harmony Gold's rights have been acknowledged by the purported "actual" rights holder, Big West, since at least 2008.  Duran Decl. Ex. K; Bina Decl. Ex. D.

Piranha is a stranger to the agreements between Big West and Tatsunoko.  It has presented <u>no</u> evidence of those parties' conduct, the negotiations of their agreements, or their history operating under those agreements.  Yet it asks this Court to hold <u>as a matter of law</u> that Tatsunoko does not understand its own contracts with Big West, and does not have the rights it claims under those contracts, which Tatsunoko and Harmony Gold have exercised for more than thirty years.  *See* Noguchi Decl. ¶¶ 4, 9.

Piranha has come nowhere close to meeting its demanding burden to demonstrate an absence of material fact.  Harmony Gold has an express, exclusive license to at least three of the exclusive rights identified in 17 U.S.C. §106 with regard to the Characters, as well as a presumptively valid copyright in the entirety of the "Macross" work.  Neither the Japanese Decisions nor the Arbitration Award invalidated Harmony Gold's exclusive license, expressly or by implication.  Rather, Piranha asks this Court to do so in the first instance, and to do so based on Piranha's self-serving interpretation of the 1982 Agreement—an interpretation which is at odds with the parties' own interpretation of that Agreement and which is contradicted by the ▮▮▮▮▮▮▮.  The Court should decline to do so, and should deny summary judgment.

A.      <u>Harmony Gold's Copyright And License Agreement Establish Its Standing</u>.

As Piranha acknowledges, the owner or exclusive licensee of any of the exclusive rights specified in 17 U.S.C. § 106 has standing to sue for infringement of that right.  Mot. at 14; *see* 17 U.S.C. § 106; *see also Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015) ("It is established law under the 1976 [Copyright] Act that any party to whom such a right [under § 106] has been transferred  — whether via an assignment or an exclusive license —

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

has standing to bring an infringement action based on that right."); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) ("exclusive rights may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small.")

Piranha admits that Harmony Gold owns a valid copyright to the entire work of "Macross." Mot. at 15-19. Nonetheless, Piranha devotes large portions of its brief to arguing that Harmony Gold's copyright is irrelevant because the entire work of "Macross" does not include the Characters. This is not true. It well-settled that copyright in a motion picture includes copyright for "any significant characters portrayed therein." *Metro-Goldwyn-Mayer, Inc. v Am. Honda Motor Corp.*, 900 F. Supp. 1287, 1293 (C.D. Cal. 1995); *accord Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 754-55 (9th Cir. 1978); *New Line Cinema Corp. v. Bertlesman Music Grp.*, 693 F. Supp. 1517, 1521 n. 5 (S.D.N.Y. 1988). Moreover, Harmony Gold expressly registered the "animation" of the "Macross" series, which includes the Characters' images. Duran Decl. ¶ 5, Ex. C; *see also Harmony Gold U.S.A., Inc. v. FASA Corp.*, No. 95-cv-2972, 1996 WL 332689, at *1-2 (N.D. Ill. June 13, 1996) (finding Harmony Gold had standing to enforce its rights to the Characters); Duran Decl. Ex. P (C.D. Cal. decision post-dating the 2002 Japanese Court Decision and holding that Harmony Gold's copyright constitutes "prima facie evidence of ownership" of rights in the Characters). Harmony Gold's registered copyright is reason enough to deny Piranha's motion.

Furthermore, regardless of what Harmony Gold's copyright does or does not include, Harmony Gold has standing in this case because Harmony Gold has an express exclusive license to at least three of the exclusive rights denoted in Section 106: the right to "reproduce the copyrighted work," the right to "distribute copies…of the copyrighted work," and the right to "display the copyrighted work to the public." 17 U.S.C. § 106; *Minden*, 795 F.3d at 1003-06; Duran Decl. Ex. D ¶ 5 (Harmony Gold's exclusive license includes rights to "display,"

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 15

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

"distribute," and "reproduce" the "characters," "animation," "artwork," and "all other components" of "Macross"); Noguchi Decl. ¶¶ 5, 6, 9.  In addition, Harmony Gold has the exclusive right to merchandise the Characters, which also establishes standing.  Noguchi Decl. ¶¶ 5, 6; Bina Decl. Ex. B at 9; Duran Decl. Ex. D ¶ 6; *DC Comics v. Towle,* 989 F. Supp. 2d 948, 962 (C.D. Cal. 2013), *aff'm* 802 F.3d 1012 (9th Cir. 2015) (exclusive merchandising rights were "sufficient to afford Plaintiff standing," in copyright dispute); *Halicki Films, LLC v. Sanderson Sales and Mktg.,* 547 F.3d 1213, 1220 (9th Cir. 2008) (same).

