THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARMONY GOLD U.S.A., INC., <br><br> Plaintiff, <br><br> v. <br><br> HAREBRAINED SCHEMES LLC, HAREBRAINED HOLDINGS, INC., JORDAN WEISMAN, PIRANHA GAMES INC., INMEDIARES PRODUCTIONS, LLC, and DOES 1–10 <br> Defendants. | CASE NO.  2:17-cv-00327-TSZ <br><br> **DECLARATION OF CHRISTY DURAN IN SUPPORT OF HARMONY GOLD U.S.A., INC.'S OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT** <br><br> **NOTE ON MOTION CALENDAR: APRIL 13, 2018** <br><br> **ORAL ARGUMENT REQUESTED** |

I, Christy Duran, declare as follows:

    1.    I am an attorney currently employed as in-house counsel at Harmony Gold, U.S.A., Inc. ("Harmony Gold").  I am a member in good standing with the State Bar of California, and I am admitted to practice law in the State of California.  I am over eighteen years of age, and am competent to testify herein.  I make this declaration in support of Harmony Gold's opposition to defendants' motion for summary judgment.  The facts set forth below are based on my personal knowledge, including knowledge gained through my review of and familiarity with files and documents in this matter and in my role as in-house counsel at

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 1

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1  Harmony Gold, in which I regularly rely on and interact with Harmony Gold's legal documents.

2  If called as a witness, I could and would competently and truthfully testify to these matters.

3        2.      I have worked at Harmony Gold since 1997, when I started as an assistant in the legal department. My title at the time was Manager of Business and Legal Affairs. I worked at Harmony Gold until 2001, when I began law school. In 2004, upon graduating from law school, I returned to work at Harmony Gold in the legal department, and eventually became head in-house counsel in 2006. My current title at Harmony Gold is Vice President of Business and Legal Affairs. As part of my job duties, I have become familiar with Harmony Gold's history and relationship with its licensor, Japan-based Tatsunoko Production Co. Ltd. ("Tatsunoko"). In my role as in-house counsel, I have gained extensive knowledge regarding Harmony Gold's long history with Tatsunoko, including the parties' license agreements and various amendments relating to "Macross" and related programs. I have also been personally involved in negotiations with Tatsunoko. For example, in 2008, I negotiated the most recent amendment to the parties' license agreement. Over the years, I have utilized the various agreements between the parties to enforce Harmony Gold's rights, including through cease-and-desist letters and filing legal actions against infringing parties. I have also reviewed and am familiar with Harmony Gold's enforcement actions prior to joining the company and during the period when I was in law school.

### Harmony Gold's Copyright and Exclusive License Agreements and Amendments and the Big West/Tatsunoko Dispute

      3.      It is my understanding that in or around 1982, three Japanese companies—Big West, Inc. ("Big West"), Studio Nue Co. ("Studio Nue"), and Tatsunoko, created an animated series, "Macross," that ran on Japanese television in the early 1980s. It is my understanding that, by agreement, in 1982, the parties determined the rights to "Macross," both in Japan and internationally. Pursuant to this agreement, the international rights to the series, including all

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 2

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

exploitation and merchandizing rights in and to the warrior robots depicted in "Macross" (the "Characters"), were granted to Tatsunoko. It is my understanding that Tatsunoko has always had the international rights to exploit the Characters, and retains those rights today. Attached hereto as **Exhibit A** is a true and correct copy of a certified English-language translation and the original Japanese-language Memorandum of Understanding ("MOU") between Tatsunoko, Big West, and Studio Nue, dated October 1, 1982, and an amendment of the same, dated December 1, 1984. The Japanese-language version of the MOU was provided by Tatsunoko to Harmony Gold in or around 1999 and has been maintained in Harmony Gold's legal files since that date.

