# EXHIBIT D

# AGREEMENT



HG00000102

A G R E E M E N T

THIS AGREEMENT is entered into this 15th day of March, 1991 by and between

        TATSUNOKO PRODUCTION CO., LTD.
        3-22-12, Minami-cho, Kokubunji-shi,
        Tokyo, Japan

(hereinafter referred to as the Licensor)

        - and -

        HARMONY GOLD, USA.
        7655 Sunset Boulevard
        Los Angeles, CA 90046-2700
        U.S.A.

(hereinafter referred to as the Licensee)

WHEREBY IT IS AGREED as follows:

The Licensor hereby grants exclusively and irrevocably to the Licensee the rights to exploit the animated television programs described below produced and owned by the Licensor on the terms and conditions set out below, which rights include, but are not limited to, television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications.

    PROGRAMS & PARTICULARS

        MACROSS: 1/2 hour X 36 episodes

        MOSPEADA: 1/2 hour X 25 episodes

        THE SOUTHERN CROSS: 1/2 hour X 23 episodes

                TOTAL: 84 episodes

1. TERRITORIES

    Worldwide territories excluding Japan and all other Asian territories.

2. PERIOD OF LICENSE

    The initial period of license is ten (10) years from the date hereof and the license period shall be renewable at the end of every ten years on the terms and conditions mutually agreed upon. At the Licensee's request, the Licensor shall negotiate with the Licensee reasonably and in good faith so that the Licensor shall grant to the Licensee further ten (10) year license period hereunder. If, for any reason, the Licensor and the Licensee shall not agree upon such terms and conditions,

the Licensor shall not license any of the rights licensed to the Licensee hereunder to any other party, or exploit those rights itself, without first providing to the Licensee the exclusive right for thirty (30) days to match terms and conditions that the Licensor is prepared to accept from another party or upon which the Licensor will exploit such right itself. The Licensee shall be required to accept only financial terms and conditions that may be satisfied as easily by one person as by another. The Licensor shall send to the Licensee a written notice of each of such terms and conditions.

3. LICENSE FEE

License fee for TV and other visual rights: US$3,000.00 per episode.

   Total: US$3,000 X 84 episodes = US$252,000.00

Minimum guarantee for merchandising royalty = US$50,000.00

4. MANNER OF PAYMENT

The total sum of US$302,000.00 (US$252,000 for visual rights and US$50,000 for minimum guarantee for merchandising) shall be paid in a lump-sum payment upon signing this Agreement.

5. COPYRIGHT

The Licensor, as the exclusive author and owner of all worldwide copyrights, moral rights and rights of publication in and to the underlying series, grants to the Licensee exploitation of the copyrights in accordance with provisions in this Agreement whereby the Licensee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, diffuse, display, market, edit, dub, translate, arrange musically, transform, dramatize and otherwise adapt and prepare derivative works based on, advertise, and otherwise dispose of and exploit the underlying series, and any and all versions, character, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof, using any methods or devices of exploitation with limitation as provided in A, B, C of Article 6 herein. The Licensor represents and warrants that the underlying series, and the rights granted to the Licensee, do not and will not infringe upon the rights of any theird party, and are and will be free of any right, claim or encumbrance of any third party. The Licensee is authorized to register the transfer of rights and licenses to the Licensee as set forth in this Agreement in any copyright, trademark or other appropriate register in Japan or elsewhere to protect the Licensee's rights and licenses under this Agreement. The Licensor and the Licensee shall be joint owners of copyrights in the underlying series for the territories licensed to the Licensee during the license period and shall take necessary legal measures to protect such copyrights from infringement or copying by any third party including registration of trademarks or copyright, and the use of copyright notices in the joint

names of the Licensor and the Licensee. All trademarks utilized by the Licensee in connection with the exercise of its rights under this Agreement, other than the existing titles of the underlying series, shall belong jointly to the Licensor and the Licensee and utilization of such trademarks shall be automatically renewed at the termination of this Agreement for a reasonable length of period mutually agreed upon unless such termination is due to default on the part of the Licensee. With respect to any new materials created by the Licensee, copyright and all other rights in such materials shall also belong jointly to the Licensor and the Licensee.

6. MERCHANDISING RIGHTS

The Licensee is the lawful and authorized representative to exercise merchandising rights related to the underlying series in the licensed territories specified in Article 1 herein except for such items and articles as set forth below.

