# EXHIBIT O

1  GAIMS, WEIL, WEST & EPSTEIN, LLP
   BARRY G. WEST (State Bar No. 55365)
2  MARC EPSTEIN (State Bar No. 61062)
   WALTER R. ZAGZEBSKI (State Bar No. 190568)
3  1875 Century Park East, Twelfth Floor
   Los Angeles, California 90067-2513
4  Telephone: (310) 407-4500
   Facsimile: (310) 277-2133
5

6  *Attorneys for Plaintiff*
7  *Harmony Gold-USA, Inc.*

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11

12  HARMONY GOLD-USA, INC., a          CASE NO.  02-7187
13  California corporation,
                                       COMPLAINT
14              Plaintiff,
                                       1. COPYRIGHT INFRINGEMENT
15
16       v.                            2. TRADEMARK INFRINGEMENT
                                          UNDER SECTION 43(a) OF
17                                        THE LANHAM ACT

18  SUNWARDS LTD., a Japanese          3. COMMON LAW TRADEMARK
    corporation; and DOES 1               INFRINGEMENT
19  through 50, inclusive,
                                       4. UNFAIR COMPETITION UNDER
20              Defendants.               CALIFORNIA STATUTORY LAW

21                                     5. COMMON LAW UNFAIR
22                                        COMPETITION

23                                     6. DECLARATORY RELIEF
24
                                       DEMAND FOR JURY TRIAL
25

26

27

28

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

FILED
SEP 13  4:06 PM '02
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
BY



ENTERED ON ICMS
SEP 1 7 2002
CV

```
09/13/2002 4:06:40 PM  Receipt #: 23081
        Cashier : ABELLANY (LA 1-1)
Paid by: GAIMS, WEIL, WEST, AND EPSTEIN,
 LLP
2:CV02-07187
2002-086900      5 - Filing Fee Civil(1)
Amount :                          $60.00
2:CV02-07187
2002-510000      11 - Special Fund F/F(1)
Amount :                          $90.00
Check Payment : 8280 /            150.00
Total Payment :                   150.00
```

Plaintiff Harmony Gold-USA, Inc., alleges claims against Defendant Sunwards Ltd. and Does 1 through 50 (collectively "Defendants") as follows:

## JURISDICTION AND VENUE

1.     This is an action for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.,* trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), related claims for trademark infringement and unfair competition under the laws of the State of California and the common law, and declaratory relief. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367.

2.     This Court has personal jurisdiction over defendant Sunwards Ltd. because said Defendant has committed tortious acts within the State, and/or has committed tortious acts outside California causing injury within the state and derives substantial revenue from interstate commerce.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

## THE PARTIES

4.   Plaintiff Harmony Gold-USA, Inc., is a California corporation having offices and a principal place of business at 7655 Sunset Boulevard, Los Angeles, California 90046. It is doing business within the jurisdiction of this Court. Harmony Gold, Ltd., a Hong Kong corporation, entered into some of the agreements referred to in this Complaint and assigned all of its rights in said agreements, with the exception of certain foreign television broadcast rights not relevant to this Complaint, to Harmony Gold-USA, Inc. In this Complaint, "Harmony Gold" is used to refer to Harmony Gold-USA, Inc. itself or as the assignee in place and stead of Harmony Gold, Ltd.

5.   Upon information and belief, Defendant Sunwards Ltd. is and was at all times relevant hereto a Japanese Corporation with its principal United States office located at 17980 Savarona Way, Carson, California 90446. It is doing business within the jurisdiction of this Court.

6.   The true names and capacities, whether individual, corporate or otherwise, of defendants named herein as Does 1 through 50 are presently unknown to Harmony Gold, who therefore sues said defendants by such fictitious names. Harmony Gold will seek to amend this complaint to allege the true names and capacities of said defendants when it

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

3

1    has ascertained such information. Harmony Gold is informed

2    and believes and on the basis of such information and

3    belief alleges that each defendant Doe 1 through 50 has

4    participated in some or all of the acts or conduct herein

5    alleged and is liable to Harmony Gold by reason thereof.

6

7                              **FACTS**

8

9        7.   This action involves an infringement of Harmony

10   Gold's rights - including the right to prepare derivative

11   works, such as toys and other merchandise - in and to an

12   animated television series that originated in Japan between

13   1982 and 1984. The subject television series (the "Series")

14   is entitled: *Macross,* Episodes 1-36, which was first

15   telecast in 1982-83. The Series featured futuristic

16   animation and "transforming" mechanical robot characters,

17   vehicles, and weaponry for extraterrestrial combat. By

18   agreement dated October 1, 1982, the three companies that

19   originally contributed to the creation of the Series in

20   Japan - K.K. Studio Nue, K.K. Big West, and Tatsunoko

21   Production Company, Ltd. ("Tatsunoko"), agreed that with

22   respect to the sale of the Series outside Japan, and all

23   merchandising rights outside Japan, Tatsunoko was entitled

24   to such sale and exploitation and was to be entitled to any

25   and all proceeds by exploitation of such rights.

26

27

28

                                 4

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

8.  By agreement dated September 11, 1984 (the "1984 Agreement"), Tatsunoko granted to Harmony Gold exclusively and irrevocably the rights to exploit the copyrights and trademarks in the Series in the United States and certain other countries, including but not limited to television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications, and to prepare derivative works based on, advertise, and otherwise dispose of and exploit, the Series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof. A true and correct copy of the 1984 Agreement is attached hereto as Exhibit A and incorporated herein by this reference. The initial term of the 1984 Agreement was seven years.

9.  After acquiring the rights to the Series from Tatsunoko in 1984, Harmony Gold marketed the Series to United States audiences under its original title, *Macross*. In addition, Harmony Gold combined the Series with two other animated programs and marketed them to United States audiences under the alternate title "*Robotech*."

10.  On March 28, 1985, Tatsunoko and Harmony Gold registered the Series for copyright with the U.S. Copyright Office.  A true and correct copy of the certificate of U.S.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

Copyright Registration, together with a supplementary certificate filed March 13, 2000 are attached hereto as Exhibit B.

11. On May 28, 1985, Harmony Gold recorded in the U.S. Copyright Office a Short Form Assignment dated May 15, 1985 made subject to and in confirmation of the exclusive and irrevocable rights granted to it in the 1984 Agreement. A true and correct copy of the certificate of recordation from the U.S. Copyright Office is attached hereto as Exhibit C. By so doing, Harmony Gold put all persons on constructive notice of its rights in and to the Series.

12. Since 1984, Harmony Gold has exercised and continues to exercise its valuable exclusive rights in and to the Series to engage in extensive production, distribution, and merchandising activities in interstate commerce throughout the United States and certain other territories throughout the world.

13. Since 1984, Harmony Gold has used and exploited, and continues to use and exploit, the trademark *Macross* in interstate commerce throughout the United States and certain other territories throughout the world, directly and indirectly through licensees, through among other things, television broadcasting; distribution of videos; manufacture and sale of merchandise, including comic books,

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

6

toys, novels, games, and apparel, and Harmony Gold has developed secondary meaning for the *Macross* trademark. The designs and images in Harmony Gold's *Macross* works comprise an inherently distinctive trademark and trade dress that distinguishes Harmony Gold's products from the products of others and serves as an indication of the source and origin.

14.   By agreement dated March 15, 1991 (the "1991 Agreement") Tatsunoko renewed the grant to Harmony Gold of the rights granted in the 1984 Agreement for an additional term of ten years, to include all worldwide territories excluding only Japan and all other Asian territories. A true and correct copy of the 1991 Agreement is attached hereto as Exhibit D and incorporated herein by this reference.

15.   On August 6, 1998, Tatsunoko and Harmony Gold entered into a contract called Amendment to Main Agreement which renewed the grant to Harmony Gold of the rights granted in the 1991 Agreement for a renewal term through and including March 14, 2011. A true and correct copy of the 1998 Amendment to Main Agreement is attached hereto as Exhibit E and incorporated herein by this reference.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6686

### FIRST CLAIM FOR RELIEF

### (Copyright Infringement Under 17 U.S.C. §§ 101 *et seq.* – Against All Defendants)

16.  Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 15 of this Complaint as though fully and completely set forth herein.

17.  Without Harmony Gold's authorization or consent, Defendants have produced and plan to offer for sale in the United States a line of children's toys which infringes the copyrights and other rights Tatsunoko granted to Harmony Gold.

18.  Unless permanently enjoined by Order of this Court, Defendants have and will continue to infringe Harmony Gold's rights, all to Harmony Gold's irreparable injury. As a result of Defendants' acts of infringement, Harmony Gold is without an adequate remedy at law in that damages are difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Harmony Gold will be required to pursue a multiplicity of actions.

