HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARMONY GOLD U.S.A., INC.,<br><br>Plaintiff,<br><br>v.<br><br>PIRANHA GAMES INC.; INMEDIARES PRODUCTIONS, LLC; and DOES 1–10,<br><br>Defendants. | CASE NO. 2:17-CV-00327-TSZ<br><br>**PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM**<br><br>**REDACTED - PUBLIC VERSION**<br><br>**NOTE ON MOTION CALENDAR: APRIL 20, 2018** |

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

**TABLE OF CONTENTS**

A. [REDACTED] ....1

1. There Was No Express Written Transfer of Any Copyright in the Characters. ....1
2. There Was No Transfer of Copyrights by Implication. ....2
3. There Was No Transfer of Copyrights by Operation of Law. ....3
4. Self-serving Conduct and Statements by Tatsunoko and Harmony Gold Are Not a Substitute for a Writing Signed by Big West. ....4

B. Harmony Gold Did Not Register Any Copyright Claim in the Characters, and Thus Lacks Standing to Sue Under 17 U.S.C. § 411. ....5

C. Harmony Gold Cannot Use Artful Pleading to Capture Derivative Works Rights That Were Never Transferred. ....5

D. There Is No Evidence that Big West Agrees with Harmony Gold's Claim That It Owns Copyrights in the Characters ....8

E. The Only Court Rulings Affecting the Merits of Harmony Gold's Copyright Claims are the Federal Court Judgment and the Japanese Decisions ....9

F. The Cases Cited by Harmony Gold Are Inapposite ....10

G. Harmony Gold's Claims Are Barred by Collateral Estoppel ....11

H. Harmony Gold's Request for Letters Rogatory Should Not Delay Summary Judgment under Rule 56(d) ....12

CONCLUSION ....12

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - ii

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*,
2017 U.S. Dist. LEXIS 74639, No. 3:15-cv-04084-CRB (N.D. Cal. May 16, 2017) ...............6

*Clark v. Bear Stearns & Co., Inc.*,
966 F.2d 1318 (9th Cir. 1992) ....................11

*DC Comics v. Towle*,
802 F.3d 1012 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1390 (2016)....................5, 7, 8, 9

*DC Comics v. Towle*,
989 F. Supp. 2d 948 (C.D. Cal. 2013) ....................7

*Gaiman v. McFarlane*,
360 F.3d 644 (7th Cir. 2004) ....................6

*Hampton v. Paramount Pictures Corp.*,
279 F.2d 100 (9th Cir. 1960), *cert. denied*, 364 U.S. 882 (1960)....................4

*Konigsberg Int'l, Inc. v. Rice*,
16 F.3d 355 (9th Cir. 1994) ....................4

*M. Kramer Mfg. Co. v. Andrews*,
783 F.2d 421 (4th Cir. 1986) ....................6

*Magnuson v. Video Yesteryear*,
85 F.3d 1424 (9th Cir. 1996) ....................10, 11

*Mason v. Jamie Music Publ'g Co.*,
658 F. Supp. 2d 571 (S.D.N.Y. 2009)....................2

*MGM, Inc. v. Am. Honda Motor Corp.*,
900 F. Supp. 1287 (C.D. Cal. 1995) ....................10

*New Line Cinema Corp. v. Bertlesman Music Group, Inc.*,
693 F. Supp. 1517 (S.D.N.Y. 1988)....................10

*Osborne v. Boeing Co.*,
2016 U.S. Dist. LEXIS 34785 (W.D. Wash. Mar. 16, 2016) ....................10

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - iii

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

*Papa's-June Music, Inc. v. McLean*,
921 F. Supp. 1154 (S.D.N.Y. 1996)....................2

*Righthaven LLC v. Hoehn*,
716 F.3d 1166 (9th Cir. 2013)....................7

*S.O.S., Inc. v. Payday, Inc.*,
886 F.2d 1081 (9th Cir. 1989)....................2

*Sempra Energy v. Marsh USA, Inc.*,
No. CV 07-05431 SJO, 2008 U.S. Dist. LEXIS 128349 (C.D. Cal., October 15, 2008)........11

*Vandenberg v. Sup. Ct. of Sacramento Cty.*,
21 Cal. 4th 815 (1999)....................11, 12

