# EXHIBIT A

# Licensing Agreement

This Agreement is entered into this 1st day of February, 2008 by and between

TATSUNOKO PRODUCTION CO., LTD.
3-22-12 Minami-cho, Kokubunji-shi,
Tokyo, Japan
(hereinafter referred to as the Licensor)

- and -

Harmony Gold Ltd.
7655 Sunset Boulevard
Los Angeles, California 90046,
USA
(hereinafter referred to as the Licensee)

Licensee and Licensor agree to the following Basic Terms in relation to the Program.

## BASIC TERMS

1. Date:
This agreement shall be effective as of the mutual execution date by both parties.

2. Program:
  "劇場版 「超時空要塞マクロス 愛おぼえていますか」 "(Japanese Title)
  Theatrical Animation "Super Dimension Fortress - MACROSS Do you Remember Love? -"(English Title)

3. Licensed Rights:
The Licensor hereby grants to the Licensee exclusive Merchandising Rights (Excluding game rights) of the Program in the Territory during the License period stated below and also grants the rights to sublicense the granted rights to any third party. The Videogram Rights and the Broadcasting Rights of the Program are not included in the Licensed Rights. The parties hereto acknowledge and confirm the fact that the program licensed hereunder are totally independent and have no relation whatsoever with any licensed programs dealt hitherto between the two parties.

4. Definitions:

General terms used herein shall be defined according to their reasonable and customary use in the industry.

i) Merchandising Rights: the rights to make items in or emblazoned with the image or characters appearing in the Program on a product two-dimensional or three-dimensional and manufacture, sell, distribute or advertise the said product.

ii) Videogram Rights: the rights of exploitation of the Program embodied in a linear, Videogram form, whether rental or sell through.

iii) Broadcasting Rights: the rights to exhibit, broadcast via any television broadcast or cable or satellite throughout the Territory during the License Period including without limitation over-the-air terrestrial broadcast(whether UHF or VHF or microwave or other), and broadcast via cable, satellite or PPV or any other means of transmission whether now known or hereinafter developed, as these terms are commonly understood in the industry.

5. Territory:

Worldwide, excluding Japan.

6. License period:

Five (5) years, commencing on signature of Agreement. The Licensee is entitled to exercise the rights granted hereunder and subject to endorsement in writing by the Licensor, the Licensee may extend the license term preferentially for five(5)years with the same terms and conditions as for the initial license term.

7. Language:

English

8. Warranty:

The Licensor warrants and represents that it has a good right to grant this license and will indemnify the Licensee against any claims made by any third party for infringement of copyright arising out of exploitation by the Licensee of the Program provided that such exploitation is in accordance with the terms of this Agreement.

The Licensee warrants and represents that Licensee will honor all restrictions on the exercise of the Licensed Rights under this Agreement and shall make the payments as provided herein and will indemnify the Licensor against any claims made by any third party for infringement of the right due to the causes attributable to Licensee. Licensee shall manufacture the merchandise in

accordance with any relevant laws and regulations on safety and health and any quality and safety standards established by the industry.

### 9. Minimum Guarantee:

Licensee shall pay to Licensor a non-refundable Minimum Guarantee in the total amount of US Dollar Five Thousand Dollars ($5,000) (gross before withholding tax).

### 10. Royalties:

Twenty percent(20%) of the Net revenue receipts from the merchandising. Licensee may deduct fifty percent(50%) of the gross revenue as fees and costs, and rest is the Net revenue. Licensee may also retain and apply hundred percent(100%) of Royalties to recoup the Minimum Guarantee. After recoupment of Minimum Guarantee, Licensee shall pay 100% of Royalties to Licensor.

### 11. Payments & Reports:

Manner of payment: Upon condition that Licensor is not in default of any of its obligations or warranties hereunder, Licensee shall pay to Licensor the Minimum Guarantee and the Royalties specified in the Agreement. The payment of the Minimum Guarantee is due no later than ninety(90)days after the signing of the Agreement. The payment of the Royalties is due no later than 90days after the issuance of the quarterly Royalty Report. All payments to Licensor hereunder shall be in US Dollars, less all applicable withholding taxes, and remitted by telegraphic transfer to the following bank account:

    Account Name: Tatsunoko Production Co.,Ltd.
    Account Number: 9003168
    Bank Name: The Bank of Tokyo-Mitsubishi UFJ,Ltd
    Bank Branch Identification: Kokubunji Branch
    Swift Code: BOTKJPJT