Indeed, *DC Comics*, relied upon by Piranha, actually demonstrates Harmony Gold's standing.  Mot. 3, 18-19.  In that case, the parties disputed whether a licensor had retained its right to merchandise the Batmobile.  *DC Comics v. Towle*, 802 F.3d 1012, 1024-25 (9th Cir. 2015).  The Ninth Circuit found that, <u>because the licensor retained the right to merchandise the Batmobile character</u>, the licensor had standing to sue.  *Id*. at 1024 & 1024 n.8.  Here, Harmony Gold's license grants it the express, exclusive right to merchandise the Characters.  Duran Decl. Ex. D ¶ 6.  This <u>alone</u> provides it with standing in this case.

### B.    <u>Piranha Has Failed To Invalidate Harmony Gold's License Agreement.</u>

Given that Harmony Gold's exclusive license expressly gives it rights establishing standing in this case, Piranha's motion must be denied unless it can demonstrate that Harmony Gold's facially valid exclusive license is, in fact, invalid as a matter of law.  Piranha purports to do so on the basis of collateral estoppel.  In fact, however, neither the 2002 Japanese Decision nor the 2017 Arbitration Award actually adjudicated this issue.  Instead, Piranha asks this Court to do so in the first instance, and to do so based on <u>its</u> interpretation of the 1982 Agreement.  But Piranha's interpretation of the 1982 Agreement is inconsistent with its plain language, the Japanese Decisions, the parties' history and course of conduct, and the declaration of Tatsunoko as to the rights granted thereunder.  Its motion should therefore be denied.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 16

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

**C.**     **The 1982 And ██████████████ Provide The Right To License.**

The crux of Piranha's argument is that because Tatsunoko does not own the Japanese copyright in the Characters, it had no right to exclusively license the Characters to Harmony Gold. Mot. at 14-19. As detailed above, however, Tatsunoko's right to license the Characters arises from <u>contract</u>, not copyright. *Supra*, at 5-6. While Big West and Studio Nue do own the Japanese copyright in the Characters, <u>Tatsunoko</u> owns the exclusive rights to reproduce, distribute, display, and merchandize those Characters outside Japan, and to license those rights to others. Noguchi Decl. ¶¶ 4, 9; Duran Decl. Ex. A; Bina Decl. Ex. B at 9.

Piranha's contrary argument rests on an impossibly narrow reading of the 1982 Agreement that is inconsistent not only with its language, but with the parties' thirty-five-year history and ██████████████████. Specifically, Piranha asserts that the phrase "general commercialization rights"—rights which are indisputably granted in perpetuity to Tatsunoko outside Japan—does not include any rights to the Characters because the grant does not explicitly include the word "characters." Mot. at 9, 14-15. Piranha's claim is inconsistent, however, with the 1982 Agreement, the 1984 Amendment, the 2002 and 2003 Japanese Decisions, ██████████████, and the subsequent conduct of both Tatsunoko and Big West.

**1.**     **Piranha's Claim Is Inconsistent With The 1982 Agreement And 1984 Amendment.**

In the 1982 Agreement, Tatsunoko, Big West, and Studio Nue agreed that Tatsunoko would broadly hold the permanent, exclusive "general commercialization rights overseas" to all "rights arising from the television animation movie 'The Super Dimension Fortress Macross." The intent and purpose of the 1982 Agreement was to allocate <u>all</u> rights to "Macross," including those in the Characters. Big West was given the permanent Japanese domestic rights to distribute the movie and merchandize the characters (with some profits going to Tatsunoko), while Tatsunoko was given the permanent international rights to do the same (and retain <u>all</u> the associated profits). Duran Decl. Ex. A.