4. It is my understanding that pursuant to Tatsunoko's international rights to "Macross," Tatsunoko and Harmony Gold entered into an exclusive license agreement in 1984 (the "1984 Agreement"). Under the 1984 Agreement, Tatsunoko granted Harmony Gold the rights in three animated series, "Macross," "Mospeada," and "The Southern Cross," in the United States and other territories. This license granted Harmony Gold the right to not only exploit the "Macross" television series, but also granted, *inter alia*, express rights to "reproduce," "distribute," "display," "exercise merchandising rights," and "prepare derivative works based on" the series' "characters," "animation," "artwork," and "all other components." Under the 1984 Agreement, Tatsunoko granted Harmony Gold a joint copyright interest and exclusive international license in and to the three animated works. Tatsunoko also warranted that the rights granted thereunder to Harmony Gold "do not and will not infringe upon the rights of any third party." Attached hereto as **Exhibit B** is a true and correct copy of the September 11, 1984 Agreement between Tatsunoko and Harmony Gold, with portions highlighted.

5. The 1984 Agreement both authorized and obligated Harmony Gold to register appropriate copyrights to the granted works, and to "take necessary legal measures to protect [its] copyrights from infringement or copying by any third party[.]" Accordingly, in 1985, Harmony Gold obtained a copyright registration in "Macross" from the United States Copyright

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 3

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Office. The Certificate of Copyright Registration lists Harmony Gold as the copyright claimant along with Tatsunoko, and it expressly includes the "animation, story, soundtrack" of the work. Attached hereto as **Exhibit C** is a true and correct copy of Harmony Gold's March 28, 1985 Certificate of Copyright Registration for "Macross" (PAu 740,323), with portions highlighted.

6. It is my understanding that Harmony Gold and Tatsunoko renewed the 1984 Agreement in 1991 (the "1991 Agreement"), which extended Harmony Gold's exclusive license through March 14, 2001. The 1991 Agreement used identical language as in the 1984 Agreement regarding the broad grant of rights and regarding Tatsunoko's representations and warranties as to its authority to grant those rights. Attached hereto as **Exhibit D** is a true and correct copy of the March 15, 1991 Agreement between Harmony Gold and Tatsunoko, with portions highlighted.

7. It is my understanding that, beginning in the late 1990s, Big West and Studio Nue began disputing Tatsunoko's rights in "Macross" in Japan, and in the early 2000s, Tatsunoko and Big West/Studio Nue were involved in several Japanese litigations in order to determine—as between these three parties—who owned what rights in and to "Macross" in Japan. To my knowledge, Tatsunoko's license of the international "Macross" rights to Harmony Gold was not challenged in these disputes.

8. In order to insulate Harmony Gold from the Japanese litigation, Harmony Gold and Tatsunoko amended the 1991 Agreement in 1999—although it is dated as of August 6, 1998, limiting Harmony Gold's rights to make sequels of the three underlying programs (the "1998 Amendment"). The 1998 Amendment expressly affirmed all of Harmony Gold's other rights in and to the programs as stated in the 1991 Agreement. The 1998 Amendment also extended Harmony Gold's exclusive license through March 14, 2011. Attached hereto as **Exhibit E** is a true and correct copy of the August 6, 1998 Amendment to the 1991 Agreement between Harmony Gold and Tatsunoko.

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200 FAX (206) 407-2224

9. In 2002, through another amendment, Tatsunoko returned the right to make sequels to two of the three underlying programs, but not "Macross," as it was still being litigated (the "2002 Amendment"). The 2002 Amendment also extended the term of Harmony Gold's exclusive license agreement through March 14, 2021. Attached hereto as **Exhibit F** is a true and correct copy of the June 28, 2002 Amendment to the 1991 Agreement between Harmony Gold and Tatsunoko.

10. It is my understanding that, in fall 2005, Harmony Gold and Tatsunoko began discussing a further amendment to restore Harmony Gold's rights to make sequels to "Macross" in the hopes of Harmony Gold ultimately making a live-action "Robotech" film based on all three properties. As the Tatsunoko/Big West litigation was still underway, the ultimate scope of Tatsunoko's "Macross" rights was still unclear. Accordingly, Harmony Gold and Tatsunoko structured the amendment in the form of a quitclaim: Tatsunoko granted Harmony Gold all rights it held in "Macross." However, to address the one right Tatsunoko definitively did *not* have as a result of the Japanese litigation—the right to make new derivative films including the animated Characters' images—the amendment included a limited carve-out: "Licensor is not granting Licensee any rights to create derivative works using the original 41 characters as contained in the Series." Thus, Tatsunoko returned Harmony Gold's right to make sequels to "Macross," so long as Harmony Gold did not use the original animated images of the Characters. Though executed in or around June 2006, the amendment was dated as of January 20, 2003, to coincide with the date of the 2003 Japanese Decision awarding copyright in the "Macross" series to Tatsunoko (the "2003 Amendment"). Attached hereto as **Exhibit G** is a true and correct copy of the January 20, 2003 Amendment to the 1991 Agreement between Harmony Gold and Tatsunoko.