   A. With regard to MACROSS series, die-cast toys and other toys manufactured in Japan by Takatoku Toys and plastic model kits made by Imai Chemical Co. for domestic and overseas markets shall be excluded.

   B. With regard to MOSPEADA series, die-cast toys and other toys manufactured in Japan by Gakken Co. and plastic model kits made by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

   C. With regard to THE SOUTHERN CROSS series, plastic model kits manufactured in the past by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

The Licensor shall not engage in or authorize, except as allowed in A, B and C above, any merchandising exploitation related to the underlying series in any of the territories licensed to the Licensee hereunder at any time during the license period.

7. COMPENSATION FOR MERCHANDISING

   A. In connection with exercise by the Licensee of merchandising rights granted hereunder, as distinguished from any other rights granted hereunder, the Licensee shall pay to the Licensor twenty-five (25) percent of net revenue after deduction of ten (10) percent of merchandising expenses from the total proceeds actually received by the Licensee in case sales are made directly by the Licensee whereas the Licensee shall pay to the Licensor twenty-five (25) percent of net revenue without deduction of merchandising expenses provided that sales are made through third parties. Further, it is agreed by the parties hereto that the minimum guarantee of US50,000 paid the Licensor as specified in Article 3 shall constitute part of the Licensor's share of merchandising royalty.

   B. The Licensee shall not be beneficiary of revenues accrued by sales of articles licensed in the past by the Licensor to and produced by Takatoku Toys, Gakken Co., Imai Chemical Co., and Arii Works regardless of whether or not such sales are made inside or outside of Japan.

C. With regard to such articles produced in Japan as not included in the Licensee's schedule of merchandising exploitation, the Licensor may export them individually to markets in the licensed territories hereunder with prior consent of the Licensee who shall have option priority on such articles. In case the Licensor exports such articles in compliance with the aforesaid provision, the Licensee shall not be benificiary of revenues accrued by such exportation.

D. The Licensee shall pay the Licensor's share of merchandising revenue to the Licensor on a semiannual basis, for the period of January 1 through June 30 and July 1 through December 31 of each year. Such payment shall be made within forty-five (45) days after the end of each applicable period, and the Licensee shall make monthly business reports available to the Licensor during the license period.

E. The initial term of merchandising agreement is ten (10) years from the date hereof as provided in Article 2 herein.

8. SPECIAL PROVISIONS

A. The Licensor is entitled to make an audit each twelve (12) months after providing the Licensee with advance written notice requesting audit.

B. If the Licensee fails to perform its obligations hereunder, the Licensor is entitled to terminate this Agreement in its entirety or partially merchandising exploitation provisions only without prejudice to any of its rights against the Licensee. Such termination shall be made only after the Licensee's receipt of written notice stating in detail the Licensee's failure. However, the Licensee has the right to confirm and cure the failure within sixty (60) days after receipt of the written notice. Notwithstanding any termination, pre-existing licenses entered into by the Licensee shall not be disturbed in any way.

C. In case any dispute arises between the two parties hereto in connection with this Agreement, it shall be settled with the bona fide efforts on the part of each party. The parties hereto mutually agree that if no settlement is reached after exertion of such efforts, the dispute shall be submitted to the competent court in Tokyo, Japan, whose decision shall be final and binding upon both parties.

D. This Agreement is subject to force majeure.

9. REEDITION, ALTERATION, AND MODIFICATION

The Licensee is entitled to reedit, alter, or modify any and all the underlying series as the Licensee determines to conform with marketing requirements including addition of different language dialogue, new stories, new sound effects, new music, a new title or titles and credits to personnel utilized by the Licensee in connection with any such activity. However, such redition, alteration, or modification shall be done in a reasonable manner acceptable by the Licensor which does not detract from the under-

## ASSIGNMENT AND SUBLICENSE.

The Licensee shall have the right to assign, license, delegate, lend or otherwise transfer its rights, options or privileges granted hereunder in whole or in part to any third party, but in no case the Licensee shall transfer its obligations to the Licensor to any third party.

IN WITNESS WHEREOF, the parties hereto have signed hereunder to execute this Agreement on the date first above written.

TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD, ~~LTD.~~ USA

_____              _____

- 5 -