19.  Harmony Gold has sustained, and will continue to sustain, substantial pecuniary damage to the value of its exclusive rights in and to the Series in that the previously described activities of Defendants have

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

diminished and will continue to diminish the revenues that Harmony Gold otherwise would receive.

**SECOND CLAIM FOR RELIEF**

**(Trademark Infringement Under 15 U.S.C. §§ 1125(a) –**

**Against All Defendants)**

20.  Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 19 of this Complaint as though fully and completely set forth herein.

21.  In connection with the advertising and sale of the line of children's toys which infringes Harmony Gold's copyrights, as alleged above, Defendants have used and continue to use in interstate commerce, including internet websites, the trademark *Macross,* which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of Defendants with Harmony Gold, and as to the origin, sponsorship, and approval of Defendants' line of children's toys and its commercial activities with those of Harmony Gold.

22.  Defendants' conduct alleged above was and continues to be intentional, deliberate, and willful, with knowledge of Harmony Gold's prior exclusive right to use the trademark *Macross.*

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

23. Harmony Gold has been damaged by Defendants' conduct as alleged above, in an amount to be proven at trial.

24. By reason of Defendants' conduct as alleged above, subject to the principles of equity, Harmony Gold is entitled to recover Defendants' profits.

25. As a proximate result of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation.

26. Harmony Gold has no plain, speedy, or adequate remedy at law for the injuries currently suffered. It will be difficult or impossible for Harmony Gold to determine the full amount of damages it has suffered and will continue to suffer or to calculate the full amount of its economic loss to its business if its trademark continues to be infringed upon by Defendants.

27. Unless enjoined by this Court, Defendants will continue to infringe upon Harmony Gold's trademark and will thereby cause irreparable injury and damage to Harmony Gold.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6686

## THIRD CLAIM FOR RELIEF

## (Common Law Trademark Infringement – Against All
## Defendants)

28.  Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 27 of this Complaint as though fully and completely set forth herein.

29.  Defendants' past, present, and future use of the trademark *Macross,* constitutes infringement of Harmony Gold's trademark under the common law of the State of California on the basis of Defendants' unauthorized use of the trademark *Macross* in connection with toys and merchandise of substantially the same character as those for which the trademark has already been legitimately appropriated by Harmony Gold, and which flow in the same or similar channels of commerce as do those of Harmony Gold.

30.  Defendants' use of Harmony Gold's common law trademark *Macross* has caused actual confusion, and is likely to cause confusion, in the marketplace concerning the source or origin of Harmony Gold's television broadcasting, videos, and merchandise.

31.  Defendants' use of the trademark *Macross* in connection with their merchandise and commercial activities is likely to cause injury to Harmony Gold's business

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6664

reputation and confusion among customers and members of the trade and public.

32.   By reason of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation unless and until Defendants are enjoined from continuing their wrongful acts, and Harmony Gold has no adequate remedy at law.

33.   Defendants' infringement has been willful and deliberate, with full knowledge of Harmony Gold's prior right to use the trademark *Macross*, has injured Harmony Gold, and will continue to cause irreparable injury to Harmony Gold unless enjoined by this Court.

34.   Harmony Gold is entitled to recover damages from Defendants to compensate Harmony Gold for the willful infringement of Harmony Gold's trademark *Macross*.

35.   In engaging in the conduct alleged above, Defendants acted willfully and maliciously and were motivated by oppression, fraud, and malice, and Harmony Gold is entitled to an award of exemplary damages.

12

**FOURTH CLAIM FOR RELIEF**

**(Unfair Competition Under California Statutory Law)**

**(California Business and Professions Code**

**§§ 17200 and 17500, *et seq.* - Against All Defendants)**

36.   Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37.   A competitive relationship exists between Harmony Gold and Defendants, in that all manufacture and sell merchandise including toys. Defendants' continued unauthorized use of Harmony Gold's trademark *Macross* constitutes an unlawful, unfair, and fraudulent business act or practice.

38.   Defendants' conduct as alleged above constitutes unfair competition under the statutory laws of the State of California, particularly under California Business and Professions Code §17200, *et seq.*

39.   Harmony Gold has been damaged by Defendants' conduct as alleged above, in an amount to be proven at trial.

40.   By reason of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation unless and until Defendants are enjoined from continuing their wrongful acts.

13

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

41.   Harmony Gold has no plain, speedy, or adequate remedy at law for the injuries it is suffering. It will be difficult or impossible for Harmony Gold to determine the full amount of damages it has suffered and will continue to suffer or to calculate the full amount of its economic loss to its business if its trademark continues to be infringed upon by Defendants.

42.   Unless enjoined by this Court, Defendants will continue to infringe upon Harmony Gold's trademark and will thereby cause irreparable injury and damage to Harmony Gold by depriving Harmony Gold of the benefit of the good will associated with the trademark *Macross*.

## FIFTH CLAIM FOR RELIEF
## (Common Law Unfair Competition – Against All Defendants)

43.   Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44.   Defendants' conduct as alleged above constitutes unfair competition under the common law of the State of California.

45.   Harmony Gold has been damaged by Defendants' conduct as alleged above, in an amount to be proven at trial.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6636

14

46.  By reason of Defendants' conduct as alleged above, Harmony Gold has suffered and will continue to suffer irreparable injury to its rights and substantial loss of good will and reputation unless and until Defendants are enjoined from continuing their wrongful acts.

47.  Defendants' unlawful acts were motivated by oppression, fraud, and malice, and constitute willful and malicious conduct by Defendants, for which Harmony Gold is entitled to an award of exemplary damages.

48.  Harmony Gold has no plain, speedy, or adequate remedy at law for the injuries it is suffering. It will be difficult or impossible for Harmony Gold to determine the full amount of damages it has suffered and will continue to suffer or to calculate the full amount of its economic loss to its business if its trademark continues to be infringed upon by Defendants.

49.  Unless enjoined by this Court, Defendants will continue to infringe upon Harmony Gold's trademark and will thereby cause irreparable injury and damage to Harmony Gold by depriving Harmony Gold of the benefit of the good will associated with the trademark *Macross*.

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

15

## SIXTH CLAIM FOR RELIEF

## (Declaratory Relief – Against All Defendants)

50.  Harmony Gold repeats and incorporates the allegations contained in paragraphs 1 through 49 of this Complaint as though fully and completely set forth herein.

51.  An actual controversy has arisen and now exists between Harmony Gold, on the one hand, and Defendants on the other hand, relating to their respective rights regarding ownership of copyrights and trademarks based on the Series, including the right to create derivative works based on the Series, such as those sold or to be sold by Defendants. Harmony Gold contends that Tatsunoko validly granted to Harmony Gold exclusively and irrevocably the rights to exploit the copyrights and trademarks in the Series in the United States and certain other countries, including but not limited to television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications, and to prepare derivative works based on, advertise, and otherwise dispose of and exploit the Series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof. Harmony Gold further

16

contends that the conduct of Defendants as alleged above violates the rights Tatsunoko granted to Harmony Gold.

52.    Harmony Gold is informed and believes and on the basis of such information and belief alleges that Defendants dispute these contentions and contend otherwise.

53.    Harmony Gold desires a judicial determination of its rights and duties under the aforesaid contracts and a declaration that its contentions, as hereinabove set forth, are correct. Such a declaration is necessary and appropriate in order to set at rest the respective rights and obligations of the parties and in order to avoid a multiplicity of actions.

WHEREFORE, Plaintiff Harmony Gold prays for relief against Defendants, and each of them, as follows:

A.    That Defendants, their agents, servants and employees and all persons acting in concert with them be restrained and enjoined permanently from manufacturing, copying, duplicating, selling, marketing, distributing, or otherwise disposing of any unauthorized toys or other products that are based on the Series.

B.    That Defendants be required to deliver upon oath all products, molds, prototypes, and drawings based on the Series, and documents related thereto in their possession, held for delivery to them or under their control, which

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

infringe or which may have been used to infringe Harmony Gold's exclusive rights under copyright to the Series; and that Orders for Seizure in respect of the foregoing be issued out of this Court and that at the conclusion of this action, the Court shall order all such material so held to be surrendered to Harmony Gold or to be destroyed under 17 U.S.C. § 503, whichever shall seem to this Court to be most just and proper.

C.   That Defendants be required to recall from all distributors, wholesalers, jobbers, dealers, retailers, and all others known to them, all copies of any unauthorized toys or other products based on the Series.

D.   That Defendants be required to account for all gains, profits and advantages derived from their acts of infringement and for their other violations of law.