*Warner Bros. Pictures v. CBS*,
216 F.2d 945 (9th Cir. 1954), *cert. denied*, 348 U.S. 971 (1955)....................2, 3, 4, 8

*Zyla v. Wadsworth*,
360 F.3d 243 (1st Cir. 2004)....................5

**Statutes**

9 U.S.C. § 13(c)....................11

17 U.S.C. 103(b)....................5, 10

17 U.S.C. § 101....................5, 6

17 U.S.C. § 103(b)....................3

17 U.S.C. § 106....................7

17 U.S.C. § 204(a)....................1, 2, 4

17 U.S.C. § 411....................5

1909 Copyright Act....................10

Copyright Act....................1, 4, 5, 7

Federal Arbitration Act (9 U.S.C.A. §§1-14)....................11

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - iv

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

**Other Authorities**

Jeffrey Soble and Masahir Tanabe, *Conducting Discovery in Japan: Depositions, Letter Rogatory, and Production of Documents* (The Corporate Counselor Sep. 1, 2012) ....................12

1 *Nimmer on Copyright* § 3.01 (2017)....................7

Rule 12(c)....................9

Rule 56(d) ....................12

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - v

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

**A.** [redacted]

The Second Amended Complaint ("SAC") alleges that copyrights for several Big West Characters were infringed. While Harmony Gold may have certain rights as to the *Macross* motion picture (which contains depictions of the Big West Characters), it has no exclusive rights in the Big West Characters themselves. That is the basis for summary judgment here.

**1. There Was No Express Written Transfer of Any Copyright in the Characters.**

Copyrights are obtained either by authorship or by agreement. Studio Nue was the author of the Big West Characters and agreed to joint ownership with Big West.[1] The parties agree that any copyrights owned by Harmony Gold derive initially from [redacted], which then licensed all of its rights to Harmony Gold.

Under the Copyright Act, all transfers of exclusive copyrights must be in writing and signed by the owner of the rights conveyed. 17 U.S.C. § 204(a). Harmony Gold relies on [redacted] as proof that Big West assigned copyrights in the characters to Tatsunoko. [redacted].

Significantly, [redacted]

[1] Big West and Studio Nue are referred to collectively herein as "Big West."

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 1

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

[REDACTED]

[REDACTED].

**2. There Was No Transfer of Copyrights by Implication.**

[REDACTED], Harmony Gold is really claiming that Tatsunoko received copyrights in the characters by implication or by operation of law. Neither claim is true. The law presumes that the author of a work retains all copyrights that are not clearly conveyed in a writing. *Warner Bros. Pictures v. CBS*, 216 F.2d 945, 949 (9th Cir. 1954)*; S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) ("The license must be construed in accordance with the purposes underlying federal copyright law. Chief among these purposes is the protection of the author's rights.") (citations omitted). "The clearest language is necessary to divest the author of the fruits of his labor." *Warner Bros.*, 216 F.2d at 949 (emphasis added); *accord Mason v. Jamie Music Publ'g Co.*, 658 F. Supp. 2d 571, 581 (S.D.N.Y. 2009) ("Any ambiguities or doubts concerning the scope of rights assigned by the [authors] ... must be construed in favor of the [authors].") (brackets in original) (citations omitted); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996) ("transfer agreements should be construed in favor of copyright transferor because section 204(a) reflects the policy judgment that

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 2

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

copyright owners should retain all rights unless specifically transferred") (internal citations and quotations omitted).

*Warner Bros.* concerned an assignment of rights in a mystery-detective story called *The Maltese Falcon.* The author of the story assigned to Warner Brothers the right to use *The Maltese Falcon* "writings" in moving pictures, radio, and television. After assigning those rights to Warner Brothers, the author published new stories using the same characters that first appeared in *The Maltese Falcon*. Warner Brothers sued for infringement, alleging that the exclusive rights it acquired in *The Maltese Falcon* prevented the author from using the same characters in later works.