Royalty Report: Licensee shall report Royalties and make any relevant payments on a quarterly basis. During the term of this Agreement, Licensee shall make a written report setting forth thereon quantities and sales amount of the merchandise manufactured and sold during three months period, submit it to Licensor within Thirty(30) days from the closing date. Royalty Report must contain details of revenues generated by exploitation of the licensed programs including sublicensing and the following particulars should be made clear in it:

    a) The name and address of sublicensee
    b) Name of merchandise
    c) Retail price of goods
    d) Produced quantity
    e) Royalty rate (in case of sublicensing)

f) Royalty subtotal

### 12. Audits by Licensor and Agent:

Licensee shall keep and maintain at its normal office and archive locations in the address provided in this Agreement, until three years following expiration of the Licensing Period, complete detailed, permanent, true and accurate books of account and records (per reasonable industry standards)relating to the Agreement. Records shall be kept in accordance with Generally Accepted Accounting Principles(GAAP). Licensor shall be entitled to inspect such books and records relating to the Title upon ten(10) days written notice to Licensee provided that no more than one audit is conducted every twelve(12)months during each calendar year, and no reporting period is audited more than once, and no reporting period is audited more than three years after the report has been made to Licensor. If any audit of the Licensee's book and records reveals that the Licensee has materially breached any of the payment and recoupable terms listed in the Agreement, Licensee shall pay the amount owed to the Licensor, and reimburse Licensor for its direct out-of-pocket expenses incurred in conducting such audit(up to the amount of the overdue royalty), together with interest on the overdue royalty amount at an annual rate of two percent(2%) over the prevailing prime interest rate in effect at Tokyo Japan, on the date on which such overdue royalty amount should been paid to Licensor.

### 13. Approval:

Licensee shall use its reasonable judgment in creating the merchandise based on the Program, including the development of promotional and advertising materials, in a manner generally consistent with the customs of the industry. Licensee shall submit the sample of the merchandise to the Licensor and obtain Licensor's prior written approval with respect to the figure, color, design, logo and other expression of the merchandise. Licensor's approval will be deemed given if Licensor does not give notice to Licensee of an objection within ten(10) business days of Licensor's receipt of these items.

### 14. Termination of Agreement:

If the Licensee fails to perform any of its obligations hereinafter, the Licensor shall send a notice by post. From the reception of such letter, the Licensee shall have thirty(30) days to remedy to the breach of agreement. If the Licensee is unable to perform its obligation after this period of time, then the Licensor is entitled to terminate this Agreement forthwith without prejudice to any of its rights against the Licensee. If the Licensor fails to perform any of its obligations hereinafter, the Licensee shall send a notice by post. From the reception of such letter, the Licensor shall have thirty(30) days to remedy to the breach of agreement. If the Licensor is unable to perform its obligation after this period of time, then the Licensee is entitled to terminate this Agreement forthwith without prejudice to any of its rights against the Licensor.

This Agreement can be terminated by a party hereto in the event that the other party is in adverse circumstances by reason of application for Company Rehabilitation Law, bankruptcy, insolvency or in similar situation causing inferior debt to the creditors, or seizure is not relieved within sixty (60) days, then the affected party may terminate this Agreement forthwith.

The termination of this Agreement shall not influence in any way the rights and/or obligations in effect prior to the date of expiration.

### 15. Notices:

All notices required or desired herein must be in writing and shall be personally delivered or sent by certified or registered mail, postage prepaid to the party's respective addresses as specified in this Agreement. Either party may change such address by appropriate written notice to the other party.

### 16. Confidentiality:

Either party hereto shall keep in confidence and shall not make public, disclose to third parties without prior written approval of the other party during the term of this Agreement and five (5) years after the termination hereof any and all the information including, but not limited to, business, product planning, technical, managerial and other information of the other party which the first party comes to know during the course of performance of or relative to this Agreement, provided, however, that the following information shall be excluded therefrom:

i) information which the first party has already owned before it obtains from the other party

ii) information which has been known to the public before the first party obtains from the other party

iii) information which becomes known to the public though no fault of the first party

iv) information which is lawfully received from a third party under no obligation of confidentiality

### 17. Special Provisions:

a) All rights to and in the Program except for the Licensed Rights granted herein are reserved to the Licensor who may exploit same in any manner.

b) In case any disputes arise between the two parties in connection with the provisions of this Agreement, they shall be settled with the bona fide efforts on the part of each party. However, it is agreed that if such discrepancy cannot be resolved in a manner mentioned above, any lawsuit concerning right, obligation, or interpretation of stipulations contained herein shall be subject to arbitration or decision of the District Court of Tokyo, Japan.

c) This Agreement shall be subject to Force Majeure.

d) As to the all materials supplied on loan to the Licensee by the Licensor, the Licensee is obliged to return them to the Licensor within ninety (90) days after expiration of this Agreement. The items to be retrieved will include newly authored writings for this Agreement as well as any copyright and other granted rights.

e) The subject rights of this Agreement cannot be assigned to a third party by the Licensee entirely or partly without a written endorsement of the Licensor. If the said rights are liable to be transferred to a third party because of merger involving the Licensee, this Agreement shall become null and void upon the merger and the referred rights never be succeeded.

18. Entire Agreement:

This Agreement contains the full and complete understanding between the parties and supersedes all prior understandings, whether written or oral, pertaining to the subject matter hereof and cannot be modified except by a written instrument by the parties.

IN WITNESS WHEREOF, the parties hereto have signed hereunder to execute this Agreement on the date first above written.

TATSUNOKO PRODUCTION CO., LTD.        HARMONY GOLD

Koki Narushima                        Frank Agrama
CEO                                   CEO