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1    Tatsunoko has confirmed that the 1982 Agreement gave it the exclusive rights to display,

2    distribute, reproduce and merchandize the Characters outside Japan.  Noguchi Decl. ¶ 4.  Piranha

3    nonetheless asserts that the broad phrase, "general commercialization rights," in fact included

4    only rights to distribute the "Macross" series internationally.  Mot. at 9.  Contrary to Piranha's

5    claims, there is no difference in the 1982 Agreement between the domestic commercialization

6    rights retained by Big West and the international commercialization rights granted to Tatsunoko.

7    Duran Decl. Ex. A.  Nor, indeed, would such a limitation make sense.  The animated Characters

8    are incorporated throughout the "Macross" motion picture: it would be impossible to exercise

9    exclusive rights to "commercialize" the "Macross" motion picture without exclusively

10   displaying, distributing, copying, and merchandizing the Characters.  Furthermore, Piranha's

11   argument is inconsistent with the language of the 1982 Agreement itself.  "Commercialization"

12   cannot mean only "distribution" because distribution rights were <u>separately</u> granted: Tatsunoko

13   received all international "program sales" rights <u>in addition to</u> general commercialization rights.

14   Duran Decl. Ex. A.  Piranha's interpretation of the 1982 Agreement is also belied by the 1984

15   Amendment, which describes both the manufacture of Character-based toys and the making of

16   Character-based video games as "commercialization" rights.  Duran Decl. Ex. A, Arts. 2, 5.

17         **2.     <u>Piranha's Claim Is Inconsistent With The Japanese Decisions</u>.**

18         Piranha's impossibly narrow interpretation of "general commercialization rights" is also

19   inconsistent with the courts' description of Tatsunoko's rights in the 2002 and 2003 Japanese

20   Decisions.  In the 2002 Japanese Decision, the court described Tatsunoko as holding all

21   "overseas merchandising rights," including merchandising of the Characters.  Bina Decl. Ex. A.

22   Similarly, the 2003 Japanese Decision stated that while Big West was the "point of contact" for

23   <u>domestic</u> "character merchandising rights and broadcasting syndication," Tatsunoko served "the

24   same" role for "overseas broadcasting syndication rights and general merchandising rights."

25   Bina Decl. Ex. B at 9.  Piranha's assertion that the 1982 Agreement gave Tatsunoko no rights in

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 18

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

the Characters is inconsistent with these courts' statements that the 1982 Agreement gave

Tatsunoko international rights to merchandise the Characters.

. Bina Decl. Ex. D.

### 4. <u>Piranha's Claim Is Inconsistent With The Parties' Conduct.</u>

Finally, Piranha's claim is inconsistent with the parties' conduct throughout their 34-year

history.  First, while Piranha makes much of the fact that Big West registered a U.S. copyright in

the drawings in 2002, that registration has no presumption of validity as it was registered far

more than five years after the drawings' creation.  *See* 17 U.S.C. § 410(c).[9]  Moreover, there is

no evidence that Big West ever exploited this copyright in any fashion after its registration,

further suggesting it was not valid.  Duran Decl. ¶ 13.  Far more significant are the facts that <u>after</u>

the 2002 Japanese Decision, Harmony Gold continued to prevent Big West from licensing the

Characters in the United States based on the 1982 Agreement, and Big West in fact sought

Harmony Gold's permission to exploit its own works outside Japan.  *Id*. ¶ 12 & Ex. J.

Second, Piranha's claim that Big West, and not Harmony Gold, holds the international

rights to the Characters is utterly irreconcilable with the fact that <u>Big West has asked Harmony</u>

---

[9] Piranha's cited cases do not support their claim that a copyright registered two decades after first publication and never exploited in the fifteen years after its registration is sufficient to dispose of a case at summary judgment.  To the contrary, each case involved diligent behavior by copyright holders and minor, technical deficiencies.  *See CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 142-44 (E.D.N.Y. 2011) (court found certificates of registration valid when eight of ten certificates were issued within the five year period); *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008) (plaintiff sought partial summary judgment as to validity of its own untimely copyrights, and defendant did not present contrary evidence).