11. In 2008, Tatsunoko again affirmed to Harmony Gold, in a written amendment to the 1991 Agreement, that the terms and the rights granted therein "remain in full force and

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 5

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

effect" (the "2008 Amendment"). I was involved in the negotiations of the 2008 Amendment with Tatsunoko. Attached hereto as **Exhibit H** is a true and correct copy of the March 20, 2008 Amendment to the 1991 Agreement between Harmony Gold and Tatsunoko.

12. It is my understanding that during the time period where Tatsunoko and Big West were disputing the rights to "Macross"—*i.e.*, between 1998 and the late 2000s—Big West made sporadic indirect challenges to Harmony Gold's exercise of its exclusive rights in the United States by purporting to license "Macross" rights outside Japan to third parties. For example, at one point Big West purported to license international video game rights to Bandai America, Inc., a toy company. Relying on its own copyrights and trademarks, as well as its own valid license with Tatsunoko, Harmony Gold repeatedly shut down such efforts, either through cease and desist letters or through the courts. Harmony Gold was able to stop every attempt by Big West licensees to market merchandise based on the characters outside of Japan. Attached hereto as **Exhibit I** is a true and correct copy of a July 30, 1999 cease-and-desist letter sent to Bandai America, Inc.

13. According to defendants' moving papers, Big West, in or around 2002, submitted drawings of the Characters to the United States Copyright office, under the name "Kabushiki Kaisha Studio Nue & Kabushiki Kaisha Big West." I was not aware of this registration, which post-dated creation of the Characters by more than 20 years, until defendants brought it to Harmony Gold's attention this year. To the best of my knowledge, neither Big West nor Studio Nue has ever attempted to exploit this copyright or take any action in the United States based upon the copyright registration. Further, it is my understanding that since at least the mid-2000s, Big West has made no further attempts to license any international "Macross" rights to third parties.

14. Big West's actions since at least 2007 are consistent with the 1982 MOU, by which Tatsunoko was given exclusive control of the international rights for the underlying

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 6

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Japanese copyrights owned by both Tatsunoko and Big West. For example, in 2007 counsel for Tatsunoko sent me an email, on behalf of Big West, asking if Harmony Gold would give Big West permission to distribute derivative works of Macross outside of Japan. Counsel for Tatsunoko stated that "it would be necessary to seek Harmony Gold's approval in order [for Big West] to distribute such derivative programs in North America." Attached hereto as **Exhibit J** is a true and correct copy of this email from Hayashi Motoki to myself.

15. Since this 2007 email, Tatsunoko's attorney has made other statements to me affirming that both Tatsunoko and Big West view Harmony Gold as the exclusive international licensee of the Characters with respect to all rights other than those related to derivative works. For example, in 2014 Tatsunoko asked Harmony Gold to take action to protect both Tatsunoko and Big West against an infringing work that included the Characters. In an email dated January 17, 2014, from Tatsunoko's then-counsel, Brian Murphy, to Harmony Gold, Mr. Murphy wrote:

> The CEO of Big West has once again contacted Tatsunoko senior management to insist that Tatsunoko demand that Harmony Gold take immediate action with respect to the [infringing work] . . . What is now clear from the producer's own Facebook page posts is that they have now produced and made available . . . under the 'Robotech Valkyrie Project' moniker, two live-action 'episodes' . . . [including] an actual, fully operational mock-up version of the [one of the Characters].

Mr. Murphy further explained that "Harmony Gold filed a lawsuit against Hasbro over Hasbro's purported infringement of the very same VF-1 Valkyrie character design [and] Big West is demanding that Harmony Gold take the very same aggressive rights infringement enforcement approach against this Argentinean live-action series." Attached hereto as **Exhibit K** is a true and correct copy of the January 17, 2014 email between Mr. Murphy and myself.