E.   That Defendants be required to pay over to Harmony Gold the actual damages suffered by Harmony Gold as a result of the infringement of Harmony Gold's copyrights, and any profits of Defendants attributable to the infringement of Harmony Gold's copyrights, and to pay such damages to Harmony Gold as this Court shall deem to be just and proper within the provisions of the Copyright Act or, in the alternative, at Harmony Gold's election, statutory damages as set forth in 17 U.S.C. § 504.

18

F.    For compensatory damages against Defendants for trademark infringement and unfair competition, according to proof.

G.    That Defendants, including their subsidiaries, affiliates, related companies, agents, employees and representatives (and all persons in active concert and participation with them), be enjoined from making any further use of the trademark *Macross* or any other confusingly similar trademarks, in connection with the advertising, selling, or distributing of merchandise including toys.

H.    For exemplary damages against Defendants in an amount sufficient to punish and make a public example of Defendants, and to deter such wrongful conduct in the future.

I.    That the Court enter a declaratory judgment in favor of Harmony Gold reciting that each of the matters set forth in the paragraphs alleged above have been conclusively determined for Harmony Gold and against all of the Defendants.

J.    That Harmony Gold recover its costs of suit incurred herein.

K.    That Harmony Gold recover its attorneys' fees incurred in this action.

19

1      L.   That Harmony Gold have such other and further

2   relief as the Court deems just and appropriate under the

3   circumstances.

4

5   DATED: September 13, 2002

6                            GAIMS, WEIL, WEST & EPSTEIN, LLP

7                            BARRY G. WEST

8                            MARC EPSTEIN

                              WALTER R. ZAGZEBSKI

9

10               By: _____

11                       WALTER R. ZAGZEBSKI

12              *Attorneys for Plaintiff*

              *Harmony Gold-USA, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GAIMS, WEIL, WEST & EPSTEIN, LLP
ATTORNEYS AT LAW
1875 CENTURY PARK EAST, 12th FLOOR, LOS ANGELES, CALIFORNIA 90067-2513
TELEPHONE (310) 553-6666

# DEMAND FOR JURY TRIAL

Plaintiff Harmony Gold-USA, Inc. hereby demands a jury trial.

DATED: September 13, 2002

GAIMS, WEIL, WEST & EPSTEIN, LLP
BARRY G. WEST
MARC EPSTEIN
WALTER R. ZAGZEBSKI

By: _____
        WALTER R. ZAGZEBSKI
Attorneys for Plaintiff
Harmony Gold-USA, Inc.

# ORIGINAL

<u>LICENSE AGREEMENT</u>

TATSUNOKO PRODUCTION CO., LTD.

HARMONY GOLD, LTD.

<u>AGREEMENT</u>

THIS AGREEMENT is entered into this 11th day of September, 1984 by and between

> TATSUNOKO PRODUCTION CO., LTD.
> 3-22-12, Minami-cho, Kokubunji-shi,
> Tokyo, Japan

> (hereinafter referred to as the Licensor)

> - and -

> HARMONY GOLD, LTD.
> 8831 Sunset Boulevard, Suite 300
> Los Angeles, CA 90069 U.S.A.

> (hereinafter referred to as the Licensee)

WHEREBY IT IS AGREED as follows:

The Licensor hereby grants exclusively and irrevocably to the Licensee the rights to exploit the animated television programs described below produced and owned by the Licensor on the terms and conditions set out below, which rights include, but are not limited to, television broad-casting, merchandising exploitation, theatrical and nontheatrical exploi-tation, video devices, sound recording devices and publications.

### PROGRAMS & PARTICULARS

> MACROSS: 1/2 hour X 36 episodes

> MOSPEADA: 1/2 hour X 25 episodes

> THE SOUTHERN CROSS: 1/2 hour X 23 episodes

> <u>TOTAL: 84 episodes</u>

1. <u>TERRITORIES</u>

> ZONE NO. 1: The United States of America, and its territories and possessions, and English-speaking Canada, and English--speaking territories and possessions of Canada.

> ZONE NO. 2: All other English-speaking countries, territories and areas, all German-speaking countries, territories and areas including all Scandinavian countries, territories and areas, and all French-speaking countries, territorie and areas.

However, all countries and territories in Asia including Japan shall be excluded from the licensed territories under this Agreemen:

- 1 -

2. <u>PERIOD OF LICENSE</u>

The initial period of license is seven (7) years from the date
hereof and the license period shall be renewable at the end of
every seven years on the terms and conditions mutually agreed
upon. At the Licensee's request, the Licensor shall negotiate
with the Licensee reasonably and in good faith so that the Licensor
shall grant to the Licensee at least one (1) further seven (7)
year license period hereunder. If, for any reason, the Licensor
and the Licensee shall not agree upon such terms and conditions,
the Licensor shall not license any of the rights licensed to the
Licensee hereunder to any other party, or exploit those rights
itself, without first providing to the Licensee the exclusive
right for thirty (30) days to match terms and conditions that the
Licensor is prepared to accept from another party or upon which
the Licensor will exploit such right itself. The Licensee shall
be required to accept only financial terms and conditions that may
be satisfied as easily by one person as by another. The Licensor
shall send to the Licensee written notice of each of such terms
and conditions.

3. <u>LICENSE FEE</u>

    Zone No. 1: US$4,000.- per episode

    Zone No. 2: US$6,000.- per episode

4. <u>MANNER OF PAYMENT</u>

 Zone No. 1: US$4,000.- X 84 eps. = Total US$336,000.-

    Down payment of US$25,000.- shall be made upon signing this
    Agreement.

    US$25,000.- - no later than December 31, 1984.

 The balance of US$286,000.- shall be paid in the following install-
 ments:

    US$28,600.- - no later than January 31, 1985.

    US$28,600.- - no later than March 15, 1985.

    US$28,600.- - no later than September 30, 1985.

    US$28,600.- - no later than December 31, 1985.

    US$28,600.- - no later than March 31, 1986.

    US$28,600.- - no later than June 30, 1986.

    US$28,600.- - no later than September 30, 1986.

    US$28,600.- - no later than December 31, 1986.

- 2 -

US$28,600.- - no later than March 31, 1987.

US$28,600.- - no later than June 30, 1987.

Zone No. 2: US$6,000.- X 84 eps. = Total US$504,000.-

The total sum of US$504,000.- shall be paid in the following quarter-annual installments.

US$63,000.- - no later than March 31, 1986.

US$63,000.- - no later than June 30, 1986.

US$63,000.- - no later than September 30, 1986.

US$63,000.- - no later than December 31, 1986.

US$63,000.- - no later than March 31, 1987.

US$63,000.- - no later than June 30, 1987.

US$63,000.- - no later than September 30, 1987.

US$63,000.- - no later than December 31, 1987.

## 5. COPYRIGHT

The Licensor, as the exclusive author and owner of all worldwide copyrights, moral rights and rights of publication in and to the underlying series, grants to the Licensee exploitation of the copyrights in accordance with provisions in this Agreement whereby the Licensee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, diffuse, display, market, edit, dub, translate, arrange musically, transform, dramatize and otherwise adapt and prepare derivative works based on, advertise, and otherwise dispose of and exploit the underlying series, and any and all versions, characters, stories, settings, titles, music, sound track and effects, animation, artwork and all other components thereof, using any methods or devices of exploitation with limitation as provided in A, B, C of Article 6 herein. The Licensor represents and warrants that the underlying series, and the rights granted to the Licensee, do not and will not infringe upon the rights of any third party, and are and will be free of any right, claim or encumbrance of any third party. The Licensee is authorized to register the transfer of rights and licenses to the Licensee as set forth in this Agreement in any copyright, trademark or other appropriate register in Japan or elsewhere to protect the Licensee's rights and licenses under this Agreement. The Licensor and the Licensee shall be joint owners of copyrights in the underlying series for the territories licensed to the Licensee during the license period and shall take necessary legal measures to protect such copyrights from infringement or copying by any third party including registration of trademarks or copyright, and the use of copyright notices in the joint names of the Licensor and the Licensee. All trademarks utilized by the Licensee in connection with the exercise of its rights under this Agreement, other than the existing titles of the underlying

- 3 -

25

series, shall belong jointly to the Licensor and the Licensee and utilization of such trademarks shall be automatically renewed at the termination of this Agreement for a reasonable length of period mutually agreed upon unless such termination·is due to default on the part of the Licensee. With respect to any new materials created by the Licensee, copyright and all other rights in such materials shall also belong jointly to the Licensor and the Licensee.

6. <u>MERCHANDISING RIGHTS</u>

The Licensee is the lawful and authorized representative to exercise merchandising rights related to the underlying series in the license territories specified in Article 1 herein except for such items and articles·as set forth below.