The Ninth Circuit disagreed, holding that the author (like Big West here) retained its rights in the characters when it transferred movie rights to Warner Brothers. The Court held:

> We are of the opinion that since the use of characters and character names are nowhere specifically mentioned in the agreements, but that other items, including the title, 'The Maltese Falcon', and their use are specifically mentioned as being granted, that the character rights with the names cannot be held to be within the grants, and that under the doctrine of *ejusdem generis*, general language cannot be held to include them. As was said in *Phillip v. Jerome H. Remick & Co.*, S.D., N.Y., Op. No. 9,999, 1936, 'Such doubt as there is should be resolved in favor of the composer. The clearest language is necessary to divest the author of the fruits of his labor. Such language is lacking here.'

*Warner Bros.*, 216 F.2d at 949 (citation omitted). Thus, [REDACTED] .

**3. There Was No Transfer of Copyrights by Operation of Law.**

As discussed in Piranha's opening brief, owning copyrights in a compilation or derivative work, like a motion picture, does not imply any exclusive right in preexisting material, such as characters. 17 U.S.C. § 103(b). It is certainly possible that one entity could own all of the rights in a compilation or derivative work, including preexisting material, but that is not the case here, as shown by the 2003 Amendment (Dkt. 88-7), the Japanese court rulings (Dkts. 88-1, 88-2) and the Federal Court Judgment (Dkt. 88-4). Harmony Gold cites several cases in which the owner of

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 3

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

movie copyrights also owned the character copyrights. Opp. Br. at 15:5-12. Those cases are inapposite, because [redacted].

The opinion of Atsushi Noguchi of Tatsunoko (Dkt. 109) is irrelevant, because all assignments of exclusive copyrights must be in writing and clearly stated. 17 U.S.C. § 204(a); *Warner Bros., supra*. This statutory requirement is designed to prevent fraudulent claims of copyright ownership. *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994) ("Section 204's writing requirement not only protects authors from fraudulent claims, but also enhances predictability and certainty of ownership …") (citation and internal quotation marks omitted).

**4. Self-serving Conduct and Statements by Tatsunoko and Harmony Gold Are Not a Substitute for a Writing Signed by Big West.**

As shown by the Copyright Act and cases cited above, the "clearest language" in a writing signed by the transferor is necessary to divest an author of its copyrights in fictional characters. Self-serving conduct by Harmony Gold, and settlements with persons accused of infringement, are not substitutes for a clear, written assignment signed by the author. It appears that Harmony Gold has been asserting non-existent copyrights for years, and that none of its previous targets had the money, incentive or information necessary to defend against those false claims. This "history," as Harmony Gold calls it, does not prove ownership of a copyright in the characters.

Big West's alleged failure to enforce its copyright also is not a substitute for a clear writing transferring those rights. Abandonment of copyrights "must be manifested by some overt act indicative of a purpose to surrender the rights." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). There is no evidence of abandonment here. Moreover, there are numerous acts and statements (discussed below in Section D) showing that Big West retained its copyrights in the characters. Big West's U.S. Copyright registration alone is *prima facie* evidence that Big West owns those copyrights.

Big West's request for Harmony Gold's permission to distribute <u>animations</u> that are derivative of the Macross <u>motion picture</u> does not mean that Big West assigned or transferred its

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 4

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

copyrights in the Big West Characters. Everyone agrees, for purposes of this motion, that Harmony Gold has the right to distribute and commercialize the *Macross* animations outside of Japan, but that does not include copyrights in the characters apart from the *Macross* motion picture.

**B. Harmony Gold Did Not Register Any Copyright Claim in the Characters, and Thus Lacks Standing to Sue Under 17 U.S.C. § 411.**

Harmony Gold's copyright registration certificate identifies the "Nature of this Work" as a 36-episode "MOTION PICTURE." Dkt. 88-8 at 1. Harmony Gold entered information in box number 6 of the certificate indicating that the work was a "Compilation or Derivative Work." *Id.* at 2. In its opposition, Harmony Gold fails to address 17 U.S.C. 103(b), which states that a copyright in a compilation or derivative work does not imply any exclusive right in preexisting material. *Zyla v. Wadsworth*, 360 F.3d 243, 250 (1st Cir. 2004) (copyright registration application constituted an admission that applicant's work was derivative of preexisting work).