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 19

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Gold to pursue infringement actions based on the Characters.  In 2014, twelve years after the 2002 Japanese Decision, Big West specifically requested that Harmony Gold pursue an infringement action based on the Characters.  Duran Decl. ¶ 15 & Ex. K.  In so doing, it acknowledged Harmony Gold's status as the exclusive licensee of the Characters with standing to pursue such an action.

Finally, Piranha's claim is inconsistent with Harmony Gold's 34-year exclusive exploitation of the Characters in all forms, including toys, books, video games, apparel, and all other kinds of merchandise conceivable.  Piranha asks this Court to conclude that Big West has simply slept on its rights for 34 years, notwithstanding its pursuit of a ten-year lawsuit in Japan relating to the same property, and notwithstanding a purportedly dispositive court decision in 2002.  This assertion belies not only the actual history of the parties, but common sense. Moreover, by asking this Court to adjudicate the issue in the first instance, Piranha seeks to deprive Harmony Gold of equitable defenses it could assert against any challenge by Big West.

### D. Piranha May Not Challenge Rights The Parties Do Not Dispute.

Critically, the actual parties to the 1982 Agreement have agreed that Tatsunoko is the permanent, exclusive licensor of the rights to the Characters outside Japan.  Noguchi Decl. ¶¶ 4, 9; Bina Decl. Ex. D ████████████████████████████████████████████ ████████████████████████████████████████  The evidence shows that Big West and Tatsunoko have also agreed that Harmony Gold is the exclusive licensee of those rights.  Big West recognized Harmony Gold's status as licensee ████████████████ and in requesting Harmony Gold to pursue an infringement action on its behalf in 2014.  *Id.;* Duran Decl. Ex. K.  Tatsunoko has further affirmed that it granted Harmony Gold an exclusive license to reproduce, distribute, display, license, and merchandize the Characters, and that Harmony Gold's exclusive license remains valid and enforceable today.  Noguchi Decl. ¶¶ 5-6.

As a non-party infringer, Piranha cannot challenge Harmony Gold's standing because the

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 20

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

purported true rights holders have not challenged Harmony Gold themselves.  *Magnuson*, 85 F. 3d at 1429.  In *Magnuson*, the alleged infringing defendant challenged the plaintiff's standing on the basis that the original copyright holder did not validly transfer its rights to the plaintiff.  *Id*. The parties to the transfer, however, did not dispute its validity.  *Id*. at 1429 n.1.  The Ninth Circuit rejected the defendant's argument, and held that because there was no dispute between the transferor and transferee concerning which party held the copyright, the defendant could not challenge the plaintiff's standing.  *Id*.; *see also Fleming v. Miles*, 181 F. Supp. 2d 1143, 1158 (D. Or. 2001) (the *Magnuson* "court was essentially saying that a stranger lacks standing to assert A's alleged rights against B when A declines to assert them himself").[10]

Here, without citing any Japanese law, Piranha seeks a ruling from the Court that the three Japanese parties to the 1982 Agreement have all misinterpreted <u>their own</u> Japanese agreement, and that Piranha—an infringing third party—has somehow deciphered the correct interpretation.  *Kent 160 LLC v. City of Auburn,* No. C09-1670, 2010 WL 1691870, at *2 (W.D. Wash. Apr. 26, 2010) ("The goal of contract interpretation is to ascertain the intent of the parties.").  Worse, Piranha asks the Court to make this finding <u>as a matter of law</u>, without considering evidence of the parties' own interpretation of the 1982 Agreement or their conduct over the past 34 years.  Piranha's extraordinary request cannot withstand the cascade of evidence proving that Harmony Gold has standing in this action, or the settled law that precludes Piranha from challenging Harmony Gold's standing.