### Harmony Gold's Exploitation of the "Macross" Characters

16. Since 1985, Harmony Gold has exclusively exploited the Characters in toys, games, books, comic books, video games, apparel, and all other kinds of merchandise, as well as in movies and television. These include, without limitation: figurines of the various Characters

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 7

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

released by Matchbox in 1985; various figurines of the Characters created by Toynami; Robotech: Battlecry for PlayStation / Xbox / Nintendo, the video game and an accompanying strategy guide; comic books created by Titan; Robotech RPG Tactics by Palladium Books; Robotech Art I (a book providing plot summarizes of the series and profiles of the Characters); and an upcoming book titled Robotech Visual Archive: The Macross Sage (which includes pictures of the Characters). Attached hereto as **Exhibit L** is a true and correct copy of images of the toys, games, comic books, and books described above. Since 2008, Harmony Gold has continued to exploit the Characters, including by licensing them in merchandise such as books, video games, and toys, with no interference from Big West.

17. Harmony Gold also incorporated the "Macross" animation, including the Characters, into a television series, "Robotech," which aired in 1985, and which Harmony Gold has exploited exclusively in all media for thirty-two years.

### Harmony Gold's Enforcement of Its Rights in "Macross"

18. Harmony Gold has vigorously enforced its rights in and to the Characters over the past 30 years, and has never granted an exclusive license of any of its rights in the Characters to any other person or entity. Harmony Gold has prevented toy companies from developing and importing toys of the Characters, sent dozens of cease-and-desist letters for infringing uses of the Characters, and brought suits against copyright infringers.

19. In 1995, Harmony Gold filed a lawsuit for copyright infringement against FASA Corporation ("FASA"), which was owned by Jordan Weisman, a defendant in the instant case, and Virtual World Entertainment. The robot warrior designs presented in FASA's "BattleTech" virtual reality computer games, role playing games, and merchandise infringed on Harmony Gold's rights in the Macross designs. This prior litigation concluded with a settlement agreement, in which defendants agreed that they would not "make any use, and will not authorize [their] licensees to make any use, of the visual design images" of the infringing

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 8

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

characters. Attached hereto as **Exhibit M** is a true and correct copy of a June 13, 1996 order in the action entitled *Harmony Gold U.S.A., Inc. v. FASA Corp. et al.*, 95-cv-2972, 1996 WL 332689 (N.D. Ill. June 13, 1996), holding that "Harmony Gold and Tatsunoko are joint owners of the copyrights to the Macross designs in the United States."

20. In its enforcement efforts, Harmony Gold has been consistent in explaining that its rights to exploit the Characters arose from the 1982 MOU, and were not affected by the 2002 Japanese court decision cited by defendants. For example, on June 11, 2002 (after the 2002 Japanese Decision regarding ownership of the Japanese copyright in the Characters), Harmony Gold sent a letter to another infringer, Sunwards Ltd., explaining:

> We wish to advise you that Harmony Gold controls distribution rights to Macross in the Harmony Gold Territory and that the [2002] Tokyo District Court ruling does not in any way affect Harmony Gold's rights. Harmony Gold's rights flow from an agreement executed by Big West, Studio Nue, and Tatsunoko. Pursuant to this agreement, it was concluded that exploitation rights to Macross outside of Japan would be controlled by Tatsunoko in perpetuity. Tatsunoko, in turn, granted such exploitation rights to Harmony Gold, which has been exercising and enforcing such rights outside of Japan since 1984.

Attached hereto as **Exhibit N** is a true and correct copy of the June 11, 2002 letter from Harmony Gold to Sunwards Ltd. When Sunwards Ltd. failed to stop its infringing conduct, Harmony Gold was forced to file a lawsuit for copyright infringement in the action, entitled *Harmony Gold U.S.A., Inc. v. Sunwards Ltd.*, 2:02-cv-07187 (C.D. Cal. 2002). Attached hereto as **Exhibit O** is a true and correct copy of the complaint filed against Sunwards Ltd. In that complaint, Harmony Gold specifically explained that its rights were licensed from Tatsunoko, who in turn acquired them pursuant to the 1982 MOU by and among Tatsunoko, Big West, and Studio Nue. Attached hereto as **Exhibit P** is a true and correct copy of a December 10, 2002 order by the district court in the action against Sunwards Ltd. holding that "Harmony Gold has presented prima facie evidence of ownership" of "Macross."