A. With regard to MACROSS series, die-cast toys and other toys manufactured in Japan by Takatoku Toys and plastic model kits made by Imai Chemical Co. for domestic and overseas markets shall be excluded.

B. With regard to MOSPEADA series, die-cast toys and other toys manufactured in Japan by Gakken Co. and plastic model kits made by Imai Chemical Co. and/or Arii Works·for domestic and overseas markets shall be excluded.

C. With regard to THE SOUTHERN CROSS series, plastic model kits manufactured in the past by Imai Chemical Co. and/or Arii Works for domestic and overseas markets shall be excluded.

The Licensor shall not engage in or authorize, except as·allowed in A, B and C above, any merchandising exploitation related to the underlying series in any of the territories licensed to the Licensee hereunder at any time during the license period.

7. <u>COMPENSATION·FOR MERCHANDISING</u>

A. In connection with exercise by the Licensee of merchandising rights granted hereunder, as distinguished from any other rights granted hereunder, the Licensee shall pay to the Licensor fifty (50) percent·of net revenue after deduction of ten (10) percent of merchandising expenses from the total proceeds actually received by the·Licensee in case sales are made directly by the Licensee whereas the Licensee shall pay to the Licensor fifty (50) percent of net revenue without deduction of merchan- dising expenses provided that sales are made through third parties.

B. The Licensee shall not be beneficiary of revenues accrued by sales of articles licensed in the past by the Licensor ·to and· produced by Takatoku Toys, Gakken Co., Imai Chemical Co., and Arii Works regardless of whether or not such sales are made inside or outside of Japan.

- 4 -

26

C. With regard to such articles produced in Japan as not included
in the Licensee's schedule of merchandising exploitation, the
Licensor may export them individually to markets in the licensed
territories hereunder with prior consent of the Licensee who
shall have option priority on such articles. In case the Licensor
exports such articles in compliance with the aforesaid provision,
the Licensee shall not be beneficiary of revenues accrued by
such exportation.

D. The Licensee shall pay the Licensor's share of merchandising
revenue to the Licensor on a quarter-annual basis, for the period
of January 1 through March 31, April 1 through June 30, July 1
through September 30, and October 1 through December 31 of each
year, with payment forty-five (45) days after the end of each
applicable period, and the Licensee shall make monthly business
reports available to the Licensor during the license period.

E. The initial term of merchandising agreement is seven (7) years
from the date hereof as provided in Article 2 herein. However,
in case the total amount of the Licensor's share of merchandising
revenue fails to reach US$120,000.- in the first three and a half
years and US$80,000.- in the second three and a half years of
the license period, the Licensor shall be entitled to eliminate
the merchandising license portion from this Agreement unless the
Licensee takes measures acceptable by the Licensor to cure the
deficit.

8. SPECIAL PROVISIONS

A. Limiting to German-speaking territories, home video and video
disc rights which constitute a part of rights granted hereunder
shall be excluded. With regard to publication rights for said
territories, the Licensee shall present to the Licensor a project
plan including natures and contents of publications in each
instance of publication for the Licensor's prior consent and
approval.

B. The Licensor is entitled to make an audit in each twelve (12)
months after providing the Licensee with advance written notice
requesting audit.

C. If the Licensee fails to perform its obligations hereunder, the
Licensor is entitled to terminate this Agreement in its entirety
or partially merchandising exploitation provisions only without
prejudice to any of its rights against the Licensee. Such termi-
nation shall be made only after the Licensee's receipt of written
notice stating in detail the Licensee's failure. However, the
Licensee has the right to confirm and cure the failure within
sixty (60) days after receipt of the written notice. Notwith-
standing any termination, pre-existing licenses entered into
by the Licensee shall not be disturbed in any way.

- 5 -

27

D. In case any dispute arises between the two parties in connection with this Agreement, it shall be settled with the bona fide efforts on the part of each party. The parties hereto mutually agree that if no settlement is reached after exertion of such efforts, the dispute shall be submitted to the competent court in Tokyo, Japan, whose decision shall be final and binding upon both parties.

E. The Licensee has first refusal right for territories other than countries in Asia, and Zone No. 1 and Zone No. 2 specified in Article 1 herein.

F. This Agreement is subject to force majeure.

9. <u>REEDITION, ALTERATION, AND MODIFICATION</u>

The Licensee is entitled to reedit, alter, or modify any and all the underlying series as the Licensee determines to conform with marketing requirements including addition of different language dialogue, new stories, new sound effects, new music, a new title or titles and credits to personnel utilized by the Licensee in connection with any such activity. However, such reedition, alteration, or modification shall be done in a reasonable manner acceptable by the Licensor which does not detract from the underlying series.

10. <u>ASSIGNMENT AND SUBLICENSE</u>

The Licensee shall have the right to assign, license, delegate, lend or otherwise transfer its rights, options or privileges granted hereunder in whole or in part to any third party, but in no case the Licensee shall transfer its obligations to the Licensor to any third party.

IN WITNESS WHEREOF, the parties hereto signed hereunder to execute this Agreement on the date first above written.


TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD, LTD.


_____       _____

- 6 -

28

Sep 09 02 04:12p     HARMONY GOLD     323 436 7257     P.2

# CERTIFICATE OF COPYRIGHT REGISTRATION

**UNITED STATES COPYRIGHT OFFICE**

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*Donald C Curran*

**ACTING REGISTER OF COPYRIGHTS**
United States of America

OFFICIAL SEAL

| REGISTRATION NUMBER |
| --- |
| PAU ‑ ‑ 740 323 |
| PA   (PAU) |

| EFFECTIVE DATE OF REGISTRATION |  |  |
| --- | --- | --- |
| 3 | 28 | 85 |
| (Month) | (Day) | (Year) |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

---

**① Title**

TITLE OF THIS WORK:   MACROSS       Episodes 1~36
1. Booby Trap   3. Spacefold
2. Countdown   4. Lin Minmei (See PA/CON for 5-36)

PREVIOUS OR ALTERNATIVE TITLES:

NATURE OF THIS WORK: (See instructions)
MOTION PICTURE

---

**② Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

**1**
NAME OF AUTHOR:
TATSUNOKO PRODUCTION COMPANY, LTD.
Was this author's contribution to the work a "work made for hire"?   Yes.X...   No......

DATES OF BIRTH AND DEATH:
Born ........ Died ........
(Year)     (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ............ } or { Domiciled in ..Japan......
(Name of Country)              (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?   Yes......   No......
Pseudonymous?   Yes......   No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)
Entire Work including animation, story, soundtrack

**2**
NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"?   Yes......   No......

DATES OF BIRTH AND DEATH:
Born ........ Died ........
(Year)     (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ............ } or { Domiciled in ..........
(Name of Country)              (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?   Yes......   No......
Pseudonymous?   Yes......   No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

**3**
NAME OF AUTHOR:
Was this author's contribution to the work a "work made for hire"?   Yes......   No......

DATES OF BIRTH AND DEATH:
Born ........ Died ........
(Year)     (Year)

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ............ } or { Domiciled in ..........
(Name of Country)              (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous?   Yes......   No......
Pseudonymous?   Yes......   No......
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

---

**③ Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:
Year. 1983...
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date. ..........
(Month)   (Day)   (Year)
Nation ..........
(Name of Country)
(Complete this block ONLY if this work has been published.)

---

**④ Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):
HARMONY GOLD U.S.A., INC.   AND   TATSUNOKO PRODUCTION COMPANY, LTD.
8831 Sunset Blvd. Ste 300      c/o Harmony Gold U.S.A., Inc.
Los Angeles, CA. 90069         8831 Sunset Blvd. Ste 300
                               Los Angeles, CA 90069

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)
Agreement

---

• Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• Follow detailed instructions attached   • Sign the form at line 8

DO NOT WRITE HERE

Sep 09 02 04:12p    HARMONY GOLD         323-436-7257         p.3

*Amended and added by C.O. a   rity
telephone conversation with   an
Christison on May 17, 1985.

PA    740 323

CHECKED BY:    MAR    985

CORRESPONDENCE:  ☐ Yes    DEPOSIT   IVED:
MAR 28 1985

DEPOSIT ACCOUNT
FUNDS USED:    ☐

REMITTANCE NUMBER AND DATE:    MAR
505997    28 85

FOR
COPYRIGHT
OFFICE
USE
ONLY

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

* PREVIOUS REGISTRATION:

  • Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? Yes...X.... No...X

  • If your answer is "Yes," why is another registration being sought?  (Check appropriate box)

    ☐ This is the first published edition of a work previously registered in unpublished form.
    ☐ This is the first application submitted by this author as copyright claimant.
    ☒ This is a changed version of the work, as shown by line 6 of the application.