That statute is important, because the Copyright Act specifically requires registration of a claimed copyright before the alleged owner can file suit for infringement. 17 U.S.C. § 411. Harmony Gold's registration certificate does not claim any copyright in the Big West Characters. Dkt. 88-8. Big West is the only entity that has registered copyrights in the characters. Dkt. 88-5. For this reason alone, Harmony Gold's infringement claim should be dismissed.

**C. Harmony Gold Cannot Use Artful Pleading to Capture Derivative Works Rights That Were Never Transferred.**

The parties agree that Harmony Gold has no right to make derivative works based on the Big West Characters. *See* Dkt. 107 at 11:6-26. Prior to filing its SAC, Harmony Gold repeatedly described the accused Piranha characters as being "derivative" of the Big West Characters. *See, e.g.*, Dkt. 31, ¶¶19-21, 37, 43-44. "A derivative work is a work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting works…." *DC Comics v. Towle*, 802 F.3d 1012, 1023-25 (9th Cir. 2015) (holding that working replicas of the Batmobile were derivative of the comic book character) (citations and internal punctuation omitted); *see* 17 U.S.C. § 101.

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 5

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

If the accused Piranha characters infringe the Big West Characters, that could only be because they are derivative works. In addition to Harmony Gold's many assertions that the Piranha's characters are "derivative," the images displayed in the SAC show that the accused Piranha characters are not mere copies from the *Macross* movie or television series. Dkt. 83. In addition to Harmony Gold's admissions and the visual differences between the images, Piranha's characters appear in a different medium – an online video game. The Big West Characters appear in a fixed (not changing) animated movie, with specific color schemes, story lines, dialogue, music and other elements. By contrast, Piranha's characters are controlled and manipulated by players of Piranha's video game, which has different color schemes, story lines, dialogue, music, and other elements. *See* https://mwomercs.com/. Thus, assuming infringement, the Big West Characters were "recast, transformed, or adapted" for use in a video game. By statutory definition, they are derivative works, assuming they infringe. 17 U.S.C. § 101.

Numerous courts have held that video games are derivative works when they are based on or incorporate copyrighted elements from earlier works. *See Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*, 2017 U.S. Dist. LEXIS 74639, *21, No. 3:15-cv-04084-CRB (N.D. Cal. May 16, 2017) (video games incorporating characters from earlier games were derivative works); *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 437, (4th Cir. 1986) (video poker game was derivative of earlier works); *Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004) (video games were derivative works incorporating copyrighted characters from comic books).[2]

Despite Harmony Gold's effort to re-define its copyright claim in its SAC to avoid the

[2] The plaintiff in *Gaiman* was the co-creator of three characters appearing in a series of comic books called "Spawn." Thus, Mr. Gaiman was like Big West in this case. Mr. Gaiman sued to recover his share of profits arising from sales of derivative works based on those characters. The court found: "By the time of trial, Spawn was up to issue No. 120 and had spawned a large number of derivative works, including posters, trading cards, clothing, the statuettes, an animated series on HBO, video games, and a motion picture. *Id.* (emphasis added).

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 6

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

word "derivative," the Copyright Act and applicable case law show that Piranha's characters meet the statutory definition of derivative works if they infringe. In order to have standing to sue for such infringement, Harmony Gold must itself have an exclusive license to create derivative works based on those characters. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013). Harmony Gold admits that its license excludes such rights. Dkt. 107 at 11:6-26.

Using words like "copy" or "reproduce" to describe Piranha's alleged unlawful conduct does not change this analysis. All derivative works "copy" some element of a preexisting work. As stated by a leading commentator, "[a] work is not derivative unless it has *substantially* copied from a prior work." 1 *Nimmer on Copyright* § 3.01 (2017) (italics in original) (citation omitted). This was explained in *DC Comics*, where the Ninth Circuit found that the Batmobile was a copyrighted character, and "that Towle's replicas necessarily copied some aspects of DC's underlying works." *DC Comics*, 802 F.3d at 1025 (citation omitted). The Court held "Towle infringed upon DC's property rights when he produced unauthorized derivative works of the Batmobile …." *Id.* at 1027 (emphasis added).