E. **Neither The 2002 Japanese Decision Nor The 2017 Arbitration Award Eliminated Harmony Gold's Exclusive Rights To The Characters.**

Recognizing, perhaps, the extraordinary nature of its request that the Court construe a

---

[10] Other Circuits have adopted the same rule.  *See also, e.g., Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995) (where there is no dispute between the copyright owner and transferee about the status of the copyright, a third-party infringer may not challenge the transfer to avoid suit); *Barefoot Architect v. Bunge*, 632 F.3d 822, 829 (3rd Cir. 2011) (same); *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003) (same).

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 21

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

third-party, foreign-language contract against the way the parties to that contract have construed it, Piranha asserts this issue has already been decided by the 2002 Japanese Decision and the 2017 Arbitration Award.  In actuality, neither decision addresses the rights Harmony Gold seeks to enforce in this action.

As discussed above, the 2002 Japanese Decision addressed only ownership of the Japanese copyright in the Characters; it did not determine the scope of Tatsunoko's international contract-based rights, which exist independently of the parties' various copyrights.  Critically, the granting of those rights to Tatsunoko was wholly independent of the Japanese copyrights.  *See supra* at 7-8.  Indeed, far from truncating Tatsunoko's international rights as claimed by Piranha, the 2002 Japanese Decision recognized that international Character commercialization and merchandising rights belonged to Tatsunoko.  Bina Decl. Ex. A.

As for the 2017 arbitration, it, too, simply did not address this issue.  Piranha argues that the "U.S. arbitrator ruled that Harmony Gold's license excludes 'the visual depiction of the original 41 animated graphic characters from the underlying Program [*Macross*].'"  Mot. at 19 & 22.  Piranha quotes this language twice, each time deceptively omitting two crucial words at the end of the sentence.  The unabbreviated Arbitration Award excerpt reads:

> The 2003-A [2003 Amendment] is valid and binding on [Tatsunoko], and [Harmony Gold] has been granted therein all of [Tatsunoko's] copyright rights in *Macross* except for the visual depiction of the original 41 animated graphic characters from the underlying Program, pursuant thereto.

Dkt. 88-4 at 18 (emphasis added).  In other words, what the Arbitration Award actually says is that Harmony Gold received all of Tatsunoko's copyright rights in *Macross*, except for those rights explicitly excluded in the 2003 Amendment.  As detailed above, and as Piranha concedes, the 2003 Amendment addresses only Harmony Gold's right to make derivative works incorporating the Characters' images; it does not truncate Harmony Gold's other rights.

The Arbitrator was more precise in his analysis, where he acknowledged that, "pursuant

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 22

LAW OFFICES
**CALFO EAKES & OSTROVSKY** PLLC
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

to the 2003-A, [Tatsunoko] granted to [Harmony Gold] all its remaining rights in *Macross*, including derivative and sequel rights <u>but naturally excluding any right to create derivative works</u> using the 41 original characters from *Macross* program which now belonged to Big West." Dkt. 88-4 at 10 (emphasis added).  The Arbitration Award in no way impacted Harmony Gold's <u>non-derivative</u> rights to the Characters—to exploit, reproduce, display, distribute, and merchandize the Characters—rights that both Tatsunoko and Big West acknowledge Harmony Gold possesses.  Duran Decl. Ex. G; Noguchi Decl. ¶¶ 5, 6; Bina Decl. Ex. D.

### F.      The Arbitration Award Has No Preclusive Effect.

Regardless, the Arbitration Award has no preclusive effect in favor of Piranha, a non-party to the arbitration.  The preclusive effect of a federal diversity judgment is determined by applying the collateral estoppel rules of the state in which the earlier court sits.  *See Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008); *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th Cir. 2009) (same); *see also In re JPMorgan Chase Derivative Litig.*, No. 2:13-cv-02414, 2017 WL 2833402, at *6 (E.D. Cal. June 30, 2017).  Here, Harmony Gold's arbitration proceeding was governed by California law, *see* Bina Decl. Ex. C.  Under California law, a "private Arbitration Award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed, in the particular case, that such a consequence should apply." *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 834 (Cal. 1999).  Piranha was not a party to the arbitration, nor did the parties agree to any third-party preclusive effect.  Bina Decl. ¶¶ 4, 5.  Piranha's preclusion argument fails on this basis as well.[11]

Moreover, even if issue preclusion were to apply (it cannot, as a matter of law), Piranha has wholly failed to meet its burden to "introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." *Clark v. Bear Stearns &*

---

[11] In Piranha's initial reply, it relied on *MedChoice Risk Retention Grp. v. Katz*, C7-287-TSZ, 2017 U.S. Dist. LEXIS 145958 (W.D. Wash. Sept. 8, 2017) (J. Zilly).  Dkt 72.  In *MedChoice*, however, this Court found that <u>state</u> law applies to determine an arbitration award's preclusive effect.  *Id*. at *26-27.