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 9

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

21. In 2013, Harmony Gold filed a lawsuit for copyright infringement against Hasbro, Inc. in the action entitled *Harmony Gold U.S.A., Inc. v. Hasbro, Inc.*, 2:13-cv-5269 (C.D. Cal. 2013), based on Hasbro's infringement of the Characters in its toy lines. Attached hereto as **Exhibit Q** is a true and correct copy of the complaint filed against Hasbro, Inc.

### The Tatsunoko/Harmony Gold Arbitration

22. In 2016, Harmony Gold and Tatsunoko became involved in a dispute regarding Harmony Gold's payment of royalties to Tatsunoko and Harmony Gold's right to make a live-action derivative motion picture based on "Macross." In the arbitration, Tatsunoko asserted that the 2003 Amendment was not valid or binding on Tatsunoko, and as a result, Harmony Gold had no right to make a derivative work (of any kind, involving the Characters' images or not) based on "Macross." Tatsunoko argued, in the alternative, that the restriction regarding the Characters in the 2003 Amendment included the Characters' names and storyline, and not just their visual depiction.

23. Harmony Gold responded by asserting that the 2003 Amendment *was* valid and binding, and that the *sole* restriction it imposed on Harmony Gold's licensed rights was that Harmony Gold did not have the right to make derivative works using the Characters' images (their "visual depiction"), and that the reason for this restriction was the outcome of the Big West litigation. The arbitrator agreed with Harmony Gold's position, and concluded that Harmony Gold's rights included "all [Tatsunoko's] remaining rights in *Macross*, including derivative and sequel rights but naturally excluding any right to create derivative works using the 41 original character[s] from *Macross* program which now belonged to Big West."

24. Tatsunoko's claim regarding the Characters in arbitration addressed solely Harmony Gold's right to make derivative motion pictures. Tatsunoko did not dispute Harmony Gold's other rights with respect to the Characters—for instance, its rights to reproduce them, exploit them, and merchandize them. To the contrary, Tatsunoko sought damages based on

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 10

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

purported failures by Harmony Gold to properly pay royalties on such merchandise incorporating the Characters.

**Communications With Piranha**

25.  In 2011, Russ Bullock, the President of Piranha Games Inc. ("Piranha") sent me an email to discuss licensing the rights to the Characters in Macross and Robotech. Bullock sought a license to use the Characters in Battletech works. Bullock explained that he was "aware of the settlement between Battletech IP holders and Harmony Gold from many years past" and explained that he and Piranha games planned to "abide by the terms of this settlement." I responded that Harmony Gold was unable to grant Piranha such a license. Mr. Bullock continued to email me several more times over the next year, each time requesting a license to use Harmony Gold's Character designs. I continuously told him that Harmony Gold was not willing to grant Piranha a license to the Characters. Throughout these emails, Bullock repeatedly acknowledged Harmony Gold's ownership of the Characters in Robotech and Macross. For example, in a January 11, 2013 email, Mr. Bullock states "HG owns the likeness [of the Characters]," "the likeness belongs to HG," and that Battletech redesigned robots so as "not to infringe on HG's rights." Attached hereto as **Exhibit R** is a true and correct copy of my email exchanges with Bullock, spanning from December 2011 to January 2013.

26.  After Harmony Gold made clear that it was unwilling to provide Piranha a license, Mr. Bullock submitted several proposed designs to Harmony Gold to get an opinion on whether Harmony Gold viewed the warrior robots as infringing. In response to each proposal, Harmony Gold informed Mr. Bullock that the designs infringed Harmony Gold's Robotech copyrights. However, in July 2016, Harmony Gold discovered that Piranha was using these infringing characters.

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 11

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed this 9th day of April, 2018, at Panama City Beach, Florida.

By: _____
Christy Duran

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants.

DATED this 9th day of April, 2018.

                                              *s/ Mary J. Klemz*
                                               Mary J. Klemz

DECL. OF C. DURAN IN OPPOSITION TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (Case No. 2:17-cv-00327-TSZ) **-** 13

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224