  • If your answer is "Yes," give:  Previous Registration Number . . . . . . . . . .  Year of Registration . . . . . . . . . .

**⑤** Previous Registration

---

* COMPILATION OR DERIVATIVE WORK: (See Instructions)

  PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)

  English version including animation

  MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

  Japanese soundtrack and story

**⑥** Compilation or Derivative Work

---

DEPOSIT ACCOUNT: (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name:

Account Number:

CORRESPONDENCE: (Give name and address to which correspondence about this application should be sent.)

Name:  Harmony Gold U.S.A., Inc.
        8831 Sunset Blvd. Ste. #300
Address:                                    (Apt)
        Los Angeles, CA      90069
        (City)          (State)        (ZIP)

**⑦** Fee and Correspondence

---

CERTIFICATION: * I, the undersigned, hereby certify that I am the: (Check one)
☐ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☒ authorized agent of: Harmony Gold U.S.A., Inc.
                                        (Name of author or other copyright claimant, or owner of exclusive right(s))
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X)

Typed or printed name. Frank Agrama, President      Date 3/15/85

**⑧** Certification
(Application must be signed)

---

HARMONY GOLD U.S.A., INC.
            (Name)
8831 Sunset Blvd. Suite 300
(Number Street and Apartment Number)
Los Angeles, CA  90069
    (City)      (State)    (ZIP code)

MAIL
CERTIFICATE
TO

(Certificate will
be mailed in
window envelope)

**⑨** Address For Return of Certificate

Sep 09 02 04:13p    HARMONY GOLD    323-436-7257    p.4

# CONTINUATION SHEET FOR FORM PA

## FORM PA/CON
### UNITED STATES COPYRIGHT OFFICE

- If at all possible, try to fit the information called for into the spaces provided on Form PA.
- If you do not have space enough for all of the information you need to give on Form PA, use this continuation sheet and submit it with Form PA.
- If you submit this continuation sheet, leave it attached to Form PA. Or, if it becomes detached, clip (do not tape or staple) and fold the two together before submitting them.
- PART A of this sheet is intended to identify the basic application. PART B is a continuation of Space 2. PART C is for the continuation of Spaces 1, 4, or 6. The other spaces on Form PA call for specific items of information, and should not need continuation.

REGISTRATION NUMBER

PAU _ _ 740-323
PA                    PAU

EFFECTIVE DATE OF REGISTRATION

3        28        85
(Month)    (Day)    (Year)

CONTINUATION SHEET RECEIVED

MAR 28 1985

Page 3 of 3 pages

---

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

| | |
|---|---|
| **A**<br>Identification of Application | **IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on Form PA, submitted for the following work:<br>• TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of Form PA.)<br>MACROSS<br>• NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of Form PA.)<br>Harmony Gold U.S.A., Inc. 8831 Sunset Blvd. Ste 300, Los Angeles, CA 90069 |

| | |
|---|---|
| **B**<br>Continuation of Space 2 | **NAME OF AUTHOR:**    DATES OF BIRTH AND DEATH<br>Born..... (Year)   Died..... (Year)<br>Was this author's contribution to the work a "work made for hire"?   Yes...... No......<br>**AUTHOR'S NATIONALITY OR DOMICILE:**   WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:<br>Citizen of..................} or {Domiciled in..................   Anonymous? Yes...... No......<br>(Name of Country)   (Name of Country)   Pseudonymous? Yes...... No......<br>**AUTHOR OF:** (Briefly describe nature of this author's contribution)   If the answer to either of these questions is "Yes," see detailed instructions attached.<br><br>**NAME OF AUTHOR:**    DATES OF BIRTH AND DEATH<br>Born..... (Year)   Died..... (Year)<br>Was this author's contribution to the work a "work made for hire"?   Yes...... No......<br>**AUTHOR'S NATIONALITY OR DOMICILE:**   WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:<br>Citizen of..................} or {Domiciled in..................   Anonymous? Yes...... No......<br>(Name of Country)   (Name of Country)   Pseudonymous? Yes...... No......<br>**AUTHOR OF:** (Briefly describe nature of this author's contribution)   If the answer to either of these questions is "Yes," see detailed instructions attached.<br><br>**NAME OF AUTHOR:**    DATES OF BIRTH AND DEATH<br>Born..... (Year)   Died..... (Year)<br>Was this author's contribution to the work a "work made for hire"?   Yes...... No......<br>**AUTHOR'S NATIONALITY OR DOMICILE:**   WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:<br>Citizen of..................} or {Domiciled in..................   Anonymous? Yes...... No......<br>(Name of Country)   (Name of Country)   Pseudonymous? Yes...... No......<br>**AUTHOR OF:** (Briefly describe nature of this author's contribution)   If the answer to either of these questions is "Yes," see detailed instructions attached. |

| | |
|---|---|
| **C**<br>Continuation of Other Spaces | **CONTINUATION OF** (Check which):  ☒ Space 1  ☐ Space 4  ☐ Space 6 |

| | | |
|---|---|---|
| 5. The Transformation | 17. Phantasm | 29. Loli's Song |
| 6. The Daidarus Attack | 18. Pineapple Salad | 30. Viva Mariya |
| 7. Bye-Bye Mars | 19. Bursting Point | 31. Satan's Dolls |
| 8. The Longest Birthday | 20. Paradise Lost | 32. Broken Heart |
| 9. Miss Macross | 21. Micro-Cosmos | 33. Rainy Night |
| 10. The Blind Game | 22. Love Concert | 34. Private Time |
| 11. First Contact | 23. Drop Out | 35. Romanesque |
| 12. The Big Escape | 24. Goodbye Girl | 36. A Gentle Farewell |
| 13. Blue Wind | 25. Virgin Road | |
| 14. Gloval's Report | 26. The Messenger | |
| 15. Chinatown | 27. Love Floats Away | |
| 16. Kung Fu Dandy | 28. My Album | |

Sep 09 02 04:13p    HARMONY GOLD    323-436-7257    p.5

# CERTIFICATE OF REGISTRATION



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

FORM Supplementary Registration
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PAu 2-509-627

EFFECTIVE DATE OF SUPPLEMENTARY REGISTRATION

MAR 13 2000
Month    Day    Year

E CONTINUATION SHEET.

Title of Work ▼ Macross Episode 1.) Boobytrap 2.) Countdown
3.) Space fold 4.) Lin Minmei (Sec CA/CON for 5-36)

Registration Number of the Basic Registration ▼
PAu 740 323

Year of Basic Registration ▼
3-28-85

Name(s) of Author(s) ▼
Tatsunoko Production Co., Ltd.

Name(s) of Copyright Claimant(s) ▼
Harmony Gold U.S.A., Inc & Tatsunoko Production Co., L

Location and Nature of Incorrect Information in Basic Registration ▼  Previous Registration

Line Number 5 & 6   Line Heading or Description  Compilation or Derivative Work

Incorrect Information as It Appears in Basic Registration ▼ 5. X yes ____ No ; Preexisting Material:
English version including animation; Material added to this work:
Japanese soundtrack and story

Corrected Information ▼

5. Previous Registration    yes ____ NO X

Explanation of Correction ▼

Administrative ERROR

Location and Nature of Information in Basic Registration to be Amplified ▼

Line Number _____ Line Heading or Description _____

Amplified Information and Explanation of Information ▼

MORE ON BACK ▶  • Complete all applicable spaces (D-G) on the reverse side of this page.    DO NOT WRITE HERE
• See detailed instructions.    • Sign the form at Space F.    Page 1 of 4 pages

32

Sep 09 02 04:14p    HARMONY GOLD    323-436-7257    p.6

FORM CA RECEIVED

FORM CA

FUNDS RECEIVED DATE

EXAMINED BY

CORRESPONDENCE □

REFERENCE TO THIS REGISTRATION ADDED TO
BASIC REGISTRATION    ☑ YES    □ NO

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

Continuation of:  □ Part B  or  □ Part C

**D**

Correspondence: Give name and address to which correspondence about this application should be sent.

Harmony Gold    c/o J. Hoffman
7655 Sunset Blvd.
Los Angeles, CA 90046
(323) 851 4900    Fax (323) 851 5599    Email Johoffman@harmonygold.com

**E**

Account: If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Harmony Gold

Number    DA 076422

Certification* I, the undersigned, hereby certify that I am the: (Check only one)

□ author
□ other copyright claimant
☑ owner of exclusive right(s)
☑ duly authorized agent of    Harmony Gold
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**F**

Typed or printed name ▼    Frank Agrama    Date ▼  2/28/00

Handwritten signature (X) ▼

Certificate
will be
mailed in
window
envelope
this
address:

Name ▼    Harmony Gold    c/o J. Hoffman
Number/Street/Apt ▼    7655    Sunset Blvd
City/State/ZIP ▼    Los Angeles, CA 90046

• Complete all necessary spaces
• Sign your application in space F

1. Application form
2. Nonrefundable filing fee in check or
   money order payable to Register of
   Copyrights
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of July 1,
1999, the fee
for filing Form
CA is $65.