According to Harmony Gold, "exclusive merchandising rights" were sufficient to afford the plaintiff standing in *DC Comics v. Towle*, 989 F. Supp. 2d 948 (C.D. Cal. 2013).[3] But the Court found that DC Comics had retained "<u>all</u> rights not <u>specifically</u> granted to the licensees …." *DC Comics*, 802 F.3d at 1024 n.8 (emphasis added). The holding relevant here is that DC Comics (like Big West) retained its copyrights in the Batmobile character even after granting licenses to third parties to display that character in TV and movie productions. *Id.* at 1024-25. Although DC Comics had licensed the rights to create a *Batman* movie and television series, the Court found that DC Comics retained its copyrights in the Batmobile character, just as Big West retained the copyrights

---

3 The only exclusive copyrights recognized by the Copyright Act are the ones set forth 17 U.S.C. § 106. "Merchandizing" is not one of those rights. Harmony Gold does not define merchandizing, or state whether it corresponds to any of the authorized statutory rights.

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 7

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

in the Big West Characters [redacted]. *DC Comics*, 802 F.3d at 1026 ("[Towle's] argument fails because DC retained its rights to the underlying Batmobile character, and the creation of derivative works by sublicensees cannot deprive DC of such rights.")

This is the same conclusion the Ninth Circuit reached 60 years earlier in *Warner Bros*. Thus, under Ninth Circuit precedent, [redacted]. And Harmony Gold has failed to cite any authority stating that a licensee can avoid an express limitation in its license by renaming derivative works as "copies" or "merchandise."

**D. There Is No Evidence that Big West Agrees with Harmony Gold's Claim That It Owns Copyrights in the Characters**

Admissible evidence is required to defeat a properly supported motion for summary judgment. According to Harmony Gold, Big West agrees that Harmony Gold has copyrights in the Big West Characters. The evidence shows just the opposite, including the following: (1) Big West successfully argued and proved during litigation in Japan that it owns the copyrights in the characters (Dkts. 88-1, 88-2); (2) Unlike Harmony Gold, Big West specifically registered its copyrights in the characters in the U.S., and submitted drawings of each Character with its registration certificate (Dkt. 88-5); and (3) Tatsunoko's attorney confirmed in an email that Big West owns the copyrights in the Characters (Dkt. 110-11).

Harmony Gold mischaracterizes the email that its in-house attorney received from an attorney representing Tatsunoko. *Id*. As a preliminary matter, the email is inadmissible triple hearsay and should be stricken from the record. While Ms. Duran can testify that she received the email from Tatsunoko's attorney, she cannot authenticate the hearsay statements contained within the email. Specifically, she has no personal knowledge of what "the CEO of Big West" told "Tatsunoko senior management" or what Tatsunoko told its attorney, Mr. Murphy. Without declarations authenticating those hearsay statements, the email is inadmissible and should be

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 8

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

stricken. It cannot prevent summary judgment.

But if not stricken, the email supports Piranha's position. According to Tatsunoko's attorney, Mr. Murphy: "Big West is adamant that the first two episodes [of the Argentinian fan film] infringe upon Big West's rights in the Macross characters …." *Id.* at 2 (emphasis added). Mr. Murphy further states: "In prior correspondence you [*i.e.* Ms. Duran, President and General Counsel for Harmony Gold] have acknowledged Big West's rights in and to the Macross 41 character designs and that Harmony Gold will be careful not to infringe upon such rights …." *Id.* (emphasis added). Assuming the email is admissible, this is clear evidence that Big West has not abandoned the copyrights it registered with the U.S. Copyright Office. Dkt 88-5. The email merely shows that Big West was hoping Harmony Gold would assist in protecting Big West's copyrights in the characters by sending a cease and desist letter to the people who were displaying the Argentinian fan film on YouTube and Facebook.

**E. The Only Court Rulings Affecting the Merits of Harmony Gold's Copyright Claims are the Federal Court Judgment and the Japanese Decisions**

Harmony Gold claims that it successfully enforced its alleged copyrights in two earlier lawsuits. *See* Dkts. 110-13 (the "*FASA*" ruling) and 110-16 (the "*Sunwards*" ruling). Both decisions were procedural rulings, and neither case resulted in a judgment on the merits.