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 23

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1   *Co.*, 966 F.2d 1318, 1321-23 (9th Cir. 1992).  Piranha has not submitted the pleadings, briefs, or

2   testimony giving rise to the Arbitration Award, nor does the Arbitration Award itself contain

3   formal findings of fact or conclusions of law.  Instead, Piranha attempts to contort the language

4   of the Arbitration Award to adjudicate an issue that was never in dispute.  This is an

5   impermissible expansion of the doctrine of issue preclusion and must be rejected.

6         **G.**　　**In The Alternative, The Motion Should Be Denied Pursuant To Rule 56(D).**

7         As the foregoing demonstrates, there is ample evidence from which a trier of fact could

8   and likely will conclude that Harmony Gold is the lawful holder of the exclusive rights to

9   exploit, reproduce, display, distribute, and merchandize the Characters, and thus has standing to

10  bring this case.  Were the Court to believe otherwise, however, it would be necessary and

11  appropriate to allow Harmony Gold to seek discovery relevant to this issue from Tatsunoko, Big

12  West, and Studio Nue, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.  Harmony

13  Gold understands and believes that such discovery will demonstrate Big West and Studio Nue's

14  repeated acknowledgement of Tatsunoko's exclusive rights and Harmony Gold's exclusive

15  license through both words and conduct.  To that end, Harmony Gold has sought the Court's

16  permission to send letters rogatory to uncover additional evidence of the relevant parties' accord.

17  Deciding the issue of copyright ownership against Harmony Gold at this early stage of the case,

18  without permitting Harmony Gold the opportunity to present documents that support its claims,

19  would be premature and prejudicial. [12]  *See, e.g.*, *Commer. Cleaning Servs. v. Colin Serv. Sys.*,

20  271 F.3d 374, 386 (2d Cir. 2001); *Atigeo LLC v. Offshore Ltd. D*, No. C13-1694, 2014 U.S. Dist.

21  LEXIS 53206, at *12-13 (W.D. Wash. Apr. 16, 2014).

22  **V.**　　**CONCLUSION.**

23        For the foregoing reasons, Harmony Gold respectfully requests that the Court deny

24  Piranha's motion.

25

---

[12] The discovery cutoff in this case is months away, and formal discovery has barely begun.  Bina Decl. ¶ 9

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 24

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1

DATED:  April 9, 2018          CALFO EAKES & OSTROVSKY PLLC

2

3          By  s/ Andrew R.W. Hughes
            Damon C. Elder, WSBA #46754
4            Andrew R.W. Hughes, WSBA #49515
            1301 Second Avenue, Suite 2800
5            Seattle, WA  98101
            Phone:  (206) 407-2200
6            Fax:  (206) 407-2224
            Email:  damone@calfoeakes.com
7                      andrewh@calfoeakes.com

8          LATHAM & WATKINS LLP

9

10          By:  s/ Jessica Stebbins Bina
            Jessica Stebbins Bina
11            10250 Constellation Blvd., Suite 1100
            Los Angeles, CA  90067
12            Telephone: (424) 653-5525
            Facsimile: (424) 653-5501
13            Email:  jessica.stebbinsbina@lw.com

14          *Attorneys for Plaintiff Harmony Gold U.S.A., Inc.*

15

16

17

18

19

20

21

22

23

24

25

PLTF HARMONY GOLD'S OPPOSITION TO
DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT (Case No. 2:17-cv-00327-TSZ) - 25

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1

2

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the CM/ECF participants.

DATED this 9th day of April, 2018.


*s/ Mary J. Klemz*
Mary J. Klemz

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224