**G**

U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

July 2000—40,000
Rev: June 1999    ⊛ PRINTED ON RECYCLED PAPER    ⊛U.S. GOVERNMENT PRINTING OFFICE: 2000-461-113/107

Sep 09 02 04:14p    HARMONY GOLD    32 436-7257

# CONTINUATION SHEET
# FOR APPLICATION FORMS

This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA, only.
Indicate which basic form you are continuing in the space in the upper right-hand corner.
If at all possible, try to fit the information called for into the spaces provided on the basic form.
If you do not have enough space for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.
If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.
Space A of this sheet is intended to identify the basic application.
Space B is a continuation of Space 2 on the basic application. Space B is not applicable to Short Forms.
Space C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application or for the continuation of Space 1 on any of the three Short Forms PA, TX, or VA.

FORM CA/CON
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PAu 2-503-627

PA                                              U

EFFECTIVE DATE OF REGISTRATION

Mar   13   2000
(Month)        (Day)        (Year)

CONTINUATION SHEET RECEIVED

(Mar 13 2000)

Page _3_ of _4_ pages

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY

**A**
Identification of Application

**IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:
● TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)

MACROSS

● NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form or Space 2 of any of the Short Forms PA. TX, or VA.)
Harmony Gold USA, Inc. 7655 Sunset Blvd, LA, CA 90046  +  Tatsunoko Productions Ltd
c/o 7655 Sunset Blvd, LA, CA 90046

**B**
Continuation of Space 2

**d**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born▼        Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
     Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**e**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born▼        Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
     Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born▼        Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ _____
     Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form or for the continuation of Space 1 on any of the Short Forms PA. TX. or VA

34

Sep 09 02 04:14p    HARMONY GOLD    323-436-7257    p.8

CONTINUATION OF (Check which):    [X] Space 2    [ ] Space 4    [ ] Space 6

**C**
Continuation
of other
Spaces

| | | |
|---|---|---|
| 5. The Transformation | 17. Phantasm | 29. Loli's Song |
| 6. The Daidarus Attack | 18. Pineapple Salad | 30. Viva Mariya |
| 7. Bye-Bye Mars | 19. Bursting Point | 31. Satan's Dolls |
| 8. The Longest Birthday | 20. Paradise Lost | 32. Broken Heart |
| 9. Miss Macross | 21. Micro-Cosmos | 33. Rainy Night |
| 10. The Blind Game | 22. Love Concert | 34. Private Time |
| 11. First Contact | 23. Drop Out | 35. Romanesque |
| 12. The Big Escape | 24. Goodbye Girl | 36. A Gentle Farewell |
| 13. Blue Wind | 25. Virgin Road | |
| 14. Gloval's Report | 26. The Messenger | |
| 15. Chinatown | 27. Love Floats Away | |
| 16. Kung Fu Dandy | 28. My Album | |

**D**

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼  Harmony Gold   c/o J. Hoffman

Number/Street/Apt ▼   7655   Sunset   Blvd.

City/State/ZIP ▼   Los Angeles, CA   90046

• Complete all necessary spaces
• Sign your application

1. Application form
2. Nonrefundable fee in check or money order payable to *Register of Copyrights*
3. Deposit Material

Library of Congress, Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

Fees are effective through June 30, 2002. After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

November 1999—30,000
WEB REV: June 1999    ♻ PRINTED ON RECYCLED PAPER

☆U.S.GOVERNMENT PRINTING OFFICE: 2000-461-113/78



*Copyright Office of the United States*

THE LIBRARY OF CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCUMENT WAS RECORDED IN THE COPYRIGHT OFFICE ON THE DATE AND IN THE PLACE SHOWN BELOW.

**THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.**

DATE OF RECORDATION

28May85

| VOLUME | PAGE |
| --- | --- |
| 2086 | 348 |

| VOLUME | PAGE |
| --- | --- |
| 2086 | 353 |



OFFICIAL SEAL

*Donald C Curran*

Acting
Register of
Copyrights and
Assistant
Librarian for
Copyright
Services

Certificate of Recordation
C-762  November 1984—15,000

36

OPTIONAL FORM 175
(FORMERLY FS-88)
MARCH 1975
DEPT. OF STATE
50175-101

VOL. 2086 PAGE 350

# Certificate of Acknowledgment of Execution of an Instrument

(Country) }ss
JAPAN OF TOKYO
EMBASSY OF THE UNITED STATES OF AMERICA

(County and/or other political division)

}  SS:

(County and/or other political division)

(Name of foreign service office)

I, **David L. Gossack**    Vice Consul

the United States of America at    Tokyo, Japan

commissioned and qualified, do hereby certify that on this    15th

of    May, 1985    before me personally appeared
(DATE)
* * * * * Koki NARUSHIMA * * * * *

personally known, and known to me to be the individual—described in, whose

s__subscribed to, and who executed the annexed instrument, and being

by me of the contents of said instrument __he__ duly acknowledged to me

__executed the same freely and voluntarily for the uses and purposes therein

In witness whereof I have hereunto set my hand and

official seal the day and year last above written.

**David L. Gossack**
Vice Consul    of the United States of America.

NOTE.-    ticable all signatures to a document should be included in one certificate.    U.S.GPO:1980-0-311-163/6270

37



VOL. 2086 PAGE 348

## SHORT FORM ASSIGNMENT

FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency of which is hereby acknowledged, the undersigned, Tatsunoko Production Co., Ltd. ("Assignor"), hereby grants, assigns and transfers to Harmony Gold, Ltd. ("Assignee") the exclusive and irrevocable rights to exploit the animated television programs entitled "MACROSS" (1/2 hour x 36 episodes), "MOSPEADA" (1/2 hour x 25 episodes) and "THE SOUTHERN CROSS" (1/2 hour x 23 episodes) (such episodes being listed in Exhibit "A" attached hereto and collectively referred to as the "Series") which rights include, but are not limited to, television broadcasting, merchandising exploitation, theatrical and non-theatrical exploitation, video devices, sound recording devices and publications.

This Assignment is made subject to and in confirmation of that certain Agreement (the "Agreement"), dated September 11, 1984, between Licensor and Licensee.

1.  <u>TERRITORIES</u>.

   Assignee's rights extend to the following territories:

   The United States of America, and its territories and possessions, and English-speaking Canada, and English-speaking territories and possessions of Canada. All other English-speaking countries, territories and areas, all German-speaking countries, territories and areas including all Scandanavian countries, territories and areas, and all French-speaking countries, territories and areas. In addition, Assignee has the exclusive rights of first refusal in certain other territories as more particularly pescribed in the Agreement.

2.  <u>PERIOD OF LICENSE</u>.

   The initial period for such assignment is seven (7) years from the date of the Agreement and said period shall be renewable at the end of every seven (7) years on the terms provided for in the Agreement.

3.  <u>COPYRIGHT</u>.

   Assignor, as the exclusive author and owner of all worldwide copyrights, moral rights and rights of publication in and to the underlying series, grants to Assignee exploitation of the copyrights in accordance with the provisions of the Agreement whereby the Assignee is entitled to present, reproduce, record, publish, release, exhibit, distribute, perform, broadcast, dif-

0193000310
177-203-850409

VOL.2086 PAGE 349

fuse, display, market, edit, dub, translate, arrange musically,
transform, dramatize and otherwise adapt and prepare derivative
works based on, advertise, and otherwise dispose of and exploit
the Series and any and all versions, characters, stories, set-
tings, titles, music, sound tracks and effects, animation, art
work and all other components thereof, using any methods or
devices of exploitation with certain limitation as provided in
the Agreement.  Assignor and Assignee shall be joint owners of
all copyrights in the Series in the Territories during the period
of Assignee's rights, and Assignor hereby irrevocably grants to
Assignee an undivided 50% interest in said copyrights.

    4.  <u>MERCHANDISING RIGHTS.</u>

      The Licensee is the lawful and authorized representa-
tive to exercise merchandising rights relating to the *Series* in
the Territories with certain exceptions as set forth in the
Agreement.


      IN WITNESS WHEREOF, the undersigned has executed this
Assignment as of the <u>15th</u> day of <u>May</u>, 1985.


          TATSUNOKO PRODUCTION CO., LTD.