The *FASA* ruling resolved a Rule 12(c) motion concerning the sufficiency of Harmony Gold's pleadings, combined with a motion for summary judgment, which was denied, regarding "equitable defenses of laches, estoppel, and waiver." Dkt. 110-13 at *2-3. The issue decided in *Sunwards* was whether Harmony Gold had shown *prima facie* evidence of copyright ownership in "an animated television series called Macross" sufficient to avoid a motion to dismiss. Dkt. 110-16 at 1. The only reference to "characters" was the court's statement that *Macross* "feature[s] … mechanical robot characters ...." *Id.* at 1. The court did not analyze whether the copyrights in the characters were separately owned by Big West. Those procedural rulings have no relevance to the issues before this Court. Moreover, both decisions pre-date the 2003 Amendment, where Harmony

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 9

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

Gold acknowledged that it has no derivative rights in the characters. Dkt. 88-7.

In contrast to the procedural rulings in *FASA* and *Sunwards*, the Federal Court Judgment is a final decision on the merits finding that Harmony Gold has no copyrights in the Big West Characters. Dkt. 88-4. Likewise, the Japanese decisions are final rulings on the merits, holding that Big West, not Tatsunoko, owns the copyrights in the Big West Characters. Dkts. 88-1, 88-2.

Finally, Harmony Gold has submitted no admissible evidence that FASA is Piranha's predecessor, which Piranha denies. *See Osborne v. Boeing Co.*, 2016 U.S. Dist. LEXIS 34785, at *16-17 (W.D. Wash. Mar. 16, 2016) (declining to consider inadmissible testimony, granting summary judgment) (Lasnik, J.). In any event, FASA's alleged settlement with Harmony Gold is irrelevant because [REDACTED].

**F. The Cases Cited by Harmony Gold Are Inapposite**

Harmony Gold relies on *MGM, Inc. v. Am. Honda Motor Corp.*, 900 F. Supp. 1287, 1293 (C.D. Cal. 1995), where the defendants argued that the plaintiff had not demonstrated their copyright to the James Bond Character, because the character had appeared in two films not owned by plaintiffs. In the present case, Big West's copyrights in the Big West Characters were established through litigation, and Big West is the only entity that registered those copyrights in the United States. Dkt. 88-5.

In *New Line Cinema Corp. v. Bertlesman Music Group, Inc.*, 693 F. Supp. 1517 (S.D.N.Y. 1988), the court states in a footnote that because the plaintiff owned the copyright in the *Nightmare on Elm Street* movies, it also owned the copyright in the character Freddy Krueger. *New Line Cinema* is different from this case, because no one in *New Line Cinema* claimed that the Freddy Krueger character was "preexisting material" owned by someone else. 17 U.S.C. 103(b).

In *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1429 n.1 (9th Cir. 1991), the Court found that a memorandum satisfied the writing requirement of the 1909 Copyright Act, even though it was executed after the transfer. Here, [REDACTED]

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 10

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

[REDACTED], so *Magnuson* is distinguishable.

**G. Harmony Gold's Claims Are Barred by Collateral Estoppel**

The Federal Arbitration Act ("FAA") mandates that a confirmed arbitration award "shall have the same force and effect, in all respects" as any other district court judgment. 9 U.S.C. § 13(c).[4] Despite this federal mandate, Harmony Gold argues that a federal court judgment does not have collateral estoppel effect under *California* law. However, federal law applies to the enforcement of an arbitration award confirmed by a federal court. *Sempra Energy v. Marsh USA, Inc.*, No. CV 07-05431 SJO, 2008 U.S. Dist. LEXIS 128349 at *31 (C.D. Cal., October 15, 2008). As held by the Central District of California, the same court that confirmed the award in the arbitration between Tatsunoko and Harmony Gold: "[I]n California, confirmation of a private arbitration proceeding by a federal court renders the arbitration a federal judicial proceeding, thereby implicating federal collateral estoppel law." *Id.* (citations omitted) (emphasis added). As shown in Piranha's opening brief, the basis for the confirmed award is clearly documented (Dkt. 87 at 19-22), giving it collateral estoppel effect. *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