By: <u>  Koki Narushima  </u>
Its: <u> Manager, Int'l Affairs Dept.</u>


~~On the ____ day of ____, 1985, before me, a
diplomatic or consular officer of the United States, personally
appeared _____, known to me to be the person whose
name is subscribed to the within instrument, and acknowledged to
me that s/he executed the same.~~

5-4-85

2.

VOL. 2086 PAGE 351

EXHIBIT "A"

MOSPEADA

Episodes 1-25

1.  Prelude of Assault
2.  The March of Love Lost
3.  A Duel Concert at High Noon
4.  Feel Like A Survival Song
5.  Live at the Robbery
6.  Tough Little Girl Blues
7.  Ragtime for the Departed Hero
8.  Elegy for Jonathan
9.  Lost World Getaway
10. Requiem for a Battlefield
11. Lullaby of a Distant Hope
12. Fortress Breakthrough Boogie
13. Sandstorm Playback
14. Mint's Wedding March
15. The Ballad of the Comrades' Split
16. Trap Reggae
17. Serenade of the Midnight Sun
18. Polka of the Old Soldiers
19. Folte, the Glacier City
20. A Birthday Song in the Evening
21. Murder's Arpeggio
22. New York Beebop
23. Black-haired Paltita
24. The Finale of Darkness
25. Symphony of Light

SOUTHERN CROSS

Episodes 1-23

1.  Shower Cologne
2.  Rabbit Hat
3.  Star Angel
4.  Half Moon
5.  Trouble City
6.  Prelude
7.  Mujika
8.  Metal Fire
9.  Star Dust

36

EXHIBIT "A"  p. 2

VOL. 2086 PAGE 352

### SOUTHERN CROSS (cont.)

    10.  Outsider
    11.  Deja Vu
    12.  Lost Memory
    13.  Triple Mirror
    14.  Hope for Glory
    15.  Love Story
    16.  The Hunter Killer
    17.  The Biopsych Car
    18.  Wonderland
    19.  Crisis
    20.  Daydream
    21.  Nightmare
    22.  Catastrophic
    23.  Jeh-nen-Su

### MACROSS

Episodes 1-36

    1.   Booby Trap
    2.   Countdown
    3.   Spacefold
    4.   Lin Minmei
    5.   The Transformation
    6.   The Daidarus Attack
    7.   Bye-Bye Mars
    8.   The Longest Birthday
    9.   Miss Macross
    10.  The Blind Game
    11.  First Contact
    12.  The Big Escape
    13.  Blue Wind
    14.  Gloval's Report
    15.  Chinatown
    16.  Kung Fu Dandy
    17.  Phantasm
    18.  Pineapple Salad
    19.  Bursting Point

34

VOL. 2086 PAGE 353

EXHIBIT "A"  p.3

<u>MACROSS</u> (cont.)

     20.   Paradise Lost
     21.   Micro-Cosmos
     22.   Love Concert
     23.   Drop Out
     24.   Goodbye Girl
     25.   Virgin Road
     26.   The Messenger
     27.   Love Floats Away
     28.   My Album
     29.   Loli's Song
     30.   Viva Mariya
     31.   Satan's Dolls
     32.   Broken Heart
     33.   Rainy Night
     34.   Private Time
     35.   Romanesque
     36.   A Gentle Farewell

## A G R E E M E N T

THIS AGREEMENT is entered into this 15th day of March, 1991 by and between

TATSUNOKO PRODUCTION CO., LTD.
3-22-12, Minami-cho, Kokubunji-shi,
Tokyo, Japan

(hereinafter referred to as the Licensor)

- and -

HARMONY GOLD, LTD.
7655 Sunset Boulevard
Los Angeles, CA 90046-2700
U.S.A.

(hereinafter referred to as the Licensee)

WHEREBY IT IS AGREED as follows:

The Licensor hereby grants exclusively and irrevocably to the Licensee the rights to exploit the animated television programs described below produced and owned by the Licensor on the terms and conditions set out below, which rights include, but are not limited to, television broadcasting, merchandising exploitation, theatrical and nontheatrical exploitation, video devices, sound recording devices and publications.

### PROGRAMS & PARTICULARS

MACROSS: 1/2 hour X 36 episodes

MOSPEADA: 1/2 hour X 25 episodes

THE SOUTHERN CROSS: 1/2 hour X 23 episodes

TOTAL: 84 episodes

### 1. TERRITORIES

Worldwide territories excluding Japan and all other Asian territories.

### 2. PERIOD OF LICENSE

The initial period of license is ten (10) years from the date hereof and the license period shall be renewable at the end of every ten years on the terms and conditions mutually agreed upon. At the Licensee's request, the Licensor shall negotiate with the Licensee reasonably and in good faith so that the Licensor shall grant to the Licensee further ten (10) year license period hereunder. If, for any reason, the Licensor and the Licensee shall not agree upon such terms and conditions,

the Licensor shall not license any of the rights licensed
to the Licensee hereunder to any other party, or exploit
those rights itself, without first providing to the Licensee
the exclusive right for thirty (30) days to match terms and
conditions that the Licensor is prepared to accept from another
party or upon which the Licensor will exploit such right itself.
The Licensee shall be required to accept only financial terms
and conditions that may be satisfied as easily by one person
as by another. The Licensor shall send to the Licensee a written
notice of each of such terms and conditions.

3. LICENSE FEE

License fee for TV and other visual rights: US$3,000.00 per
episode.

    Total: US$3,000 X 84 episodes = US$252,000.00

Minimum guarantee for merchandising royalty = US$50,000.00

4. MANNER OF PAYMENT

The total sum of US$302,000.00 (US$252,000 for visual rights
and US$50,000 for minimum guarantee for merchandising) shall
be paid in a lump-sum payment upon signing this Agreement.

5. COPYRIGHT

The Licensor, as the exclusive author and owner of all world-
wide copyrights, moral rights and rights of publication in and
to the underlying series, grants to the Licensee exploitation
of the copyrights in accordance with provisions in this Agreement
whereby the Licensee is entitled to present, reproduce, record,
publish, release, exhibit, distribute, perform, broadcast,
diffuse, display, market, edit, dub, translate, arrange musically,
transform, dramatize and otherwise adapt and prepare derivative
works based on, advertise, and otherwise dispose of and exploit
the underlying series, and any and all versions, character,
stories, settings, titles, music, sound track and effects,
animation, artwork and all other components thereof, using any
methods or devices of exploitation with limitation as provided
in A, B, C of Article 6 herein. The Licensor represents and
warrants that the underlying series, and the rights granted to
the Licensee, do not and will not infringe upon the rights of
any theird party, and are and will be free of any right, claim
or encumbrance of any third party. The Licensee is authorized
to register the transfer of rights and licenses to the Licensee
as set forth in this Agreement in any copyright, trademark or
other appropriate register in Japan or elsewhere to protect
the Licensee's rights and licenses under this Agreement. The
Licensor and the Licensee shall be joint owners of copyrights
in the underlying series for the territories licensed to the
Licensee during the license period and shall take necessary
legal measures to protect such copyrights from infringement
or copying by any third party including registration of trademarks
or copyright, and the use of copyright notices in the joint

44

names of the Licel     and the Licensee. All t     marks utilized
by the Licensee in connection with the exercise of its rights
under this Agreement, other than the existing titles of the
underlying series, shall belong jointly to the Licensor and
the Licensee and utilization of such trademarks shall be automa-
tically renewed at the termination of this Agreement for a
reasonable length of period mutually agreed upon unless such
termination is due to default on the part of the Licensee. With
respect to any new materials created by the Licensee, copyright
and all other rights in such materials shall also belong jointly
to the Licensor and the Licensee.

6. <u>MERCHANDISING RIGHTS</u>

The Licensee is the lawful and authorized representative to
exercise merchandising rights related to the underlying series
in the licensed territories specified in Article 1 herein except
for such items and articles as set forth below.

A. With regard to MACROSS series, die-cast toys and other toys
   manufactured in Japan by Takatoku Toys and plastic model
   kits made by Imai Chemical Co. for domestic and overseas
   markets shall be excluded.

B. With regard to MOSPEADA series, die-cast toys and other toys
   manufactured in Japan by Gakken Co. and plastic model kits
   made by Imai Chemical Co. and/or Arii Works for domestic and
   overseas markets shall be excluded.

C. With regard to THE SOUTHERN CROSS series, plastic model kits
   manufactured in the past by Imai Chemical Co. and/or Arii
   Works for domestic and overseas markets shall be excluded.

The Licensor shall not engage in or authorize, except as allowed
in A, B and C above, any merchandising exploitation related to
the underlying series in any of the territories licensed to the
Licensee hereunder at any time during the license period.