The federal diversity cases cited by Harmony Gold are inapposite, because they do not concern which law applies to enforcement of an arbitration award confirmed by a federal court. *See Sempra Energy*, 2008 U.S. Dist. LEXIS 128349 at *31-32 (law of forum state applies in diversity cases but federal law applies to arbitration awards confirmed by a federal court). The ruling in *Vandenberg v. Sup. Ct. of Sacramento Cty.*, 21 Cal. 4th 815 (1999) is also inapposite, because it concerned an arbitration award confirmed under state law. The California Supreme Court made this clear, stating: "No party has suggested the arbitration here at issue is governed by

---

[4] 9 U.S.C. § 13(c) provides: "The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 11

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

the Federal Arbitration Act (9 U.S.C.A. §§1-14) (FAA), and we have no occasion to consider whether application of the FAA would alter our ruling." *Id.* at 845 n.2.

**H. Harmony Gold's Request for Letters Rogatory Should Not Delay Summary Judgment under Rule 56(d)**

As shown in Piranha's opposition to Harmony Gold's motion for issuance of a letter rogatory (Dkt. 95), Harmony Gold has been dilatory in seeking the assistance of this Court. Moreover, Harmony Gold has not identified any specific document that it needs from Big West in Japan. The proposed letter rogatory is a fishing expedition seeking a broad range of generic documents which are not specifically identified and may not exist. Harmony Gold has not filed a declaration demonstrating that "for specified reasons, it cannot present facts essential to justify its opposition" as required by Rule 56(d). Harmony Gold has offered [REDACTED] [REDACTED], and has failed to explain what other documents exist or how they could overcome the substantial evidence that Big West owns the copyrights at issue. Moreover, the evidence in the record shows that Big West has not abandoned its copyrights in the characters. Harmony Gold has failed to satisfy the requirements of Rule 56(d), and there is no basis for again delaying a ruling on Piranha's motion for summary judgment.[5]

**CONCLUSION**

For the foregoing reasons, Piranha respectfully requests that this Court enter summary judgment dismissing Harmony Gold's copyright infringement claim (Count I) with prejudice, and enter judgment in favor of Piranha.

Respectfully submitted this 20th day of April, 2018.

---

[5] Japanese courts lack the authority to order the production of documents, so Harmony Gold's letter rogatory is unlikely to be successful. *See* Jeffrey Soble and Masahir Tanabe, *Conducting Discovery in Japan: Depositions, Letter Rogatory, and Production of Documents* at 3 (The Corporate Counselor Sep. 1, 2012), https://m.foley.com/files/publication/d77c1ac1-476f-404e-afc0-ea05b656b733/presentation/publicationattachment/4079c9cd-ab82-429c-84e7-f049b5d831ea/thecorporatecounselor9-1-12.pdf.

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 12

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

DORSEY & WHITNEY LLP

*/s/ Paul T. Meiklejohn*____________________________
Paul T. Meiklejohn, WSBA No. 17477
meiklejohn.paul@dorsey.com
J. Michael Keyes, WSBA No. 29215
keyes.mike@dorsey.com
Todd S. Fairchild, WSBA No. 17654
fairchild.todd@dorsey.com
Ryan B. Meyer, WSBA No. 37832
meyer.ryan@dorsey.com
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Phone: (206) 903-8800
Fax: (206) 903-8820

*Attorneys for Defendant Piranha Games Inc.*

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 13

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM were served by ECF on the following parties on April 20, 2018:

Damon C. Elder, WSBA #46754
damone@calfoeakes.com
Andrew R.W. Hughes, WSBA #49515
andrewh@calfoeakes.com
CALFO EAKES & OSTROVSKY PLLC
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808

Jessica Stebbins Bina (admitted *pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., 3rd Floor
Los Angeles, CA 90067

*Attorneys for Plaintiff Harmony Gold U.S.A., Inc.*

*/s/ Paul T. Meiklejohn*
Paul T. Meiklejohn

PIRANHA'S REPLY IN SUPPORT OF PIRANHA'S SECOND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S LACK OF STANDING TO ASSERT COPYRIGHT INFRINGEMENT CLAIM
Case No. 2:17-cv-00327-TSZ - 14

DORSEY & WHITNEY LLP
COLUMBIA CENTER
701 FIFTH AVENUE, SUITE 6100
SEATTLE, WASHINGTON 98104
PHONE: (206) 903-8800
FAX: (206) 903-8820