7. <u>COMPENSATION FOR MERCHANDISING</u>

A. In connection with exercise by the Licensee of merchandising
   rights granted hereunder, as distinguished from any other
   rights granted hereunder, the Licensee shall pay to the Licensor
   twenty-five (25) percent of net revenue after deduction of
   ten (10) percent of merchandising expenses from the total
   proceeds actually received by the Licensee in case sales are
   made directly by the Licensee whereas the Licensee shall pay
   to the Licensor twenty-five (25) percent of net revenue without
   deduction of merchandising expenses provided that sales are
   made through third parties. Further, it is agreed by the parties
   hereto that the minimum guarantee of US50,000 paid the Licensor as
   specified in Article 3 shall constitute part of the Licensor's
   share of merchandising royalty.

B. The Licensee shall not be beneficiary of revenues accrued by
   sales of articles licensed in the past by the Licensor to and
   produced by Takatoku Toys, Gakken Co., Imai Chemical Co., and
   Arii Works regardless of whether or not such sales are made
   inside or outside of Japan.

- 3 -        45

C. With regard t    ch articles produced in     n as not included
in the Licensee's schedule of merchandising exploitation, the
Licensor may export them individually to markets in the licensed
territories hereunder with prior consent of the Licensee who
shall have option priority on such articles. In case the Licensor
exports such articles in compliance with the aforesaid provision,
the Licensee shall not be benificiary of revenues accrued by
such exportation.

D. The Licensee shall pay the Licensor's share of merchandising
revenue to the Licensor on a semiannual basis, for the period
of January 1 through June 30 and July 1 through December 31
of each year. Such payment shall be made within forty-five (45)
days after the end of each applicable period, and the Licensee
shall make monthly business reports available to the Licensor
during the license period.

E. The initial term of merchandising agreement is ten (10) years
from the date hereof as provided in Article 2 herein.

8. <u>SPECIAL PROVISIONS</u>

A. The Licensor is entitled to make an audit each twelve (12)
months after providing the Licensee with advance written
notice requesting audit.

B. If the Licensee fails to perform its obligations hereunder,
the Licensor is entitled to terminate this Agreement in its
entirety or partially merchandising exploitation provisions
only without prejudice to any of its rights against the Licensee.
Such termination shall be made only after the Licensee's
receipt of written notice stating in detail the Licensee's
failure. However, the Licensee has the right to confirm and
cure the failure within sixty (60) days after receipt of the
written notice. Notwithstanding any termination, pre-existing
licenses entered into by the Licensee shall not be disturbed
in any way.

C. In case any dispute arises between the two parties hereto in
connection with this Agreement, it shall be settled with the
bona fide efforts on the part of each party. The parties hereto
mutually agree that if no settlement is reached after exertion
of such efforts, the dispute shall be submitted to the competent
court in Tokyo, Japan, whose decision shall be final and binding
upon both parties.

D. This Agreement is subject to force majeure.

9. <u>REEDITION, ALTERATION, AND MODIFICATION</u>

The Licensee is entitled to reedit, alter, or modify any and all
the underlying series as the Licensee determines to conform with
marketing requirements including addition of different language
dialogue, new stories, new sound effects, new music, a new title
or titles and credits to personnel utilized by the Licensee in
connection with any such activity. However, such redition, alte-
ration, or modification shall be done in a reasonable manner
acceptable by the Licensor which does not detract from the under-
lying series.

- 4 -

## 10. ASSIGNMENT AND SUBLICENSE

The Licensee shall have the right to assign, license, delegate, lend or otherwise transfer its rights, options or privileges granted hereunder in whole or in part to any third party, but in no case the Licensee shall transfer its obligations to the Licensor to any third party.

IN WITNESS WHEREOF, the parties hereto have signed hereunder to execute this Agreement on the date first above written.

TATSUNOKO PRODUCTION CO., LTD.          HARMONY GOLD, USA ~~LTD.~~

– 5 –



# TATSUNOKO-PRODUCTION-CO., LTD.

3-22-12 MINAMI-CHO, KOKUBUNJI-SHI
TOKYO, JAPAN
TELEPHONE: 0423-23-9111
TELEX: 02832427 ANIPRO J
FAX: 0423-23-9350

## ORIGINAL

February 10. 1993

Re:  "ROBOTECH"

To Whom It May Concern:

This letter is sent with reference to that License Agreement dated October 1, 1989 by and between Tatsunoko Production Co., Ltd. at 3-22-12, Minami-cho, Kokubunji-shi, Tokyo, Japan and Harmony Gold, Ltd. at 7655 Sunset Boulevard, Los Angeles, California 90046 with reference to the television programming of "MACROSS" (30' X 36 eps.), "MOSPEADA" (30' X 25 eps.) and "SOUTHERN CROSS" (30' X 23 eps.) collectively entitled "ROBOTECH". This letter shall confirm that the aforesaid License Agreement includes merchandising and home video rights to the programs.

Sincerely,

TATSUNOKO PRODUCTION CO., LTD.

Toyoharu Yoshida
President



<u>AMENDMENT TO MAIN AGREEMENT</u>

THIS AMENDMENT is entered into as of August 6, 1998 by and between

TATSUNOKO PRODUCTION CO., LTD. ("Tatsunoko")
3-22-12, Minami-cho, Kokubunji-shi,
Tokyo, Japan

(hereinafter referred to as the Licensor)

- and -



Reference is ... LICENSE AGREEMENT dated <u>March 15, 1991</u> ... and harmony ... mended by that certain AME... Tatsunoko and Harmony Gold ...

WHEREBY, ... Gold wishes to ... described in the Main Agreement ... below (the "Programs"):

    a. "MACROSS" (36 1/2 hour episodes);
    b. "MOSPEADA" (25 1/2 hour episodes); and
    c. "THE SOUTHERN CROSS" (23 1/2 hour episodes)

IT IS AGREED as follows:

1. <u>PAYMENTS</u> - As consideration for the rights granted in this Amendment, Harmony Gold agrees to pay Tatsunoko the sum Two Hundred Fifty Two Thousand united States Dollars (US$252,000), payable in ten equal 6 month installments, commencing on June 1, 1999 (the "Renewal Fee").

- 1 -

49

2. <u>RIGHTS GRANTED</u> - Tatsunoko hereby irrevocably extends the grant of exclusive rights to Harmony Gold described in the Main Agreement in and to the Programs. Such exclusive rights shall include all rights in all media now existing or hereafter invented, including, but not limited to, theatrical, non-theatrical, television, video, merchandising, soundtrack and publication rights, excluding only the merchandising rights in Japan previously granted to certain Japanese manufacturers as set forth in the Main Agreement. Notwithstanding anything to the contrary in the Main Agreement, all trademarks, copyrights and other rights in any materials created or utilized by Harmony Gold in connection with the exercise of its rights under the Main Agreement, including but not limited to the right to the name "ROBOTECH", shall be exclusively owned and controlled throughout the universe in perpetuity by Harmony Gold. Notwithstanding the foregoing, harmony Gold shall not have the rights to any sequels to "Macross", "Mospeada" or [illegible]

3. <u>TERRITOR[illegible]</u> AG[illegible] world-wide excluding Japan. With respect to [illegible] [illegible] Main Agreement [illegible] Harmony Gold's right to dis[illegible] [illegible] [illegible] English language ROBOTECH [illegible] [illegible] [illegible] cause Tatsunoko shall have [illegible] [illegible] [illegible] Programs independent[illegible] [illegible] [illegible] se in Asian languages [illegible] [illegible] [illegible] come under its coverage.

4. <u>TERM</u> - Tatsunoko hereby grants to Harmony Gold a Renewal Term of <u>ten (10) years</u> through and including <u>March 14, 2011.</u> In addition, provided Harmony Gold has complied with the terms of the Agreement, and provided Harmony Gold wishes to extend the Renewal Term for an additional <u>ten (10) years</u> (through and including March 14, 2021), Harmony Gold will notify Tatsunoko of its interest in extending the Term. In which case, the parties agree to negotiate in good faith for such renewal using the payment terms of this Amendment as a guideline.

This Amendment and the Main Agreement will be governed by the laws of the State of California of the United States of America and all disputes shall be resolved by binding arbitration in Los Angeles, California pursuant to the rules of the American Film Marketing Association. Except as amended herein, all of the rights and obligations set forth in the Main Agreement remain in full force and effect. This Amendment is executed as of the date set forth above by duly authorized officers of the parties hereto.

(*) For the avoidance of doubt, the Japanese exclusion and the Asian/English language limitation will not apply to any new Robotech series to be produced by Harmony Gold.

TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD LTD.

_KEN' YOSHIDA_                          _April 12 1999_



- 3 -